**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:  DOMESTIC DRYWALL ANTITRUST LITIGATION | MDL NO. 2437 13-MD-2437 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## MEMORANDUM RE:  PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES

Baylson, J.                                                                                       May 7 , 2013

The Court has approved the proposed Pretrial Order No. 3 – Case Management as submitted by counsel (ECF 9) with minor changes, which will be considered as a supplement to the previously entered Pretrial Orders No. 1 (ECF 2) and No. 2 (ECF 5).  Counsel for both plaintiffs and defendants, and in particular the interim co-lead counsel, who the Court has now confirmed as lead counsel, deserve thanks for their leadership at arriving at agreement with all of their colleagues and clients.

This Memorandum reviews the perennially "touchy" but important subject of attorneys' fees for plaintiffs' counsel, in the event plaintiffs are successful.[1]  Appellate precedents warrant the assigned trial judge in complex cases, particularly where certification of a class is sought, to require plaintiffs' lead counsel to manage their colleagues by controlling the time and expenses spent on various tasks, and keeping accurate records.

The Court further applauds plaintiffs' counsel for including in Pretrial Order  No. 3 the essential requirements for all plaintiffs' counsel recording accurately and contemporarily time and expenses by all counsel working for plaintiffs in this case, and submitting those reports to lead counsel.

---

[1] In filing this Memorandum, the Court makes no assumptions that plaintiffs will prevail – and notes that defense counsel, at the first pretrial conference, promised filing meritorious Rule 12 Motions to Dismiss.

The Court directs lead counsel, on a quarterly basis, to submit a summary of these reports *in camera* to the Court for review. These reports will not be docketed or filed, but will be maintained in Chambers. If the Court has any questions or comments, a recorded telephone conference with lead plaintiffs' counsel will be scheduled, but the record of the conference will be sealed.

The Court further compliments plaintiffs' counsel on the proposed management of assignments. The lawyers representing plaintiffs in this case are well versed in the heavy burdens that plaintiffs bear in an antitrust price fixing conspiracy claim, particularly where, as appears to be the situation here, there is no preceding criminal indictment or government civil proceeding from which the plaintiffs can take advantage of the government's superior investigative abilities.

Borrowing from Wagner's Ring, all counsel in a complex case must have the wisdom of Wotan, the bravery of Brunnhilde and the strength of Siegfried. However, plaintiffs' counsel must avoid unnecessary work, or duplicative tasks, and be thrifty in their expenditure of money on litigation expenses.

1.     Attorneys' Fees

The economic reality of counsel for plaintiffs taking on these cases is sometimes misunderstood. Judges reviewing fee petitions are not always explicit about recognizing the actual economics of plaintiffs' counsel in representing plaintiffs in complex antitrust cases, where class action certification will be sought. Most attorneys representing plaintiffs in these cases accept the case without any advance retainer, or an hourly fee agreement. They usually either have a contingent fee agreement with their clients and/or will rely on an award of attorneys' fees by the Court for their fee, if successful. Most often, plaintiffs' lawyers have agreements with their clients that any fees awarded by the Court to the client, will be paid over by the client to the attorney. Of course, this presupposes a successful result. If the case is

unsuccessful, the attorneys will have done all the work for no compensation.  In some cases, the plaintiffs' lawyers reap a very large fee, greatly in excess of what they would have gotten for doing the same amount of work at an hourly rate, and in other cases, the fee may only represent a break-even, or a fee diminished from the amount which would have been received from hourly work.  At the same time, some lawyers who work on these cases are not often retained by clients for hourly work and depend on a volume of contingent fees/court award work for their income. Similar to a "venture" investment fund, plaintiffs' counsel in these cases hope that over time, their economic well-being from "big winners" will justify the risk of taking a number of cases, some of which may be "losers."

In addition, counsel almost always outlay the funds for expenses, once again expecting that the result will warrant a reimbursement of expenses by court award or agreement with the client.

Appellate precedents have required trial courts to exercise supervision over this process when a class is proposed or certified, so as to enforce the fiduciary relationship between the proposed class and the lawyer, and also to ensure that attorneys treat the class fairly when there is a large award to be divided between them.

With plaintiffs' counsel undertaking major risks, there may be tension reflected in their desire to do enough work to win the case, but not to waste time and overload expenses.  The management of these issues by lead counsel is a difficult task, but appellate precedents require the trial judge to review, if the plaintiffs are successful, their fee petitions with at least a small dose of hindsight as to what was reasonable when the "going was tough" – even if the result is very good.

With this in mind, plaintiffs' counsel appropriately recognize the guiding hand of the Manual for Complex Litigation.   Attention should also be given to other publications of the Federal Judicial Center including the 2005 booklet "Awarding Attorneys' Fees and Managing

Fee Litigation," in addition to the many Third Circuit and Supreme Court cases on this topic.

*See In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 307 (3d Cir. 2005) ("At the fee determination stage, the district judge must protect the class's interest by acting as a fiduciary for the class."). The Third Circuit has suggested some general practices for managing attorneys' fees, but has yet to require any particular procedures for implementing them.  The Court believes the entry of Pretrial Order No. 3 is a good and sufficient plan which will enable a fair process if the Court may eventually have to rule on attorneys' fees.

2.      <u>Out of Pocket Expenses</u>

Lastly, on the subject of expenses, the Court has no interest in micro-managing experienced counsel.  Data collecting, storage and production will be expensive, but are essential.  The Court has expressed an interest in seeing whether plaintiffs and defendants can coordinate by hiring the same vendor and agreeing on the same platform for computer processing. Experts are also likely essential in this case, and will be another large expense.  As to travel expenses, government per diems will be a guideline as to what will be awarded if plaintiffs are successful.  *See In Re Media Vision Technology Securities Litigation,* 913 F. Supp. 1352 (N.D. Cal. 1996).  Counsel with appetites for luxury are welcome to spend more, but should not expect reimbursement for luxury travel out of a common fund achieved for the benefit of the class.

**BY THE COURT:**

**/s/ Michael M. Baylson**

_____

**MICHAEL M. BAYLSON, U.S.D.J.**

O:\13-MD-2437 - drywall\13md2437.memo.expenses.docx