# EXHIBIT 1



McDermott
Will&Emery

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

David L. Hanselman, Jr.
Attorney at Law
dhanselman@mwe.com
+1 312 984 3610

October 18, 2013

**VIA ELECTRONIC MAIL**

Michael C. Dell'Angelo
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103-6305

Re:     *In re Domestic Drywall Antitrust Litigation*, No. 13-MD-2437 (E.D. Pa.)

Dear Michael:

I am writing on behalf of defendant American Gypsum Company LLC to memorialize our telephonic meet and confer sessions on October 16 and 17, 2013.

Document Requests

On September 24, 2013, Plaintiffs identified 50 requests from Direct and Indirect Purchaser Plaintiffs' Consolidated First Set of Requests for Production of Documents to All Defendants that they contend fall within the scope of initial discovery as defined in paragraph 1 of Pretrial Order No. 4:  6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 47, 48, 49, 50, 51, 52, 53, 56, 58, 57, 59, and 60.  In our telephone conversation on October 16, I stated that American Gypsum would be willing to produce documents responsive to the following 45 of those requests from the designated set of custodians during the initial phase of discovery:  7, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 41, 42, 43, 44, 47, 48, 50, 51, 52, 53, 56, 57, 58, 59, 60.  American Gypsum's agreement to produce documents responsive to these requests is subject to the general and specific objections set forth in Defendant American Gypsum Company LLC's Objections and Responses to Direct and Indirect Purchaser Plaintiffs' Consolidated First Set of Requests for Production of Documents to All Defendants, dated March 25, 2013, as well as to any limitations imposed by the Federal Rules of Civil Procedure, the Court's local rules and orders, and any agreements of the parties.  American Gypsum's agreement to produce certain documents is limited to non-privileged, responsive documents in its possession, custody, or control and is not an admission that any such documents exist.  American Gypsum reserves all rights to amend this position.  American Gypsum specifically reserves the right to amend its position pending a decision by the Court on the appropriate timeframe of Defendants' productions.

I also confirmed that, in addition to the organizational charts it produced on August 9, 2013, American Gypsum is willing to produce organizational charts in effect for the period January 1, 2011, through December 31, 2012.  I further stated that American Gypsum would consider your requests for

Michael Dell Angelo
October 18, 2013
Page 2

telephone directories (Request No. 3, which was not included in the list of 50 requests identified on September 24) as well as Request Nos. 6, 40, and 49.

Interrogatories

In the September 24 meet and confer, Plaintiffs identified nine interrogatories from Direct and Indirect Purchaser Plaintiffs' Consolidated First Set of Interrogatories to All Defendants that they contend fall within the scope of initial discovery: 1, 2, 3, 4, 5, 7, 8, 11, and 12. In our telephone conversation of October 17, I outlined American Gypsum's position that the following eight interrogatories are within the scope of phase one discovery: 1, 2, 3, 4, 5, 7, 8, and 12. American Gypsum's agreement to answer these interrogatories is subject to the general and specific objections set forth in to Defendant American Gypsum Company LLC's Objections to Direct and Indirect Purchaser Plaintiffs' Consolidated First Set of Interrogatories to All Defendants, as well as to any limitations imposed by the Federal Rules of Civil Procedure, the Court's local rules and orders, and any agreements of the parties. American Gypsum reserves all rights to amend this position.

Technology Assisted Review Protocol

American Gypsum is considering Plaintiffs' feedback on the Technology Assisted Review Workflow that I sent you on October 9, 2013. American Gypsum intends to provide a revised workflow shortly.

Please let me know if this letter does not accurately reflect our telephone conversations.

Sincerely,

David L. Hanselman, Jr.

DLH/clt

cc: Kit Pierson
     Eugene Spector
     Laddie Montague
     Whitney Street
     Lesley Weaver
     Douglas Thompson
     Caitlin Coslett
     Michael McLellan

# EXHIBIT 2

**CertainTeed Gypsum's Positions on Certain of Plaintiffs' Discovery Requests**

Below is a summary of CertainTeed Gypsum's positions with respect to certain of Plaintiffs' discovery requests.  This summary, which necessarily excludes some information for the sake of efficiency, is provided for discussion purposes only.

An agreement to produce certain documents is limited to non-privileged, responsive documents and is not an admission that any such documents exist.  It is also not an admission that the relevant request is properly within the scope of Pretrial Order No. 4.  Unless otherwise indicated, all responses to Plaintiffs' discovery requests are subject to the general and specific objections in CertainTeed Corporation's Objections and Responses to Plaintiffs' Consolidated First Set of Requests for Production, dated March 25, 2003, and CertainTeed Corporation's Objections and Responses to Plaintiffs' Consolidated First Set of Interrogatories to All Defendants, dated March 25, 2013, as well as to any limitations imposed by the Federal Rules of Civil Procedure, the Court's Local Rules and Orders, and the agreement of the parties.

CertainTeed Gypsum reserves all rights to amend its positions.

| Plaintiffs' Requests for Production | |
|---|---|
| **6** | Will produce document preservation policy in place in 2011 and 2012.  Will disclose date that litigation hold notice was issued. |
| **7** | Will produce final antitrust compliance policies and training materials in 2011 and 2012. |
| **8** | Will not produce during phase one of discovery. |
| **10** | Will produce final policies for discounts, rebates, credits, freight allowances, and free goods and/or services relating to drywall. |
| **11** | Will not produce data during phase one of discovery.  Will produce documents sufficient to show, on a quarterly basis, drywall production and capacity for each manufacturing facility and an accounting of its costs and profits relating to the manufacture, distribution and sale of drywall. |
| **12** | Will produce final reports summarizing drywall pricing. |
| **14** | Will produce final written policies relating to setting prices, sales and production volume for drywall. |
| **15** | Will produce documents relating to communications by drywall manufacturers regarding prices for drywall. |
| **16** | Will produce documents sent to sales personnel relating to changes to list prices for drywall. |

| 17 | Will produce final price lists and pricing guidelines or policies. |
| 18 | Will produce documents relating to the price increases alleged in Plaintiffs' Consolidated Amended complaints. |
| 19 | Will produce responsive documents. |
| 20 | Will produce documents reflecting communications with distributors and customers of CertainTeed Gypsum relating to prices of drywall sold by a manufacturer of drywall. |
| 21 | Will produce responsive documents. |
| 22 | Will produce responsive documents. |
| 23 | Will produce documents relating to discounts and price reductions discussing the availability of discounts to purchasers of drywall from manufacturers of drywall. |
| 24 | Will produce formal analysis of the impact of demand, cost and capacity utilization on prices of drywall sold by manufacturers of drywall. |
| 25 | Will produce documents relating to CertainTeed Gypsum's pricing strategy for drywall and the responses or anticipated responses of drywall manufacturers to changes in the list prices of drywall sold by other drywall manufacturers. |
| 26 | Will produce documents comparing CertainTeed's pricing, sales, or production of drywall with those of other manufacturers. |
| 27 | Will produce documents relating to meetings or communications with manufacturers of drywall regarding drywall prices or job quotes. |
| 28 | Will produce documents relating to job quote policies, the decisions by drywall manufacturers to eliminate job quotes in 2011, and the reactions to those decisions of customers of drywall manufacturers. |
| 29 | Will produce documents relating to decisions to limit drywall purchases for reasons other than a customer's credit. |
| 30 | Will produce final reports and summaries of drywall production. |
| 31 | Will produce documents relating to the amount of drywall a manufacturer will produce or limitations on the quantity of drywall that a customer may purchase. |
| 32 | Will produce documents relating to the policies of other drywall manufacturers regarding job quotes and the quantity of drywall that a customer may purchase. |
| 33 | Will produce documents relating to meetings of the listed organizations. |

2

| 34 | Will produce documents sufficient to identify employees of CertainTeed Gypsum with decision-making authority for manufacturing, marketing, pricing and selling drywall who attended meetings of an organization listed in Request 33. |
|----|---|
| 35 | Will produce documents relating to meetings of the organizations listed in Request 33. |
| 36 | Will produce documents relating to meetings or discussions regarding pricing or selling drywall between employees of CertainTeed Gypsum with decision-making authority for pricing or selling drywall and employees of other drywall manufacturers. |
| 37 | Will produce documents sufficient to show drywall sales to and purchases from other manufacturers. |
| 38 | Will produce joint venture, merger, acquisition, swap, or toll-processing agreements, subject to approval required under any applicable confidentiality, non-disclosure or similar agreement. |
| 39 | Will produce documents summarizing or analyzing drywall production, demand, prices, or competition on an industry level. |
| 40 | Will produce reports or analyses relating to price elasticity of demand for drywall or substitutes for drywall. |
| 41 | Will produce quarterly and yearly audited financial statements relating to drywall production, supply or sales, including profit and loss statements, balance sheets, and cash flow statements. |
| 42 | Will produce final accounting policies and guidelines regarding costs and profits relating to the sale of drywall and an accounting of CertainTeed Gypsum's costs and profits relating to the sale of drywall on a quarterly and annual basis. |
| 43 | Will produce documents sufficient to show the requested information on a quarterly basis. |
| 44 | Will produce documents sufficient to show the drywall sold by CertainTeed Gypsum and the characteristics of that drywall. |
| 47 | Will produce reports, studies, and analyses relating to the shares of drywall production or sales attributable to drywall manufacturers, on a regional, national, or product basis. |
| 48 | Will produce responsive documents. |
| 49 | Will produce materials regarding the listed subjects from CertainTeed's board of directors. |
| 50 | Will produce as to employees with decision-making authority for drywall prices and job quotes. |

3

| 51 | Will produce documents produced to the Florida Attorney General and documents produced to the U.S. Department of Justice in connection with the Georgia Pacific-Temple transaction. |
|----|----|
| 52 | Will produce documents describing disciplinary actions or investigations  of a violation of U.S. federal or state antitrust law relating to the sale or supply of drywall by employees. |
| 53 | Will produce documents reflecting customer complaints about drywall list price increases, the elimination of job quotes, or limits on the amount of drywall the customer could purchase. |
| 56 | Will produce responsive documents. |
| 57 | Will produce copies of responsive documents obtained from third parties by means of compulsory process in this case, subject to an agreement that Plaintiffs will do the same. |
| 58 | Will produce responsive documents. |
| 59 | Will produce reports, studies and analyses of competition between domestic-made and foreign-made drywall. |
| 60 | Will produce reports, studies and analyses of competition between domestic-made and foreign-made drywall. |

| Plaintiffs' Interrogatories | |
|----|----|
| 1 | Will identify management personnel with decision-making authority or ultimate responsibility for manufacturing, marketing, pricing and selling drywall. |
| 2 | Will identify employees who were members of or attended meetings of the listed organizations who had decision-making authority with respect to manufacturing, marketing, pricing and selling drywall. |
| 3 | Will produce documents in response to Plaintiffs' RFPs and, under FRCP 33(d), the burden of deriving the information is substantially the same. |
| 4 | Will produce documents in response to Plaintiffs' RFPs and, under FRCP 33(d), the burden of deriving the information is substantially the same. |
| 5 | Will produce documents in response to Plaintiffs' RFPs and, under FRCP 33(d), the burden of deriving the information is substantially the same. |
| 7 | Will produce documents in response to Plaintiffs' RFPs and, under FRCP 33(d), the |

4

| | |
|---|---|
| | burden of deriving the information is substantially the same. |
| **8** | Will identify employees with decision-making authority for changes to drywall list prices and the elimination of job quotes. |
| **11** | Will produce documents in response to Plaintiffs' RFPs and, under FRCP 33(d), the burden of deriving the information is substantially the same. |
| **12** | Will identify employees or former employees who have been witnesses with respect to the allegations in this litigation. |

Dated:  October 17, 2013

NEWYORK 9003156

# EXHIBIT 3

## SUMMARY OF NGC RESPONSES TO PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION

| REQUEST | NGC'S WRITTEN RESPONSE | DOCUMENTS NGC WILL PRODUCE |
|---|---|---|
| **RFP #6:** All document preservation, retention, backup, and litigation hold policies, including all current and former versions. | NGC incorporates its General Objections.  NGC further objects to this Request as being unduly burdensome and overbroad.  NGC objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC will not produce its litigation hold notices in this case because they are attorney-client privileged and attorney work product protected.

Subject to and without waiving these or its General Objections, NGC will produce non-privileged documents sufficient to describe its current formal written document retention and/or preservation polices that apply to its Drywall businesses in the United States for the period of January 1, 2011 through March 25, 2013, to the extent that such documents exist within Defendant's possession, custody or control, and that NGC is able to locate such documents after a reasonable search of appropriate centralized sources. | NGC will produce the document preservation policy that was in place in 2011 and 2012, will disclose the date its litigation hold notice in this matter was issued, and will confirm that all of NGC's custodians received hold notice. |
| **RFP #7:** All Documents relating to Your policies, practices or guidelines concerning a) the United States antitrust laws, b) communications with competitors relating to price, output or supply, or c) any antitrust training provided to Your officers and employees. Include all current and former versions. | NGC incorporates its General Objections.  NGC objects to the use of "policies, practices or guidelines" as being overly broad, vague and ambiguous.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent it seeks all documents and to the extent it is not limited to policies relating to Drywall sales in the United States. | NGC will produce the written antitrust policy in place in 2011 and 2012. |

| | Subject to and without waiving these or its General Objections, NGC will produce non-privileged documents sufficient to explain its formal written antitrust compliance polices that applied to its Drywall businesses in the United States for the period of January 1, 2011 through March 25, 2013, to the extent that such documents exist within NGC's possession, custody or control, and Defendant is able to locate such documents after a reasonable search of appropriate centralized sources. | |
|---|---|---|
| **RFP #8:** Drywall transaction data, from January 1, 2007 through the present, maintained in any database, including those relating to Your Drywall sales, and including all of the following:<br><br>a)      The terms of each transaction;<br>b)      The invoice number and purchaser order number;<br>c)      The location from which the Drywall was shipped;<br>d)      The customer's name and address, including the location to which the Drywall was shipped;<br>e)      The date You shipped the Drywall, the date You billed for the Drywall, and the date the purchaser took delivery;<br>f)      The specification and type of Drywall, including any unique purchaser-specific identifier, and complete product descriptions, sold in each transaction;<br>g)      The quantity (and units of measure) for each type of Drywall sold in connection with each transaction;<br>h)      All pricing information relating to the transaction, including the gross and net unit price for each type of Drywall;<br>i)      Any discounts, rebates, credits, freight allowances, free goods and/or services, and/or any | NGC incorporates its General Objections, except that NGC does not object to the time period of this Request.  NGC objects to the definition or use of "Drywall transaction data," "Job Quote," "pricing adjustment of any kind," "any cost attributed or allocated to the transaction," "specification," "complete product description," "net unit price," and "any other data available in such a database relating to the sale or distribution of Drywall" as being overly broad, vague and ambiguous.  NGC further objects to this Request as overbroad and unduly burdensome to the extent it is not limited to Drywall sales in the United States.  NGC further objects to this Request as being unduly burdensome and overbroad to the extent that the request seeks fields of data that Defendant does not maintain or track on a centralized financial reporting system or on a per-transaction basis and to the extent that it would require the restoration of back-up tapes or inactive systems.<br><br>Subject to and without waiving these or its General Objections, NGC will produce transactional sales data for Drywall sales by Defendant in the United States and for the period January 1, 2007 through March 25, 2013 and related cost of goods data for the same period to the extent that NGC tracks such data and the data can reasonably be extracted | Transactional data is outside the scope of phase one discovery. |

| | | |
|---|---|---|
| other pricing adjustment of any kind made in connection with each transaction, with sufficient information to attribute these adjustments back to individual transactions;<br>j)       Whether a transaction was subject to a Job Quote and, if so, the terms of the Job Quote;<br>k)       Any costs or costs of goods sold relating to the transaction (including freight charge and transportation cost; sales and distribution cost; marketing and/or sales cost; and any cost attributed or allocated to the transaction);<br>l)       Any other data available in such a database relating to the sale or distribution of Drywall. | from centralized active systems. | |
| **RFP #10:** In addition to the transaction-level information called for in 8(i) above, documents **sufficient to**:<br>a)       identify Your policies and practices concerning discounts, rebates, credits, freight allowances, free goods and/or services, and/or any other pricing adjustment of any kind, including any customer contracts which refer to or contain any such information;<br>b)       show the nature and amount on a monthly, quarterly and annual basis of any discounts, rebates, credit, freight allowances, free goods and/or services or other price adjustments provided to Your specific customers, and the manner in which the foregoing were allocated between products or transactions. | NGC incorporates its General Objections.  NGC objects to the Request as being vague, ambiguous, overbroad and unduly burdensome in that it seeks documents that identify Defendant's "practices," "any other pricing adjustment of any kind" and "any customer contracts which refer to or contain any such information."  NGC further objects to the Request as being overbroad and unduly burdensome to the extent it seeks documents that show the requested information on a monthly, quarterly and annual basis.  NGC further objects to the Request to the extent it seeks documents for products other than Drywall sold in the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following documents for the period January 1, 2007 to March 25, 2013, to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate centralized sources:<br>        a.       Documents sufficient to show any formal policies for granting discounts, rebates, credit, freight allowances, free goods and services, or other pricing adjustments relating to Drywall | NGC will produce its formal written policies for discounts, rebates, credits, freight allowances, and free goods and/or services relating to drywall, to the extent those documents exist. |

