IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  DOMESTIC DRYWALL ANTITRUST LITIGATION | MDL NO. 2437<br>13-MD-2437 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

## MEMORANDUM RE PLAINTIFFS SUPPLYING FACTUAL INFORMATION SUPPORTING ALLEGATIONS

**Baylson, J.**                                                                                                           **May 12, 2014**

The issue presented is whether Plaintiffs must provide facts supporting Plaintiffs' allegations—a frequent issue in antitrust litigation.  The Court concludes, because of Plaintiffs' counsel's felicitous access to electronically stored information, that Plaintiffs must provide a pretrial statement setting forth the facts they now have, and Defendants must subsequently reciprocate.

Ignoring the capabilities which ESI allows the parties to search for and produce factual information in a case of this nature is like pretending businesses still communicate by smoke signals.

Defendants filed a motion to compel (ECF 99) Plaintiffs to answer Interrogatories 14 and 15, which seek disclosure of facts supporting the Plaintiffs' contentions.  Although the interrogatories themselves are fairly lengthy, Interrogatory 14 can be summarized as follows:

> With reference to Plaintiffs' allegations of a conspiracy to fix prices of gypsum wallboard, identify:
>
>     1.    the gypsum products which you contend were the objects of the alleged conspiracy.

      2.      all members of the alleged conspiracy.

      3.      all factual bases for your contention that each Defendant participated in the alleged conspiracy.

      4.      as to each Defendant: "all acts and omissions that you contend each took in furtherance of the alleged conspiracy.

There are several other subparagraphs seeking similarly detailed information. Interrogatory 15 asks that Plaintiffs "identify and describe with particularity each communication" that was made as part of the conspiracy and provide a number of details for each.

Plaintiffs have objected that these are standard "contention" interrogatories and are premature are this early stage of litigation. Plaintiffs also aver that Defendants have produced a large volume of documents which Plaintiffs' counsel must review in more detail before Plaintiffs should be forced to state detailed contentions.

**A.**    **Legal Standard.**

"An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed.R.Civ.P. 33(a)(2). The moving party bears the burden to show the "that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure." Fischer & Porter Co. v. Tolson, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (quoting In re Convergent Technologies Sec. Litig., 108 F.R.D. 328, 340-41 (N.D. Cal. 1985)). The court must first determine what type of information the interrogatories seek and whether the request is premature.

Contention interrogatories have been defined as:

any question that asks another party to indicate what it contends ... whether it

>  makes some specified contention ... to state all the facts on which it bases some
>  specified contention ... to take a position, and then to explain or defend that
>  position, with respect to how the law applies to facts ... [or] to spell out the legal
>  basis for, or theory behind, some specified contention.

Fischer, 143 F.R.D. at 95 (internal citations omitted). "Interrogatories . . . which seek the identification of witnesses or documents that support or contradict any of the controverted allegations in a complaint, do not fall into the category of contention interrogatories." In re Auto. Refinishing Paint Antitrust Litig., MDL 1426, 2006 WL 1479819 (E.D. Pa. May 26, 2006) (internal quotations omitted); see also this Court's opinion in In re Cigna Corp. Sec. Litig., CIV.A. 02-8088, 2006 WL 263631 (E.D. Pa. Jan. 31, 2006) ("[I]nterrogatories requesting the identity and location of persons having knowledge of any discoverable matter raised in the Complaint fall squarely within Rule 26(b)(1).").

Plaintiffs cite to Fischer, where Judge Naythons found "[t]he party seeking responses to contention interrogatories bears the burden of justification with specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure." 143 F.R.D. at 96 (internal quotations omitted). Since the interrogatories were filed early in the pretrial period before substantial discovery was completed, Judge Naythons denied the motion to compel without prejudice. Id. at 96-97 (finding without discussion that the interrogatories were contention interrogatories). But Judge Naythons did order responses to interrogatories seeking the identification of witnesses, documents or other tangible evidence, because these were not contention interrogatories. Id. at 96.

In another antitrust MDL, Automotive Refinishing Paint Antitrust Litigation, Judge Surrick noted that "[a]s a threshold matter, antitrust cases generally call for broad discovery." Id. at *9 (citing to Callahan v. A.E.V. Inc., 947 F. Supp. 175, 179 (W.D. Pa. 1996)). The plaintiffs objected to interrogatories asking them to identify the names of persons with knowledge, persons

3

who provided them with information concerning certain allegations in the plaintiffs' complaint, and documents that supported the plaintiffs' allegations. Id. at *5-6. Judge Surrick found the interrogatories were not contention interrogatories because they sought the identification of witnesses and supporting documents, and did not "require Plaintiffs to enumerate all the facts that support particular allegations." Id. at *4 (not considering whether the interrogatories were premature, because they were not contention interrogatories).

