IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>All Actions | MDL No. 2437<br><br>13-MD-2437 |

## MEMORANDUM RE MOTION TO COMPEL PRODUCTION OF ANTITRUST COMPLIANCE POLICY

**Baylson, J.**                                                                                                            **October 9, 2014**

At issue is whether the Court should grant the Indirect Purchaser Plaintiffs' motion to compel production of Defendant CertainTeed Gypsum, Inc.'s antitrust compliance policy, which CertainTeed argues is shielded by the attorney-client privilege. Because CertainTeed has adopted the policy and distributed it widely within its organization, the Court concludes the policy is not privileged and will grant the motion to compel.

### I. Background

During written discovery, Plaintiff requested CertainTeed produce "[a]ll Documents relating to Your policies, practices or guidelines concerning a) the United States antitrust laws, b) communications with competitors relating to price, output or supply, or c) any antitrust training provided to Your officers and employees." (Anderson Decl., Ex. A.) CertainTeed refused to turn over its antitrust compliance policy, claiming attorney-client privilege. On September 10, 2014, Plaintiffs moved to compel CertainTeed to turn over the policy. (ECF No. 138.) After briefing was completed, oral argument was held on October 6, 2014.

CertainTeed's antitrust compliance policy, which was submitted for *in camera* review, is intended to provide employees with an overview of general antitrust law principles and

1

procedures. The policy summarizes anti-competitive practices to be avoided, provides guidance for situations that could lead to violations, and details possible sanctions for antitrust violations.

The policy was drafted in 2008 by outside counsel and in-house counsel at CertainTeed's ultimate parent, Compagnie de Saint-Gobain, S.A. (Rayburn Decl. ¶ 4.) The evidence shows CertainTeed distributed the policy widely within its organization, including to more than 120 employees who attended a training session, as well as through its internal Internet site. (Id. ¶ 6.) In addition, CertainTeed provides antitrust compliance trainings annually to all executives and sales and marketing personnel. (Id. ¶ 8.) However, CertainTeed contends the policy has never been distributed outside the company. (Id. ¶ 6.)

## II. Parties' Arguments

Plaintiffs contend the policy is not privileged because it contains CertainTeed's general antitrust compliance policies and practices but no legal advice regarding a specific inquiry or investigation. Plaintiffs also argue the policy is not a confidential communication because it was distributed widely within CertainTeed in the ordinary course of business.

CertainTeed argues the policy is privileged because it meets all the elements for privilege: it is (1) a communication; (2) between privileged persons—the company's lawyers and employees; (3) was maintained in confidence because CertainTeed has never allowed its disclosure outside the company; and (4) is for purposes of providing legal advice because it is intended to provide legal advice and guidance to employees whose work implicates antitrust risks.

At the oral argument, the Court allowed CertainTeed to suggest redactions in the event the Court rejected its argument that the entire policy is privileged. Having reviewed CertainTeed's proposed redactions, the Court rejects this approach.

## III. Analysis

The issue of whether this kind of corporate compliance policy is privileged appears to be one of first impression in this Circuit.[1] But the general outlines of privilege law are well established.

The attorney-client privilege applies if the following elements are satisfied: (1) a communication; (2) made between privileged persons; (3) in confidence; (4) for the purpose of obtaining or providing legal assistance for the client. In re Teleglobe Commc'ns Corp., 493 F.3d 345, 359 (3d Cir. 2007) (quoting Restatement (Third) of the Law Governing Lawyers § 68 (2000)). The party asserting the privilege bears the burden of proving it applies. In re Grand Jury Empanelled Feb. 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979).

Privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." Fisher v. United States, 425 U.S. 391, 403 (1976). Because the privilege obstructs the truth-finding process, it should be applied "only where necessary to achieve its purpose." Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007). The privilege applies only to legal advice, and not where the lawyer provides non-legal business advice. Id.; see also Kramer v. Raymond Corp., No. 90-5026, 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992) ("[T]he privilege will apply only if the communication's primary purpose is to gain or provide legal assistance.").

CertainTeed relies on Teleglobe to argue its antitrust compliance policy is privileged. Teleglobe lays out the applicable test for determining whether the attorney-client privilege applies and contains some broad language about the desirability of applying the privilege "to

---

[1] One court from outside this Circuit that considered whether an antitrust compliance manual was privileged noted the dearth of judicial decisions on the subject. In re Sulfuric Acid Antitrust Litig., 235 F.R.D. 407, 430 (N.D. Ill. 2006) (suggesting such policies may be outside the scope of the privilege because "they are often merely a compendium of policies and rules"). Companies also frequently disclose their compliance policies voluntarily as evidence of their efforts to comply with the antitrust laws.

3

encourage *compliance-enhancing* communication." In re Teleglobe, 493 F.3d at 361. But Teleglobe contains no discussion of whether corporate compliance policies are privileged. Instead, Teleglobe addressed whether a corporation could rely on the joint-client or common-interest privilege to shield documents sought by its former wholly-owned subsidiaries in litigation. Id. at 354. Moreover, Teleglobe does not stand for the proposition that all "compliance-enhancing" communications between a company's employees and its lawyers are protected. It only instructs courts not to mechanically apply privilege to all communications between employees and corporate counsel because some of those communications may not be privileged (i.e., those facilitating fraud). Id. at 361.

The other cases on which CertainTeed relies likewise do not implicate corporate compliance policies. Faloney v. Wachovia Bank, N.A., 254 F.R.D. 204, 210 (E.D. Pa. 2008) (concluding an email drafted by corporate counsel summarizing a conference call relating to defendant's conduct that was subject of the suit constituted privileged legal advice, not unprotected business advice); In re Brand Name Prescription Drugs Antitrust Litig., No. 94-897, 1996 WL 5180, at *2 (N.D. Ill. 1996) (finding privileged a presentation prepared by in-house counsel describing the application of antitrust laws to specific aspects of the company's business given to seven company executives).

