# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION | MDL No. 2437 13-MD-2437 |
| THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | |

**MEMORANDUM IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENTS WITH TIN, INC., USG CORP., UNITED STATES GYPSUM CO., AND L&W SUPPLY CORP., AND AUTHORIZATION TO DISSEMINATE NOTICE TO THE SETTLEMENT CLASSES**

## TABLE OF CONTENTS

I.      BACKGROUND ..................................................................................................3

II.     THE TERMS OF THE SETTLEMENT AGREEMENTS .................................4

    A.      The TIN Settlement Agreement ................................................................4

        1.      The TIN Settlement Class.................................................4

        2.      The TIN Settlement Amount .................................................5

        3.      Cooperation.........................................................5

        4.      Releases, Discharge, and Covenant Not to Sue ............................6

        5.      Request to Use a Portion of the TIN Settlement for Ongoing Litigation Expenses...........................................6

        6.      Option to Rescind ....................................................6

    B.      The USG Settlement Agreement ................................................................7

        1.      The USG Settlement Class.................................................7

        2.      The USG Settlement Amount .................................................7

        3.      Cooperation.........................................................7

        4,      Releases, Discharge, and Covenant Not To Sue............................8

        5.      Most Favored Nation ...................................................9

        6.      Request to Use a Portion of the USG Settlement for Ongoing Litigation Expenses...........................................9

        7.      Option to Rescind ....................................................9

    C.      TIN's and USG's Sales Will Remain in the Litigation for Purposes of Calculating Damages and Joint and Several Liability ...........................10

III.    PROPOSED SCHEDULE .................................................................................10

IV.     THE TIN AND USG SETTLEMENTS ARE SUFFICIENTLY FAIR,
        RESONABLE, AND ADEQUATE TO AUTHORIZE DISSEMINATION OF
        CLASS NOTICE ........................................................................................12

        A.      Governing Standards.........................................................................12

        B.      The TIN and USG Settlements Are Fair and Within the Range of Possible
                Approval ...........................................................................................13

        C.      Allowing Interim Co-Lead Counsel to Use a Portion of the Settlement
                Funds for Ongoing Litigation Expenses Is Appropriate ........................16

V.      THE NOTICE PROGRAM SHOULD BE APPROVED ..................................17

VI.     CERTIFICATION OF THE PROPOSED SETTLMENT CLASSES IS
        WARRANTED ...........................................................................................19

        A.      The Proposed Settlement Classes Satisfy the Requirements of Rule 23(a)...........19

                1.      The Settlement Classes Are Sufficiently Numerous.................................20

                2.      There Are Common Questions of Law and Fact ......................................20

                3.      Plaintiffs' Claims Are Typical of Those of the Members of the
                        Settlement Classes ....................................................................21

                4.      Plaintiffs Will Fairly and Adequately Protect the Interests of the
                        Settlement Classes ....................................................................22

        B.      Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) .............................23

                1.      Common Legal and Factual Questions Predominate................................24

                2.      A Class Action Is Superior to Other Methods of Adjudication ................25

VII.    CONCLUSION...........................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....................................................................................... *passim*

*In re Auto. Refinishing Paint Antitrust Litig.*,
MDL No. 1426, Order (E.D. Pa. Oct. 13, 2004) (Surrick, J.)..................................17

*In re Auto. Refinishing Paint Antitrust Litig.*,
No. MDL 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ....................... *passim*

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994).....................................................................................21

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013)..................................................................................13

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
269 F.R.D. 468 (E.D. Pa. 2010).............................................................................21

*In re Chambers Dev. Sec. Litig.*,
912 F. Supp. 822 (W.D. Pa. 1995).........................................................................12

*In re Cigna Corp. Sec. Litig.*,
No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ...................................14

*In re Flat Glass Antitrust Litig.*,
191 F.R.D 472 (W.D. Pa. 1999) .......................................................................20, 21

*In re Flonase Antitrust Litig.*,
284 F.R.D. 207 (E.D. Pa. 2012)............................................................................25

*Gates v. Rohm & Haas Co.*,
248 F.R.D. 434 (E.D. Pa. 2008).......................................................................12, 14

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)...............................................................................12, 14

*In re Healthsouth Corp. Secs. Litig.*,
334 Fed. Appx. 248 (11th Cir. 2009).......................................................................6

*In re Insurance Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009)............................................................................12, 24

*Jones v. Commerce Bancorp, Inc.*,
  No. 05-5600, 2007 WL 2085357 (D.N.J. July 16, 2007) .......................................................13

*In re K-Dur Antitrust Litig.*,
  No. 01–1652, 2008 WL 2699390 (D.N.J. Apr. 14, 2008) ......................................................20

*Lake v. First Nationwide Bank*,
  156 F.R.D. 615 (E.D. Pa. 1994)............................................................................................14

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) .................................................................13, 14, 15, 16

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 644 (E.D. Pa. 2003) .....................................................................................5

*Marsden v. Select Medical Corp.*,
  246 F.R.D. 480 (E.D. Pa. 2007).............................................................................................19

*Mehling v. New York Life Ins. Co.*,
  246 F.R.D. 467 (E.D. Pa. 2007).............................................................................................13

*In re Mercedes-Benz Antitrust Litig.*,
  213 F.R.D 180 (D.N.J. 2003)..................................................................................................20

*In re Microcrystalline Cellulose Antitrust Litig.*,
  218 F.R.D. 79 (E.D. Pa. 2003)...............................................................................................20

*In re Microcrystalline Cellulose Antitrust Litig.*,
  No. 01-111, Final Judgment Order at ¶ 7 (E.D. Pa. June 15, 2005) (O'Neill, J.)...................16

*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y 1996) .............................................................................................25

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001)...................................................................................................23

*In re OSB Antitrust Litig.*,
  No. 06-826, 2007 WL 2253418 (E.D. Pa. Aug. 3, 2007) ......................................................20

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997) .......................................................................................11, 12

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999).................................. *passim*

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)...................................................................................................19

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001)................................................................19

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011)........................................................ *passim*

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 723 (3d Cir. 2011)................................................................14

*Walsh v. Great Atlantic & Pacific Tea Co., Inc.*,
    726 F.2d 956 (3d Cir. 1983)................................................................12

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004).......................18

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)................................................14, 21, 24