3

| | | |
|---|---|---|
| | sales in the United States; and<br>      b.      Centrally maintained transactional data sufficient to show any discounts, rebates, credit, freight allowances, free goods and services, or other price adjustments given to customers for Drywall sales sold in the United States on a monthly, quarterly or annual basis. | |
| **RFP #11:** Documents and data, from January 2007 through the present, <u>**sufficient to show**</u> the following on a monthly, quarterly and yearly basis:<br>a)      Your Drywall production, capacity, and capacity utilization, on an aggregate basis, a product line basis, and a factory-by-factory basis, including production targets;<br>b)      Your costs, both fixed and variable, and the components of such costs, relating to the manufacture, distribution and sale of Drywall;<br>c)      Your gross and net profits and margins relating to the distribution and sale of Drywall. | NGC incorporates its General Objections, except that NGC does not object to the time period of this Request.  NGC objects that the terms "capacity," "capacity utilization" and "product line basis" are vague.  NGC objects to the Request as being overbroad and unduly burdensome in that it seeks documents that show the requested information on a monthly, quarterly and annual basis.  NGC further objects to this Request as overbroad and unduly burdensome to the extent it requests information down to the product line and by factory.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for a period of January 1, 2007 to March 25, 2013 from reasonably accessible centralized sources to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>      a.      Documents sufficient to show NGC's monthly and/or annual theoretical production capacity by plant for Drywall manufactured in the United States;<br>      b.      Documents or data sufficient to show NGC's monthly and annual production by plant of Drywall manufactured in the United States; and<br>      c.      Documents sufficient to show the | NGC will produce documents sufficient to show, on a quarterly basis, drywall production and capacity for each manufacturing facility and an accounting of its costs and profits relating to the manufacture, distribution and sale of drywall.<br><br>Transactional data is outside scope of phase one discovery. |

| | | |
|---|---|---|
| | monthly, quarterly, and yearly accounting of costs, profits, profit margins or projected profits relating to the manufacture, distribution and sale of Drywall in the United States. | |
| **RFP #12:** All data and reports that track, or are used to aggregate or average:<br>(a) Your Drywall gross or net pricing; or<br>(b) Drywall industry pricing. | NGC incorporates its General Objections.  NGC objects to the definition or use of "all data and reports that track or are used" and "Drywall industry pricing" as being overly broad, vague and ambiguous.  NGC further objects to this Request on the grounds that is overbroad and unduly burdensome in that it purports to require the production of "all" data and reports used to aggregate or average.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured or sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the transactional data being produced in response to Request No. 8 and the following non-privileged documents responsive to this Request, for the period January 1, 2011 through March 25, 2013from an agreed-upon set of custodians to the extent such documents exist and NGC is able to locate such documents after a reasonable search of appropriate sources:<br>     a.    Any summary report tracking aggregate or average gross or net pricing for Drywall sold by NGC in the United States; and<br>     b.    Any summary report that tracks Drywall industry pricing in the United States | NGC will produce a weekly "Gypsum Team Weekly Report" that summarizes, among other things, the current state of pricing, both NGC's pricing and reports received from customers re: competitor pricing. |
| **RFP #14:** All Documents that constitute, refer or relate to Your practices, policies and procedures relating to:<br>a) Drywall pricing;<br>b) the terms and conditions of sale of Drywall; or | NGC incorporates its General Objections.  NGC objects to the definition or use of "practices," "procedures," "terms and conditions," and "levels of production," as being overly broad, vague and ambiguous.  NGC further objects to this Request on | NGC will produce its formal written policies relating to setting prices, sales and production volume for drywall, to the extent those documents exist. |

| | | |
|---|---|---|
| c) the levels of production of Drywall. | the grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the Request, including all that refer or relate to practices, policies and procedures.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request, for the period January 1, 2011 through March 25, 2013, from an agreed-upon set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>a.　Any written policy, procedure, or summary of a practice, adopted by NGC for the pricing of Drywall sold in the United States;<br>b.　Any written policy, procedure, or summary of a practice, adopted by NGC as to the terms and conditions applicable to a sale of Drywall in the United States; and<br>c.　Any written policy, procedure, or summary of a practice, adopted by NGC as to its level of production of Drywall. | |
| **RFP #15:** All Documents that constitute, refer or relate to:<br>a) Drywall price announcements by You or any other supplier (including prices or price announcements that You have considered or that were recommended but not actually announced);<br>b) other internal or external communications relating to Drywall prices; or<br>c) changes in Drywall prices or terms of sale. This | NGC incorporates its General Objections.  NGC objects to the definition or use of "any other supplier," and "terms of sale" as being overly broad, vague and ambiguous in that the Requests define "Drywall Suppliers" as any entity in the chain of distribution.  NGC further objects on the basis that the term "recommended" is vague and ambiguous as used in this request.  NGC further objects to this Request on the grounds that is | NGC will produce all drywall general price announcements issued by NGC or any other manufacturer, documents discussing drywall general price announcements that NGC has considered or were recommended for sales of drywall in the United States but not actually announced, internal or external communications relating to general prices or price announcements for drywall sold in the United States, and all |

| | | |
|---|---|---|
| includes All Documents relating to Your analysis, understanding and recognition of other Drywall Suppliers' price announcements. | unduly burdensome in that it purports to require the production of "all" documents responsive to the Request.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege. NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013from an agreed-upon set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>        a.      All Drywall price announcements issued by NGC or any other Drywall manufacturer for sales of Drywall in the United States;<br>        b.      Documents discussing Drywall price announcements that NGC has considered for sales of Drywall in the United States but not actually announced;<br>        c.      Internal or external communications relating to general prices or price announcements for Drywall sold in the United States; and<br>        d.      Documents reflecting NGC's analysis, understanding or recognition of price announcements by other Drywall manufacturers for the sale of Drywall in the United States. | documents reflecting NGC's analysis, understanding or recognition of general price announcements by other defendants |
| **RFP #16:** All internal documents sent or presented to Your sales personnel relating to a potential or planned Drywall price increase or change. | NGC incorporates its General Objections.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC objects to the Request as overbroad and unduly burdensome to | NGC will produce final price announcements and any internal documents related to planned price increases or price changes. |

| | | |
|---|---|---|
| | the extent the Request seeks the production of all documents sent or presented to sales personnel relating to any change in pricing, including changes related to freight adjustments, or other individual adjustment unrelated to a planned general price announcement.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce  the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013from an agreed-upon set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>      a.      The final and all non-privileged drafts of Drywall price announcements issued by NGC for sales of Drywall in the United States; and<br>      b.      Any internal documents sent or received by NGC's sales personnel related to a planned general price increase or price change by NGC for Drywall. | |
| **RFP #17:** All Documents utilized or referred to by Your sales personnel or other employees for determining or setting the prices to be charged by You for Drywall. | NGC incorporates its General Objections.  NGC objects to the definition or use of "sales personnel or other employees" as being overly broad, vague and ambiguous.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non- | NGC will produce all documents utilized or referred to by those individuals involved in determining or setting the prices to be charged for drywall for that purpose. |

| | | |
|---|---|---|
| | privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013from an agreed-upon set of custodians to the extent such documents exist and NGC is able to locate such documents after a reasonable search of appropriate sources:<br>a.      Any pricing policy, guideline or formula provided by NGC to its sales managers and account representatives for the pricing of Drywall sold in the United States; and<br>b.      Any price list or similar document used by NGC's sales managers and account representative for the purpose of quoting prices for Drywall sold in the United States.<br>c.      Records in a centralized active data system regarding the justification for discounts offered to individual customers. | |
| **RFP #18:** All Documents that explain, set forth, support, justify or otherwise relate to the reasons for any price increase relating to Drywall, including the price increases that became effective in January 2012 and subsequent price increases that became effective in 2013. | NGC incorporates its General Objections.  NGC objects to the definition or use of "otherwise relate" as being overly broad, vague and ambiguous and unduly burdensome.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce non-privileged documents responsive to this Request that explain, discuss or justify the referenced price increases, for the period January 1, 2011 through March 25, 2013, from an agreed-upon set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | NGC will produce all documents that explain, set forth, support, discuss or justify the referenced price increases in 2012 and 2013. |
| **RFP #19:** All Documents discussing or relating to the relationship between price announcements and prices, | NGC incorporates its General Objections.  NGC objects to the definition or use of "relating to" and | NGC will respond to this Request as drafted, subject to objections in NGC's written response. |

| | | |
|---|---|---|
| including any documents relating to whether announced increases would be, or were maintained, in whole or in part. | "the relationship" as being overly broad, vague and ambiguous.  NGC further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents "relating" to the topic.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013from an agreed-upon set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>        a.      All documents discussing the relationship between price announcements for Drywall to be sold in the United States and actual prices; and<br>        b.      Any analysis or summary discussing whether an announced price increase applicable to Drywall sold in the United States would be or was maintained. | |
| **RFP #20:** All Documents reflecting or referring to communications with distributors and customers relating to Your (or any other Drywall Suppliers') Drywall prices or price changes. | NGC incorporates its General Objections.  NGC objects to the definition or use of "reflecting or referring to" as being overly broad, vague and ambiguous.  NGC also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because, the Requests define "Drywall Suppliers" as any entity in the chain of distribution.  NGC further objects to this Request on the grounds that is unduly burdensome in that it purports to require the | NGC will produce all communications  to its United States distributors and customers reflecting or referencing an announcement of a price increase or change in price, all communications (not including invoices or bills) to its United States distributors and customers reflecting or referencing a price increase or change in price by another defendant, and all documents discussing a communication to its United States distributors and customers about a change in NGC's price to that |

<table>
<tr>
<td></td>
<td>production of "all" documents responsive to the Request which could include all purchase orders, invoices and other documents that might include a reference to price.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.

Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from an agreed-upon set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:
           a.      All communications by NGC to its United States distributors and customers reflecting an announcement of a price increase or change in price; and
           b.      All documents discussing a communication between NGC and its United States distributors and customers about a change in NGC's price to that distributor or customer for sale of Drywall in the United States.</td>
<td>distributor or customer for the sale of Drywall in the United States.

NGC's intent is to response to this Request as drafted, subject to objections in NGC's written responses and excluding documents that "reflect" prices because they merely state the price to customer for the product.</td>
</tr>
<tr>
<td><strong>RFP #21:</strong> All Documents that discuss, comment on or relate to whether any other Drywall Supplier had failed to implement or adhere to, rescind or otherwise deviated, in whole or in part, from announced price changes.</td>
<td>NGC incorporates its General Objections.  NGC objects to the definition or use of "comment on" as being overly broad, vague and ambiguous.  NGC also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.</td>
<td>NGC will respond to this Request as drafted, subject to objections in NGC's written response.</td>
</tr>
</table>

| | | |
|---|---|---|
| | NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the non-privileged documents responsive to this Request that discuss or address whether any other Drywall manufacturer in the United States had failed to implement or adhere to, had rescinded or otherwise deviated, in whole or in part, from its announced price changes for sale of Drywall in the United States for the period January 1, 2011 through March 25, 2013from an agreed-upon set of custodians to the extent such documents exist and NGC is able to locate such documents after a reasonable search of appropriate sources. | |
| **RFP #22:** All Documents concerning the concealment of any correspondence, communication, meeting, agreement, or understanding between or among suppliers related to the pricing, marketing, sale, supply, distribution, or production of Drywall during the Relevant Time Period, including but not limited to any nondisclosure agreements relating to Drywall. | NGC incorporates its General Objections.  NGC objects to the time period as being overbroad and unduly burdensome.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce non-privileged documents responsive to this Request as to Drywall manufacturers (and not as to all suppliers) for the period January 1, 2011 through March 25, 2013from an agreed-upon set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | NGC will respond to this Request as drafted, subject to objections in NGC's written response and subject to limitation that it applies only to all Defendants plus Georgia Pacific (and not all "Drywall Suppliers"). |
| **RFP #23:** All Documents that discuss, comment on or relate to the ability of any purchaser of Drywall to | NGC incorporates its General Objections.  NGC objects to the definition or use of "comment on or | NGC will produce documents that discuss the availability of discounts and price reductions to |

| | | |
|---|---|---|
| obtain or negotiate pricing concessions, reductions, or other terms that might favorably impact the gross or net price paid by the purchaser. | relate," "pricing concessions" and "reductions or other terms" as being overly broad, vague and ambiguous.  NGC further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the Request, which could include all purchase orders, invoices and other documents that might include a reference to a price concession, rebate or other term.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request, for the period January 1, 2011 through March 25, 2013from an agreed-upon set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>        a.        Any communication or document by which NGC gave a customer a price concession, price reduction or other contractual term that favorably impacted the gross or net price paid by NGC's customer for the sale of Drywall in the United States; and<br>        b.        Any document that discusses the ability of any United States purchaser of Drywall to obtain or negotiate a price concession, price reduction or similar term from a Drywall manufacturer for the sale of Drywall in the United States. | purchasers of drywall from manufacturers of drywall. |
| **RFP #24:** All Documents that discuss, comment on or relate to any factors or market conditions that | NGC incorporates its General Objections.  NGC objects to the definition or use of "comment on or | NGC will produce all documents that discuss or analyze general economic or market conditions in |

| | | |
|---|---|---|
| could potentially impact Drywall prices, including demand, cost, or capacity utilization. | relate to," and "any factors or market conditions" as overly broad, vague and ambiguous.  NGC further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the Request.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege. NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013from an agreed-upon set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>     a.    Documents that discuss or analyze general economic or market conditions in the context of the potential impact of those conditions on Drywall prices in the United States.; and<br>     b.    Documents that discuss the potential for the cost of, or demand, or capacity utilization for, Drywall to affect the price of Drywall in the United States. | the context of the potential impact of those conditions on drywall prices in the United States, and all documents that discuss the potential for demand, cost or capacity utilization for drywall to affect the price of drywall in the United States. |
| **RFP #25:** All Documents that discuss, comment on or relate to Drywall pricing strategies or plans, or the anticipated or possible response of You or any Defendant to any changes in Drywall prices or pricing strategy. | NGC incorporates its General Objections.  NGC objects to the definition or use of "anticipated or possible response" and "any changes" as being overly broad, vague and ambiguous.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome | NGC will produce all documents discussing, summarizing or describing (1) NGC's pricing strategies or pricing plans or (2) the anticipated or possible response by NGC or any other defendant to any changes in drywall prices or pricing strategies. |

| | | |
|---|---|---|
| | to the extent that it seeks documents relating Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013from an agreed-upon set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>        a.      Documents discussing, summarizing or describing NGC's pricing strategies or pricing plans for the sale of Drywall in the United States; and<br>        b.      Documents discussing, summarizing or describing the anticipated or possible response by NGC or any other Defendant to any changes in Drywall prices or pricing strategies in the United States. | |
| **RFP #26:** All Documents that compare or contrast Your Drywall prices, profits, discounts, terms or conditions, production or capacity with any other Defendant. | NGC incorporates its General Objections.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce any non-privileged summaries that compare or contrast Defendant's prices, profits, discounts, contractual terms, production or capacity with that of another defendant for the period January 1, 2011 through March 25, 2013from an agreed-upon set of custodians to the extent such documents exist and NGC is able to locate such documents after a | NGC will produce documents comparing its pricing, sales, or production of drywall with those of other manufacturers. |

| | reasonable search of appropriate sources. | |
|---|---|---|
| **RFP #27:** All Documents relating to any meeting or communications with any Defendant or other Drywall Supplier relating to prices, terms and conditions, or Job Quotes or other price protections relating to the sale or purchase of Drywall. | NGC incorporates its General Objections.  NGC objects to the definition or use of "Job Quotes" as being overly broad, vague and ambiguous.  NGC also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege. NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce non-privileged documents, if any, that reflect or describe a meeting or communication with another defendant relating to prices, terms and conditions, or Job Quotes or other price protections relating to the sale or purchase of Drywall sold in the United States for the period January 1, 2011 through March 25, 2013from an agreed-upon set of custodians to the extent such documents exist and NGC is able to locate such documents after a reasonable search of appropriate sources.  <u>NGC is currently unaware of any such meetings or communications.</u> | NGC will respond to this Request as drafted, subject to objections in NGC's written response. |
| **RFP #28:** With respect to Job Quote policies or practices:<br>a)      All Documents that describe or discuss Your Job Quote policies or practices (or the policies or practices of other Drywall Suppliers).<br>b)      All Documents relating to Your decisions, actions or communications (or those of any other Drywall Supplier) to maintain, eliminate, or modify any Job | :  NGC incorporates its General Objections.  NGC objects to the definition or use of "Job Quote" and "practices," as being overly broad, vague and ambiguous.  NGC also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents | NGC will produce all documents that discuss, summarize, or analyze the following topics:  job quote policies of NGC or any other defendant, the decision to maintain or eliminate or modify NGC's job quote policy, information supporting or contradicting the contention that elimination of job quotes was consistent with Defendants' independent business interest, the abuse of job quotes, the contention that job quotes were replaced by other forms of price protection that were well- |

| | | |
|---|---|---|
| Quote policy or practice.<br><br>c) All Documents relating to or supporting Your contention that the elimination or modification of Job Quote practices was consistent with or supported by Your independent business interests (or those of other Drywall Suppliers).<br><br>d) All Documents relating to or supporting Your contention that Job Quotes were a widely abused business practice or that buyers of Drywall Products "treated job quotes as mere options to buy additional product under the favorable job-specific quote and then diverted deliveries to other jobs and customers."<br><br>e) All Documents relating to or supporting Your contention that "some manufacturers replaced job quotes with other forms of price protection" or that these changes "were well received by customers."<br><br>f) All Documents relating to any complaints or other communications expressing concern or disapproval regarding the elimination or modification of Job Quotes.<br><br>g) All Documents relating to alternatives to the elimination or modification of Job Quotes that You, or other Drywall Suppliers, evaluated or considered. | relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013from an agreed-upon set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>a. Any document that summarizes or describes NGC's job quote policies or those of any other defendant for Drywall sales in the United States;<br><br>b. Any document that describes, summarizes or analyzes any decision, action or communication by NGC or another Drywall manufacturer to maintain, eliminate or modify a job quote policy or practice;<br><br>c. Any document supporting the contention that the elimination or modification of job quote practices was consistent with a defendant's independent business interest;<br><br>d. Any document supporting the contention that job quotes were an abused business practice and/or that they were replaced by other forms of price protection that were well received by customers;<br><br>e. Any complaints or communications from customers regarding the elimination or modification of job quotes; and<br><br>f. Any document that describes, summarizes or analyzes alternatives to the elimination or modification of job quotes that NGC evaluated or considered. | received by customers, customer complaints about changes to job quotes, and any alternatives to the elimination of job quotes that were considered by NGC. |
| **RFP #29:** All Documents relating to proposals, actions or decisions by You or any other Drywall Supplier to limit the amount of Drywall that a customer is permitted to purchase. | NGC incorporates its General Objections.  NGC further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the | NGC will produce documents relating to decisions to limit drywall purchases for reasons other than a customer's credit. |

| | | |
|---|---|---|
| | Request, including any limit put on a potential purchaser regardless of reason (e.g., credit hold). NGC also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution. NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013 from an agreed-upon set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>      a.     Any document discussing, summarizing or analyzing any non-credit related reason to decline or limit the quantity sold for Drywall ordered from NGC in the United States; and<br>      b.     Any document communicating to a customer or potential customer that NGC would limit the amount of Drywall that the customer could purchase in the United States. | |
| **RFP #30:** All Documents relating to the quarterly and annual amount of industry-wide production of Drywall, including any documents relating to or supporting Your contentions regarding such production as set forth on page 6 of the Statement of Issues filed on January 25, 2013. | NGC incorporates its General Objections.  NGC further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the Request.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non- | NGC will produce formal reports and summaries of drywall production and documents supporting or contradicting Defendants' contention that drywall production in the fourth quarters of 2011 and 2012 was higher than any other quarter in those two years, and Defendants' contention that production in the fourth quarter of 2012 was the highest it had been in the preceding two years. |

| | | |
|---|---|---|
| | privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013 from an agreed-upon set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>       a.     Documents sufficient to show quarterly and annual amounts of industry-wide production of Drywall in the United States; and<br>       b.     Documents sufficient to show the industry-wide production of Drywall referenced on page 6 of the Statement of Issues. | |
| **RFP #31:** All Documents relating to any meeting or communications with any Defendant (or its subsidiary or affiliate), or any other Drywall Supplier, relating to the supply of Drywall or limitations on the quantity of Drywall that could be purchased by a customer. | NGC incorporates its General Objections.  NGC further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the Request. NGC also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution.<br><br>Subject to and without waiving these or its General Objections, NGC will produce any non-privileged documents that is or refers to a communication with another defendant relating to the supply of Drywall to a customer or any limitations on the quantity of Drywall that could be purchased by a customer in the United States for the period January 1, 2011 through March 25, 2013 from an agreed-upon set of custodians to the extent such documents exist and NGC is able to locate such documents after a reasonable search of appropriate sources. | NGC will respond to this Request as drafted, subject to objections in NGC's written response. |
| **RFP #32:** All Documents discussing or concerning the following policies or practices of any other Drywall Supplier: a) Job Quotes or price protection policies or practices; b) policies or practices limiting the amount or volume of Drywall that a customer could purchase; or c) policies or practices relating to inventory levels. | NGC incorporates its General Objections.  NGC objects to the definition or use of "job quotes" "price protection," "policies or practices," and "inventory levels" as being overly broad, vague and ambiguous.  NGC further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" | NGC will respond to this Request as drafted, subject to objections in NGC's written response. |