Judge Huyett of this Court ordered responses to interrogatories related to prior art in a patent litigation "even if they seek Defendants' contentions" because the "interrogatories will serve to clarify the issues and narrow the scope of the dispute." B. Braun Med. Inc. v. Abbott Labs., 155 F.R.D. 525, 527 (E.D. Pa. 1994) ("Thus they should not be deferred to the end of the discovery period.") (internal quotations omitted). Similarly, the Federal Circuit has recognized that "[c]ontention interrogatories—like the interrogatory here—serve an important purpose in helping to discover facts supporting the theories of the parties." Woods v. DeAngelo Marine Exhaust, Inc., 692 F.3d 1272, 1280 (Fed. Cir. 2012) ("Answers to contention interrogatories also serve to narrow and sharpen the issues thereby confining discovery and simplifying trial preparation.").

B.      **The Parties Should Disclose Facts Supporting Claims and Defenses.**

The decisions cited above were mostly decided before the proliferation of computer programs which enable counsel to search a large collection of documents for specific facts, without significant burden. Although there is a significant expense factor in collecting the documents and having them appropriately entered into an electronic form, once that expense has been undertaken, which is a normal expense in complex litigation, the actual searching for documents for specific facts is not expensive.

The Court had extensive discussions on this motion at a hearing on April 22, 2014. Plaintiffs object to detailing any of their factual evidence or contentions. Defendants assert that Plaintiffs have received voluminous discovery from Defendants, conducted investigations into their claims, and fundamental fairness requires Plaintiffs to provide facts within their knowledge that support their claim.

These interrogatories are not truly "contention" interrogatories.[1] The use of the word "contention" in the text of the interrogatories is certainly not dispositive. Interrogatories can ask contentions of facts, or law, or constitute mixed fact and law interrogatories. In this case, the interrogatories seek facts on which Plaintiffs base their claims, such as the names of the alleged conspirators, dates of communications, and the products subject to price fixing.

Because Defendants have represented that they have largely completed their document production and Plaintiffs have shown in some of their briefs that they have acquired detailed knowledge of some of the documents produced, the Court concludes that Defendants' request is not premature, given the abilities of an ESI base and search program for finding documents.

At this stage, Plaintiffs do not yet have sufficient information to identify all the relevant actors and communications, but it is reasonable to expect Plaintiffs to be able to identify at least some of them. Defendants have a reasonable need to know the identities of the products, individuals who discussed prices with competitors, and the dates and substance of the communications, to proceed with their own effective discovery and investigation.

Accordingly, Plaintiffs should provide the facts currently available, from the information that has already been exchanged and from their own investigation. Although both parties have

---

[1] In U.S. ex rel. Hunt v. Merck-Medco Managed Care, LLC, No 00 CV 737, 2005 WL 1971885, at *3 (E.D. Pa. Aug. 15, 2005), the interrogatories did not use the word "contend" or "contention," but asked the plaintiffs to identify contracts and communications, which Magistrate Judge Scuderi explained sought the factual basis of the plaintiffs' allegations, not legal contentions. Id. at *2.

meritorious arguments, the nature of this case warrants an Order that will require both sides to provide factual contentions in an orderly fashion.

C.     **Pretrial Statements.**

Rather than compel individual Plaintiffs to answer Defendants' interrogatories at this time, the Court will adopt a sequence of pretrial statements under which Plaintiffs' counsel will be required to set forth facts in their possession supporting their allegations by a specific deadline, after there has been sufficient time for review of documents but prior to depositions. Defendants must reciprocate.

Pretrial statements signed by counsel are preferable to interrogatory answers. In a simple case, such as the proverbial right-angle collision, or a breach of contract case, the parties themselves are the appropriate persons to answer interrogatories under oath because they are most likely to have personal knowledge of the facts and will testify to those facts at trial. However, in an antitrust case, the facts are largely gathered by counsel based on interviewing their clients, reviewing documents produced by the opposing party, conducting investigations, and consulting experts in the field and economic data. Thus, in an antitrust case, counsel are more appropriately in possession of facts than the Plaintiffs themselves. In addition, answers to interrogatories, because they must be taken under oath, are often qualified with disclaimers and other attempted simplifications of complex facts. Although there may not be perfection in pretrial statements drafted and signed by counsel, these can be more appropriately tailored to the issues in the case, based on the facts gathered and known by the lawyers.