Plaintiffs rely on three cases from outside this Circuit in support of their position that the policy is not privileged. In re Sulfuric Acid Antitrust Litig., 235 F.R.D. 407 (N.D. Ill. 2006), most analogous to the instant case, involved an antitrust compliance manual prepared by counsel and distributed to all employees of a corporation involved in marketing, sales, and production management. The court concluded that most of the manual was not privileged because it did not reveal client confidences, only articulated the company's policies, and provided an overview of

4

antitrust law in various jurisdictions. Id. at 431. After additional briefing, in a supplemental decision, the court considered hypotheticals in the manual that were created by counsel to assist employees in better understanding antitrust law. In re Sulfuric Acid Antitrust Litig., 432 F. Supp. 2d 794, 796 (N.D. Ill. 2006). The court concluded the hypotheticals were not privileged because they were "instructional devices, not responses to requests for legal advice" and were creations of the author, not reflections of actual scenarios involving the company. Id. at 796–97.

In Hartford Life Insurance Co. v. Bank of America Corp., No. 06-3805, 2007 WL 2398824, at *6 (S.D.N.Y. Aug. 21, 2007), the court found a due diligence presentation appended to the bank's due diligence manual was not privileged because it provided only generic descriptions of the law, did not apply those generic legal principles to specific facts, and did not disclose or reflect any confidential information disclosed by the bank. Although the document outlined the bank's due diligence policies, it contained "only highly generalized guide-lines" and "no specific factual information." Id.

Finally, Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 858 (D.C. Cir. 1980) involved memoranda from regional Department of Energy counsel to auditors working in field offices, which were issued in response to requests for interpretations of regulations within the context of particular facts encountered by auditors in conducting an audit of the energy firm. The court rejected the agency's claim of privilege, finding the memoranda were "neutral, objective analyses of agency regulations" resembling "question and answer guidelines which might be found in an agency manual" and contained no private agency information or legal advice to the agency. Id. at 863. Moreover, the evidence revealed no attempt by the agency to keep the memoranda confidential. Id.

5

CertainTeed contends these decisions all rested on the fact that no confidential client information was disclosed in the documents found non-privileged. But CertainTeed argues the scope of privilege in the Third Circuit is "substantially broader" because it applies to all legal advice in communications from attorney to client, whether or not confidential client information is disclosed. There is a split between courts as to whether communications from attorney to client are privileged only to the extent confidential client information is revealed or more broadly to the extent they contain privileged legal advice. Compare In re Six Grand Jury Witnesses, 979 F.2d 939, 943–44 (2d Cir. 1992) (privilege applies only to the extent attorney communication reveals client confidences) with United States v. Amerada Hess Corp., 619 F.2d 980, 986 (3d Cir. 1980) (privilege applies to attorney communication regardless of whether it reveals client confidences).

But CertainTeed overstates the difference between privilege law in this Circuit and elsewhere. The attorney-client privilege in the Third Circuit remains narrowly construed. See Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1429 (3d Cir. 1991). Moreover, Amerada Hess does not suggest all communications from attorney to client are privileged—the party seeking privilege must still establish the factors enumerated in Teleglobe for the privilege to apply.

Furthermore, the case most analogous to this matter, Sulfuric Acid, was decided in the Seventh Circuit, which adheres to the Third Circuit's view that privilege applies to communications from attorney to client if they reveal client confidences or provide legal advice. See United States v. Defazio, 899 F.2d 626, 635 (7th Cir. 1990). The Sulfuric Acid court also recognized the Circuit split regarding communications from attorney to client and explicitly

noted the antitrust compliance manual would be "outside the scope of the attorney-client privilege, whether viewed broadly or narrowly." In re Sulfuric Acid, 235 F.R.D. at 430.

Construing the attorney-client privilege narrowly, application of the privilege should ordinarily be limited to legal advice leading to a decision by the client. CertainTeed's policy, by contrast, is general and does not contain any specific advice. Its purpose is to help insure that its employees do not violate the antitrust laws. No court has yet held that a corporate policy of lawfulness is protected from discovery as privileged. Moreover, there is no evidence CertainTeed's parent company would have refrained from creating the policy absent the privilege. See Fisher, 425 U.S. at 403.

There is no disputing that communications between CertainTeed's lawyers and its executives leading up to the adoption of its compliance policy are privileged. But as the policy at issue in Sulfuric Acid, CertainTeed's antitrust compliance policy is more akin to a reference or instructional guide. Although it is based on legal advice, the policy is primarily a business policy. See Kramer, 1992 WL 122856, at *1. CertainTeed's argument is no better than a company arguing that because its decision on how to market or advertise a product, or what conditions of sale should apply, was based on legal advice subject to the attorney-client privilege, the company's business policies are themselves privileged.

CertainTeed's argument that it has maintained the policy in confidence because it has not distributed it outside the company is undermined by the wide distribution of the policy within the organization. CertainTeed distributed the policy to more than 120 employees who attended a training session and made it available to numerous employees on an internal Internet site. Moreover, there is no evidence CertainTeed labeled the document as confidential or privileged or indicated it had that status to employees when distributing the policy.

## IV. Conclusion

Because the evidence shows CertainTeed has adopted this antitrust compliance policy and distributed it widely throughout its organization, the policy has lost any privileged communication status. Accordingly, the Court will grant Plaintiffs' motion to compel production of the policy. This holding is without prejudice to a party designating the policy as confidential under the Protective Order entered in this case (ECF No. 56).

An appropriate order follows.

O:\13-MD-2437 - drywall\13-md-2437 - Memorandum MTC Compliance Policy - 10.9.2014.docx