*Weisfeld v. Sun Chem. Corp.*,
    210 F.R.D 136 (D.N.J. 2002)................................................................20

*In re WorldCom, Inc. Sec. Litig.*,
    No. 02-3288, 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004)................................16

**Other Authorities**

The Manual for Complex Litigation, Fourth § 13.21 (2004)........................................16

*5 Newberg on Class Actions* §13:12 (5th ed. 2013)................................................12

Fed. R. Civ. P. 23................................................................2, 12, 18

Fed. R. Civ. P. 23(a) ................................................................19, 23

Fed. R. Civ. P. 23(a)(1)................................................................19, 20

Fed. R. Civ. P. 23(a)(2)................................................................20, 21

Fed. R. Civ. P. 23(a)(3)................................................................21

Fed. R. Civ. P. 23(a)(4)................................................................21, 22, 23

Fed. R. Civ. P. 23(a) and 23(b)(3) ................................................................4, 7

Fed. R. Civ. P. 23(b) ................................................................19, 23

Fed. R. Civ. P. 23(b)(3)................................................................17, 19, 23, 25

Fed. R. Civ. P. 23(c)(2)(B) ................................................................17

Fed. R. Civ. P. 23(c)(3) ................................................................................................17

Fed. R. Civ. P. 23(e) ................................................................................................3, 12

Fed. R. Civ. P. 23(e)(1) ............................................................................................17

Fed. R. Civ. P. 23(g) ................................................................................................23

Federal Rule of Evidence 902(11) ........................................................................5, 8

Direct Purchaser Plaintiffs Sierra Drywall Systems, Inc., Janicki Drywall, Inc., New Deal Lumber & Millwork Co., and Grubb Lumber Co., Inc. (collectively, "Plaintiffs") have reached two proposed class settlements to resolve their antitrust claims against certain Defendant drywall manufacturers and their subsidiaries. Specifically, TIN, Inc. ("TIN") has agreed to pay $5.25 million in exchange for the release and dismissal of TIN from the lawsuit. USG Corporation ("USG Corp."), United States Gypsum Company, and USG Corp.'s subsidiary L&W Supply Corporation (collectively, "USG") have agreed to pay $39.25 million in exchange for the release and dismissal of USG from the lawsuit.[1] The Settlement Agreements have identical settlement classes (the "TIN Settlement Class" and the "USG Settlement Class"; collectively, "the Settlement Classes"), defined as any person or entity that purchased Wallboard[2] in the United States directly from any Defendant (CertainTeed Gypsum, Inc., USG Corporation,[3] United States Gypsum Company, New NGC, Inc., Lafarge North America, Inc., Eagle Materials, Inc., American Gypsum Company LLC, PABCO Building Products, or TIN, Inc.) or their subsidiaries from January 1, 2012 through November 30, 2014. Plaintiffs respectfully move for Preliminary Approval Orders[4] provisionally certifying the Settlement Classes and finding that the proposed

---

[1] The TIN Settlement Agreement is attached as Exhibit A, and the USG Settlement Agreement is attached as Exhibit B (collectively, "Settlement Agreements").

[2] "Wallboard" refers to paper-backed gypsum wallboard, which is also known as drywall or plasterboard. "Wallboard" is defined in both Settlement Agreements as "panel products consisting of a gypsum core with a paper surfacing on the face and back." TIN Settlement Agreement at ¶ 11; USG Settlement Agreement at ¶ 4.

[3] L&W Supply Corporation ("L&W") is a wholly-owned subsidiary of USG Corporation engaged in drywall distribution. USG_MDL_00178020-118 (USG Corporation Form 10-K for the year ending December 31, 2012) at USG_MDL_00178022 and USG_MDL_00178025. Drywall purchases from L&W are included in the Settlement Classes.

[4] The proposed TIN Settlement Preliminary Approval Order is attached as Exhibit C, and the proposed USG Settlement Preliminary Approval Order is attached as Exhibit D. These are collectively referred to herein as the "Preliminary Approval Orders."

settlements with TIN and USG are sufficiently fair, reasonable, and adequate to allow dissemination of notice of the settlements to potential members of the Settlement Classes and:

1.      approving the mailed and publication forms of notice of the TIN and USG Settlements ("Notices");[5]

2.      ordering each Defendant to provide Interim Co-Lead Counsel with the names and addresses of any person or entity that purchased Wallboard directly from it from January 1, 2012 through November 30, 2014, to the extent not already provided;

3.      directing dissemination of the Notices;

4.      establishing a deadline for filing a motion for final approval of the TIN and USG Settlements and Interim Co-Lead Counsel's request to use a portion of the respective Settlement Funds to pay ongoing litigation expenses;

5.      establishing a deadline for seeking exclusion from one or both of the Settlement Classes;

6.      establishing a deadline for filing objections to either Settlement; and

7.      scheduling a hearing on final approval of the TIN and USG Settlements.[6]

Under the well-established procedures for approval of a class settlement under Rule 23, at this juncture the Court need only determine whether the settlements are sufficiently fair, reasonable and adequate to provide notice of them to the Settlement Classes.  *See*, *e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2004 WL 1068807, at *1 (E.D. Pa. May 11, 2004).  Plaintiffs submit that both the TIN and USG settlements satisfy the preliminary

---

[5]  Plaintiffs propose that information about both settlements be provided in the same notice.  The proposed Mailed Notice is attached as Exhibit E, and the proposed Publication Notice is attached as Exhibit F.

[6]  The proposed TIN Settlement Final Judgment Order is attached as Exhibit G, and the proposed USG Settlement Final Judgment Order is attached as Exhibit H.

approval standard, and respectfully request that the Court authorize dissemination of the Notices pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

## I.      BACKGROUND

This litigation began in December 2012, with the filing of class action lawsuits against Defendants by direct purchasers of Wallboard.  On May 7, 2013, after the cases were centralized before this Court by the Judicial Panel on Multidistrict Litigation, the Court appointed H. Laddie Montague, Jr. (Berger & Montague, P.C.), Kit Pierson (Cohen Milstein Sellers & Toll, PLLC), and Eugene Spector (Spector Roseman Kodroff & Willis, P.C.) as Interim Co-Lead Counsel for the direct purchasers (ECF No. 11).  On June 24, 2013, Plaintiffs filed a Consolidated Class Action Complaint (Dkt. 20) (the "Complaint") alleging that Defendants violated Section 1 of the Sherman Act by conspiring to raise and maintain the price of Wallboard purchased in the United States and cease the long-standing industry practice of providing job quotes.  The class period in the Complaint runs from January 1, 2012 through the present.  Plaintiffs contend that as a result of Defendants' anticompetitive conduct, direct purchasers of Wallboard paid higher prices than they would have in a competitive market.