| | documents responsive to the Request.  NGC also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013 from an agreed-upon set of custodians to the extent such documents exist and NGC is able to locate such documents after a reasonable search of appropriate sources:<br>     a.     Any documents discussing the job quote or price protection policies or practices of another defendant in the United States;<br>     b.     Any documents discussing the policies or practices of another defendant to limit the amount or volume of Drywall that a customer could purchase in the United States; and<br>     c.     Any documents discussing the policies or practices of another defendant as to its Drywall inventory levels in the United States. | |
| **RFP #33:** All Documents relating to meetings of the Gypsum Association, the Association of the Wall and Ceiling Industry, the Drywall Finishing Council, the Global Gypsum Conference or any other organization that You have participated in whose activities include matters relating to the supply or sale of Drywall, including the following documents: event calendars, attendee lists, meeting minutes, agendas, summaries, correspondence or other communications, and documents sufficient to identify the organization's Board of Directors. | NGC incorporates its General Objections.  NGC objects to the definition or use of "relating to meetings," and "any other organization that You have participated in whose activities include matters relating to the supply or sale of Drywall" as overly broad, unduly burdensome, vague and ambiguous and is limiting the response to those organizations specifically identified in Request No. 33.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege. | NGC will produce documents related to any meetings of Gypsum Association, the Association of the Wall and Ceiling Industry, the Drywall Finishing Council, or the Global Gypsum Conference, documents found within custodian files that identify the above organization's board of directors, and any event calendar, attendee list, meeting minutes, agendas, summaries, correspondence and other communications from or to the above organizations. |

| | | |
|---|---|---|
| | NGC further objects to this Request to the extent that it seeks documents that are publicly available, or that can be obtained by the Plaintiffs with no more burden than would be imposed on Defendant to obtain and produce such documents or information. NGC further objects to this Request as not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents in the possession, custody, or control of Defendant's employees other than executives with primary decision-making responsibility for establishing the sale price for Drywall sold in the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>    a.    Any document that discusses or describes a meeting of one of the listed organizations, including agendas, reports or minutes for such meetings and materials distributed prior to, at or in follow up to such meetings;<br>    b.    Documents sufficient to identify the listed organization's board of directors; and<br>    c.    Any event calendar, attendee list, meeting minutes, agendas, summaries, correspondence and other communications from the listed organization. | |
| **RFP #34:** Documents **sufficient to identify** the attendees, from You or other "Drywall Suppliers", at any meeting of the organizations encompassed by the preceding Request, or any committee or other subgroup of such organization. | NGC incorporates its General Objections. NGC objects to the definition or use of "relating to meetings," and "any other organization that You have participated in whose activities include matters relating to the supply or sale of Drywall" as being overly broad, unduly burdensome, vague and ambiguous and is limiting its response to the | NGC will produce documents located within custodian files that identify the attendees at any meetings regarding drywall that were sponsored by the Gypsum Association, the Association of the Wall and Ceiling Industry, the Drywall Finishing Council, or the Global Gypsum Conference. |

|  |  |  |
|---|---|---|
|  | organizations listed in Request No. 33.  NGC objects to this Request to the extent that it is duplicative of Request No. 33.  NGC also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because, the Requests define "Drywall Suppliers" as any entity in the chain of distribution.  NGC further objects on the ground that this document Request is unreasonably burdensome and seeks to impose obligations on Defendant beyond those required by the Federal Rules of Civil Procedure in that the document Request improperly functions as an interrogatory by purporting to require NGC to examine, review, and compile especially for Plaintiffs a set of disparate documents from disparate sources.  NGC further objects to this Request to the extent it seeks documents in the possession, custody, or control of Defendant's employees other than executives with primary decision-making responsibility for manufacture or sale of Drywall sold in the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce non-privileged documents that identify the attendees at a meeting regarding Drywall sponsored by one of the listed organizations for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. |  |
| **RFP #35:** All Documents relating to any communication, presentation or discussion of Drywall industry conditions, the Drywall market, prices, capacity or capacity utilization, Job Quotes, Drywall supply, or limitations on Drywall purchases that occurred at or in connection with a meeting of the organizations (or subgroups or committees) encompassed by the preceding Requests, or that were | NGC incorporates its General Objections.  NGC objects to the definition or use of "relating to meetings," "any other organization that You have participated in whose activities include matters relating to the supply or sale of Drywall," "Job Quotes," and "subgroups or committees" as overly broad, unduly burdensome, vague and ambiguous and is limiting its response to the organizations | NGC will produce all documents relating to any communication, presentation or discussion of drywall industry conditions, the drywall market, prices, capacity or capacity utilization, job quotes, drywall supply, or limitations on drywall purchases that occurred at or in connection with a meeting of the Gypsum Association, the Association of the Wall and Ceiling Industry, the Drywall Finishing |

| | | |
|---|---|---|
| provided to or received from any such organization, committee or subgroup. | listed in Request No. 33. NGC objects to this Request to the extent that it is duplicative of Request No. 33. NGC further objects to this Request to the extent that it seeks documents that are publicly available, or that can be obtained by the Plaintiffs with no more burden than would be imposed on Defendant to obtain and produce such documents or information. NGC further objects to this Request to the extent it seeks documents in the possession, custody, or control of Defendant's employees other than executives with primary decision-making responsibility for establishing the sale price for Drywall sold in the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and NGC is able to locate such documents after a reasonable search of appropriate sources:<br>        a.        Any presentations, handouts or discussion materials from a meeting of one of the identified organizations and that addressed or discussed, with respect to the sale of Drywall in the United States, Drywall industry conditions, the Drywall market, prices, capacity or capacity utilization, job quotes, the supply of Drywall, or limitations on Drywall purchases. | Council, or the Global Gypsum Conference. |
| **RFP #36:** All Documents that refer to, relate to, or contain information concerning any meeting, discussion or other communication between (a) any of Your officers, employees or other representatives and (b) any officer, employee or other representative of another Defendant relating to the sale, supply, prices (or other terms and conditions) of Drywall. | NGC incorporates its General Objections. NGC objects to the definition or use of "other representative" as being overly broad, vague and ambiguous. NGC objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege. NGC further objects to this Request to the extent it seeks documents relating to Drywall manufactured and sold outside the United States. | NGC will respond to this Request as drafted, subject to objections in NGC's written response, and subject to the limitation that NGC will not produce documents that merely "relate to" the referenced topics. |

| | Subject to and without waiving these or its General Objections, NGC will produce any non-privileged documents that reflect or refer to any communication with another defendant relating to the sale, supply, prices or terms and conditions for Drywall sold in the United States for the period January 1, 2011 through March 25, 2013and from an agreed-upon set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | |
| --- | --- | --- |
| **RFP #37:** All Documents that refer to, relate to, or contain information concerning Your sales of Drywall to, or Your purchases of Drywall from, or swapping Drywall with any other Defendant or Drywall Supplier. | NGC incorporates its General Objections.  NGC further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request to the extent that the definition or use of "Drywall Supplier" the Requests define "Drywall Suppliers" as any entity in the chain of distribution. NGC objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request to the extent it seeks documents relating to Drywall manufactured and sold outside the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request and/or other Requests seeking related information, for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>         a.        Documents sufficient to show United States sales of Drywall, if any, to any other defendant;<br>         b.        Documents sufficient to show | NGC will produce documents sufficient to show drywall sales to and purchases from other manufacturers, to the extent such transactions occurred. |

| | | |
|---|---|---|
| | United States purchases of Drywall, if any, from any other defendant; and<br><br>  c.  Documents sufficient to show United States swaps of Drywall, if any, with any other defendant. | |
| **RFP #38:** All Documents that refer to, relate to, or contain any information concerning any agreement, contract or arrangement with any other Defendant relating to Drywall, including any joint venture, merger, acquisition, swap, toll processing agreement, export-related agreement, licensing agreement or any other transaction or agreement. | NGC incorporates its General Objections.  NGC further objects to the definition or use of "any other transaction or agreement" as being overly broad, unduly burdensome, vague and ambiguous.  NGC further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will conduct a reasonable search and will produce a copy of any joint venture, swap or toll processing agreement with another defendant, relating to Drywall manufacture or production in the United States, and for the period January 1, 2011 through March 25, 2013, to the extent that such documents exist, are within NGC's possession, custody or control, and Defendant is able to locate such documents after a reasonable search of appropriate sources. | NGC will produce any contract or arrangement with any other Defendant relating to drywall, including documents relating to any joint venture, merger, acquisition, or swap. |
| **RFP #39:** All Documents that analyze, discuss or otherwise relate to: Drywall production capacity or capacity utilization; Drywall demand; the cost of producing or supplying Drywall; the profitability of producing or supplying Drywall; Drywall prices; Job Quotes; or other competitive market conditions for Drywall. | NGC incorporates its General Objections. NGC further objects to the definition or use of "analyze, discuss or otherwise relate, " "competitive market conditions," and "capacity utilization" as being overly broad, unduly burdensome, vague and ambiguous. NGC further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" | NGC will product all docs summarizing, analyzing or describing industry production capacity or capacity utilization, projected or actual overall demand, competitive market conditions, costs of production or supplying drywall, profitability of producing or supplying drywall, drywall prices, or job quotes. |

| | | |
|---|---|---|
| | documents that relate to any of the topics in the Request and is redundant and duplicative of other Requests.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege. NGC further objects to this Request to the extent it seeks documents relating to Drywall manufactured and sold outside the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the transactional data described in the response to Request 8, the financial data and other documents described in the responses to Requests 9, 10, 11, 28, 32, 41 and the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and NGC is able to locate such documents after a reasonable search of appropriate sources:<br>    a.    Any document summarizing, analyzing or describing Drywall industry production capacity or production utilization in the United States;<br>    b.    Any document addressing the projected or actual overall demand for Drywall in the United States; and<br>    c.    Any document reporting, studying or analyzing competitive market conditions for Drywall in the United States. | |
| **RFP #40:** All Documents that analyze, discuss or otherwise relate to a) Drywall price elasticity; b) product fungibility or interchangeability; or c) the ability or limitations of other products to function as substitutes for Drywall. This includes all Documents discussing or comparing the quality of, or market demand for, Drywall produced and sold by You, other Defendants, or other "Drywall Suppliers." | NGC incorporates its General Objections. NGC further objects to the definition or use of "analyze, discuss or otherwise relate, " as being overly broad, unduly burdensome, vague and ambiguous. NGC further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents that relate to any of the topics in the Request.  NGC also objects to the definition or use of "Drywall Supplier" as being | NGC will produce any reports or analyses relating to price elasticity of demand for drywall or substitutes for drywall. |

|  | overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution. NGC further objects that the term "price elasticity" is vague and ambiguous. NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>     a.     Any report or analysis describing the price elasticity of demand for Drywall sold in the United States;<br>     b.     Any report or analysis describing the product fungibility or interchangeability for Drywall sold in the United States;<br>     c.     Any document report or analysis on the ability or limitations of other products to function as substitute for Drywall sold in the United States; and<br>     d.     Any report or analysis of the fungibility or interchangeability of NGC's Drywall products with Drywall manufactured by another defendant in the United States. |  |
|---|---|---|
| **RFP #41:** All monthly, quarterly and yearly audited or unaudited financial documents and data, including profit and loss statements, balance sheets, cash flow statements and other financial documents that relate to or include information relating to Drywall production, | NGC incorporates its General Objections. NGC further objects to the definition or use of "data" "other financial documents" and "senior management" as being overly broad, unduly burdensome, vague and ambiguous. NGC further | NGC will produce documents sufficient to show NGC's regularly prepared monthly, quarterly and yearly financial statements for its drywall business, including profit and loss statements, balance sheets, and cash flow statements. |

| | | |
|---|---|---|
| supply or sales prepared for or received by Your senior management (including the CFO, treasurer or controller for relevant business units). | objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce non-privileged documents relating to Drywall and production sufficient to show Defendant's monthly, quarterly and yearly audited financial statements including profit and loss statements, balance sheets, and cash flow statements for United States operations for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and NGC is able to locate such documents after a reasonable search of appropriate sources. | |
| **RFP #42:** Documents **sufficient to show** by month, quarter and year the cost allocations, cost apportioning rules, and accounting practices that are used to calculate Your profits, profit margins or projected profits relating to the sale of Drywall. | NGC incorporates its General Objections. NGC further objects to the definition or use of "cost allocations," "cost apportioning rules" and "accounting practices" as being overly broad, unduly burdensome, vague and ambiguous. NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request and/or other Requests seeking related information, for the period January 1, 2011 through March 25, | NGC will produce any written accounting policy, guideline or formula used by NGC to calculate costs, profits, profit margins or projected profits relating to the sale of drywall in the United States, and documents sufficient to show the monthly, quarterly, and yearly accounting of costs, profits, profit margins or projected profits relating to the sale of drywall in the United States. |

| | 2013, from a finite set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>    a.    Any written accounting policy, guideline or formula NGC used to calculate cost allocations, profits, profit margins or projected profits relating to the sale of Drywall in the United States; and<br>    b.    Documents sufficient to show the monthly, quarterly, and yearly accounting of cost allocations, profits, profit margins or projected profits relating to the sale of Drywall by NGC in the United States. | |
|---|---|---|
| **RFP #43:** Documents **sufficient to show** by month, quarter and year Your profits (including income measures such as EBIT and EBITDA), profit margins, profit levels, or projected profits relating to the sale of Drywall. | NGC incorporates its General Objections.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce non-privileged documents sufficient to show the requested information, to the extent it exists and is tracked on the requested bases, for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | To the extent the data exists and is tracked on the requested basis, NGC will produce documents sufficient to show monthly, quarterly and annual NGC profits (including income measures such as EBIT and EBITDA), profit margins, profit levels, or projected profits relating to the sale of drywall. |
| **RFP #44:** Documents **sufficient to identify** each class, type, grade or category of Drywall product manufactured, marketed, sold, distributed or imported by You, including its brand name and its function, physical properties and characteristics. | NGC incorporates its General Objections.   NGC objects to the definition or use of "class, type, grade, or category," and "function, its physical properties and characteristics" as being overly broad, vague, and ambiguous.  To the extent this Request seeks documents concerning each "class, type, grade, or category" of Drywall sold by NGC and "its function, physical properties, and characteristics," the Request is overbroad and unduly burdensome due to the numerous different products falling within Plaintiffs' definition of | NGC will produce its product catalogs for 2011 and 2012. |

| | | |
|---|---|---|
| | Drywall.  NGC further objects on the ground that this document Request is unreasonably burdensome and seeks to impose obligations on Defendant beyond those required by the Federal Rules of Civil Procedure in that the document Request improperly functions as an interrogatory by purporting to require Defendant to examine, review, and compile especially for Plaintiffs a set of disparate documents from disparate sources.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce non-privileged documents sufficient to show the principal types and/or grades and the general physical characteristics of Drywall NGC sold in the United States for the period of January 1, 2011 through March 25, 2013, from a finite set of custodians, to the extent that such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | |
| **RFP #47:** All documents that refer to, relate to, or contain information concerning: (a) percentages or shares of industry production, volume and/or sales of Drywall; (b) Drywall markets described in terms of geographic location or product type; and (c) supply and demand for Drywall. | NGC incorporates its General Objections.  NGC further objects that this Request is overly broad, unduly burdensome, vague and ambiguous in its use of "all documents that refer to, relate to, or contain information concerning."  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non- | NGC will respond to this Request as drafted, subject to objections in NGC's written response, and excluding documents that merely "relate to" the specified topics. |

| | privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources: <br><br>    a.    Any report, study or analysis describing percentages or shares of Drywall production, volume or sales in the United States, including NGC's and its competitors' positions; <br><br>    b.    Any report, study or analysis describing relevant product or geographic markets for Drywall sold in the United States; and <br><br>    c.    Any report, study or analysis describing supply and demand for Drywall in the United States. | |
|---|---|---|
| **RFP #48:** All reports, studies, forecasts, business plans, projections, analyses, articles, papers, and presentations related to the market for Drywall, including prices, costs, profits, market concentration, competition, entry of suppliers in the market for Drywall, barriers to entry, price elasticity, product fungibility or interchangeability, and any known substitutes for Drywall, whether published or not, in draft or final form. | NGC incorporates its General Objections. NGC further objects to the definition or use of "market concentration" and "product fungibility," as being overly broad, unduly burdensome, vague and ambiguous.  NGC further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States. <br><br>Subject to and without waiving these or its General Objections, NGC will produce non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of | NGC will respond to this Request as drafted, subject to objections in NGC's written response. |

| | appropriate sources. | |
|---|---|---|
| **RFP #49:** All Board of Directors materials, including meeting attendance lists, notes, agendas, resolutions, communications, reports and analyses, relating or referring to (a) the pricing or production of Drywall; (b) competitive conditions in the Drywall market; (c) Job Quotes; or (d) any other Defendant. | NGC incorporates its General Objections.  NGC further objects to the definition or use of "Job Quotes" and "competitive conditions" as overly broad, unduly burdensome, vague and ambiguous. NGC further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request and seeks documents from any board other than that for the named defendant.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege. NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>　　　a.　　　Any materials provided to the board of directors (including meeting attendance lists, agendas, resolutions, correspondence, reports and analyses) discussing the pricing or production of Drywall in the United States;<br>　　　b.　　　Any materials provided to the board of directors (including meeting attendance lists, agendas, resolutions, correspondence, reports and analyses) discussing competitive conditions in the Drywall market;<br>　　　c.　　　Any materials provided to the board of directors (including meeting attendance lists, agendas, resolutions, correspondence, reports | NGC will respond to this Request as drafted, subject to objections in NGC's written response. |

| | | |
|---|---|---|
| | and analyses) discussing job quotes for Drywall sales in the United States; and<br>　　　d.　　　Any materials provided to the board of directors (including meeting attendance lists, agendas, resolutions, correspondence, reports and analyses) discussing the United States Drywall business of any other defendant. | |
| **RFP #50:** For Specified Agreed Custodians, the following documents:<br>a)　　　All diaries, appointment books, notes or records of business appointments, calendars and notebooks;<br>b)　　　All telephone billing records (including office, home or cellular telephone calls) and notes or records of telephone calls;<br>c)　　　All expense reports, reimbursement Requests, vouchers and travel records and receipts. | NGC incorporates its General Objections. NGC further objects that this Request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. NGC further objects that this Request infringes on its employees' rights to privacy. In addition, NGC objects to subsections (a) and (b) of this Request on the grounds that they seek information beyond Defendant's possession, custody, and control including but not limited to personal diaries, appointment books, calendars, notebooks, telephone bills and statements for home telephones or personal cellular phones. NGC further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request. NGC further objects that this Request calls for the production of documents outside of its possession, custody or control. NGC objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request from a finite set of custodians to the extent such documents exist, relate to Drywall sold in the United States for the period January 1, 2011 through March 25, 2013, are within Defendant's possession, custody or control and are located after a reasonable search of appropriate sources: | NGC will produce calendars and diaries for the agreed-upon custodians, to the extent that those documents exist. |

| | a.        Any diary, appointment book, records of appointments, calendars and notebooks used for business purposes related to Drywall, with redactions for any entry that reflects an exclusively personal (i.e. non-business) matter. | |
|---|---|---|
| **RFP #51:** All Documents concerning or produced in connection with any government investigation, litigation or merger or acquisition analysis or approval relating to Drywall, including all communications with any governmental entity relating to any such investigation. | NGC incorporates its General Objections.  NGC further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request.  NGC further objects that this Request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence. NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent it is not limited to actions relating to Drywall sales in the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>a.        Documents sufficient to identify any government antitrust investigation that included or related to the manufacture or sale of Drywall sold in the United States; and<br>b.        A copy of any document production made to a state or federal government agency in response to any request for documents or CID in connection with an antitrust investigation relating to the manufacture and sale of Drywall in the United States, but only with respect to documents concerning Drywall and not as to any other products. | NGC will produce documents previously produced to the Florida Attorney General and the U.S. Department of Justice in connection with its merger investigation. |

| | | |
|---|---|---|
| **RFP #52:** All Documents that refer or relate to any disciplinary or similar action imposed on, or any investigation made of, any of Your directors, officers, salesmen, agents or employees with respect to any actual or alleged violation of the United States or any state antitrust or other similar laws (or any company antitrust compliance policy) that related in any way to the supply or sale of Drywall. | NGC incorporates its General Objections.  NGC further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request as to all directors, officers, salesmen, agents and employees.  NGC further objects that this Request infringes on its employees' rights to privacy.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.