There are several policy reasons for this approach, related to overall discovery and case management of complex antitrust cases. First, in order for discovery to be fair, a frequent exchange of information is beneficial. Waiting until the end of fact discovery before requiring a

party to set forth what facts it has learned may preclude legitimate fact discovery during the fact-discovery period.

Second, the exchange of information during the discovery period can lead the parties to learn the strengths and weaknesses of their own case and the other party's case, and may lead to constructive settlement discussions taking place during discovery, rather than at the end of the case as trial nears—resulting in substantial savings of attorneys' fees and costs.

Lastly, the exchange of fact information during the discovery period may prevent undue prejudice, such as one party knowing, but the other party not knowing, that a particular witness is very ill and his or her deposition should be taken promptly; or that a particular witness has plans to relocate to some very distant location where the subpoena power may not extend. These may be extreme examples, but they are not unusual.

Another example will support the fairness of this approach. Let us assume for the moment, that Plaintiffs have gathered information that a specific individual employed by one of the Defendants, in a non-supervisory low level job, has had discussions about prices or price levels with a similarly situated to an employee of another defendant. Both Defendants have a written policy forbidding such discussions, or any type of agreement about prices, with competitors. Whether either employee did in fact have such discussions, or whether they had any impact on the company's behavior, are facts to be proven. However, defense counsel should know about this fact before discovery is completed, so this information can be assessed by each employer. Waiting until discovery is over for Plaintiffs to reveal this fact would be unfair. The need for fairness is also present where Plaintiffs believe a certain individual has valuable information about price exchanges but is a former employee of one of the Defendants. This fact should be made known to opposing counsel, so the individual's testimony can be taken during

the discovery period.

Defense counsel should be under similar obligations to disclose facts they have which Plaintiffs have a right to learn as part of pretrial discovery.

The Manual for Complex Litigation supports using statements of contentions. In a somewhat different procedural context, § 11.473 suggests the process begin with "the court order[ing] counsel for one side, typically the plaintiff's, to draft a series of numbered, narrative statements of objective facts that they believe can be established, avoiding argumentative language, labels, and legal conclusions." Manual for Complex Litig. (Fourth) § 11.473 (2004). This process can streamline litigation by narrowing the facts that remain in dispute. Id. The Manual counsels judges to consider "the time and expense expended" in identifying facts that remain in dispute. Id. In addition, there is ample precedent for requiring pretrial statements. See, e.g., U. S. v. Am. Tel. & Tel. Co., 461 F. Supp. 1314, 1346-47 (D.D.C. 1978) ("The procedures specified herein are designed to move the case along while seeking to escape the adverse consequences inherent in the several contending methods of handling the pretrial process."); In re Ampicillin Antitrust Litig., 88 F.R.D. 174, 180 (D.D.C. 1980) (requiring three successive pretrial statements to narrow the issues and bring the case to trial in a reasonable period of time).

**D.**     **Impact of Electronically Stored Information ("ESI") on this Issue.**

ESI tools enable parties to use search terms and other methods to quickly identify relevant information and documents produced. The benefits of these ESI tools substantially reduce the burden on Plaintiffs to provide the facts that the Defendants have requested.

In this case, both Plaintiffs' and Defendants' counsel are using ESI. The briefs show they are diligently using the information provided by their own clients, as well as discovery provided

by opposing parties. Rulings on discovery in 2014 must recognize we live in a world of ESI, which supports the Court's requirement that counsel submit pretrial factual statements as part of discovery, in part because doing so is not burdensome.

Although ESI is often condemned as overly expensive and unproductive, there are some cases in which its benefits vastly outweigh its costs. This case is likely such a case. The issues are important, the financial stakes of both discovery and damages are high, and there are important reasons of public policy justifying broad discovery in antitrust cases, regardless of the result. Some of the landmark antitrust cases of the last 50 years have resulted in changes in normative corporate behavior. Given contemporary tools of discovery, ESI plays an important part, and must be considered in ruling on discovery disputes. In this case, the agreement of counsel for 1,100 search terms and the millions of documents produced as a result can only be reviewed, and the relevant information efficiently extracted, by the use of computer-based programs. There is no question that the availability of ESI has promoted a beneficial improvement in the productivity of lawyers.[2]

Although much ink and more dollars have been spent bemoaning the excesses and expenses of ESI in the post-computer litigation world, this is a case where the parties can benefit from ESI. For example, Plaintiffs can easily use ESI tools to match dates and places of trade