Defendants answered the Complaint, denying Plaintiffs' claims that they violated the Sherman Act.  Discovery has proceeded.  Plaintiffs' counsel have reviewed millions of pages of documents and have completed numerous depositions of Defendants' current and former officers and employees, as well as of third parties, which relate to the issue of conspiracy.  Plaintiffs' initial expert report was served on January 23, 2015.

## II.     THE TERMS OF THE SETTLEMENT AGREEMENTS

The TIN and USG settlements were the result of separate, extensive arm's-length negotiations between experienced counsel that took place over several months.  Plaintiffs reached an agreement in principal with TIN first.  USG did not know the terms of Plaintiffs'

agreement with TIN when USG reached an agreement in principal with Plaintiffs.  Because both settlements are the result of extensive good faith negotiations after factual investigation and legal analysis by experienced counsel, Plaintiffs submit that the settlements meet the standards for preliminary approval.

The material terms of the Settlement Agreements are summarized below.

**A.      The TIN Settlement Agreement**

**1.      The TIN Settlement Class**

TIN stipulates, for purposes of the TIN settlement only, that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied and that, subject to Court approval, the following TIN Settlement Class be certified:

> [A]ll persons or entities that purchased Wallboard in the United States directly from any of the Defendants or their subsidiaries from January 1, 2012 through November 30, 2014.  Excluded from the Settlement Class are Defendants, the officers, directors and employees of any Defendant, the parent companies, subsidiaries and affiliates of any Defendant, the legal representatives and heirs or assigns of any Defendant, any federal governmental entities and instrumentalities of the federal government, any judicial officer presiding over the Action, and any member of his or her immediate family and judicial staff.

*See* TIN Settlement Agreement at ¶¶ 7, 12.

**2.      The TIN Settlement Amount**

TIN has agreed, as part of the consideration for the release and discharge provided by Plaintiffs, to pay $5.25 million to the TIN Settlement Class.  *See* TIN Settlement Agreement at ¶¶ 6, 21-22.  This amount is to be reduced in proportion to the percentage of all relevant Wallboard sales represented by any opt-outs to the TIN Settlement Class.  TIN Settlement Agreement at ¶ 23.[7]  In addition, $50,000 of the $5.25 million may be used to pay costs

_____

[7]  Both the TIN Settlement Agreement and the USG Settlement Agreement provide that, to the extent that either the TIN Settlement Amount or the USG Settlement Amount is reduced due to

associated with notice and notice administration, and if any portion of that $50,000 remains after all such costs are paid, that amount will become part of the TIN Settlement Fund.   TIN Settlement Agreement at ¶ 25.

### 3.    Cooperation

TIN has agreed, as part of the consideration for the release and discharge provided by Plaintiffs, to cooperate with Plaintiffs in their prosecution of the lawsuit against the remaining Defendants.   The cooperation includes: (a) interviews with three people currently or formerly under TIN's control; (b) trial depositions of three witnesses; and (c) a written declaration under Federal Rule of Evidence 902(11), or testimony if necessary, regarding the authenticity and "business records" qualifications of TIN documents.   *See* TIN Settlement Agreement at ¶¶ 39-46.

### 4.    Releases, Discharge, and Covenant Not to Sue

In consideration of the payment and cooperation provided by TIN, Plaintiffs, TIN Settlement Class Members, and other "Releasors" (as defined in the TIN Settlement Agreement at ¶ 5) have agreed to release TIN from any claims which were alleged or could have been alleged arising out of conduct prior to and including November 30, 2014, that relate to the facts, agreements, or other matters alleged in the Complaint.   The release specifically does not include claims based upon indirect purchases of Wallboard (which are part of a separate settlement) and

---

opt-outs, 25% of the reduction will be placed in an Opt-Out Fee and Expense Account, which, subject to approval by the Court, will be paid to Interim Co-Lead Counsel in consideration of their efforts on behalf of the opt-outs.   TIN Settlement Agreement at ¶ 23; USG Settlement Agreement at ¶ 34. Such payment would be appropriate in light of the benefit received by the opt-outs from the significant efforts expended by Interim Co-Lead Counsel in litigating the action and obtaining settlements with TIN and USG.   *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 657 (E.D. Pa. 2003) (establishing an account to compensate class counsel using funds from settlements between defendants and plaintiffs in tag along actions, and noting that "In carrying out the duties of lead and liaison counsel, designated counsel have done much to craft the case against defendants.  That work has benefitted all litigants in the class action and the tag-along actions.").

claims for any product defect, breach of contract, product performance, or warranty relating to Wallboard.  *See* TIN Settlement Agreement at ¶¶ 18-20.

### 5. Request to Use a Portion of the TIN Settlement for Ongoing Litigation Expenses

Interim Co-Lead Counsel intend to request Court approval to use up to $500,000 of the TIN Settlement Amount to pay ongoing litigation expenses that have been incurred or that are incurred in the future, including expenses related to economic experts, depositions, and document review and production.  *See* TIN Settlement Agreement at ¶ 28; Mailed Notice (Exhibit E) at 6; Publication Notice (Exhibit F) at 3.

### 6. Option to Rescind

TIN and Plaintiffs are permitted to rescind the TIN Settlement Agreement if it is modified or set aside on appeal.  TIN Settlement Agreement at ¶ 32.  A modification or reversal on appeal of any amount of the TIN Settlement Fund that the Court authorizes to be used to pay Plaintiffs' ongoing litigation expenses is not grounds for rescission.  *Id.*  The amount spent on notice and notice administration costs is not refundable to TIN in the event of rescission.  TIN Settlement Agreement at ¶ 25.

TIN also has the option to rescind the settlement under certain circumstances set forth in a confidential side letter agreement[8] entered into by the parties to the TIN Settlement Agreement. TIN Settlement Agreement at ¶ 33.