Subject to and without waiving these or its General Objections, NGC will produce any non-privileged responsive documents describing any disciplinary or similar action for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and NGC is able to locate such documents after a reasonable search of appropriate sources. | No responsive documents exist. |
| **RFP #53:** All Documents referring or relating to complaints by a distributor or other purchaser about the price, availability or allocation of Drywall, or Your Job Quote policies or modification of those policies. | NGC incorporates its General Objections.  NGC objects to the definition or use of "Your Job Quote policies" and the use of "referring or relating to" and "complaints" as being overly broad, unduly burdensome, vague and ambiguous.  NGC further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States. | NGC will respond to this Request as drafted, subject to objections in NGC's written response. |

| | Subject to and without waiving these or its General Objections, NGC will produce any non-privileged documents reflecting customer complaints regarding any price increase, changes in job quote availability, change in terms of sale or limits on the supply of Drywall sold in the United States for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | |
| --- | --- | --- |
| **RFP #56:** All Documents referring or relating to any non-prosecution agreement, cooperation agreement, and/or leniency application with the United States Department of Justice, Federal Trade Commission, any state governmental agency, or any foreign competition authority relating to Drywall. | NGC incorporates its General Objections.  NGC further objects to this Request is overbroad and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to actions relating to Drywall sales in the United States.<br><br>Subject to and without waiving these or its General Objections, NGC states that it has no documents responsive to this Request. | No responsive documents exist. |
| **RFP #57:** All Documents produced to or received from any party or third party related to or in connection with this action. | Defendant incorporates its General Objections.  NGC objects to the definition or use of "related to or in connection with" and "any party or third party" as being overly broad, unduly burdensome, vague and ambiguous.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or the common-interest privilege.<br><br>Subject to and without waiving these or its General Objections, NGC will produce copies of any responsive documents Defendant obtains from third parties by means of compulsory process in this case, with the expectation that Plaintiffs will do the same. | NGC will respond to this request as drafted, subject to its written objections, subject to Plaintiffs' agreement to do the same. |
| **RFP #58:** All Documents that otherwise support Your defenses in this action or that You may use at | NGC incorporates its General Objections.  NGC further objects that the Request seeks documents | NGC will respond to this Request as drafted, subject to objections in NGC's written response. |

| | | |
|---|---|---|
| trial in this matter. | protected by the attorney-client privilege and the attorney work product doctrine.  NGC further objects that the Request is premature.  NGC further objects that the Request seeks information duplicative of other Requests.  Accordingly, NGC incorporates its responses and objections to those Requests as if set forth fully herein.<br><br>Subject to and without waiving these or its General Objections, NGC will produce non-privileged responsive documents supporting its defenses for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | |
| **RFP #59:** All Documents that reflect actual or potential competition between domestic-made and foreign-made drywall. | NGC incorporates its General Objections.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or the common-interest privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce non-privileged presentations, reports or analyses discussing competition in the United States between United States made and foreign-made Drywall for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | NGC will respond to this Request as drafted, subject to objections in NGC's written response. |
| **RFP #60:** All Documents analyzing, studying or discussing: (a) competition between imported and domestic drywall; (b) quality differences between imported and domestic drywall; and (c) imported | NGC incorporates its General Objections.  NGC further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the | NGC will respond to this Request as drafted, subject to objections in NGC's written response. |

| | | |
|---|---|---|
| drywall as a substitute for domestic drywall. | Request.  NGC further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or any other privilege.  NGC further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, NGC will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a finite set of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br>　　　　a.　　　Any presentation, report or analysis discussing competition in the United States between imported and United States-made Drywall;<br>　　　　b.　　　Any presentation, report or analysis discussing quality differences between Drywall imported to the United States and Drywall manufactured in the United States; and<br>　　　　c.　　　Any presentation, report or analysis discussing the potential for imported Drywall to serve as a substitute for United States manufactured Drywall in the United States. | |

# EXHIBIT 4

**PABCO'S POSITION ON DOCUMENT REQUESTS**

Dated: Oct. 16, 2013

| Requests for Production | PABCO's Position |
|---|---|
| RFP #6: All document preservation, retention, backup, and litigation hold policies, including all current and former versions. | Willing to produce PABCO's document and email preservation policies that were in place in 2011 and 2012. Willing to disclose the dates that the litigation hold notices were issued and confirm that all of PABCO's proposed custodians received the hold notice. |
| RFP #7: All Documents relating to Your policies, practices or guidelines concerning: a) the United States antitrust laws, b) communications with competitors relating to price, output or supply, or c) any antitrust training provided to Your officers and employees. Include all current and former versions. | Willing to produce non-privileged, written antitrust compliance policies or guidelines, to the extent they exist, that apply to PABCO's drywall business in the U.S. based on a reasonable search of appropriate centralized sources. |
| RFP #8 (transaction data) | Not willing to produce in Phase I. |
| RFP #10: (more info related to transactional data) | Willing to produce formal policies, to the extent they exist, for discounts, rebates, credits, freight allowances, and free goods and/or services relating to drywall in the U.S. |
| RFP #11: Documents and data, from January 2007 through the present, sufficient to show the following on a monthly, quarterly and yearly basis: a) Your Drywall production, capacity, and capacity utilization, on an aggregate basis, a product line basis, and a factory-by-factory basis, including production targets; b) Your costs, both fixed and variable, and the components of such costs, relating to the manufacture, distribution and sale of Drywall; c) Your gross and net profits and margins relating to the distribution and sale of Drywall. | Not willing to produce data. Willing to produce documents, to the extent they exist, that are sufficient to show, on an annual, quarterly, and/or monthly basis, drywall production and capacity for each manufacturing facility, and an accounting of PABCO's costs and profits relating to the manufacture, distribution, and sale of drywall in the U.S. |
| RFP #12: All data and reports that track, or are used to aggregate or average: a) Your Drywall gross or net pricing; or b) Drywall industry pricing. | Willing to produce any summary reports, to the extent they exist, that track aggregate or average gross or net pricing for drywall sold by PABCO in the U.S. in the form they exist and are maintained in the ordinary course of business. |

RFPs marked with an **\*** were among the original 25 RFPs that Defendants agreed to answer.

**PABCO'S POSITION ON DOCUMENT REQUESTS**

| | |
|---|---|
| RFP #14: All Documents that constitute, refer, or relate to Your practices, policies and procedures relating to: a) Drywall pricing; b) the terms and conditions of sale of Drywall; or c) the levels of production of Drywall. | Willing to produce formal written policies, to the extent they exist, that relate to setting prices, sales, and production volume for drywall. |
| *RFP #15: All documents that constitute, refer, or relate to: a) Drywall price anouncements (including contemplated but not announced), b) communications relating to prices, or c) changes to prices or terms of sale, including analysis of other Drywall Suppliers' price announcements | Willing to produce a) price announcements and discussions on price announcements considered, b) communications on general prices or announcements, and c) analyses of other manufacturer's price announcments. Not willing to produce every document that somehow relates to pricing, terms, and conditions of sale for individual customer negotiations.  The emphasis will be on actual or possible changes to prices on a company-wide basis. |
| *RFP #16: All internal documents sent or presented to sales personnel relating to potential or planned Drywall price increases or changes. | Willing to produce price announcements and any internal documents related to planned increases or price changes.  Not willing to produce every document discussing a potential price change applicable to a particular customer (*e.g.*, meeting competition prices). |
| *RFP #17:  All documents utilized or referred to by sales personnel or other employees for determining or setting prices for drywall. | Willing to produce documents, to the extent they exist, that were utilized or referred to by those individuals involved in determining or setting the prices to be charged for drywall in the U.S. |
| *RFP #18: All documents that explain, set forth, support, justify, or otherwise relate to reasons for any price increases, including the increases that became effective in January 2012 and January 2013. | Willing to produce documents, to the extent they exist, that explain, set forth, support, discuss, or justify the referenced price increases in 2012 and 2013. |
| RFP #19: All Documents discussing or relating to the relationship between price announcements and prices, including any documents relating to whether announced increases would be, or were maintained, in whole or in part. | Willing to produce documents, to the extent they exist, that discuss the relationship between price announcements for drywall to be sold in the U.S. and actual prices, and any analysis or summary discussing whether an announced price increase applicable to drywall sold in the U.S. would be or was maintained in whole or in part. |

RFPs marked with an **\*** were among the original 25 RFPs that Defendants agreed to answer.

**PABCO'S POSITION ON DOCUMENT REQUESTS**

| | |
|---|---|
| *RFP #20:  All documents referring or reflecting communications with distributors and customers relating to drywall prices or price changes. | Willing to produce communications to distributors or customers reflecting or referencing announcements of price increases or changes in price for PABCO or other manufacturers, and all documents discussing communications between PABCO and distributors/customers about changes in prices to distributors/customers.  Not willing to produce documents that only "reflect" prices because they merely state the price for the product to the customer. |
| RFP #21: All Documents that discuss, comment on or relate to whether any other Drywall Supplier had failed to implement or adhere to, rescind or otherwise deviated, in whole or in part, from announced price changes. | Willing to produce documents, to the extent they exist, that discuss or address whether any other drywall manufacturer in the U.S. failed to implement or adhere to, rescinded, or otherwise deviated, in whole or in part, from its announced price changes for sale of drywall in the U.S. |
| *RFP #22  All Documents concerning the concealment of any correspondence, communication, meeting, agreement, or understanding between or among suppliers related to the pricing, marketing, sale, supply, distribution, or production of drywall, including any nondisclosure agreements relating to drywall. | Willing to produce documents, to the extent they exist, that are responsive to this request as it relates to communications, meetings, agreements, or understandings between drywall manufacturers. |
| RFP #23: All Documents that discuss, comment on or relate to the ability of any purchaser of Drywall to obtain or negotiate pricing concessions, reductions, or other terms that might favorably impact the gross or net price paid by the purchaser. | Willing to produce documents, to the extent they exist, relating to discounts and price reductions, and discussing the availability of discounts to purchasers of drywall from other manufacturers of drywall. |
| *RFP #24: All Documents that discuss, comment on, or relate to any factors or market conditions that could potentially impact Drywall prices, including demand, cost, or capacity utilization. | Willing to produce documents, to the extent they exist, that discuss or analyze general economic or market conditions in the context of the potential impact of those conditions on drywall prices in the U.S.; and documents that discuss the potential for demand, cost, or capacity utilization for drywall to affect the price of drywall in the U.S. |
| *RFP #25:  All Documents that discuss, comment on, or relate to Drywall pricing strategies or plans, or the anticipated or possible response of You or any Defendant to any changes in Drywall prices or pricing strategy. | Willing to produce documents, to the extent they exist, that discuss, summarize, or describe 1) PABCO's pricing strategies or pricing plans or 2) the anticipated or possible response by PABCO or any other defendant to any changes in drywall prices or pricing strategies. |

RFPs marked with an **\*** were among the original 25 RFPs that Defendants agreed to answer.

**PABCO'S POSITION ON DOCUMENT REQUESTS**

| | |
|---|---|
| RFP #26: All Documents that compare or contrast Your Drywall prices, profits, discounts, terms or conditions, production or capacity with any other Defendant. | Willing to produce documents, to the extent they exist, that compare or contrast PABCO's prices, profits, discounts, contractual terms, production, or capacity with that of another defendant. |
| *RFP #27: All Documents relating to any meeting or communications with any Defendant or other Drywall Supplier relating to prices, terms and conditions, or Job Quotes or other price protections relating to the sale or purchase of Drywall. | Willing to produce documents, to the extent they exist, that relate to any meetings or communications with other defendants or drywall manufacturers concerning prices, terms and conditions, or Job Quotes or other price protections relating to the sale or purchase of drywall in the U.S. |
| *RFP #28: All documents relating to Job Quote polices or practices: a) that describe or discuss Your Job Quote policies or practices (or the policies or practices of other Drywall Suppliers); b) Your decisions, actions, or communications to maintain, eliminate, or modify any Job Quote policy or practice; c) relating to or supporting Your contention that the elimination or modification of Job Quotes was consistent with or supported by Your independent business interests; d) relating to or supporting Your contention that Job Quotes were a widely abused business practice; e) relating or supporting Your contention that some manufacturers replaced job quotes with other forms of price protection or that these were well received by customers; f) relating to any complaints or communications expressing concern or disapproval regarding the elimination or modification of Job Quotes; or g) relating to alternatives that were considered. | Willing to produce documents, to the extent they exist, that discuss, summarize, or analyze: a) the job quote policies of PABCO or other defendants; b) the decision to maintain, eliminate, or modify job quote policies; c) the decision to eliminate job quotes consistent with independent business interests; d) the abuse of job quotes by customers; e) other forms of price protection; f) complaints about changes to the job quote policy; and g) other alternatives considered. PABCO will not agree to produce every single job quote ever created or discussed within the relevant time period.  The focus will be on changes to the policy/practice and complaints. |
| RFP #29: All Documents relating to proposals, actions or decisions by You or any other Drywall Supplier to limit the amount of Drywall that a customer is permitted to purchase. | Willing to produce documents, to the extent they exist, relating to decisions to decline or limit drywall purchases or orders for reasons other than a customer's credit. |
| RFP #30: All Documents relating to the quarterly and annual amount of industry-wide production of Drywall, including any documents relating to or supporting Your contentions regarding such production as set forth on page 6 of the Statement of Issues filed on January 25, 2013. | Willing to produce documents, to the extent they exist, that reflect or report quarterly and annual amounts of industry-wide production of drywall, including any documents supporting the contentions in the Statement of Issues. |

RFPs marked with an **\*** were among the original 25 RFPs that Defendants agreed to answer.

**PABCO'S POSITION ON DOCUMENT REQUESTS**

Dated: Oct. 16, 2013

| | |
|---|---|
| *RFP #31: All Documents relating to any meeting or communications with any Defendant (or its subsidiary or affiliate), or any other Drywall Supplier, relating to the supply of Drywall or limitations on the quantity of Drywall that could be purchased by a customer. | Willing to produce responsive documents, to the extent they exist, relating to meetings or communications with any other defendant or drywall manufacturer, relating to the supply of drywall or limitations on the quantity of drywall that could be purchased by a customer. |
| *RFP #32 All Documents discussing or concerning the following policies or practices of any other Drywall Supplier: a) Job Quotes or price protection policies or practices; b) policies or practices limiting the amount or volume of Drywall that a customer could purchase; or c) policies or practices relating to inventory levels. | Willing to produce responsive documents, to the extent they exist, relating to the policies or practices of any other defendant or drywall manufacturer, concerning job quotes, other price protection policies, limitations on purchases of drywall, or inventory levels. |
| *RFP #33  All Documents relating to meetings of the Gypsum Association, the Association of the Wall and Ceiling Industry, the Drywall Finishing Council, the Global Gypsum Conference or any other organization that You have participated in whose activities include matters relating to the supply or sale of Drywall, including the following documents: event calendars, attendee lists, meeting minutes, agendas, summaries, correspondence or other communications, and documents sufficient to identify the organization's Board of Directors. | Willing to produce documents, to the extent they exist, relating to a) meetings of the Gypsum Association, the Association of the Wall and Ceiling Industry, the Drywall Finishing Council, or the Global Gypsum Conference; b) the listed organization's board of directors; and c) event calendars, attendee lists, meeting minutes, agendas, summaries, correspondence, and other communications from or to the listed organizations. |
| *RFP #34 Documents sufficient to identify the attendees, from You or other "Drywall Suppliers", at any meeting of the organizations encompassed by the preceding Request, or any committee or other subgroup of such organization. | Willing to produce documents, to the extent they exist, that identify the attendees at meetings regarding drywall sponsored by the Gypsum Association, the Association of the Wall and Ceiling Industry, the Drywall Finishing Council, or the Global Gypsum Conference. |

RFPs marked with an * were among the original 25 RFPs that Defendants agreed to answer.

**PABCO'S POSITION ON DOCUMENT REQUESTS**

Dated: Oct. 16, 2013

| | |
|---|---|
| *RFP #35 All Documents relating to any communication, presentation or discussion of Drywall industry conditions, the Drywall market, prices, capacity or capacity utilization, Job Quotes, Drywall supply, or limitations on Drywall purchases that occurred at or in connection with a meeting of the organizations (or subgroups or committees) encompassed by the preceding Requests, or that were provided to or received from any such organization, committee or subgroup. | Willing to produce documents, to the extent they exist, relating to communications, presentations, or discussions of drywall industry conditions, the drywall market, prices, capacity, or capacity utilization, Job Quotes, drywall supply, or limitations on drywall purchases that occurred at or in connection with a meeting of the Gypsum Association, the Association of the Wall and Ceiling Industry, the Drywall Finishing Council, or the Global Gypsum Conference. |
| *RFP #36 All Documents that refer to, relate to, or contain information concerning any meeting, discussion or other communication between (a) any of Your officers, employees or other representatives and (b) any officer, employee or other representative of another Defendant relating to the sale, supply, prices (or other terms and conditions) of Drywall. | Willing to produce documents, to the extent they exist, that refer to or contain information concerning any meeting, discussion, or other communication between a) PABCO's officers, employees, or other representatives and b) any officer, employee, or other representative of another defendant relating to the sale, supply, prices, or other terms and conditions of drywall. |
| RFP #37: All Documents that refer to, relate to, or contain information concerning Your sales of Drywall to, or Your purchases of Drywall from, or swapping Drywall with any other Defendant or Drywall Supplier. | Willing to produce documents, to the extent they exist, that are sufficient to show drywall sales to, purchases from, and swaps with other manufacturers. |
| RFP #38: All Documents that refer to, relate to, or contain any information concerning any agreement, contract or arrangement with any other Defendant relating to Drywall, including any joint venture, merger, acquisition, swap, toll processing agreement, export-related agreement, licensing agreement or any other transaction or agreement. | PABCO is not aware of any documents responsive to this request.  To the extent there are any, PABCO is willing to produce them. |

RFPs marked with an * were among the original 25 RFPs that Defendants agreed to answer.

**PABCO'S POSITION ON DOCUMENT REQUESTS**

Dated: Oct. 16, 2013

| | |
|---|---|
| *RFP #39 All Documents that analyze, discuss or otherwise relate to: Drywall production capacity or capacity utilization; Drywall demand; the cost of producing or supplying Drywall; the profitability of producing or supplying Drywall; Drywall prices; Job Quotes; or other competitive market conditions for Drywall. | Willing to produce documents, to the extent they exist, that summarize, analyze, or describe industry production capacity, utilization, projected or overall demand, competitive market conditions, costs of production or supply, and profitability of producing or supplying drywall.  The focus will be on reporting and analyses, not individual reporting/communications.  Not willing to produce every document relating in any way to pricing, job quotes, production, capacity, or profits, including invoices, bills of lading, freight charges, or other documents that relate to price but that are not within the scope of the request after PABCO's objections. |
| RFP #40: All Documents that analyze, discuss or otherwise relate to a) Drywall price elasticity; b) product fungibility or interchangeability; or c) the ability or limitations of other products to function as substitutes for Drywall. This includes all Documents discussing or comparing the quality of, or market demand for, Drywall produced and sold by You, other Defendants, or other "Drywall Suppliers." | Willing to produce reports or analyses, to the extent they exist, regarding price elasticity of demand, fungibility, interchangeability, or substitutes for drywall. |
| *RFP #41 All monthly, quarterly and yearly audited or unaudited financial documents and data, including profit and loss statements, balance sheets, cash flow statements and other financial documents that relate to or include information relating to Drywall production, supply or sales prepared for or received by Your senior management (including the CFO, treasurer or controller for relevant business units). | Willing to produce documents sufficient to show PABCO's regularly prepared monthly, quarterly, and/or yearly financial statements for its drywall business, including profit and loss statements, balance sheets, and cash flow statements. |
| *RFP #42 Documents sufficient to show by month, quarter and year the cost allocations, cost apportioning rules, and accounting practices that are used to calculate Your profits, profit margins or projected profits relating to the sale of Drywall. | Willing to produce written accounting policies, guidelines, or formulas used by PABCO to calculate costs, profits, profit margins, or projected profits relating to the sale of drywall in the U.S.; and documents sufficient to show the monthly, quarterly, and/or yearly accounting of costs, profits, profit margins, or projected profits relating to the sale of drywall in the U.S. |

RFPs marked with an * were among the original 25 RFPs that Defendants agreed to answer.