---

[2]  As a young lawyer once upon a time myself, I spent hours in warehouses looking at hard copy documents and then a few years later, reading microfiche copies of more documents, making outlines, identifying potential "smoking guns," creating witness files, and using other techniques to represent a client, whether plaintiff or defendant.
  As a former member of the Advisory Committee on Civil Rules, I am well aware of the scholarship, arguments, comments provided, and the difficulty of finding precise words to regulate ESI. This process has been on going for approximately 20 years and has resulted in amendments to the Federal Rules of Civil Procedure with more changes being actively considered. As the Rules Enabling Act, 28 U.S.C.A. § 2072, provides, Congress has the last word on the contents of the Federal Rules of Civil Procedure. But despite its opportunities to alter the rules approved by the Supreme Court, there has been nary an objection from Congress when ESI rules have been proposed. Thus, one can conclude that not only are rulemakers appropriately responding to technological challenges of ESI, but our governing lawmakers are not taking action to make changes.

meeting with names of attendees. The availability of this technology is often improved by third-party vendors, who have their own sophisticated and proprietary methodologies for helping litigants deal with ESI, perhaps at greater cost, but also at greater efficiency and with more beneficial results. Vendors of ESI services have become an important part of the litigation landscape.

With ESI, search terms have become a well-recognized method for finding facts, and more sophisticated methodologies are being tested on the horizon. As Judge Peck noted, in a landmark opinion describing and allowing a relatively new search protocol, "predictive coding," every person who uses an email program uses predictive coding to filter out spam email. Moore v. Publicis Groupe, 287 F.R.D. 182, 184 n.2 (S.D.N.Y. 2012) adopted sub nom. Moore v. Publicis Groupe SA, No. 11-1279, 2012 WL 1446534 (S.D.N.Y. Apr. 26, 2012). Some judges who are not comfortable ruling on ESI issues will appoint experts or masters to deal with ESI issues. Nonetheless, disputes still arise and judges must apply not only the law, but also the potential of ESI, and the parties' own diligence in finding facts from ESI.

In conclusion, the Court believes that there are many reasons for requiring the information that Defendants seek and Plaintiffs have.

At the conclusion of the April 22, 2014 hearing, the Court allowed both parties to submit their suggestions for the content of the contention statements to be filed. Having reviewed these, the Court adopts the following topics:

**E.     Topics to be Included in Plaintiffs' Pretrial Statements.**

1.     Dates of trade association or other industry meetings, where prices may have been discussed, and the names of known attendees from specific Defendants.

2.     Names of each Defendant officers or employees believed to have had direct

communications with employees of another defendant about the subject matter of the Amended Complaint's allegations.

3. Identify the drywall products that were the subject of a pricing agreement among Defendants.

4. Defendants' price announcements (including elimination of job quotes) alleged to be the result of collusion.

5. The date, location, and individual participants in any other meetings held or communications made, whether involving Defendants or third parties, in furtherance of the alleged conspiracy.

6. The identities of any other fact witnesses who will support Plaintiffs' claims of collusion.

F. **Topics to be Included in Defendants' Pretrial Statements.**

The Court will require Defendants to respond to Plaintiff's contention statement after some discovery has taken place, which shall include the following items:

1. Any additional witnesses and the facts they know about trade association meetings, or communications and meetings among the Defendants identified in Plaintiffs' statement.

2. The names of any of Plaintiffs' personnel or class members on whom Defendants expect to rely in support of their defenses, *e.g.*: (a) no conspiracy to fix prices; (b) no conspiracy to eliminate job quotes; or (c) refutation of any of the economic factors or industry characteristics alleged in Plaintiffs' consolidated amended complaints.

The Court will direct the preparation of pretrial statements with the following requirements:

1.     Within forty-five (45) days, Plaintiff's counsel shall serve a statement of no more than fifty (50) pages, double spaced, containing consecutively numbered paragraphs with their good faith rendition of facts in their possession, whether from their own investigation or from Defendants' documents or other sources, that satisfy the topics listed above.  The statement of facts need not cite documents or disclose sources.  However, counsel shall sign and certify that the statements are a fair summary of the facts that they believe are true as of the date of the statement.

2.     The statements need not be filed of record at this time, are for purposes of discovery, are not admissible at trial, are subject to modification, and are not binding or preclusive.

Defendants will be required to submit a response before depositions are completed. Thereafter, Plaintiffs will supplement their initial statement after depositions have been completed but before expert reports.

The Court will set forth the due dates for these subsequent statements at a future pretrial conference.

An appropriate Order follows.

O:\13-MD-2437 - drywall\13md2437.memo.discovery.5.12.14.docx