---

[8]  Both the TIN Settlement and the USG Settlement are accompanied by separate, confidential side letter agreements.  These side letter agreements contain terms giving TIN and USG the opportunity to withdraw from the proposed settlements in the event that a certain percentage of class members opt out of the Settlement Classes.  Such provisions are "typically not disclosed and [] kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out."  *In re Healthsouth Corp. Secs. Litig.*, 334 Fed. Appx. 248, 250, n.4 (11th Cir. 2009).  Plaintiffs will provide the side-letter agreements for *in camera* inspection upon request of the Court.

**B.    The USG Settlement Agreement**

**1.    The USG Settlement Class**

USG stipulates, for purposes of the USG settlement only, that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied and that, subject to Court approval, the following USG Settlement Class be certified:

> All persons or entities that purchased Wallboard in the United States directly from any of the Defendants or their subsidiaries from January 1, 2012 through November 30, 2014. Excluded from the Settlement Class are Defendants, the officers, directors and employees of any Defendant, the parent companies, subsidiaries and affiliates of any Defendant, the legal representatives and heirs or assigns of any Defendant, any federal governmental entities and instrumentalities of the federal government, any judicial officer presiding over the Action, and any member of his or her immediate family and judicial staff.

*See* USG Settlement Agreement at ¶¶ 17, 22.

**2.    The USG Settlement Amount**

USG has agreed, as part of the consideration for the release and discharge provided by Plaintiffs, to pay $39.25 million to the USG Settlement Class. *See* USG Settlement Agreement at ¶¶ 16, 29. This amount may be reduced under certain circumstances if there are any opt-outs to the USG Settlement Class. USG Settlement Agreement at ¶¶ 33-34. Further, a portion of the costs of notice and notice administration will be paid from the USG Settlement Fund. USG Settlement Agreement at ¶¶ 36-37.

**3.    Cooperation**

USG has agreed, as part of the consideration for the release and discharge provided by Plaintiffs, to cooperate with Plaintiffs in their prosecution of the lawsuit against the remaining Defendants. The cooperation includes: (a) depositions of two current or former USG employees; (b) interviews with and declarations or affidavits from four current or former USG employees; (c) trial testimony or trial depositions of two current or former USG employees; and (d) a written

declaration under Federal Rule of Evidence 902(11), or testimony if necessary, regarding the authenticity and "business records" qualifications of USG documents.  *See* USG Settlement Agreement at ¶¶ 53-61.

### 4.    Releases, Discharge, and Covenant Not To Sue

In consideration of the payment and cooperation provided by USG, Plaintiffs, USG Settlement Class Members, and other "Releasors" (as defined in the USG Settlement Agreement at ¶ 14) have agreed to release USG from any claims which were alleged or could have been alleged arising out of conduct prior to and including November 30, 2014, that relate to the facts, agreements, or other matters alleged in the Complaint.  The release specifically does not include claims based upon indirect purchases of Wallboard (which are part of a separate settlement) and claims for any product defect, breach of contract, product performance, or warranty relating to Wallboard.  *See* USG Settlement Agreement at ¶¶ 29-31.

### 5.    Most Favored Nation

Plaintiffs agree to refund a certain portion of the USG Settlement Amount to USG if Plaintiffs enter into settlements with Defendants New NGC, Inc., American Gypsum Company LLC or Eagle Materials, Inc. that are "more favorable" (as that term is defined in the USG Settlement Agreement) to those Defendants than the USG Settlement is to USG.  This provision does not apply in certain situations, such as after trial or a material change in the governing law. This provision also has a sunset provision that takes effect after twenty-four months.  *See* USG Settlement Agreement at ¶¶ 62-66.

### 6.    Request to Use a Portion of the USG Settlement for Ongoing Litigation Expenses

Interim Co-Lead Counsel intend to request Court approval to use up to $2 million of the USG Settlement Amount to pay ongoing litigation expenses that have been incurred or that are

incurred in the future, including expenses related to economic experts, depositions, and document review and production.  *See* USG Settlement Agreement at ¶ 43; Mailed Notice (Exhibit E) at 6; Publication Notice (Exhibit F) at 3.

### 7.      Option to Rescind

USG and Plaintiffs are permitted to rescind the USG Settlement Agreement if it is modified or set aside on appeal.  USG Settlement Agreement at ¶ 44.  A modification or reversal on appeal of any amount of the USG Settlement Fund that the Court authorizes to be used to pay Plaintiffs' ongoing litigation expenses is not grounds for rescission.  *Id.*  The amount of the USG Settlement Fund spent on settlement notice and notice administration is not refundable to USG in the event of rescission.  USG Settlement at ¶ 37.

USG also has the option to rescind the settlement under certain circumstances set forth in a confidential side letter agreement entered into by the parties to the USG Settlement Agreement. USG Settlement Agreement at ¶ 47.

### C.      TIN's and USG's Sales Will Remain in the Litigation for Purposes of Calculating Damages and Joint and Several Liability

The Settlement Agreements reflect that neither TIN nor USG has entered into any judgment sharing agreement with the remaining Defendants, and that, accordingly, Plaintiffs may assert that the monetary amount of TIN's and USG's sales of Wallboard in the United States will remain in the litigation as a basis for calculating damages against the remaining Defendants and will be part of any joint and several liability imposed against those Defendants.  TIN Settlement Agreement at ¶ 49; USG Settlement Agreement at ¶ 69.

III.   **PROPOSED SCHEDULE**

Plaintiffs propose the following schedule for dissemination of notice to potential members of the Settlement Classes and scheduling a hearing on final approval of the TIN and USG settlements:

1.     Within ten (10) days of entry of the Preliminary Approval Orders, all Defendants shall provide Interim Co-Lead Counsel with the names and addresses of direct purchasers of Wallboard in the United States from January 1, 2012 through November 30, 2014, to the extent not already provided;[9]

2.     Within eighteen (18) days from the receipt of information needed to facilitate notice from Defendants, the Mailed Notice (Exhibit E) shall be mailed by first class mail, postage prepaid, to all potential members of the Settlement Classes identified by Defendants, and shall be posted on the internet on a website under the control of Interim Co-Lead Counsel;

3.     Subject to lead time required for publication, the summary Publication Notice (Exhibit F) shall be published in the LBM Journal, a trade publication that caters to the building products industry, on the first available publication date on or after 7 days from the provision of individual mailed notice;

---

[9] On November 26, 2014, Plaintiffs requested that each Defendant provide names and addresses for customers making purchases between January 1, 2012 and November 30, 2014 (most Defendants had previously provided this information for the period between January 1, 2012 and January 31, 2013). Plaintiffs agreed that this data could be designated highly confidential, would only be used for notice purposes and that each customer list would be combined with the others for purposes of sending notice. As of February 6, 2015, Plaintiffs have received the requested data from TIN, Lafarge North America, Inc. and PABCO Building Products. In addition, USG, New NGC, Inc. and CertainTeed Gypsum, Inc. have all agreed to produce the requested data. Eagle Materials, Inc. and American Gypsum Company LLC have thus far refused to take a position on Plaintiffs' request.