**PABCO'S POSITION ON DOCUMENT REQUESTS**

Dated: Oct. 16, 2013

| | |
|---|---|
| *RFP #43 Documents sufficient to show by month, quarter and year Your profits (including income measures such as EBIT and EBITDA), profit margins, profit levels, or projected profits relating to the sale of Drywall. | Willing to produce documents sufficient to show PABCO's monthly, quarterly, and/or annual profits (including income measures such as EBIT and EBITDA), profit margins, profit levels, and/or projected profits relating to the sale of drywall in the U.S. |
| RFP #44: Documents sufficient to identify each class, type, grade or category of Drywall product manufactured, marketed, sold, distributed or imported by You, including its brand name and its function, physical properties and characteristics. | Willing to produce product catalogs and marketing materials for products sold by PABCO in 2011 and 2012. |
| *RFP #47: All documents that refer to, relate to, or contain information concerning: (a) percentages or shares of industry production, volume and/or sales of Drywall; (b) Drywall markets described in terms of geographic location or product type; and (c) supply and demand for Drywall | Willing to produce documents, to the extent they exist, that refer to or contain information concerning: a) percentages or shares of industry production, volume, and/or sales of drywall in the U.S.; b) drywall markets described in terms of geographic location or product type; and c) supply and demand for drywall in the U.S. |
| *RFP #48:  All reports, studies, forecasts, business plans, projections, analyses, articles, papers, and presentations related to the market for Drywall, including prices, costs, profits, market concentration, competition, entry of suppliers in the market for Drywall, barriers to entry, price elasticity, product fungibility or interchangeability, and any known substitutes for Drywall, whether published or not, in draft or final form. | Willing to produce reports, studies, forecasts, business plans, projections, analyses, articles, papers, and presentations, to the extent they exist, that refer to or contain information concerning the market for drywall, including prices, costs, profits, market concentration, competition, entry of suppliers in the market for drywall, barriers to entry, price elasticity, product fungibility or interchangeability, and any known substitutes for drywall. |
| RFP #49: All Board of Directors materials, including meeting attendance lists, notes, agendas, resolutions, communications, reports and analyses, relating or referring to (a) the pricing or production of Drywall; (b) competitive conditions in the Drywall market; (c) Job Quotes; or (d) any other Defendant. | Willing to produce materials provided to the PABCO Board of Directors (including meeting attendance lists, agendas, resolutions, correspondence, reports, and analyses) regarding the listed subjects. |

RFPs marked with an * were among the original 25 RFPs that Defendants agreed to answer.

**PABCO'S POSITION ON DOCUMENT REQUESTS**

Dated: Oct. 16, 2013

| | |
|---|---|
| RFP #50: For Specified Agreed Custodians, the following documents: All diaries, appointment books, notes or records of business appointments, calendars and notebooks; All telephone billing records (including office, home or cellular telephone calls) and notes or records of telephone calls; All expense reports, reimbursement Requests, vouchers and travel records and receipts. | Willing to produce expense reports, appointment books, records of appointments, and calendars for designated custodians, to the extent they relate to business purposes and are not exclusively personal. |
| *RFP #51 All Documents concerning or produced in connection with any government investigation, litigation or merger or acquisition analysis or approval relating to Drywall, including all communications with any governmental entity relating to any such investigation. | PABCO did not produce any documents in connection with an investigation by the Florida Attorney General.  PABCO is willing to produce the documents it provided to the DOJ in connection with an investigation of the recent transaction between Georgia-Pacific and International Paper. |
| RFP #52: All Documents that refer or relate to any disciplinary or similar action imposed on, or any investigation made of, any of Your directors, officers, salesmen, agents or employees with respect to any actual or alleged violation of the United States or any state antitrust or other similar laws (or any company antitrust compliance policy) that related in any way to the supply or sale of Drywall. | PABCO is not aware of any documents responsive to this request.  To the extent there are any, PABCO is willing to produce them. |
| *RFP #53 All Documents referring or relating to complaints by a distributor or other purchaser about the price, availability or allocation of Drywall, or Your Job Quote policies or modification of those policies. | Willing to produce documents, to the extent they exist, that refer to complaints by distributors or other purchasers about the price, availability, or allocation of drywall, or PABCO's Job Quote policies or modifications of those policies. |
| RFP #56: All Documents referring or relating to any non-prosecution agreement, cooperation agreement, and/or leniency application with the United States Department of Justice, Federal Trade Commission, any state governmental agency, or any foreign competition authority relating to Drywall. | PABCO is not aware of any documents responsive to this request.  To the extent there are any, PABCO is willing to produce them. |
| RFP #57: All Documents produced to or received from any party or third party related to or in connection with this action. | Willing to produce copies of responsive documents PABCO obtains from third parties by means of compulsory process in this case, with the expectation that Plaintiffs will do the same. |

RFPs marked with an * were among the original 25 RFPs that Defendants agreed to answer.

**PABCO'S POSITION ON DOCUMENT REQUESTS**

Dated: Oct. 16, 2013

| | |
|---|---|
| *RFP #58 All Documents that otherwise support Your defenses in this action or that You may use at trial in this matter. | Willing to produce documents that support PABCO's defenses in this action. |
| RFP #59: All Documents that reflect actual or potential competition between domestic-made and foreign-made drywall. | Willing to produce reports, studies, and analyses, to the extent they exist, that relate to competition between domestic-made and foreign-made drywall. |
| RFP #60: All Documents analyzing, studying or discussing: (a) competition between imported and domestic drywall; (b) quality differences between imported and domestic drywall; and (c) imported drywall as a substitute for domestic drywall. | Willing to produce reports, studies, and analyses, to the extent they exist, that relate to competition between domestic-made and foreign-made drywall. |

RFPs marked with an **\*** were among the original 25 RFPs that Defendants agreed to answer.

**PABCO'S POSITION ON INTERROGATORIES**

| Interrogatories | PABCO's Position |
|---|---|
| ROG #1:  Identify each person currently or formerly employed by you or acting on your behalf who had any authority for, responsibility for, or involvement in: (a) recommending or determining either the content or terms of a Drywall price announcement, the price at which you sold Drywall, the policies, rules or protocols for pricing Drywall, the quantities of Drywall that customers were permitted to purchase, or the terms under which such sales were made; (b) studying, analyzing, or projecting the Competitive Conditions for Drywall; (c) strategic decision-making with respect to marketing in your Drywall business, manufacturing in your Drywall business, or the sale or distribution of Drywall to purchasers. | Willing to provide a response covering the relevant time period (Jan. 1, 2011 - March 25, 2013). |
| ROG #2: Identify each person currently or formerly employed by you or acting on your behalf who was a member of or otherwise affiliated with any trade association, including but not limited to the Gypsum Association, the Association of the Wall and Ceiling Industry, the Drywall Finishing Council, the Drywall Acoustical Contractors Association, the Drywall & Interior System Contractors Association and/or the Global Gypsum Conference, or attended or otherwise participated in any meetings of any trade association, and with respect to each such person state the applicable trade association, the dates of that person's membership, and whether that person held any offices, chairs, or committee positions in the trade association. | Willing to provide a response covering the relevant time period (Jan. 1, 2011 - March 25, 2013). |
| ROG #3: Identify each person currently or formerly employed by you or acting on your behalf who communicated with any person employed by or acting on behalf of another Defendant concerning the Competitive Conditions of Drywall, and identify each such person with whom she or he communicated and the date, time and location(s) of the communication. If the communication was by means of telephone, cell phone, mobile phone, facsimile, or calling card, provide the numbers of the sender and recipient. | PABCO currently is not aware of any persons having such communications. To the extent there were such communications, PABCO is willing to provide a response covering the relevant time period (Jan. 1, 2011 - March 25, 2013). PABCO reserves the right to respond to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d). |

**PABCO'S POSITION ON INTERROGATORIES**

Dated: Oct. 16, 2013

| | |
|---|---|
| ROG #4: Identify all in-person meetings between any of your officers, directors, or any person identified in response to Interrogatory Nos. 1, 2 or 3 with any officer, director, or management level employee of a Competitor, or with any person affiliated with a Competitor responsible for Drywall pricing policies, rules, or protocols. | PABCO currently is not aware of any such meetings. To the extent there were such meetings, PABCO is willing to provide a response covering the relevant time period (Jan. 1, 2011 - March 25, 2013). PABCO reserves the right to respond to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d). |
| ROG #5: Identify all meetings, in-person or otherwise, between any person affiliated with you and any person affiliated with a Competitor at which any of the following topics were discussed: the price of Drywall; any policy, rule or protocol for pricing Drywall; the Competitive Conditions of Drywall; any restrictions on the supply or production of Drywall; Job Quotes or other price protection practices; or any consumers, distributors, or wholesalers of Drywall. | PABCO currently is not aware of any such meetings. To the extent there were such meetings, PABCO is willing to provide a response covering the relevant time period (Jan. 1, 2011 - March 25, 2013). PABCO reserves the right to respond to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d). |
| ROG #7: Describe by the amount, the date announced, the date implemented, and the applicable products, each instance in which: (a) you instituted a price increase or decrease for Drywall; (b) you changed any policy, rule, protocol or practice for pricing Drywall (including your Job Quotes policies, rules, protocols or practices); (c) you changed any policy, rule or protocol affecting the quantity of Drywall a particular customer could purchase. | Willing to provide a response covering the relevant time period (Jan. 1, 2011 - March 25, 2013). PABCO reserves the right to respond to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d). |
| ROG #8: For each instance described in Interrogatory 7, identify any person currently or formerly employed by you or acting on your behalf, who recommended, decided or was otherwise involved in formulating or communicating the action you took and describe the nature of that person's role or involvement. | Willing to provide a response covering the relevant time period (Jan. 1, 2011 - March 25, 2013). |
| ROG #11: Identify any products sold by your competitors that customers use as interchangeable offsets or actual and/or potential substitute products for the Gypsum Board that you sell, including general descriptions of such products and the effect, if any, of such substitute products on Gypsum Board pricing, purchase terms, or profits. | Not willing to produce in Phase I discovery. |

**PABCO'S POSITION ON INTERROGATORIES**

Dated: Oct. 16, 2013

| | |
|---|---|
| ROG #12: Identify each of your employees or former employees who has been a witness before, has been requested to be a witness before, or has been requested to provide an interview or statement to, any federal, state, or local grand jury, or other criminal or civil investigative agency (including, without limitation, the Department of Justice Antitrust Division) in connection with any investigation of possible or alleged violations of the antitrust laws. | PABCO is not aware of any persons who have been witnesses in such investigations.  To the extent PABCO employees or former employees have been witnesses in such investigations, PABCO is willing to provide a response covering the relevant time period (Jan. 1, 2011 - March 25, 2013). |

# EXHIBIT 5

*IN RE: DOMESTIC DRYWALL LITIGATION*

### FIRST REQUESTS FOR PRODUCTION

   The following descriptions of what TIN plans to produce are provided for purposes of the meet and confer.  TIN reserves all objections in its responses to plaintiffs' discovery requests.  Offers to produce are subject to (1) agreement on relevant time frame; (2) except with respect to requests for which TIN indicates it will produce documents "sufficient to show" or where it has identified specific documents it will produce in response to the request, the documents will be those responsive documents found in the files of the identified and agreed upon custodians; (3) withholding any privileged materials, (4) limited to  sales to US customers/within the US, and (5) limiting definition of Drywall Supplier to Defendants (Plaintiffs' definition is so broad that it would include our customers who resell drywall to others).

| REQUEST | TIN WRITTEN RESPONSE | WHAT TIN PLANS TO PRODUCE |
|---|---|---|
| **RFP #6:** All document preservation, retention, backup, and litigation hold policies, including all current and former versions. | Defendant incorporates its General Objections. Defendant further objects to this Request as being unduly burdensome and overbroad on the grounds that it seeks information which is irrelevant to the claims and defenses in this case and is not calculated to lead to the discovery of admissible and because it includes policies involving matters not related to production, sales, marketing or distribution of Drywall in the United States.  Defendant objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant will not produce its litigation hold notices in this case because they are attorney-client privileged and attorney work product protected.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce non-privileged documents sufficient to describe its current formal written document retention and/or preservation polices that apply to its Drywall businesses in the United States for the period of January 1, 2011 to March 25, 2013, to | TIN to provide date of litigation hold, confirm that identified custodians were included on hold and produce copy of document retention/preservation policies from relevant time period. |

4819-7700-4310.2

| | the extent that such documents exist within Defendant's possession, custody or control, and that Defendant is able to locate such documents after a reasonable search of appropriate centralized sources. | |
|---|---|---|
| **RFP #7:** All Documents relating to Your policies, practices or guidelines concerning a) the United States antitrust laws, b) communications with competitors relating to price, output or supply, or c) any antitrust training provided to Your officers and employees. Include all current and former versions. | Defendant incorporates its General Objections. Defendant objects to the use of "policies, practices or guidelines" as being overly broad, vague and ambiguous to the extent it is intended to mean something other than a formal written policy, rule or protocol.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent it seeks all documents and to the extent it is not limited to policies relating to Drywall sales in the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce non-privileged documents sufficient to explain its current formal written antitrust compliance polices that apply to its Drywall businesses in the United States for the period of January 1, 2011 to March 25, 2013, to the extent that such documents exist within Defendant's possession, custody or control, and Defendant is able to locate such documents after a reasonable search of appropriate centralized sources. | TIN will provide company antitrust policy from relevant time period. |
| **RFP #8:** Drywall transaction data, from January 1, 2007 through the present, maintained in any database, including those relating to Your Drywall sales, and including all of the following:<br>a)      The terms of each transaction;<br>b)      The invoice number and purchaser order number; | Defendant incorporates its General Objections. Defendant objects to the definition or use of "Drywall transaction data" because the term is ambiguous and vague as used in the Request. Defendant also objects to the definition or use of "pricing adjustment of any kind" as being overly broad, vague and ambiguous as it would | Transactional data is outside the scope of phase one discovery. |

2

| | | |
|---|---|---|
| c) The location from which the Drywall was shipped;<br><br>d) The customer's name and address, including the location to which the Drywall was shipped;<br><br>e) The date You shipped the Drywall, the date You billed for the Drywall, and the date the purchaser took delivery;<br><br>f) The specification and type of Drywall, including any unique purchaser-specific identifier, and complete product descriptions, sold in each transaction;<br><br>g) The quantity (and units of measure) for each type of Drywall sold in connection with each transaction;<br><br>h) All pricing information relating to the transaction, including the gross and net unit price for each type of Drywall;<br><br>i) Any discounts, rebates, credits, freight allowances, free goods and/or services, and/or any other pricing adjustment of any kind made in connection with each transaction, with sufficient information to attribute these adjustments back to individual transactions;<br><br>j) Whether a transaction was subject to a Job Quote and, if so, the terms of the Job Quote;<br><br>k) Any costs or costs of goods sold relating to the transaction (including freight charge and transportation cost; sales and distribution cost; marketing and/or sales cost; and any cost attributed or allocated to the transaction);<br><br>l) Any other data available in such a database relating to the sale or distribution of Drywall. | include every instance in which Defendant changed the price it charged for Drywall sold in the United States to a customer. Defendant objects to the definition or use of "any cost attributed or allocated to the transaction" as being overly broad, vague and ambiguous because it seeks cost allocations on every transaction in which Defendant sold Drywall in the United States. Defendant also objects to the definition or use of "any other data available in such a database relating to the sale or distribution of Drywall" as overly broad, vague and ambiguous because it is duplicative and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request as overbroad and unduly burdensome to the extent it is not limited to Drywall sales in the United States. Defendant further objects to this Request as being unduly burdensome and overbroad to the extent that the request seeks fields of data that Defendant does not maintain on a centralized financial reporting system and to the extent that it would require the restoration of back-up tapes or inactive systems.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the transactional sales data for Drywall sales by Defendant in the United States and for the period January 1, 2007 through March 25, 2013 and related cost of goods sold data, which may not be on a transaction specific basis, for the same period to the extent that such data is tracked by Defendant, can be reasonably extracted from centralized active systems and falls within the list of data fields to be negotiated with Plaintiffs through a meet and confer process. | |
| **RFP #10:** In addition to the transaction-level | Defendant incorporates its General Objections. | Transactional data is outside the scope of phase one |

| | | |
|---|---|---|
| information called for in 8(i) above, documents **sufficient to**:<br><br>a)       identify Your policies and practices concerning discounts, rebates, credits, freight allowances, free goods and/or services, and/or any other pricing adjustment of any kind, including any customer contracts which refer to or contain any such information;<br><br>b)       show the nature and amount on a monthly, quarterly and annual basis of any discounts, rebates, credit, freight allowances, free goods and/or services or other price adjustments provided to Your specific customers, and the manner in which the foregoing were allocated between products or transactions. | Defendant objects to the definition or use of "practices" as being overly broad, vague and ambiguous to the extent it is intended to mean something other than a formal written policy, rule or protocol.  Defendant also objects to the definition or use of "any other pricing adjustment of any kind" as being overly broad, vague and ambiguous as it would include every instance in which Defendant changed the price it charged for Drywall sold in the United States to a customer.  Defendant further objects to the definition or use of "any customer contracts which refer to or contain any such information" as being overly broad, vague and ambiguous insofar as it would require the production of all purchase orders, order acknowledgements and invoices that would constitute contracts for the purchase of Drywall.  Defendant further objects to the Request as being overbroad and unduly burdensome to the extent it seeks documents that show the requested information on a monthly, quarterly and annual basis.  Defendant further objects to the Request to the extent it seeks documents for products other than Drywall sold in the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following documents for the period January 1, 2007 to March 25, 2013, to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate centralized sources:<br><br>Documents sufficient to show any formal policies for granting discounts, rebates, credit, freight allowances, free goods and services, or other pricing adjustments relating to Drywall sales in the United States; and | discovery. |