4.      Within sixty-five (65) days of entry of the Preliminary Approval Orders, Interim Co-Lead Counsel shall file their motion for final approval of the TIN and USG Settlements along with proof that notice was provided as directed by the Court;

5.      All requests for exclusion from either the TIN Settlement Class or the USG Settlement Class must be in writing and postmarked no later than eighty (80) days after entry of the Preliminary Approval Orders;

6.      All objections to either the TIN Settlement or the USG Settlement must be in writing and postmarked no later than eighty (80) days after entry of the Preliminary Approval Orders;

7.      Interim Co-Lead Counsel shall file with the Court and serve on the parties their responses to any objection(s) to either the TIN Settlement or the USG Settlement no later than ninety-five (95) days after entry of the Preliminary Approval Orders; and

8.      A hearing on final approval of the TIN and USG Settlements to be scheduled on a date at the Court's convenience at least one hundred twenty (120) days after entry of the Preliminary Approval Orders.

## IV.   THE TIN AND USG SETTLEMENTS ARE SUFFICIENTLY FAIR, REASONABLE, AND ADEQUATE TO AUTHORIZE DISSEMINATION OF CLASS NOTICE

### A.   Governing Standards

Court approval of a class settlement is a two-step process.  First, the court must make an initial assessment of the fairness of the settlement and, if the settlement passes that test, grant preliminary approval.  Second, the court will order counsel to provide notice to the class and schedule a fairness hearing to determine whether to grant final approval of the proposed settlement.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 562 (D.N.J. 1997).  Thus:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation.  In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentation by parties. . . .  The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and date of the fairness hearing.

*Auto. Refinishing Paint*, No. MDL 1426, 2004 WL 1068807, at *1 (quoting *Manual for Complex Litigation (Fourth)* §21.632 (2004)).  *See also 5 Newberg on Class Actions* §13:12 (5th ed. 2013); *Prudential*, 962 F. Supp. at 562.

Authorization to disseminate notice is recognition by the court that the settlement is in the range of possible approval.  *See*, *e.g.*, *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 827 (W.D. Pa. 1995).  A settlement falls within the "range of possible approval" under Rule 23 if there is a conceivable basis for presuming that the standard applied for final approval will be satisfied.  Fed. R. Civ. P. 23(e); *In re Insurance Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009); *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999); *Walsh v. Great Atlantic & Pacific Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir. 1983).  "The preliminary approval decision is not a commitment to approve the final settlement; rather, it is a determination that there are no obvious deficiencies and the settlement falls within the range of reason."  *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008) (internal quotations and citation omitted); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (holding that the "preliminary determination establishes an initial presumption of fairness").  The final determination of whether to approve a settlement is made after a hearing

and a finding that the settlement is fair, reasonable, and adequate.  *In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).[10]

### B.   The TIN and USG Settlements Are Fair and Within the Range of Possible Approval

At the preliminary approval stage,

> the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute...   Instead, the court must determine whether "the proposed settlement discloses grounds to doubt its fairness or otherwise obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and whether it appears to fall within the range of possible approval... This analysis often focuses on whether the settlement is the product of 'arms-length negotiations.'"

*Auto. Refinishing Paint*, No. MDL 1426, 2004 WL 1068807, at *2 (citations omitted).  *See also Mehling v. New York Life Ins. Co.,* 246 F.R.D. 467, 472 (E.D. Pa. 2007) (contrasting the legal standards at preliminary approval versus final approval of a settlement and noting that "[i]n evaluating a proposed settlement for preliminary approval, however, the Court is required to determine only whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies … and whether it appears to fall within the range of possible approval.") (citations omitted); *Jones v. Commerce Bancorp, Inc.*, No. 05-5600, 2007 WL 2085357, at *2

---

[10]   The factors considered for final approval of a class settlement as "fair, adequate and reasonable" include:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.  *Sullivan v. DB Investments, Inc*., 667 F.3d 273, 319-20 (3d Cir. 2011) (citing, *inter alia*, *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).  *See also In re Prudential*, 148 F.3d at 323 (outlining additional considerations for the court in determining whether a class settlement is fair, adequate and reasonable); *In re Baby Prods. Antitrust Litig*., 708 F.3d 163, 174 (3d Cir. 2013) (adding the degree of direct benefit provided to the class as a factor for consideration).

(D.N.J. July 16, 2007) (preliminary approval "is granted unless a proposed settlement is obviously deficient"); *accord Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008). Here, there are no grounds to doubt the fairness of the Settlements, and they are not obviously deficient.

In reviewing a proposed settlement, a court should consider that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). *See also General Motors*, 55 F.3d at 784 (holding that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("Settlement of complex class action litigation conserves valuable judicial resources, avoids the expense of formal litigation, and resolves disputes that otherwise could linger for years.") (citation omitted).

A settlement reached by experienced counsel based on arm's-length negotiations is entitled to a presumption of fairness. *Sullivan v. DB Investments, Inc.*, 667 F.3d 723, 320 n.54 (3d Cir. 2011); *Cigna*, No. 02-8088, 2007 WL 2071898, at *2; *Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2003 WL 23316645, at *6 (E.D. Pa. Sept. 5, 2003); *see also Linerboard*, 292 F. Supp. 2d at 640 (holding that "[a] presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (citing *Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arms-length and in good faith"). This presumption reflects the understanding that vigorous

negotiation between seasoned counsel protects against collusion and provides a reasonable inference that the settlement is fair.