4

| | Centrally maintained transactional data sufficient to show any monthly, quarterly or annual discounts, rebates, credit, freight allowances, free goods and services, or other price adjustments given to customers for Drywall sales sold in the United States. | |
|---|---|---|
| **RFP #11:** Documents and data, from January 2007 through the present, **<u>sufficient to show</u>** the following on a monthly, quarterly and yearly basis:<br>a)     Your Drywall production, capacity, and capacity utilization, on an aggregate basis, a product line basis, and a factory-by-factory basis, including production targets;<br>b)     Your costs, both fixed and variable, and the components of such costs, relating to the manufacture, distribution and sale of Drywall;<br>c)     Your gross and net profits and margins relating to the distribution and sale of Drywall. | Defendant incorporates its General Objections. Defendant objects that the term "capacity utilization" is vague and ambiguous as used in this Request.  Defendant objects to the Request as being overbroad and unduly burdensome in that it seeks documents that show the requested information on a monthly, quarterly and annual basis.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent it requests information down to the product line and by factory.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for a period of January 1, 2007 to March 25, 2013 from reasonably accessible centralized sources to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Documents or data sufficient to show Defendant's monthly and annual production by plant of Drywall manufactured in the United States; and<br><br>Documents sufficient to show the monthly, quarterly, and yearly accounting of costs, | Transactional data is outside the scope of phase one discovery. |

| | profits, profit margins or projected profits relating to the manufacture, distribution and sale of Drywall in the United States. | |
|---|---|---|
| **RFP #12:** All data and reports that track, or are used to aggregate or average:<br>(a) Your Drywall gross or net pricing; or<br>(b) Drywall industry pricing. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "all data and reports that track or are used" and "Drywall industry pricing" as being overly broad, vague and ambiguous as they would include all data and reports used to aggregate or average in Defendant's possession, custody, and control, not just the reports themselves, and regardless of their actual use in the production, sales, marketing or distribution of Drywall. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege. Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured or sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the transactional data being produced in response to Request No. 8 and the following non-privileged documents responsive to this Request, for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Any summary report tracking aggregate or average gross or average net pricing for Drywall sold by Defendant in the United States; and | Transactional data is outside the scope of phase one discovery.  The request calls for more than just transactional data so TIN willing to produce:<br><br>Any analyses  or reports of  aggregate or average gross or average net pricing for Drywall sold by Defendant in the United States;<br><br>Any analyses  or reports tracking Drywall industry pricing in the United States. |

6

| | Any summary report that tracks Drywall industry pricing in the United States | |
|---|---|---|
| **RFP #13:** All documents which are used to operate any of the software or hardware used by You to maintain the database information requested herein, including documents describing or defining the fields and units of measure contained in any such database. | Defendant incorporates its General Objections. Defendant further objects that this Request is overly broad, vague, and ambiguous on the grounds that it seeks information which is irrelevant to the claims and defenses in this case and is not calculated to lead to the discovery of admissible to the extent it includes documents involving matters not related to production, sales, marketing or distribution of Drywall in the United States.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce documents sufficient to describe or define the fields and units of measure contained in any transactional data produced in this litigation to the extent that Defendant can locate that information through a reasonable search of appropriate centralized sources. | Transactional data is outside the scope of phase one discovery. |
| **RFP #14:** All Documents that constitute, refer or relate to Your practices, policies and procedures relating to:<br>a) Drywall pricing;<br>b) the terms and conditions of sale of Drywall; or<br>c) the levels of production of Drywall. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "practices" and "procedures," to the extent they are intended to mean something other than formal written policies, rules or protocols, and "terms and conditions" insofar as it would require the production of all purchase orders, order acknowledgements and invoices that would constitute terms and conditions for the purchase of Drywall as being overly broad, vague and ambiguous. Defendant objects to the definition or use of "levels of production" as vague and ambiguous as used in the Request. Defendant further objects to this Request on the | TIN willing to produce:<br><br>Any written practice, policy or procedure adopted by TIN for the pricing of Drywall sold in the United States;<br><br>Any written practice, policy or procedure adopted by TIN as to the terms and conditions applicable to a sale of Drywall in the United States; and<br><br>Any written practice, policy or procedure adopted by TIN as to its level of production output for Drywall. |

7

| | grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the Request, including all that refer or relate to practices, policies and procedures.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States. | Production would be limited to above and would not include every purchase order, invoice or other document that somehow relates to pricing, terms and conditions of sale or production level. |
| --- | --- | --- |
| | Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request, for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources: | |
| | Any written summary of a practice, policy or procedure adopted by Defendant for the pricing of Drywall sold in the United States; | |
| | Any written summary of a practice, policy or procedure adopted by Defendant as to the terms and conditions applicable to a sale of Drywall in the United States; and | |
| | Any written summary of a practice, policy or procedure adopted by Defendant as to its level of production output for Drywall. | |
| **RFP #15:** All Documents that constitute, refer or relate to:<br>a) Drywall price announcements by You or any other | Defendant incorporates its General Objections.  Defendant objects to the definition or use of "terms of sale" as being overly broad, vague | TIN willing to produce:<br><br>All Drywall general price announcements issued by |

| | | |
|---|---|---|
| supplier (including prices or price announcements that You have considered or that were recommended but not actually announced);<br>b) other internal or external communications relating to Drywall prices; or<br>c) changes in Drywall prices or terms of sale. This includes All Documents relating to Your analysis, understanding and recognition of other Drywall Suppliers' price announcements. | and ambiguous insofar as it would require the production of all purchase orders, order acknowledgements and invoices that would constitute "terms of sale" for the purchase of Drywall. Defendant also objects to the definition or use of "changes in Drywall prices" as being overly broad, vague and ambiguous as it would include every instance in which Defendant changed the price it charged for Drywall sold in the United States to a customer. Defendant objects to the definition or use of "any other supplier" as being overly broad, vague and ambiguous in that the Requests define "Drywall Suppliers" as any entity in the chain of distribution, because the term is confusing in the Request, and because Defendant does not necessarily know the prices of "any other suppliers." Defendant further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the Request. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege. Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources: | TIN or any other defendant for sales of Drywall in the United States;<br><br>Documents discussing Drywall general price announcements that TIN has considered or were recommended for sales of Drywall in the United States but not actually announced;<br><br>Internal or external communications relating to general prices or price announcements for Drywall sold in the United States; and<br><br>All documents reflecting TIN's analysis, understanding or recognition of general price announcements by other defendants for the sale of Drywall in the United States.<br><br>Production would be limited to above as TIN wants to exclude from production every purchase order, invoice or other document that somehow relates to pricing, terms and conditions of sale for individual customer negotiations. |

9

| | | |
|---|---|---|
| | All Drywall general price announcements issued by Defendant or any other Drywall manufacturer for sales of Drywall in the United States;

Documents discussing Drywall general price announcements that Defendant has considered or were recommended for sales of Drywall in the United States but not actually announced;

Internal or external communications relating to general prices or price announcements for Drywall sold in the United States; and

Documents reflecting Defendant's analysis, understanding or recognition of general price announcements by other Drywall manufacturers for the sale of Drywall in the United States. | |
| **RFP #16:** All internal documents sent or presented to Your sales personnel relating to a potential or planned Drywall price increase or change. | Defendant incorporates its General Objections. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant objects to the Request as overbroad and unduly burdensome to the extent the Request seeks the production of all documents sent or presented to sales personnel relating to any change in pricing, including changes related to freight adjustments, meeting competition or discounts or other individual adjustment unrelated to a planned general price announcement.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States. | TIN willing to produce:

The final and all non-privileged drafts of Drywall price announcements issued by Defendant for sales of Drywall in the United States; and

Any internal documents related to a planned general price increase or price change for Drywall

Production would be limited to above and would not include every document discussing a potential price change applicable to a particular customer (e.g., meeting competition prices). |

10

| | | |
|---|---|---|
| | Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>The final and all non-privileged drafts of Drywall price announcements issued by Defendant for sales of Drywall in the United States; and<br><br>Any internal documents related to a planned general price increase or price change for Drywall sent by those employees of Defendant who had primary decision-making responsibility for establishing the sale price for Drywall sold in the United States to Defendant's sales personnel. | |
| **RFP #17:** All Documents utilized or referred to by Your sales personnel or other employees for determining or setting the prices to be charged by You for Drywall. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "sales personnel or other employees" as being overly broad, vague and ambiguous as it includes individuals regardless of their responsibility or authority for the production, sales, marketing or distribution of Drywall in the United States. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege. Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States. | TIN willing to produce:<br><br>All Documents utilized or referred to by those individuals involved in determining or setting the prices to be charged for Drywall for that purpose. |

11

| | Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Any general pricing policy, guideline or formula provided by Defendant to its sales managers and account representatives for the pricing of Drywall sold in the United States; and<br><br>Any general price list or similar document used by Defendant's sales managers and account representative for the purpose of quoting prices for Drywall sold in the United States. | |
|---|---|---|
| **RFP #18:** All Documents that explain, set forth, support, justify or otherwise relate to the reasons for any price increase relating to Drywall, including the price increases that became effective in January 2012 and subsequent price increases that became effective in 2013. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "otherwise relate" as being overly broad, vague, ambiguous and unduly burdensome in that it includes documents regardless of their actual use in setting the price for the production, sales, marketing or distribution of Drywall in the United States.   Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce | TIN is willing to produce:<br><br>All documents that explain, set forth, support, discuss or justify the referenced price increases in 2012 and 2013. |

12

| | non-privileged documents responsive to this Request that explain, discuss or justify the referenced price increases, for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | |
|---|---|---|
| **RFP #19:** All Documents discussing or relating to the relationship between price announcements and prices, including any documents relating to whether announced increases would be, or were maintained, in whole or in part. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "relating to" and "the relationship" as being overly broad, vague and ambiguous in that they include documents regardless of their actual use in setting the price for the production, sales, marketing or distribution of Drywall in the United States.  Defendant further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents "relating" to the topic.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources: | TIN is willing to produce:<br><br>All documents discussing the relationship between price announcements for Drywall to be sold in the United States and actual prices; and<br><br>Any analysis or summary discussing whether an announced price increase applicable to Drywall sold in the United States would be or was maintained in whole or in part |

13

| | All documents discussing the relationship between price announcements for Drywall to be sold in the United States and actual prices; and<br><br>Any analysis or summary discussing whether an announced price increase applicable to Drywall sold in the United States would be or was maintained. | |
|---|---|---|
| **RFP #20:** All Documents reflecting or referring to communications with distributors and customers relating to Your (or any other Drywall Suppliers') Drywall prices or price changes. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "reflecting or referring to" as being overly broad, vague and ambiguous in that they include documents and communications regardless of their actual use in setting or communicating the price of Drywall in the United States.  Defendant also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution.  Defendant further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the Request which could include all purchase orders, invoices and other documents that might include a reference to price.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the | TIN is willing to produce:<br><br>All communications by Defendant to its United States distributors and customers reflecting or referencing an announcement of a price increase or change in price;<br><br>All communications (but not including invoices or bills) by Defendant to its United States distributors and customers reflecting or referencing a price increase or change in price by another defendant; and<br><br>All documents discussing a communication between Defendant and its United States distributors and customers about a change in Defendant's price to that distributor or customer for sale of Drywall in the United States. |

14

| | | |
|---|---|---|
| | following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>All communications by Defendant to its United States distributors and customers reflecting an announcement of a price increase or change in price;<br><br>All communications by Defendant to its United States distributors and customers reflecting a price increase or change in price by another Drywall manufacturer; and<br><br>All documents discussing a communication between Defendant and its United States distributors and customers about a change in Defendant's price to that distributor or customer for sale of Drywall in the United States. | |
| **RFP #21:** All Documents that discuss, comment on or relate to whether any other Drywall Supplier had failed to implement or adhere to, rescind or otherwise deviated, in whole or in part, from announced price changes. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "comment on," "relate to" and "otherwise deviated" as being overly broad, vague and ambiguous and Defendant also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege. Defendant further objects to this Request as overbroad and unduly | TIN willing to produce:<br><br>All documents that discuss or address whether any other defendant in the United States had failed to implement or adhere, had rescinded or otherwise deviated, in whole or in part, from its announced price changes for sale of Drywall |

15

| | | |
|---|---|---|
| | burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce non-privileged documents responsive to this Request that discuss or address whether any other Drywall manufacturer in the United States had failed to implement or adhere to, had rescinded or otherwise deviated, in whole or in part, from its announced price changes for sale of Drywall in the United States for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | |
| **RFP #22:** All Documents concerning the concealment of any correspondence, communication, meeting, agreement, or understanding between or among suppliers related to the pricing, marketing, sale, supply, distribution, or production of Drywall during the Relevant Time Period, including but not limited to any nondisclosure agreements relating to Drywall. | Defendant incorporates its General Objections. Defendant objects to the time period as being overbroad and unduly burdensome.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege. Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce non-privileged documents responsive to this Request as to Drywall manufacturers (and not as to all suppliers) for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent | TIN willing to produce:<br><br>All documents responsive to this Request as to Defendants. |

16

| | such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | |
|---|---|---|
| **RFP #23:** All Documents that discuss, comment on or relate to the ability of any purchaser of Drywall to obtain or negotiate pricing concessions, reductions, or other terms that might favorably impact the gross or net price paid by the purchaser. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "comment on or relate," "pricing concessions" and "reductions or other terms" as being overly broad, vague and ambiguous insofar as it would require the production of all purchase orders, order acknowledgements and invoices that would relate to "pricing concessions" or "reductions or other terms" for the purchase of Drywall and would include every instance in which Defendant changed the price it charged for Drywall sold in the United States to a customer.  Defendant further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the Request, which could include all purchase orders, invoices and other documents that might include a reference to a price concession, rebate or other term.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.  <br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request, for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such | TIN willing to produce:<br><br>Any communication or document by which Defendant gave a customer a price concession, price reduction or other contractual term that favorably impacted the gross or net price paid by Defendant's customer for the sale of Drywall in the United States; and<br><br>Any document that discusses the ability of any United States purchaser of Drywall to obtain or negotiate a price concession, price reduction or similar term that might favorably impact the gross or net price paid by the purchaser from any defendant for the sale of Drywall in the United States. |

17

| | | |
|---|---|---|
| | documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Any communication or document by which Defendant gave a customer a price concession, price reduction or other contractual term that favorably impacted the gross or net price paid by Defendant's customer for the sale of Drywall in the United States; and<br><br>Any document that discusses the ability of any United States purchaser of Drywall to obtain or negotiate a price concession, price reduction or similar term from a Drywall manufacturer for the sale of Drywall in the United States. | |
| **RFP #24:** All Documents that discuss, comment on or relate to any factors or market conditions that could potentially impact Drywall prices, including demand, cost, or capacity utilization. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "comment on or relate to" and "any factors or market conditions" as overly broad, vague and ambiguous and because they include documents regardless of their actual use in the production, sales, marketing or distribution of Drywall. Defendant further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the Request. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the | TIN willing to produce:<br><br>All documents that discuss or analyze general economic or market conditions in the context of the potential impact of those conditions on Drywall prices in the United States; and<br><br>All documents that discuss the potential for demand, cost or capacity utilization for Drywall to affect the price of Drywall in the United States. |

18

| | | |
|---|---|---|
| | following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Documents that discuss or analyze general economic or market conditions in the context of the potential impact of those conditions on Drywall prices in the United States; and<br><br>Documents that discuss the potential for demand, cost or capacity utilization for Drywall to affect the price of Drywall in the United States. | |
| **RFP #25:** All Documents that discuss, comment on or relate to Drywall pricing strategies or plans, or the anticipated or possible response of You or any Defendant to any changes in Drywall prices or pricing strategy. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "comment on or relate to," "anticipated or possible response" and "any changes" as being overly broad, vague and ambiguous and because they include documents regardless of their actual use in the production, sales, marketing or distribution of Drywall. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 | TIN willing to produce:<br><br>All documents discussing, summarizing or describing Defendant's pricing strategies or pricing plans for the sale of Drywall in the United States;<br><br>All documents discussing, summarizing or describing the anticipated or possible response by Defendant or any other defendant to any changes in Drywall prices or pricing strategies in the United States. |

19

| | through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Documents discussing, summarizing or describing Defendant's pricing strategies or pricing plans for the sale of Drywall in the United States; and<br><br>Documents discussing, summarizing or describing the anticipated or possible response by Defendant or any other defendant to any changes in Drywall prices or pricing strategies in the United States. | |
|---|---|---|
| **RFP #26:** All Documents that compare or contrast Your Drywall prices, profits, discounts, terms or conditions, production or capacity with any other Defendant. | Defendant incorporates its General Objections. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce any non-privileged summaries that compare or contrast Defendant's prices, profits, discounts, contractual terms, production or capacity with that of another defendant for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | TIN willing to produce:<br><br>Documents that compare or contrast Defendant's prices, profits, discounts, contractual terms, production or capacity with those of another defendant. |

20

| | | |
|---|---|---|
| **RFP #27:** All Documents relating to any meeting or communications with any Defendant or other Drywall Supplier relating to prices, terms and conditions, or Job Quotes or other price protections relating to the sale or purchase of Drywall. | Defendant incorporates its General Objections. Defendant also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.

Subject to and without waiving these or its General Objections, Defendant will produce any non-privileged documents that reflect or describe a meeting or communication with another defendant relating to Drywall sold in the United States for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | TIN willing to produce:

Any documents that reflect or describe a meeting or communication with another defendant relating to Drywall relating to prices, terms and conditions, or Job Quotes or other price protections relating to the sale or purchase of Drywall. |
| **RFP #28:** With respect to Job Quote policies or practices:
a)      All Documents that describe or discuss Your Job Quote policies or practices (or the policies or practices of other Drywall Suppliers).
b)      All Documents relating to Your decisions, actions or communications (or those of any other Drywall Supplier) to maintain, eliminate, or modify any Job Quote policy or practice.
c)      All Documents relating to or supporting Your contention that the elimination or modification of Job Quote practices was | Defendant incorporates its General Objections. Defendant objects to the definition or use of "practices" as being overly broad, vague and ambiguous to the extent that it is intended to mean anything other than a formal written policy, protocol or practice.  Defendant also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks | TIN willing to produce:

Any document that discusses, summarizes, analyzes, or  describes the job quote policies of Defendant or of any other defendant for Drywall sales in the United States;

Any document that discusses, describes, summarizes or analyzes any decision, action or communication by Defendant or any other defendant  to maintain, eliminate or modify a job quote policy or practice;

Any document supporting the contention that the |

21

| | | |
|---|---|---|
| consistent with or supported by Your independent business interests (or those of other Drywall Suppliers).<br><br>d)      All Documents relating to or supporting Your contention that Job Quotes were a widely abused business practice or that buyers of Drywall Products "treated job quotes as mere options to buy additional product under the favorable job-specific quote and then diverted deliveries to other jobs and customers."<br><br>e)      All Documents relating to or supporting Your contention that "some manufacturers replaced job quotes with other forms of price protection" or that these changes "were well received by customers."<br><br>f)      All Documents relating to any complaints or other communications expressing concern or disapproval regarding the elimination or modification of Job Quotes.<br><br>g)      All Documents relating to alternatives to the elimination or modification of Job Quotes that You, or other Drywall Suppliers, evaluated or considered. | documents relating to Drywall manufactured and sold outside of the United States. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Any document that summarizes or describes the job quote policies of Defendant or of any other defendant for Drywall sales in the United States;<br><br>Any document that describes, summarizes or analyzes any decision, action or communication by Defendant or another Drywall manufacturer to maintain, eliminate or modify a job quote policy or practice;<br><br>Any document supporting the contention that the elimination or modification of job quote practices was consistent with a defendant's independent business interest;<br><br>Any document supporting the contention that job quotes were an abused business practice and/or that they were replaced by other forms of price protection that were well received by customers; | elimination or modification of job quote practices was consistent with a defendant's independent business interest;<br><br>Any document supporting the contention that job quotes were an abused business practice and/or that they were replaced by other forms of price protection that were well received by customers;<br><br>Any complaints or communications from customers regarding the elimination or modification of job quotes; and<br><br>Any document that describes, summarizes or analyzes alternatives to the elimination or modification of job quotes that were evaluated or considered or implemented by Defendant.<br><br>Production would be limited to above and would not include every single job quote ever created or discussed within the relevant time period. |