The TIN and USG Settlements are the result of arm's-length negotiations that took place over several months by Interim Co-Lead Counsel and counsel for TIN and USG, respectively. Those negotiations occurred after Interim Co-Lead Counsel had substantially completed their review of documents produced by Defendants and depositions were underway. Thus, Plaintiffs were well-informed as to the facts of the case and the strength of the claims asserted against both TIN and USG when the terms of the settlements were being negotiated.

TIN has agreed to pay $5.25 million and USG has agreed to pay $39.25 million to settle the lawsuit. During the discovery time period, TIN's market share was approximately 7%, and USG's market share was approximately 26% based on an analysis of the transactional data produced by Defendants. The TIN Settlement is the first settlement among Defendants with small market shares; the USG Settlement is the first settlement among Defendants with large market shares. Such "ice breaker" settlements "should increase the likelihood of future settlements." *See Linerboard*, 292 F. Supp. 2d at 643. Moreover, as noted above, the Settlement Agreements reflect that neither TIN nor USG has entered into any judgment sharing agreement with the remaining Defendants, and that, accordingly, Plaintiffs may assert that the monetary amount of TIN's and USG's sales of Wallboard in the United States will remain in the litigation as a basis for calculating damages against the remaining Defendants and will be part of any joint and several liability imposed against those Defendants.

Additionally, both TIN and USG have agreed to provide cooperation, which will enable Plaintiffs to more efficiently pursue their claims against the remaining Defendants while avoiding the risk, expense, and duration of continued litigation against TIN and USG.

Cooperation provisions can constitute a "substantial benefit" to the class and "strongly militate[ ] toward" settlement approval.  *Linerboard*, 292 F. Supp. 2d at 643.

Interim Co-Lead Counsel respectfully submit that the TIN and USG Settlements are in the best interests of the direct purchaser class and should be preliminarily approved by the Court for the purpose of disseminating notice of the Settlements to the potential members of the Settlement Classes.

> ### C.     Allowing Interim Co-Lead Counsel to Use a Portion of the Settlement Funds for Ongoing Litigation Expenses Is Appropriate

Interim Co-Lead Counsel are not presently seeking an award of attorneys' fees from the TIN Settlement or the USG Settlement.  In view of the ongoing litigation against the remaining Defendants, however, Interim Co-Lead Counsel request that they be permitted to use up to $500,000 from the TIN Settlement and up to $2 million from the USG Settlement to pay ongoing litigation expenses.

The Notice expressly informs members of the Settlement Classes that Interim Co-Lead Counsel will request that they be permitted to use up to $2.5 million from the Settlements to pay ongoing litigation expenses.  *See* Mailed Notice (Exhibit E) at 6.

Substantial authority supports use of funds obtained from a partial settlement for these purposes.  The Manual for Complex Litigation, Fourth § 13.21 (2004), provides that "partial settlements may provide funds needed to pursue the litigation…."  *Accord Linerboard*, 292 F. Supp. 2d at 643 (noting that a partial "settlement provides class plaintiffs with an immediate financial recovery that ensures funding to pursue the litigation against the non-settling defendants").  *See also In re Microcrystalline Cellulose Antitrust Litig.*, No. 01-111, Final Judgment Order at ¶ 7 (E.D. Pa. June 15, 2005) (O'Neill, J.) (permitting class plaintiffs to use up to $2.5 million of a settlement fund to pay litigation expenses) (attached as Exhibit I); *In re*

*WorldCom, Inc. Sec. Litig.*, No. 02-3288, 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12, 2004) (creating a $5 million fund for the continuation of the litigation against the non-settling defendants); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, Order (E.D. Pa. Oct. 13, 2004) (Surrick, J.) (setting aside $1 million from a settlement fund to pay, inter alia, "expenses incurred in the continuing prosecution of this litigation") (attached as Exhibit J).

## V.    THE NOTICE PROGRAM SHOULD BE APPROVED

Federal Rule of Civil Procedure 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement.  For class actions certified under Rule 23(b)(3), the court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition, the notice must clearly and concisely state: (1) the nature of the action and a description of the terms of the settlement; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

The proposed forms of Notice (Exhibits E and F) and the plan for their dissemination proposed by Plaintiffs satisfy these requirements.  The proposed Notices set forth all the information required by Rule 23(c)(2)(B), and also apprise potential members of the Settlement Classes that Plaintiffs intend to seek authorization from the Court to use a modest portion of the Settlement Funds to pay ongoing litigation expenses.  The long-form Mailed Notice (Exhibit E) will be mailed to all entities identified by Defendants as direct purchasers of Wallboard from Defendants and their subsidiaries in the United States from January 1, 2012 to November 30,

2014.  The Mailed Notice will also be provided to all persons who request it.  The summary

Publication Notice will be published in the LBM Journal, a trade publication that caters to the

building products industry.  In addition, both the long-form Mailed Notice and summary

Publication Notice will be posted on an internet website dedicated to this litigation.  The

Settlement Agreements, as well as all other relevant public documents filed with the Court, will

also be available on the website.

     Plaintiffs believe that this proposed notice program fulfills all the requirements of Federal

Rule of Civil Procedure 23 and due process.  *See generally Prudential,* 148 F.3d at 326-27; *Auto.*

*Refinishing Paint*, No. MDL 1426, 2004 WL 1068807, at *3; *In re Warfarin Sodium Antitrust*

*Litig.*, 212 F.R.D. 231, 252-53 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004).  Accordingly,

approval of the notice program is appropriate.

## VI.    CERTIFICATION OF THE PROPOSED SETTLEMENT CLASSES IS WARRANTED

     At this time, Plaintiffs are only seeking authorization from the Court to send notice of the

TIN and USG Settlements to direct purchasers of Wallboard.[11]  Plaintiffs will later seek final

certification of the TIN Settlement Class and USG Settlement Class (classes with identical

definitions) for purposes of the Settlements.

---

[11]  Plaintiffs will address the factors that are necessary for final certification of a settlement class for purposes of these Settlements only.  Pursuant to the proposed Preliminary Approval Orders and Final Judgment Orders, certification of the TIN Settlement Class and the USG Settlement Class would be without prejudice to, or waiver of, the rights of, the other Defendants to contest certification of any other class proposed in MDL No. 2437.  The Court's findings are to have no effect on the Court's ruling on any motion to certify any other class in MDL No. 2437, and no party may cite or refer to the Court's approval of either the TIN Settlement Class or USG Settlement Class as compelling the same result with respect to a motion to certify any other class in MDL No. 2437.  *See* Proposed TIN Settlement Preliminary Approval Order (Exhibit C) at ¶ 28; Proposed USG Settlement Preliminary Approval Order (Exhibit D) at ¶ 28.