22

| | Any complaints or communications from customers regarding the elimination or modification of job quotes; and<br><br>Any document that describes, summarizes or analyzes alternatives to the elimination or modification of job quotes that were evaluated or considered by Defendant. | |
|---|---|---|
| **RFP #29:** All Documents relating to proposals, actions or decisions by You or any other Drywall Supplier to limit the amount of Drywall that a customer is permitted to purchase. | Defendant incorporates its General Objections. Defendant further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the Request, including any limit put on a potential purchaser regardless of reason (e.g., credit hold). Defendant also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution. Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources: | TIN willing to produce:<br><br>Any document discussing, summarizing or analyzing any non-credit related reason to decline or limit the quantity sold for Drywall ordered from Defendant in the United States; and<br><br>Any document communicating to a customer or potential customer that Defendant would limit for non-credit reasons the amount of Drywall that the customer could purchase in the United States. |

23

| | Any document discussing, summarizing or analyzing any non-credit related reason to decline or limit the quantity sold for Drywall ordered from Defendant in the United States; and<br><br>Any document communicating to a customer or potential customer that Defendant would limit the amount of Drywall that the customer could purchase in the United States. | |
|---|---|---|
| **RFP #30:** All Documents relating to the quarterly and annual amount of industry-wide production of Drywall, including any documents relating to or supporting Your contentions regarding such production as set forth on page 6 of the Statement of Issues filed on January 25, 2013. | Defendant incorporates its General Objections. Defendant further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the Request. Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Documents sufficient to show quarterly and annual amounts of industry-wide production of Drywall in the United States; and | TIN willing to produce:<br><br>Documents reflecting or reporting quarterly and annual amount of industry-wide production of Drywall, including any supporting contentions in Statement of Issues. |

24

|  | Documents sufficient to show the industry-wide production of Drywall referenced on page 6 of the Statement of Issues. |  |
|---|---|---|
| **RFP #31:** All Documents relating to any meeting or communications with any Defendant (or its subsidiary or affiliate), or any other Drywall Supplier, relating to the supply of Drywall or limitations on the quantity of Drywall that could be purchased by a customer. | Defendant incorporates its General Objections. Defendant further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the Request. Defendant also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce any non-privileged documents that is a communication with another defendant relating to the supply of Drywall to a customer or to any non-credit limitations on the quantity of Drywall that could be purchased by a customer in the United States for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | TIN willing to produce:<br><br>Any documents relating to a communication with another defendant relating to the supply of Drywall to a customer or to limitations on the quantity of Drywall that could be purchased by a customer |
| **RFP #32:** All Documents discussing or concerning the following policies or practices of any other Drywall Supplier: a) Job Quotes or price protection policies or practices; b) policies or practices limiting the amount or | Defendant incorporates its General Objections. Defendant objects to the definition or use of "price protection" and "inventory levels" as being overly broad, vague and ambiguous as | TIN willing to produce:<br><br>Any documents discussing the job quote or price protection policies or practices of another |

| | | |
|---|---|---|
| volume of Drywall that a customer could purchase; or c) policies or practices relating to inventory levels. | used in the Request. Defendant objects to the definition or use of "policies or practices" as being overly broad, vague and ambiguous to the extent that it is intended to mean anything other than a formal written policy, protocol or practice. Defendant further objects to this Request on the grounds that is unduly burdensome in that it purports to require the production of "all" documents responsive to the Request. Defendant also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution. Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013 from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Any documents discussing the job quote or price protection policies or practices of another defendant in the United States;<br><br>Any documents discussing the policies or | defendant in the United States;<br><br>Any documents discussing the policies or practices of another defendant to limit the amount or volume of Drywall that a customer could purchase in the United States; and<br><br>Any documents discussing the policies or practices of another defendant as to its Drywall inventory levels in the United States |

|  |  |  |
|---|---|---|
|  | practices of another defendant to limit the amount or volume of Drywall that a customer could purchase in the United States; and<br><br>Any documents discussing the policies or practices of another defendant as to its Drywall inventory levels in the United States. |  |
| **RFP #33:** All Documents relating to meetings of the Gypsum Association, the Association of the Wall and Ceiling Industry, the Drywall Finishing Council, the Global Gypsum Conference or any other organization that You have participated in whose activities include matters relating to the supply or sale of Drywall, including the following documents: event calendars, attendee lists, meeting minutes, agendas, summaries, correspondence or other communications, and documents sufficient to identify the organization's Board of Directors. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "any other organization that You have participated in whose activities include matters relating to the supply or sale of Drywall" as overly broad, unduly burdensome, vague and ambiguous and is limiting the response to those organizations specifically identified in Request No. 33. Defendant also objects to this Request on the grounds that it is overly broad and unduly burdensome because Defendant does not maintain centralized business records that track the trade associations that its employees may belong to or the trade association meetings that its employees attend. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege. Defendant further objects to this Request to the extent that it seeks documents that are publicly available, or that can be obtained by the Plaintiffs with no more burden than would be imposed on Defendant to obtain and produce such documents or information. Defendant further objects to this Request as not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents in the possession, custody, or control of Defendant's employees other than executives with primary decision-making responsibility for establishing the sale price for Drywall sold in the United States. | TIN willing to produce:<br><br>All documents relating to:<br><br>Any meetings of Gypsum Association, the Association of the Wall and Ceiling Industry, the Drywall Finishing Council, or the Global Gypsum Conference;<br><br>Documents found within custodian files that identify the listed organization's board of directors;<br><br>Any event calendar, attendee list, meeting minutes, agendas, summaries, correspondence and other communications from or to the listed organizations. |

| | Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Any document that discusses or describes a meeting of one of the listed organizations;<br><br>Documents sufficient to identify the listed organization's board of directors; and<br><br>Any event calendar, attendee list, meeting minutes, agendas, summaries, correspondence and other communications from the listed organization. | |
| --- | --- | --- |
| **RFP #34:** Documents **<u>sufficient to identify</u>** the attendees, from You or other "Drywall Suppliers", at any meeting of the organizations encompassed by the preceding Request, or any committee or other subgroup of such organization. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "any other organization that You have participated in whose activities include matters relating to the supply or sale of Drywall" as being overly broad, unduly burdensome, vague and ambiguous and is limiting its response to the organizations listed in Request No. 33.  Defendant objects to this Request to the extent that it is duplicative of Request No. 33.  Defendant also objects to this Request on the grounds that it is overly broad and unduly burdensome because Defendant does not maintain centralized business records that track the trade associations that its employees may belong to or the trade association meetings that its employees attend. Defendant objects to the definition or use of or "any committee or other subgroup of such | TIN willing to produce:<br><br>Documents located within custodian files that identify the attendees at a meetings regarding Drywall sponsored by Gypsum Association, the Association of the Wall and Ceiling Industry, the Drywall Finishing Council, or the Global Gypsum Conference. |

| | organization" as being vague, ambiguous, overbroad and unduly burdensome to the extent it includes individuals who attended meetings regardless of their responsibility or authority for the production, sales, marketing or distribution of Drywall in the United States.  Defendant also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because, the Requests define "Drywall Suppliers" as any entity in the chain of distribution.  Defendant further objects on the ground that this document Request is unreasonably burdensome and seeks to impose obligations on Defendant beyond those required by the Federal Rules of Civil Procedure in that the document Request improperly functions as an interrogatory by purporting to require Defendant to examine, review, and compile especially for Plaintiffs a set of disparate documents from disparate sources.  Defendant further objects to this Request to the extent it seeks documents in the possession, custody, or control of Defendant's employees other than executives with primary decision-making responsibility for manufacture or sale of Drywall sold in the United States. Subject to and without waiving these or its General Objections, Defendant will produce non-privileged documents that identify the attendees at a meeting regarding Drywall sponsored by one of the listed organizations for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | |
|---|---|---|
| **RFP #35:** All Documents relating to any communication, presentation or discussion of Drywall industry conditions, the Drywall market, prices, capacity or capacity | Defendant incorporates its General Objections. Defendant objects to the definition or use of "any other organization that You have participated | TIN willing to produce:<br><br>All Documents relating to any communication, |

utilization, Job Quotes, Drywall supply, or limitations on Drywall purchases that occurred at or in connection with a meeting of the organizations (or subgroups or committees) encompassed by the preceding Requests, or that were provided to or received from any such organization, committee or subgroup.

in whose activities include matters relating to the supply or sale of Drywall," and "subgroups or committees" as overly broad, unduly burdensome, vague and ambiguous to the extent it includes individuals who attended meetings regardless of their responsibility or authority for the production, sales, marketing or distribution of Drywall in the United States and is limiting its response to the organizations listed in Request No. 33.  Defendant objects to this Request to the extent that it is duplicative of Request No. 33. Defendant also objects to this Request on the grounds that it is overly broad and unduly burdensome because Defendant does not maintain centralized business records that track the trade associations that its employees may belong to or the trade association meetings that its employees attend. Defendant further objects to this Request to the extent that it seeks documents that are publicly available, or that can be obtained by the Plaintiffs with no more burden than would be imposed on Defendant to obtain and produce such documents or information.  Defendant further objects to this Request to the extent it seeks documents in the possession, custody, or control of Defendant's employees other than executives with primary decision-making responsibility for establishing the sale price for Drywall sold in the United States.

Subject to and without waiving these or its General Objections, Defendant will produce the non-privileged presentations, handouts or discussion materials from a meeting of one of the identified organizations and that addressed or discussed, with respect to the sale of Drywall in the United States, Drywall industry conditions, the Drywall market, Drywall prices, capacity or capacity utilization, job quotes, the

presentation or discussion of Drywall industry conditions, the Drywall market, prices, capacity or capacity utilization, Job Quotes, Drywall supply, or limitations on Drywall purchases that occurred at or in connection with a meeting of the Gypsum Association, the Association of the Wall and Ceiling Industry, the Drywall Finishing Council, or the Global Gypsum Conference

| | supply of Drywall, or limitations on Drywall purchases for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | |
|---|---|---|
| **RFP #36:** All Documents that refer to, relate to, or contain information concerning any meeting, discussion or other communication between (a) any of Your officers, employees or other representatives and (b) any officer, employee or other representative of another Defendant relating to the sale, supply, prices (or other terms and conditions) of Drywall. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "other representative" as being overly broad, vague and ambiguous on the grounds that the meaning of this word is confusing as used in the Request and because Defendant does not necessarily know the job responsibilities of persons employed or utilized by other Defendants.   Defendant objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request to the extent it seeks documents relating to Drywall manufactured and sold outside the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce any non-privileged documents that reflect or refer to any communication with another defendant relating to the sale, supply, prices or terms and conditions for Drywall sold in the United States for the period January 1, 2011 through March 25, 2013 and from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | TIN willing to produce:<br><br>All documents that reflect or refer to or contain any information concerning any meeting, discussion or other communication  by an officer, employee or other representative of TIN with another defendant relating to the sale, supply, prices or terms and conditions for Drywall |
| **RFP #37:** All Documents that refer to, relate to, or | Defendant incorporates its General Objections. | TIN willing to produce: |

4819-7700-4310.2

| | | |
|---|---|---|
| contain information concerning Your sales of Drywall to, or Your purchases of Drywall from, or swapping Drywall with any other Defendant or Drywall Supplier. | Defendant further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request and to the extent that the definition or use of "Drywall Supplier" the Requests define "Drywall Suppliers" as any entity in the chain of distribution. Defendant objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request to the extent it seeks documents relating to Drywall manufactured and sold outside the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Documents sufficient to show Defendant's United States sales of Drywall, if any, to any other defendant;<br><br>Documents sufficient to show Defendant's United States purchases of Drywall, if any, from any other defendant; and<br><br>Documents sufficient to show Defendant's United States swaps of Drywall, if any, with any other defendant. | Documents sufficient to show Defendant's United States sales of Drywall, if any, to any other defendant;<br><br>Documents sufficient to show Defendant's United States purchases of Drywall, if any, from any other defendant; and<br><br>Documents sufficient to show Defendant's United States swaps of Drywall, if any, with any other defendant. |
| **RFP #38:** All Documents that refer to, relate to, or contain any information concerning any agreement, | Defendant incorporates its General Objections. Defendant further objects to the definition or | TIN willing to produce: |

| | | |
|---|---|---|
| contract or arrangement with any other Defendant relating to Drywall, including any joint venture, merger, acquisition, swap, toll processing agreement, export-related agreement, licensing agreement or any other transaction or agreement. | use of "any other transaction or agreement" as being overly broad, unduly burdensome, vague and ambiguous as used in this Request. Defendant further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will conduct a reasonable search and will produce a copy of any joint venture, swap or toll processing agreement with another defendant, relating to Drywall manufacture or production in the United States, and for the period January 1, 2011 through March 25, 2013, to the extent that such documents exist, are within Defendant's possession, custody or control, and Defendant is able to locate such documents after a reasonable search of appropriate sources. | Any agreement with any other Defendant relating to any Drywall  joint venture, merger, acquisition, swap, toll processing agreement, export-related agreement, licensing agreement or any other transaction or agreement. |
| **RFP #39:** All Documents that analyze, discuss or otherwise relate to: Drywall production capacity or capacity utilization; Drywall demand; the cost of producing or supplying Drywall; the profitability of producing or supplying Drywall; Drywall prices; Job Quotes; or other competitive market conditions for Drywall. | Defendant incorporates its General Objections. Defendant further objects to the definition or use of "analyze, discuss or otherwise relate, " "competitive market conditions," and "capacity utilization" as being overly broad, unduly burdensome, vague and ambiguous and because they would include all documents that analyze, discuss or otherwise relate to any of the topics in the Request regardless of their actual use in the production, sales, marketing or distribution of Drywall.  Defendant further objects that the | TIN willing to produce:<br><br>Any document summarizing, analyzing or describing Drywall industry production capacity or production utilization in the United States;<br><br>Any document summarizing, analyzing or describing the projected or actual overall demand for Drywall in the United States; and<br><br>Any document summarizing, analyzing or |

33

| | | |
|---|---|---|
| | Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents that relate to any of the topics in the Request.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request to the extent it seeks documents relating to Drywall manufactured and sold outside the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the transactional data described in the response to Request 8, the financial data and other documents described in the responses to Requests 9, 10, 11, 28, 32, 41 and the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Any document summarizing, analyzing or describing Drywall industry production capacity or production utilization in the United States;<br><br>Any document addressing the projected or actual overall demand for Drywall in the United States; and<br><br>Any document reporting, studying or analyzing competitive market conditions for Drywall in the United States. | describing competitive market conditions for Drywall in the United States.<br><br>Any document summarizing, analyzing or describing costs of producing or supplying drywall;<br><br>Any document summarizing, analyzing or describing profitability of producing or supplying drywall.<br><br>Excluded from the response is any obligation to include invoices, bills of lading, freight charges, bills of materials, transactional data or other documents that relate to cost or price but that are not within the scope of the request after TIN objection. |
| **RFP #40:** All Documents that analyze, discuss or | Defendant incorporates its General Objections. | TIN willing to produce: |

| | | |
|---|---|---|
| otherwise relate to a) Drywall price elasticity; b) product fungibility or interchangeability; or c) the ability or limitations of other products to function as substitutes for Drywall. This includes all Documents discussing or comparing the quality of, or market demand for, Drywall produced and sold by You, other Defendants, or other "Drywall Suppliers." | Defendant further objects to the definition or use of "analyze, discuss or otherwise relate, " as being overly broad, unduly burdensome, vague and ambiguous and because they would include all documents that analyze, discuss or otherwise relate to any of the topics in the Request regardless of their actual use in the production, sales, marketing or distribution of Drywall. Defendant further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request. Defendant also objects to the definition or use of "Drywall Supplier" as being overbroad, unduly burdensome, vague and ambiguous because the Requests define "Drywall Suppliers" as any entity in the chain of distribution.  Defendant further objects that the term "price elasticity" is vague and ambiguous. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Any report or analysis describing the price | Any report or analysis describing the price elasticity of demand for Drywall sold in the United States;<br><br>Any report or analysis describing the product fungibility or interchangeability for Drywall sold in the United States;<br><br>Any document report or analysis on the ability or limitations of other products to function as substitutes for Drywall sold in the United States; and<br><br>Any report or analysis of the fungibility or interchangeability of Defendant's Drywall products with Drywall manufactured by another defendant in the United States.<br><br>Production would be limited to above and would not include every single document relating in any way to pricing, elasticity, fungibility or interchangeability. |

35

| | elasticity of demand for Drywall sold in the United States;<br><br>Any report or analysis describing the product fungibility or interchangeability for Drywall sold in the United States;<br><br>Any document report or analysis on the ability or limitations of other products to function as substitutes for Drywall sold in the United States; and<br><br>Any report or analysis of the fungibility or interchangeability of Defendant's Drywall products with Drywall manufactured by another defendant in the United States. | |
|---|---|---|
| **RFP #41:** All monthly, quarterly and yearly audited or unaudited financial documents and data, including profit and loss statements, balance sheets, cash flow statements and other financial documents that relate to or include information relating to Drywall production, supply or sales prepared for or received by Your senior management (including the CFO, treasurer or controller for relevant business units). | Defendant incorporates its General Objections. Defendant further objects to the definition or use of "data," "other financial documents" and "senior management" as being overly broad, unduly burdensome, vague and ambiguous as these terms are confusing as used in the Request and would include supporting data as well as draft and financial documents. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege. Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce non-privileged documents relating to Drywall and production sufficient to show Defendant's regularly prepared monthly, quarterly and yearly | TIN willing to produce:<br><br>Documents sufficient to show Defendant's regularly prepared monthly, quarterly and yearly financial statements for its Drywall business, including profit and loss statements, balance sheets, and cash flow statements that include information relating to Drywall production, supply or sales prepared for or received by TIN senior management |

4819-7700-4310.2

| | financial statements for its Drywall business, including profit and loss statements, balance sheets, and cash flow statements for United States operations for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | |
|---|---|---|
| **RFP #42:** Documents **sufficient to show** by month, quarter and year the cost allocations, cost apportioning rules, and accounting practices that are used to calculate Your profits, profit margins or projected profits relating to the sale of Drywall. | Defendant incorporates its General Objections. Defendant further objects to the definition or use of "cost allocations," "cost apportioning rules" and "accounting practices" as being overly broad, unduly burdensome, vague and ambiguous to the extent they are intended to mean something other than a formal written policy, rule or protocol.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request and/or other Requests seeking related information, for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Any written accounting policy, guideline or formula used by Defendant to calculate costs, | TIN willing to produce:<br><br>Any written accounting policy, guideline or formula used by Defendant to calculate costs, profits, profit margins or projected profits relating to the sale of Drywall in the United States; and<br><br>Documents sufficient to show the monthly, quarterly, and yearly accounting of costs, profits, profit margins or projected profits relating to the sale of Drywall in the United States, to the extent such records are regularly prepared. |

37

| | profits, profit margins or projected profits relating to the sale of Drywall in the United States; and<br><br>Documents sufficient to show the monthly, quarterly, and yearly accounting of costs, profits, profit margins or projected profits relating to the sale of Drywall in the United States. | |
|---|---|---|
| **RFP #43:** Documents **sufficient to show** by month, quarter and year Your profits (including income measures such as EBIT and EBITDA), profit margins, profit levels, or projected profits relating to the sale of Drywall. | Defendant incorporates its General Objections. Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce non-privileged documents sufficient to show the requested information, to the extent it exists and is tracked on the requested bases, for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | TIN willing to produce:<br><br>Documents sufficient to show (and to the extent that the data exists and are regularly tracked on the requested basis) monthly, quarterly and annual TIN profits (including income measures such as EBIT and EBITDA), profit margins, profit levels, or projected profits relating to the sale of Drywall |
| **RFP #44:** Documents **sufficient to identify** each class, type, grade or category of Drywall product manufactured, marketed, sold, distributed or imported by You, including its brand name and its function, physical properties and characteristics. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "class, type, grade, or category," and "function, its physical properties and characteristics" as being overly broad, vague, and ambiguous as to Drywall.  To the extent this Request seeks documents concerning each "class, type, grade, or category" of Drywall sold by Defendant and "its function, physical properties, and characteristics," the Request is overbroad and unduly burdensome due to the numerous different products falling within Plaintiffs' | TIN willing to produce:<br><br>Documents sufficient to show the principal product types and the general physical characteristics of Drywall Defendant sold |