A class may be certified for purposes of settlement.  *See*, *e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Sullivan*, 667 F.3d at 295-96.  A settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b).  *See*, *e.g.*, *Amchem*, 521 U.S. at 613-14; *Sullivan*, 667 F.3d at 296.  The proposed Settlement Classes meet all the requirements of Rule 23(a), as well as the requirements of Rule 23(b)(3), for settlement purposes.

### A.   The Proposed Settlement Classes Satisfy the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

### 1.   The Settlement Classes Are Sufficiently Numerous

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  There is no threshold number required to satisfy the numerosity requirement of Rule 23(a)(1), and the most important factor is whether joinder of all the parties would be impracticable for any reason.  *Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d Cir. 2001) (noting that there is no minimum number to satisfy numerosity and observing that generally the requirement is met if the number of plaintiffs exceeds 40).  Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, the number of direct purchasers of Wallboard from the Defendants and their subsidiaries is in the tens of thousands, and they are geographically dispersed throughout the

United States.  Thus, joinder of all members of the Settlement Classes would be impracticable, rendering the numerosity requirement of Rule 23(a)(1) satisfied.

### 2.  There Are Common Questions of Law and Fact

"[A]llegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 NEWBERG ON CLASS ACTIONS, § 18.05-15 (3d ed. 1992)).  Moreover:

> The members need not have identical claims to have common legal or factual issues that satisfy commonality…  Instead, all that is required is that the litigation involve some common questions and that plaintiffs allege harm under the same legal theory. (Citations omitted.)

*In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79, 83-84 (E.D. Pa. 2003).

Antitrust cases like this one meet the commonality requirement of Rule 23(a)(2).  *See*, *e.g.*, *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253418, at *4 (E.D. Pa. Aug. 3, 2007) (identifying the following common issues: whether Defendants engaged in a conspiracy; the conspiracy's duration and extent; and whether Plaintiffs and the class members were injured by Defendants' conduct and, if so, the appropriate classwide measure of damages); *In re K-Dur Antitrust Litig.*, No. 01–1652, 2008 WL 2699390, at *4 (D.N.J. Apr. 14, 2008) (holding that common issues predominate with respect to whether defendants violated antitrust law); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D 180, 186-87 (D.N.J. 2003) (holding that common issues predominated on issue of alleged antitrust violation); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D 136, 141 (D.N.J. 2002) (holding that conspiracy to restrain trade is subject to common proof).

Whether Defendants colluded to raise Wallboard prices is a factual question common to all members of the Settlement Classes because it is an essential element of proving liability for

an antitrust violation.  Common legal questions include whether, if they did collude, Defendants'

conduct violated the antitrust laws.  "Indeed, consideration of the conspiracy issue would, of

necessity, focus on defendants' conduct, not the individual conduct of the putative class

members."  *Flat Glass*, 191 F.R.D. at 484.  Because there exist common factual and legal

questions related to liability, the commonality requirement of Rule 23(a)(2) is met.

### 3.  Plaintiffs' Claims Are Typical of Those of the Members of the Settlement Classes

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

of the claims or defenses of the class."  A plaintiff's claim is typical if it arises from alleged

wrongful conduct on the part of the defendant that affects both the named plaintiff and the

putative class.  *Baby Neal v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994); *accord Warfarin*, 391 F.3d

at 531 (a plaintiff's claim is typical if it arises from the defendants' alleged wrongful conduct); *In

re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 478 (E.D. Pa. 2010)

(same).  In examining typicality, the court must ensure that the named plaintiffs do not have

interests antagonistic to those of the class.  *Id.*

Here, Plaintiffs' claims arise from the same course of conduct as the claims of the other

direct purchasers of Wallboard.  Plaintiffs and the other members of the Settlement Classes are

proceeding on the same legal claim, an alleged violation of Section 1 of the Sherman Act.

Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.  Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Classes

Rule 23(a)(4) requires that the class representatives fairly and adequately protect the

interests of the class.  There are two criteria for determining adequacy of representation: (1) the

class representatives must have common interests with the other class members; and (2) it must

appear that the class representatives will vigorously prosecute the interests of the class through

qualified counsel.  *See Prudential*, 148 F.3d at 312 (quoting *General Motors*, 55 F.3d at 800 (counsel's qualifications) and *Amchem,* 521 U.S. at 625 (conflicts of interest)).

When a settlement class is proposed for certification, *Amchem* places particular emphasis on the Rule 23(a)(4) requirement that "the representative parties will fairly and adequately protect the interests of the class."  *Prudential*, 148 F.3d at 308 (quoting Fed. R. Civ. P. 23(a)(4)); *Amchem*, 521 U.S. at 620-21.  Adequacy of representation is designed to avoid conflicts of interest between the class representatives and the class members.  To be adequate, the class representatives must be part of the class, have suffered the same injury, and have the same interests as the class members.  *Amchem*, 521 U.S. at 625-26.

Here, the interests of proposed class representatives Sierra Drywall Systems, Inc., Janicki Drywall, Inc., New Deal Lumber & Millwork Co., and Grubb Lumber Co., Inc. are the same as those of the other members of the Settlement Classes.  Plaintiffs and the other members of the Settlement Classes are direct purchasers of Wallboard from Defendants and their subsidiaries in the United States and claim that they were injured as a result of the alleged conspiracy by paying Defendants more than they would have absent the conspiracy.  Plaintiffs' interests are thus aligned with those of the other members of the Settlement Classes.

Moreover, Plaintiffs have retained qualified and experienced counsel to pursue this action.  Interim Co-Lead Counsel Berger & Montague, P.C., Cohen Milstein Sellers & Toll PLLC, and Spector Roseman Kodroff & Willis, P.C. have extensive experience and expertise in antitrust disputes, complex litigation, and class action proceedings and are qualified and able to

conduct this litigation.[12]   Interim Co-Lead Counsel are vigorously representing Plaintiffs in the

case, and were doing so throughout the settlement negotiations with both TIN and USG.