38

| | | |
|---|---|---|
| | definition of Drywall.  Defendant further objects on the ground that this document Request is unreasonably burdensome and seeks to impose obligations on Defendant beyond those required by the Federal Rules of Civil Procedure in that the document Request improperly functions as an interrogatory by purporting to require Defendant to examine, review, and compile especially for Plaintiffs a set of disparate documents from disparate sources.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce non-privileged documents sufficient to show the principal product types and the general physical characteristics of Drywall Defendant sold in the United States for the period of January 1, 2011 to March 25, 2013, from a reasonable number of custodians, to the extent that such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | |
| **RFP #47:** All documents that refer to, relate to, or contain information concerning: (a) percentages or shares of industry production, volume and/or sales of Drywall; (b) Drywall markets described in terms of geographic location or product type; and (c) supply and demand for Drywall. | Defendant incorporates its General Objections.  Defendant further objects that this Request is overly broad, unduly burdensome, vague and ambiguous in its use of "all documents that refer to, relate to, or contain information concerning" and as to "supply and demand" to the extent that term is not limited to an economic analysis.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this | TIN willing to produce:<br><br>All documents that refer to or contain information concerning: (a) percentages or shares of industry production, volume and/or sales of Drywall; (b) Drywall markets described in terms of geographic location or product type; and (c) supply and demand for Drywall |

| | | |
|---|---|---|
| | Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2008 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Any report, study or analysis describing percentages or shares of Drywall production, volume or sales in the United States, including Defendant's and its competitors' positions;<br><br>Any report, study or analysis describing relevant product or geographic markets for Drywall sold in the United States; and<br><br>Any report, study or economic analysis describing supply and demand for Drywall in the United States. | |
| **RFP #48:** All reports, studies, forecasts, business plans, projections, analyses, articles, papers, and presentations related to the market for Drywall, including prices, costs, profits, market concentration, competition, entry of suppliers in the market for Drywall, barriers to entry, price elasticity, product fungibility or interchangeability, and any known substitutes for Drywall, whether published or not, in draft or final form. | Defendant incorporates its General Objections. Defendant further objects to the definition or use of "market concentration" and "product fungibility" as being overly broad, unduly burdensome, vague and ambiguous.  Defendant further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product | TIN willing to produce:<br><br>All reports, studies, forecasts, business plans, projections, analyses, articles, papers, and presentations related to the market for Drywall, including prices, costs, profits, market concentration, competition, entry of suppliers in the market for Drywall, barriers to entry, price elasticity, product fungibility or interchangeability, and any known substitutes for Drywall, whether published or not, in draft or final form. |

40

| | | |
|---|---|---|
| | doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | |
| **RFP #49:** All Board of Directors materials, including meeting attendance lists, notes, agendas, resolutions, communications, reports and analyses, relating or referring to (a) the pricing or production of Drywall; (b) competitive conditions in the Drywall market; (c) Job Quotes; or (d) any other Defendant. | Defendant incorporates it General Objections. Defendant further objects to the definition or use of "competitive conditions" as overly broad, unduly burdensome, vague and ambiguous, and objects to the extent the Request is not limited to the Drywall business. Defendant further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request and seeks documents from any board other than that for the named defendant.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 | TIN is willing to produce:<br><br>Any materials provided to the board of directors (including meeting attendance lists, agendas, resolutions, correspondence, reports and analyses) discussing the pricing or production of Drywall in the United States;<br><br>Any materials provided to the board of directors (including meeting attendance lists, agendas, resolutions, correspondence, reports and analyses) discussing competition in the Drywall market;<br><br>Any materials provided to the board of directors (including meeting attendance lists, agendas, resolutions, correspondence, reports and analyses) discussing job quotes for Drywall sales in the United States; and<br><br>Any materials provided to the board of directors (including meeting attendance lists, agendas, resolutions, correspondence, reports and analyses) discussing the United States Drywall business of any other defendant. |

|  |  |  |
|---|---|---|
|  | through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Any materials provided to the board of directors (including meeting attendance lists, agendas, resolutions, correspondence, reports and analyses) discussing the pricing or production of Drywall in the United States;<br><br>Any materials provided to the board of directors (including meeting attendance lists, agendas, resolutions, correspondence, reports and analyses) discussing competition in the Drywall market;<br><br>Any materials provided to the board of directors (including meeting attendance lists, agendas, resolutions, correspondence, reports and analyses) discussing job quotes for Drywall sales in the United States; and<br><br>Any materials provided to the board of directors (including meeting attendance lists, agendas, resolutions, correspondence, reports and analyses) discussing the United States Drywall business of any other defendant. |  |
| **RFP #50:** For Specified Agreed Custodians, the following documents:<br>a)      All diaries, appointment books, notes or records of business appointments, calendars and notebooks;<br>b)      All telephone billing records (including office, home or cellular telephone calls) and notes or records of telephone calls;<br>c)      All expense reports, reimbursement Requests, vouchers and travel records and receipts. | Defendant incorporates its General Objections. Defendant further objects that this Request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects that this Request infringes on its employees' rights to privacy.  In addition, Defendant objects to subsections (a) and (b) of this Request on the grounds that they seek information beyond Defendant's possession, custody, and control | TIN is willing to produce:<br><br>All diaries, appointment books, notes or records of business appointments, calendars and notebooks<br><br>All telephone billing records (including office, home or cellular telephone calls)<br><br>All expense reports. |

42

| | | |
|---|---|---|
| | including but not limited to personal diaries, appointment books, calendars, notebooks, telephone bills and statements for home telephones or personal cellular phones. Defendant further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request. Defendant further objects that this Request calls for the production of documents outside of its possession, custody or control.  Defendant objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request from a reasonable number of custodians to the extent such documents exist, relate to Drywall sold in the United States for the period January 1, 2011 through March 25, 2013, are within Defendant's possession, custody or control and are located after a reasonable search of appropriate sources: Any diary, appointment book, records of appointments, calendars and notebooks used for business purposes related to Drywall, with redactions for any entry that reflects an exclusively personal (i.e. non-business) matter;<br><br>To the extent maintained and reasonably accessible, telephone billing records for any landline or cell phone provided by Defendant for use by the individual; and<br><br>Expense reports for expenses related to the Drywall business. | Production would be limited to above and would not include RFR, vouchers and receipts. |

43

| | | |
|---|---|---|
| **RFP #51:** All Documents concerning or produced in connection with any government investigation, litigation or merger or acquisition analysis or approval relating to Drywall, including all communications with any governmental entity relating to any such investigation. | Defendant incorporates its General Objections. Defendant further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request. Defendant further objects that this Request seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent it is not limited to actions relating to Drywall sales in the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Documents sufficient to identify any government antitrust investigation that included or related to the manufacture or sale of Drywall sold in the United States; and<br><br>A copy of any document production made to a state or federal government agency in response to any request for documents or CID in connection with an antitrust investigation relating to the manufacture and sale of Drywall in the United States, but only with respect to documents concerning Drywall and not as to | TIN is willing to produce documents included in its Florida AG document production. |

44

| | any other products. | |
|---|---|---|
| **RFP #52:** All Documents that refer or relate to any disciplinary or similar action imposed on, or any investigation made of, any of Your directors, officers, salesmen, agents or employees with respect to any actual or alleged violation of the United States or any state antitrust or other similar laws (or any company antitrust compliance policy) that related in any way to the supply or sale of Drywall. | Defendant incorporates its General Objections. Defendant further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request as to all directors, officers, salesmen, agents and employees.  Defendant further objects that this Request infringes on its employees' rights to privacy.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will search for and produce any non-privileged responsive documents describing any disciplinary or similar action for the period January 1, 2011 through March 25, 2013, for failure to comply with antitrust laws or policies in connection with Drywall for a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | TIN willing to produce:<br><br>Any documents describing any disciplinary or similar action for violation of the United States or any state antitrust laws. |
| **RFP #53:** All Documents referring or relating to complaints by a distributor or other purchaser about the price, availability or allocation of Drywall, or Your Job Quote policies or modification of those policies. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "Your Job Quote policies" and the use of "referring or relating to" and "complaints" as being overly broad, unduly burdensome, vague and ambiguous.  Defendant further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the | TIN willing to produce:<br>All Documents referring or relating to complaints by a distributor or other purchaser about a price increase, availability or allocation of Drywall, or Defendant's Job Quote policies or modification of those policies. |

45

| | | |
|---|---|---|
| | production of "all" documents responsive to the Request.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will search for and produce any non-privileged documents reflecting customer complaints regarding any price increase, changes in job quote availability, change in terms of sale or limits on the supply of Drywall sold in the United States for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | |
| **RFP #56:** All Documents referring or relating to any non-prosecution agreement, cooperation agreement, and/or leniency application with the United States Department of Justice, Federal Trade Commission, any state governmental agency, or any foreign competition authority relating to Drywall. | Defendant incorporates its General Objections. Defendant further objects to this Request is overbroad and not reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to actions relating to Drywall sales in the United States, and more specifically to agreements or applications relating to pricing and/or job quotes for Drywall.<br><br>Subject to and without waiving these or its General Objections, Defendant states that it has no documents responsive to this Request. | No responsive documents. |
| **RFP #57:** All Documents produced to or received from any party or third party related to or in connection with this action. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "related to or in connection with" and "any | TIN will produce copies of any responsive documents TIN obtains from third parties by means of compulsory process in this case with the |

46

| | party or third party" as being overly broad, unduly burdensome, vague and ambiguous as it would include other Defendants, documents that are publicly available, or that can be obtained by the Plaintiffs with no more burden than would be imposed on Defendant to obtain and produce such documents or information. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or the common-interest privilege.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce copies of any responsive documents Defendant obtains from third parties by means of compulsory process in this case, with the expectation that Plaintiffs will do the same. | expectation plaintiffs will do the same |
|---|---|---|
| **RFP #58:** All Documents that otherwise support Your defenses in this action or that You may use at trial in this matter. | Defendant incorporates its General Objections. Defendant further objects that the Request seeks documents protected by the attorney-client privilege and the attorney work product doctrine.  Defendant further objects that the Request is premature.  Defendant further objects that the Request seeks information duplicative of other Requests.  Accordingly, Defendant incorporates its responses and objections to those Requests as if set forth fully herein.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce non-privileged responsive documents supporting its defenses for the period January 1, 2011 through March 25, 2013, from reasonably accessible centralized sources, to the extent such documents exist and Defendant is able to locate such documents after a reasonable search | Subject to general and specific objections, TIN agrees to provide any responsive documents. |

47

| | of appropriate sources. | |
|---|---|---|
| **RFP #59:** All Documents that reflect actual or potential competition between domestic-made and foreign-made drywall. | Defendant incorporates its General Objections. Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the attorney-client privilege, attorney work product doctrine or the common-interest privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce non-privileged presentations, reports or analyses discussing competition in the United States between United States made and foreign-made Drywall for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources. | Subject to general and specific objections, TIN agrees to provide any responsive documents. |
| **RFP #60:** All Documents analyzing, studying or discussing: (a) competition between imported and domestic drywall; (b) quality differences between imported and domestic drywall; and (c) imported drywall as a substitute for domestic drywall. | Defendant incorporates its General Objections. Defendant objects to the definition or use of "analyzing, studying or discussing " as being overly broad, unduly burdensome, vague and ambiguous and because they would include all documents that analyze, study or discuss any of the topics in the Request regardless of their actual use in the production, sales, marketing or distribution of Drywall. Defendant further objects that the Request is overbroad and unduly burdensome insofar as it purports to require the production of "all" documents responsive to the Request.  Defendant further objects to this Request to the extent that it seeks documents protected from discovery under the | Subject to general and specific objections, TIN agrees to provide any responsive documents. |

48

|  | attorney-client privilege, attorney work product doctrine or any other privilege.  Defendant further objects to this Request as overbroad and unduly burdensome to the extent that it seeks documents relating to Drywall manufactured and sold outside of the United States.<br><br>Subject to and without waiving these or its General Objections, Defendant will produce the following non-privileged documents responsive to this Request for the period January 1, 2011 through March 25, 2013, from a reasonable number of custodians to the extent such documents exist and Defendant is able to locate such documents after a reasonable search of appropriate sources:<br><br>Any presentation, report or analysis discussing competition in the United States between imported and United States-made Drywall;<br><br>Any presentation, report or analysis discussing quality differences between Drywall imported to the United States and Drywall manufactured in the United States; and<br><br>Any presentation, report or analysis discussing the potential for imported Drywall to serve as a substitute for United States manufactured Drywall in the United States. |  |

49

# EXHIBIT 6

**USG Positions On Plaintiffs' RFPs and Interrogatories - For Purposes of Meet And Confer**

Note:

1. Each of our responses below is subject to the general and specific objections in our original written responses unless otherwise indicated;

2. The date range for the responsive documents and answers to interrogatories is a matter of dispute between the parties and we did not address the date range in this chart, as we anticipate resolution by the Court of this issue.

<u>**Requests for Production of Documents**</u>

| RFP # | USG Position 10/16/13 |
|---|---|
| 1 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 2 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 3 | USG has already provided this information. |
| 4 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 5 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 6 | USG will produce document retention policies in place that are not privileged for 2011 and 2012 and willing to disclose the date the hold notice was issued and confirm that all of USG's proposed custodians received the hold notice. |
| 7 | USG is willing to produce its Antitrust Compliance Policy in effect in 2011 and 2012. |
| 8 | USG objects to this data as not properly part of Phase I discovery. |
| 10 | USG willing to produce documents sufficient to show its formal policies for discounts, rebates, credits, freight allowances, and free goods and/or services relating to drywall, to the extent they exist. |
| 11 | Not willing to produce data.  Willing to produce documents, to the extent they exist, that are sufficient to show, on an annual, quarterly, and/or monthly basis, drywall production and capacity for each manufacturing facility, an accounting of USG's costs and profits relating to the manufacture, distribution, and sale of drywall in the U.S.. |
| 12 | USG willing to produce summary pricing reports for USG and competitors, where such information exists. |
| 14 | USG willing to produce formal written policies relating to setting prices, sales and production volume for drywall as set forth in original objections and response. |

1

| RFP # | USG Position 10/16/13 |
|:---:|:---|
| 15 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 16 | USG willing to produce final price announcements and any internal documents relating to official Drywall price change letters if such documents exist and can be located by a reasonable search of appropriate sources. |
| 17 | USG will to produce all documents utilized or referred  to by those individuals involved in determining or setting the prices to be charged for Drywall that Defendant is able to locate such documents after a reasonable search of appropriate sources |
| 18 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 19 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 20 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 21 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 22 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 23 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 24 | Willing to produce<br>a)  Documents that discuss or analyze general economic or market conditions in the context of the potential impact of those conditions on Drywall prices in the United States; and<br><br>b)  Documents that discuss or analyze the potential for demand, cost or capacity utilization for Drywall to affect the price of Drywall in the United States. |
| 25 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 26 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 27 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 28 | USG is willing to produce<br><br>a)  Documents that summarize or describe the job quote policies of USG or of any other Defendant for Drywall sales in the United States;<br><br>b)  Documents that describe, summarize, or analyze any decision, action, or communication by USG or another Drywall manufacturer to maintain, eliminate, or modify a job quote policy |

| RFP # | USG Position 10/16/13 |
|---|---|
|  | or practice;<br><br>c)  Documents supporting the contention that the elimination or modification of job quote practices was consistent with USG's independent business interest;<br><br>d)  Documents supporting the contention that job quotes were an abused business practice and/or that they were detrimental to the relationship between USG and its customers, including documents sufficient to show that job quotes were replaced by other forms of price protection that were well received by customers;<br><br>e)  Communications from customers expressing approval or disapproval of the decision to eliminate or modify job quotes; and<br><br>f)  Documents that describe, summarize, or analyze alternatives to the elimination or modification of job quotes that were evaluated or considered by USG. |
| 29 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 30 | USG willing to produce<br><br>a)  Formal reports and summaries relating to estimated quarterly and annual amounts of industry-wide production of Drywall in the United States; and<br><br>b)  Formal reports and summaries relating to  estimated industry-wide production of Drywall referenced on page 6 of the Statement of Issues. |
| 31 | USG believes no such documents exist but will stand on original objections and responses setting forth the categories of documents USG will produce if they exist. |
| 32 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 33 | USG willing to produce.<br><br>a)  Any document that discusses or describes a meeting of one of the listed organizations attended by USG employees, including agendas, reports or minutes for such meetings and materials distributed prior to, at or in follow up to such meetings; |

| RFP # | USG Position 10/16/13 |
|---|---|
|  | b) Documents sufficient to identify the listed organization's board of directors; and<br><br>c) Any event calendar, attendee list, meeting minutes, agendas, meeting summaries, correspondence and other communications from the listed organization attended by USG employees. |
| 34 | USG willing to produce documents that identify the attendees at a meeting attended by USG employees regarding Drywall sponsored by one of the listed organizations if such documents exist and can be located by a reasonable search of appropriate sources. |
| 35 | USG wiling to produce presentations, handouts, or discussion materials from a meeting of one of the identified organizations attended by USG employees that addressed or discussed, with respect to the sale of Drywall in the United States, Drywall industry conditions, the Drywall market, prices, capacity or capacity utilization, job quotes, the supply of Drywall, or limitations on Drywall purchases. |
| 36 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 37 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 38 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 39 | Willing to produce<br>a) Documents summarizing, analyzing, or describing Drywall industry production capacity or production utilization in the United States;<br><br>b) Documents addressing the projected or actual overall demand for Drywall in the United States;<br><br>c) Documents reporting, studying, or analyzing competitive market conditions for Drywall in the United States. |
| 40 | We would like to meet and confer to understand what plaintiffs seek with this request. |
| 41 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 42 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 43 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 44 | USG directs plaintiffs to its web site for all of this information. |

| RFP # | USG Position 10/16/13 |
|---|---|
| 47 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 48 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 49 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 50 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 51 | Willing to produce documents produced to the Florida AG and in relation to the DOJ inquiry surrounding the TIN-GP acquisition |
| 52 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 53 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 56 | USG has no documents responsive to this request setting forth the categories of documents USG will produce. |
| 57 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 58 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 59 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 60 | Stand on original objections and responses setting forth the categories of documents USG will produce. |
| 61 | Stand on original objections and responses setting forth the categories of documents USG will produce. |

**Interrogatories**

| Rog # | USG Position 10/15/13 |
|-------|----------------------|
| 1 | Stand on original objections and responses. |
| 2 | Stand on original objections and responses. |
| 3 | Stand on original objections and responses. |
| 4 | Stand on original objections and responses. |
| 5 | Stand on original objections and responses. |
| 6 | We have produced this information. |
| 7 | USG will make a reasonable attempt to describe instances in which it instituted a price increase or decrease for Drywall; changed policies, rules, protocols or practices for pricing Drywall; or changed any policy, rule or protocol affecting the quantity of Drywall a particular customer could purchase. |
| 8 | USG will make a reasonable attempt to identify current or former employees who recommended, decided or were otherwise involved in formulating or communicating general price changes. |
| 9 | Stand on original objections and responses. |
| 10 | Stand on original objections and responses. |
| 11 | Plaintiffs will be in as good a position as USG to review those documents for the information they seek.  Subject to the foregoing objections, USG will identify and describe in a summary fashion products sold by Drywall manufacturers that are interchangeable and/or potential substitutes for Gypsum Board. |
| 12 | Stand on original objections and responses. |