Adequate representation under Rule 23(a)(4) is therefore satisfied.

## B.      Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3)

In addition to satisfying Rule 23(a), plaintiffs must show that the action falls under one of

the three subsections of Rule 23(b).  Here, the Settlement Classes qualify under Rule 23(b)(3),

which authorizes class certification if "the court finds that the questions of law or fact common

to the members of the class predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for the fair and efficient

adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) is "designed to secure

judgments binding all class members save those who affirmatively elect[] to be excluded" where

a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity

of decision as to persons similarly situated, without sacrificing procedural fairness or bringing

about other undesirable results."  *Amchem*, 521 U.S. at 615.  Certification of the TIN Settlement

Class and the USG Settlement Class under Rule 23(b)(3) will serve these purposes.

### 1.      Common Legal and Factual Questions Predominate

The Rule 23(b)(3) requirement that common issues predominate insures that a proposed

class is "'sufficiently cohesive to warrant adjudication by representation.'"  *Sullivan*, 667 F.3d

at 297 (quoting *Amchem*, 521 U.S. at 623).  *See also Newton v. Merrill Lynch, Pierce, Fenner &*

---

[12]   Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class.  The Court previously appointed Berger & Montague, P.C., Cohen Milstein Sellers & Toll PLLC, and Spector Roseman Kodroff & Willis, P.C. as Interim Co-Lead Counsel. (ECF No. 11).  For the same reasons that the Court appointed these attorneys and their firms Interim Co-Lead Counsel, their appointment as Settlement Class Counsel is appropriate.

*Smith, Inc.*, 259 F.3d 154, 187 (3d Cir. 2001).  Courts have repeatedly recognized that horizontal price-fixing cases (such as this action) are particularly well-suited for class certification. *Sullivan*, 667 F.3d at 298 (quoting *Amchem,* 521 U.S. at 625).  As the Third Circuit has explained, antitrust cases "naturally raise several questions of law and fact common to the entire class and which predominate over any issues related to individual class members." *Warfarin*, 391 F.3d at 528.  Common questions predominate in a federal antitrust claim "[b]ecause each of the elements of a Sherman Act violation involves common questions of law and fact." *Ins. Brokerage*, 579 F.3d at 269.  *See also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws.").

The predominance requirement is met here with respect to the proposed Settlement Classes, because the "asserted price-fixing . . . conduct lies at the core of plaintiffs' claims, as do the common injuries which all class members suffered as a result." *Sullivan*, 667 F.3d at 300.  A common legal question is "whether [defendants] engaged in a broad conspiracy" that was intended to and did affect gypsum drywall prices.  *Id.*  Evidence to prove this legal issue "would entail generalized common proof as to 'the implementation of [the] conspiracy, the form of the conspiracy, and the duration and extent of the conspiracy.'"  *Id.* at 300 (quotation omitted). Plaintiffs also "share common *factual* questions as to whether [defendants] 'acted in concert to artificially raise, fix, maintain, and stabilize prices ... and whether said activity resulted in an inflation in the price of [the product].'"  *Id.*

As the *Sullivan* court explained, "[t]hese [antitrust] allegations are unaffected by the particularized conduct of individual class members, as proof of liability and liability itself would depend entirely upon [the defendants'] allegedly anticompetitive activities."  *Id.*  Thus, core common questions predominate because they stem from Defendants' conduct.   Whether

Defendants reached a meeting of the minds to artificially raise prices of Wallboard is a common question to all class members because it is an essential element of proving a Section 1 Sherman Act violation.  If the Plaintiffs or the other members of the Settlement Classes were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability.

**2.     A Class Action Is Superior to Other Methods of Adjudication**

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."  *Prudential*, 148 F.3d at 316 (internal quotations and citation omitted).  In evaluating the superiority of a class action, the Court should inquire as to the class members' interests in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already commenced by members of the class and the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).

A class action is superior to other available methods for the fair and efficient adjudication of the claims here because absent class action certification, the Court could be faced with individual lawsuits, each of which would arise out of the same set of operative facts.  By proceeding as a class action, judicial resources will be more efficiently utilized to resolve common issues, which will bring about a single outcome that is binding on all class members. The alternatives to a class action would be a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *see In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive.  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996).  Here, the Wallboard cases have been centralized in this Court

25

by the MDL Panel, and there is no individual litigation pending.  Finally, it should be noted that a critical difference between certification of a settlement class and certification of a class for litigation purposes is that in the settlement class context a court need not consider the difficulties in managing a trial of the case, because the settlement will obviate the need for a trial.  *Amchem,* 521 U.S. at 620; *Sullivan*, 667 F.3d at 302-04.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the TIN and USG Settlements, authorize dissemination of notice to the Settlement Classes, and schedule a final fairness hearing on the TIN and USG Settlements.  The proposed Preliminary Approval Orders are submitted with this Memorandum.

Dated:  February 12, 2015                    Respectfully submitted,


 /s/ H. Laddie Montague, Jr.              /s/ Jeffrey J. Corrigan
H. Laddie Montague, Jr.                 Eugene A. Spector
Ruthanne Gordon                        Jeffrey J. Corrigan
Michael C. Dell'Angelo                  Rachel E. Kopp
Candice J. Enders                       Jeffrey L. Spector
BERGER & MONTAGUE, P.C.            SPECTOR ROSEMAN
1622 Locust Street                      KODROFF & WILLIS, P.C.
Philadelphia, PA  19103                 1818 Market Street, Suite 2500
Tel:  (215) 875-3000                    Philadelphia, PA  19103
Email: hlmontague@bm.net               Tel:  (215) 496-0300
        rgordon@bm.net                 Email: espector@srkw-law.com
        mdellangelo@bm.net                     jcorrigan@srkw-law.com
        cenders@bm.net                         rkopp@srkw-law.com
                                               jspector@srkw-law.com


 /s/ Kit A. Pierson
Kit A. Pierson
Brent W. Johnson
David A. Young
COHEN MILSTEIN
SELLERS & TOLL PLLC
1100 New York Ave., NW, Suite 500
Washington, DC  20005
Tel:  (202) 408-4600
Email: kpierson@cohenmilstein.com
        bjohnson@cohenmilstein.com
        dyoung@cohenmilstein.com


*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

27