# EXHIBIT A

EXECUTION COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION | MDL No. 2437 13-MD-2437 |
| THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | |

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 11th day of February, 2015 (the "Execution Date"), by and between Defendant TIN Inc. (alleged in the Direct Purchaser Plaintiffs' Consolidated and Amended Class Action Complaint as TIN Inc. d/b/a Temple-Inland, Inc.) ("TIN") and the Direct Purchaser Plaintiffs ("Plaintiffs"), individually and on behalf of a class of direct purchasers of gypsum wallboard ("Wallboard").

WHEREAS, Plaintiffs allege that TIN participated in a conspiracy to raise, fix, maintain, or stabilize prices and to terminate the use of job quotes for Wallboard in violation of Section 1 of the Sherman Act; and

WHEREAS, TIN denies Plaintiffs' allegations and has asserted defenses to Plaintiffs' claims; and

WHEREAS, arm's-length settlement negotiations have taken place between Plaintiffs' Interim Co-Lead Counsel and counsel for TIN, and this Agreement has been reached as a result of those negotiations; and

WHEREAS, the action will continue against the non-settling Defendants; and

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the claims asserted in the Direct Purchaser action pending in the United States District

Court for the Eastern District of Pennsylvania, MDL Docket No. 2437, Civil Action No. 13-MD-2437 (the "Action"), including analysis of over 2.5 million pages of documents produced by TIN and other Defendants in the Action and numerous depositions of various Defendants, and have concluded that a settlement with TIN according to the terms set forth below is fair, reasonable and adequate and in the best interest of Plaintiffs and the Settlement Class Members; and

WHEREAS, TIN believes that it is not liable for the claims asserted and has good defenses to Plaintiffs' claims, but nevertheless has decided to enter into this Agreement in order to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation and to obtain the releases, orders and judgment contemplated by this Agreement, and to put to rest with finality all claims that Plaintiffs have or could have asserted against the Releasees, as defined below; and

WHEREAS, TIN, in addition to a cash payment, has agreed to cooperate with Plaintiffs in the continued prosecution of this litigation as set forth in this Agreement.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between TIN and the Plaintiffs that the Action be settled, compromised, and dismissed with prejudice as to TIN only, without costs to Plaintiffs, the Settlement Class Members or TIN except as provided for herein, subject to the approval of the Court, on the following terms and conditions:

A.    **Definitions**

The following terms, as used in this Agreement, have the following meanings:

2

1.    "Defendants" means CertainTeed Gypsum, Inc., USG Corporation, United States Gypsum Company, New NGC, Inc., Lafarge North America, Inc., Eagle Materials Inc., American Gypsum Company LLC, PABCO Building Products, LLC., and TIN.

2.    "Interim Co-Lead Counsel" means the following law firms:

> Berger & Montague, P.C.
> 1622 Locust Street
> Philadelphia, PA  19103
>
> Cohen Milstein Sellers & Toll PLLC
> 1100 New York Ave., N.W., Suite 500
> Washington, DC 20005
>
> Spector Roseman Kodroff & Willis, P.C.
> 1818 Market Street, Suite 2500
> Philadelphia, PA 19103

3.    "Plaintiffs" means Sierra Drywall Systems, Inc., Janicki Drywall, Inc., New Deal Lumber & Millwork Co., and Grubb Lumber Co., Inc.

4.    "Releasees" means TIN and all of its current and former parents; the predecessors, affiliates, assigns, successors, and subsidiaries of any of the above; and any officers, directors, agents, representatives, employees, attorneys, heirs, executors, and administrators of each of the foregoing. Releasees does not include any Defendant in the Action other than TIN, including any of other Defendants' current and former parents, their predecessors, affiliates, assigns, successors, subsidiaries, attorneys, and their officers, directors, agents, representatives, and employees in their capacity associated solely with other Defendants and not in association with TIN.

5.    "Releasors" means Plaintiffs and the Settlement Class Members, including all of their past and present, direct and indirect parents, subsidiaries and affiliates, and their past and present directors, officers, employees, stockholders, attorneys, representatives, parents,

3

subsidiaries, affiliates, partners, and assignees of any claim that is subject to the Release described in Paragraph 18.

6.      "Settlement Amount" means $5,250,000 in United States currency.

7.      "Settlement Class" means the class consisting of all persons or entities that purchased Wallboard in the United States directly from any of the Defendants or their subsidiaries from January 1, 2012 through November 30, 2014.  Excluded from the Settlement Class are Defendants, the officers, directors and employees of any Defendant, the parent companies, subsidiaries and affiliates of any Defendant, the legal representatives and heirs or assigns of any Defendant, any federal governmental entities and instrumentalities of the federal government, any judicial officer presiding over the Action, and any member of his or her immediate family and judicial staff.

8.      "Settlement Class Member" means a member of the Settlement Class who does not properly elect to be excluded from the Settlement Class.

9.      "Settlement Class Period" means the period from and including January 1, 2012, to and including November 30, 2014.

10.     As defined in the Preamble, "TIN" means TIN Inc. and TIN Inc. d/b/a Temple-Inland, Inc.

11.     "Wallboard" means panel products consisting of a gypsum core with a paper surfacing on the face and back .

**B.      Stipulation to Class Certification**

12.     The parties to this Agreement hereby stipulate for purposes of this settlement only that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class defined in paragraph 7 shall be certified for

settlement purposes as to TIN. The parties stipulate and agree to the conditional certification of the Settlement Class for purposes of this Settlement only. Should, for whatever reason, the Court not grant final approval, the parties' stipulation to class certification as part of the Settlement shall become null and void. TIN expressly reserves its rights to oppose class certification should this Settlement not be granted final approval.

**C.    Approval of this Agreement and Dismissal of the Action**

13.    Plaintiffs and TIN shall use their best efforts to effectuate this Agreement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e) and scheduling a final fairness hearing) to obtain final approval of the settlement and the final dismissal with prejudice of the Action as to TIN and the Releasees.

14.    Within fifteen (15) days of the Execution Date, Plaintiffs shall submit to the Court a motion, requesting that the Court preliminarily approve the settlement and authorize dissemination of notice to the Settlement Class Members (the "Motion"). The Motion shall include: (a) a proposed form of order preliminarily approving the settlement; (b) proposed forms of, and methods for, dissemination of notice to the Settlement Class Members; and (c) a proposed form of final judgment order. Plaintiffs and TIN agree that notice of the settlement as approved by the Court shall be mailed to persons and entities who have been identified by TIN and the other Defendants, to the extent provided voluntarily or as ordered by the Court, as members of the Settlement Class. Notice of the settlement shall also be published once in the LBM Journal and on a web site that is under the supervision of Interim Co-Lead Counsel. If the settlement is preliminarily approved by the Court, Plaintiffs shall (i) in their motion for preliminary approval seek an order from the Court requiring production from all Defendants of

5

any additional data Plaintiffs deem necessary or appropriate to facilitate notice; (ii) within eighteen (18) calendar days of receipt of responsive information from Defendants, provide mailed notice to the Settlement Class Members, and (iii) provide notice to the Settlement Class Members in the LBM Journal on the first available publication date on or after seven (7) days from the provision of individual mailed notice.  Subject to Defendants' prompt compliance with the Court order requiring production of additional data to facilitate notice and lead time required for publication in the LBM Journal, Plaintiffs shall exercise reasonable efforts to mail and publish notice to the Settlement Class Members within sixty (60) days of preliminary approval.

15.     Within ten (10) days after the filing with the Court of this Agreement and the accompanying motion papers seeking its preliminary approval, TIN shall cause notice of the Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

16.     If the settlement is preliminarily approved by the Court, Plaintiffs shall promptly seek final approval of the settlement and entry of a final judgment order as to TIN:

      (a)     certifying the Settlement Class defined in paragraph 7 under Federal Rule of Civil Procedure 23(b)(3), solely for purposes of this settlement;

      (b)     granting final approval of the TIN settlement as fair, reasonable, and adequate within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure and directing the consummation of the settlement according to its terms;

      (c)     directing that, as to TIN only, the Action be dismissed with prejudice and, except as provided for herein, without costs;

      (d)     reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement to the United States District Court for the Eastern District of Pennsylvania, Eastern Division; and

      (e)     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing entry of final judgment as to TIN.

6

17.     This Agreement shall become effective only when: (a) the Court has entered a final judgment order approving the settlement set forth in this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and a final judgment dismissing the Action against TIN with prejudice and without costs has been entered; and (b) the time for appeal or to seek permission to appeal from the Court's approval of the settlement and the entry of a final judgment has expired or, if appealed, approval of the settlement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review ("Effective Date"); excluding, however, any appeal or other proceedings unrelated to this Agreement initiated by any non-settling Defendant or any person or entity related to the non-settling Defendant, and any such appeal or other proceedings shall not delay the Agreement from becoming final and shall not apply to this section; (nor shall this section be construed as an admission that such parties have standing or other rights of objection or appeal with respect to this settlement). It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

**D.     Releases, Discharge, and Covenant Not to Sue**

18.     Upon the occurrence of the Effective Date, and in consideration of payment of the Settlement Amount as specified in paragraphs 21 and 22 of this Agreement and the cooperation obligations set forth in Section H of this Agreement, the Releasees shall be fully, completely released, acquitted, and forever discharged by the Releasors from any and all claims, demands, actions, suits, injuries, and causes of action, damages of any nature, whenever or however incurred (whether actual, punitive, treble, compensatory, or otherwise) including, without limitation, costs, fees, expenses, penalties, and attorneys' fees, whether class or individual, or

7

otherwise in nature, that Releasors, or any of them, ever had, now has, or hereafter can, shall, or

may have, directly, representatively, derivatively or in any other capacity against the Releasees

or any of them, whether known or unknown, suspected or unsuspected, foreseen or unforeseen,

actual or contingent, liquidated or unliquidated, asserted or unasserted, whether in law or equity

or otherwise based in whole or in part or arising out of or relating in any way to any conduct, act

or omission of the Releasees (or any of them) prior to and including November 30, 2014,

concerning    any    of    the    facts,    occurrences,    transactions,    agreements,    conspiracies,

communications, announcements, notices or other matters alleged in the Action against TIN that

arise under any federal or state law, including, without limitation, the Sherman Act, 15 U.S.C. §

1 *et seq.*, and any federal or state antitrust, unfair competition, unfair practices, price

discrimination, unjust enrichment, unitary pricing or trade practice law, including but not limited

to any causes of action asserted or that could have been or could still be alleged or asserted, in

any class action complaints filed in this Action or related actions, which collectively includes,

without limitation, any action transferred to this multidistrict litigation proceeding (the "Released

Claims"). The release set forth in the preceding sentence shall be effective even if TIN has not

yet completed all of its cooperation obligations set forth in Section H of this Settlement

Agreement. Provided, however, that nothing herein shall release: (a) any claims based upon

indirect purchases of Wallboard brought by prospective members of any class of indirect

purchasers (the "Indirect Purchaser Class"); or (b) claims arising in the ordinary course of

business for any product defect, breach of contract, product performance or warranty claims

relating to Wallboard. Releasors shall not, after the Effective Date of this Agreement, seek to

recover from any Releasee based, in whole or in part, upon any of the Released Claims or

8

conduct at issue in the Released Claims.  Released Claims do not include any claims arising out of the enforcement of this Settlement Agreement.

19.     In addition to the provisions of Paragraph 18 of this Agreement, Releasors hereby expressly waive and release, upon the Effective Date of this Agreement, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE.
> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH
> THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS
> SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to Section 1542 of the California Civil Code.  Each Releasor may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject of the provisions of Paragraph 18 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of Paragraph 18 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

20.     Also upon occurrence of the Effective Date, TIN releases Plaintiffs and their directors, officers, employees and counsel from any claims relating to the institution or prosecution of the Action.

9

E.   **Payment of the Settlement Amount**

21.   Within five (5) business days of the entry of an order preliminarily approving the settlement, TIN will pay or cause to be paid by wire transfer $50,000 of the Settlement Amount to an account at a bank to be designated by Interim Co-Lead Counsel, to be used to pay the costs of providing notice of the settlement to potential members of the Settlement Class and for notice administration.

22.   Within five (5) business days of the entry of the final judgment order, TIN shall pay or cause to be paid by wire transfer $5,200,000 (*i.e.*, the remainder of the Settlement Amount) into an escrow account, which will be established at a bank by Interim Co-Lead Counsel and administered in accordance with the provisions of Section F of this Agreement. It is agreed that upon final approval of the settlements, some portion of the $5,200,000 and any funds which may remain from the $50,000 provided for notice costs may be used to pay ongoing litigation costs, with the approval of the Court.

23.   In the event that a potential member of the Settlement Class is validly excluded from the Settlement Class ("Opt-Out Purchaser") as discussed and defined further in paragraphs 33 and 34 below, TIN's total cash payment shall be reduced by 0.75% for each 1% of sales represented by that Opt-Out Purchaser.  For purposes of calculating the percentage of sales represented by an Opt-Out Purchaser, the numerator shall be the purchases of Wallboard by the Opt-Out Purchaser directly from any Defendant or its subsidiaries from January 1, 2012 through January 31, 2013; and the denominator shall be all non-duplicative sales of Wallboard by Defendants or subsidiaries from January 1, 2012 through January 31, 2013, excluding sales to other Defendants, the officers, directors, and employees of any Defendant, the parent companies, subsidiaries and affiliates of any Defendant, the legal representative and heirs or assigns of any

Defendant, any federal governmental entities and instrumentalities of the federal government, any judicial officer presiding over the Action, and any member of his or her immediate family and judicial staff. For example, if the Opt-Out Purchasers represented 8% of total sales, TIN's total cash payment would be reduced by 6% (0.75 x 8%). The remaining 0.25% for each 1% of sales represented by the Opt-Out Purchasers will be deposited into the Opt-Out Fee and Expense Account, to be paid to Plaintiffs' counsel in consideration of their efforts on behalf of the Opt-Out Purchasers, upon approval by the Court of any such payment request. In the event the Court does not approve Plaintiffs' counsel's payment request, the funds in the Opt-Out Fee and Expense Account shall be added to the Settlement Fund.

**F.    The Settlement Fund**

24.     The Settlement Amount and any interest earned thereon shall be held in escrow and constitutes the Settlement Fund. The Settlement Fund is intended by the parties to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1.

25.     After preliminary approval of the settlement, Interim Co-Lead Counsel may spend up to $50,000 of the Settlement Amount to provide notice of the settlement to potential members of the Settlement Class and for notice administration, without an order from the Court. If Plaintiffs settle with one (or more) other Defendants in the Action and notice of that settlement is included in the notice of the TIN settlement, then the cost of such notice will be apportioned equally between (or among) TIN and the other settling Defendant(s), but in no case shall TIN pay more than $50,000 towards notice and notice administrative costs to Plaintiffs. The amount spent or accrued for notice and notice administration costs is not refundable to TIN in the event the Agreement is disapproved, rescinded, or otherwise fails to become effective. If any of the

11

$50,000 remains after all notice and notice administration costs are paid, that amount will become part of the Settlement Fund.

26.     The Settlement Fund shall be invested in United States Government Treasury obligations or United States Treasury money market funds. However, the $50,000 portion of the Settlement Fund that the parties have agreed may be used to pay expenses associated with providing notice to the Settlement Class may be deposited in a federally insured interest bearing account at a bank to be designated by Interim Co-Lead Counsel.

27.     TIN shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution, use or administration except as expressly otherwise provided in this Agreement.

28.     TIN understands that Plaintiffs intend to seek approval from the Court to use some portion of the Settlement Fund to pay for Plaintiffs' expenses in connection with their pursuit of the litigation. If Plaintiffs settle with one (or more) other Defendants in the Action, Plaintiffs agree not to request a greater amount from the TIN Settlement Fund for ongoing litigation expenses than Plaintiffs request from any other settlement funds which exist at the time of the request. The Court's modification or rejection of the amount Plaintiffs seek to use to pay for Plaintiffs' expenses shall not affect the validity or enforceability of this Agreement. Other than what is set forth in paragraphs 25 and 26 regarding notice and notice administration costs and its obligations under paragraph 23 regarding Opt-Out Purchasers and the Opt-Out Fee and Expense Account, TIN shall not be liable for any costs, expenses, or fees of any of Plaintiffs' respective attorneys, experts, advisors, agents, or representatives. Payment of all such costs, expenses, and fees, as approved by the Court, shall be paid only out of the Settlement Fund or

12

the Opt-Out Fee and Expense Account.  No disbursements shall be made from the Settlement Fund prior to the Effective Date of this Agreement except as described in paragraphs 21 and 25 above.

29.     The distribution of the Settlement Fund shall be administered pursuant to a plan of allocation (the "Plan of Allocation") proposed by Interim Co-Lead Counsel and subject to the approval of the Court.  TIN shall have no participatory or approval rights with respect to the Plan of Allocation and the Court's modification or rejection of the Plan of Allocation shall not affect the validity or enforceability of this Settlement Agreement.

30.     Releasors shall look solely to the Settlement Fund for settlement and satisfaction against the Releasees of all Released Claims and shall have no other recovery against TIN or the Releasees.

31.     TIN will take no position on any application for fees and reimbursement of expenses made by Interim Co-Lead Counsel or by the Settlement Class Members or any application for Class Representatives' incentive awards out of the Settlement Fund.  The Court's modification or rejection of any application for fees and reimbursement of expenses made by Interim Co-Lead Counsel or by the Settlement Class Members or any application for Class Representatives' incentive awards out of the Settlement Fund shall not affect the validity or enforceability of this Settlement Agreement.

G.     **Rescission**

32.     If the Court refuses to approve this Agreement or any material part hereof, or if such approval is modified or set aside on appeal, or if a final judgment order with the provisions generally described in paragraph 16 is not entered, or if the Court enters the final judgment order and appellate review is sought and, on such review, such final judgment order is not affirmed,

13

then TIN and the Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety (except as hereafter provided in this paragraph) and any and all of the Settlement Amount paid by TIN to the Settlement Fund shall be returned to TIN, including interest earned thereon, except for the amount of money already paid or required to pay expenses already incurred but not yet paid for notice and administration prior to the date of rescission in accordance with paragraph 25 of this Agreement. A modification or reversal on appeal of any amount of the Settlement Fund that the Court authorizes to be used to pay Plaintiffs' ongoing litigation expenses shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment order. TIN and Plaintiffs expressly reserve all rights if the Agreement does not become effective or if it is rescinded by TIN or the Plaintiffs pursuant to this paragraph.

33.     Opt-Out Termination: TIN shall, in its sole discretion, have the option to terminate this Settlement Agreement upon the occurrence of one or more conditions relating to members of the Settlement Class who have timely exercised their rights to be excluded from the Settlement Class, as set forth in a separate agreement ("Confidential Side Letter") executed between Interim Co-Lead Counsel and TIN.

34.     Within seven (7) calendar days after the end of the period to request exclusion from the Settlement Class established by the Court and set forth in the notice, Interim Co-Lead Counsel shall provide TIN, through its counsel, with a written list of all potential members of the Settlement Class who have timely exercised their rights to be excluded from the Settlement Class. Interim Co-Lead Counsel and TIN will ascertain the total dollar amount of purchases of Wallboard in the United States during the relevant class period by the Opt-Out Purchasers (the "Exclusion Amount"). In the event that the Exclusion Amount is equal to or greater than the

14

amount set forth in the Confidential Side Letter between Interim Co-Lead Counsel and TIN's counsel, then TIN shall have the right to withdraw from this Settlement Agreement by providing written notice to Interim Co-Lead Counsel within ten (10) calendar days after receipt of the list of Opt-Out Purchasers or within five (5) business days after ascertaining with Plaintiffs the Exclusion Amount, whichever is later.  Upon receipt of such notice, Interim Co-Lead Counsel shall, within seven (7) calendar days, provide TIN with written notice of any challenge by Plaintiffs to such claim of entitlement to withdraw from this Settlement Agreement.  In the event the parties are unable to agree upon the Exclusion Amount or TIN's right to withdraw from this Agreement under this Paragraph, they shall submit the issue to the Court adjudicating the Action. Plaintiffs may attempt to obtain final rescission of any decision by a potential member of the Settlement Class to request exclusion prior to TIN invoking its rights under this Paragraph, and if Plaintiffs, within the time allotted for Plaintiffs to present its challenge, provide TIN with written rescission of one or more requests for exclusion that lowers the Exclusion Amount below the threshold necessary to trigger TIN's right to withdraw, then TIN may not withdraw pursuant to this Paragraph.  Neither Plaintiffs nor TIN shall solicit or advise potential members of the Settlement Class to request exclusion from the Settlement Class.  TIN will take no action to encourage opt-outs or advise potential members of the Settlement Class to opt out of the Settlement Class.  If contacted by potential members of the Settlement Class about opting out of the Settlement, TIN will refer such potential members of the Settlement Class to Interim Co-Lead Counsel.

35.    In addition, in the event that TIN's contemporaneous settlement agreement with the Indirect Purchaser Plaintiffs does not receive preliminary approval from the Court, TIN reserves the right to withdraw from and terminate the settlement with the Plaintiffs.

36.     In no event shall the Court's determination of the appropriate disposition of any funds to be deposited into the Opt-Out Fee and Expense Account be grounds for rescission.

37.     TIN's right to terminate this Settlement Agreement and withdraw from this Agreement is a material term of this Agreement.  The parties agree to keep confidential the Confidential Side Letter and its terms and conditions contained therein from any documents filed with the Court.  The Parties agree to submit the Confidential Side Letter to the Court *in camera* if requested, unless ordered to file it, in which case it shall be filed under seal.

38.     TIN reserves all of its legal rights and defenses with respect to any potential Opt-Out Purchaser.

## H.     Cooperation

39.     TIN agrees to provide cooperation as part of the consideration being provided by TIN to Plaintiffs for the release and discharge provided for herein.  Subject to the provisions of paragraph 40 below, the cooperation shall extend to and include information relating to TIN's and other Defendants' manufacturing, marketing and selling of Wallboard in the United States to the extent known to TIN through its ordinary course of business and not otherwise learned by TIN in the course of this litigation.

40.     TIN shall have the right to assert the attorney-client privilege, attorney work-product protection, joint defense, common interest, Rule 408, or any other protection, privilege or immunity available under any applicable United States or foreign law, or applicable privacy laws available under the pertinent foreign law, provided, however, that Plaintiffs and the Settlement Class are not relinquishing any rights to obtain information that they would be entitled to seek and obtain pursuant to a non-party subpoena that could be served on TIN, nor is TIN waiving rights to object to discovery except as specifically stated herein.  TIN shall have the

right to designate any information provided as confidential pursuant to the stipulated and court-ordered confidentiality agreement ("Protective Order"). All such designations shall survive the termination or rescission of this Agreement. TIN shall also have the right at its own expense to the presence and assistance of counsel in all communications with Plaintiffs and Interim Co-Lead Counsel.

41.     Except as hereafter provided, TIN shall exclude from any information provided to Plaintiffs any information in TIN's possession provided by a party other than TIN, in this litigation or otherwise, if such material is subject to a protective order (the "Protected Material") issued by any United States or foreign court of competent jurisdiction but only to the extent not already known to TIN through its ordinary course of business. TIN will nonetheless provide Plaintiffs such Protected Material if and when Plaintiffs obtain from that court issuing the protective order a release for TIN from the confidentiality provisions of the protective order. Except under extraordinary circumstances based on potential adverse effect on TIN, TIN will not oppose Plaintiffs' application to release TIN from any protective order pertaining to Protected Material.

42.     Interviews – After preliminary approval of the settlement, upon a request by Plaintiffs' Interim Co-Lead Counsel, TIN agrees to use reasonable efforts to provide cooperation in the form of interviews with up to three (3) people currently or formerly under TIN's control. The total time for the interviews will not exceed twelve (12) hours, with no one interview to extend beyond six (6) hours. The interviews will take place on a date and at a time and place mutually agreed to by TIN and Plaintiffs and will not be recorded or transcribed. In addition, TIN agrees to use reasonable efforts to make up to three (3) witnesses available for trial depositions if requested by Plaintiffs, at an appropriate stage of the case after final approval of

the settlement. Further, upon request by Plaintiffs, TIN will undertake reasonable efforts to make appropriate people available either to provide a written declaration under Federal Rule of Evidence 902(11) or (provided Plaintiffs have been unsuccessful despite reasonable efforts to have the authenticity stipulated or otherwise established) to testify regarding the authenticity and "business records" qualifications of TIN documents. This cooperation shall be the same as provided to the Indirect Purchaser Plaintiffs and is not intended to be cumulative (*i.e.* between Plaintiffs and Indirect Purchaser Plaintiffs there will be no more than three (3) interviews totaling no more than twelve (12) hours and three (3) depositions). If for any reason the Agreement is not finally approved and Plaintiffs pursue a case against TIN, Plaintiffs may not use any evidence or information obtained solely from the interviews provided by TIN as part of the Settlement Agreement (as opposed to any other source) in their prosecution of TIN.

43.     If TIN, despite its diligent and continued reasonable efforts, is unable to produce a requested witness, Plaintiffs may, following reasonable written notice to TIN, in the case of former directors, officers, or employees, contact the witness independently, or, in the case of current or former directors, officers, or employees, seek to compel testimony from the witness through subpoenas, or other legal means.

44.     Depositions of cooperating witnesses shall be conducted pursuant to the Federal Rules of Civil Procedure, and shall be subject to the jurisdiction of the United States District Court for the Eastern District of Pennsylvania, regardless of the location at which the deposition takes place. Any depositions will take place on a date and at a place and time mutually agreed to by TIN and Plaintiffs.

45.     General Matters Regarding TIN's Cooperation – TIN's obligation to cooperate shall not be affected by the release set forth in this Agreement or the final judgment order with

respect to TIN. Unless this Agreement is rescinded, disapproved, or otherwise fails to take effect, the obligation to cooperate shall continue until the date that final judgment has been entered in the Action against all Defendants.

46.     TIN acknowledges that the cooperation set forth in Section H of this Agreement is a material component of this settlement and agrees to use its reasonable efforts to provide the cooperation specified in this Section.

**I.     Taxes**

47.     Interim Co-Lead Counsel shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and shall be solely responsible for taking out of the Settlement Fund, as and when legally required, any tax payments, including interest and penalties due on income earned by the Settlement Fund. All taxes (including any interest and penalties) due with respect to the income earned by the Settlement Fund shall be paid from the Settlement Fund. TIN shall have no responsibility to make any filings relating to the Settlement Fund and will have no responsibility to pay tax on any income earned by the Settlement Fund or to pay any taxes on the Settlement Fund unless the settlement is not consummated and the Settlement Fund is returned to TIN. In the event the settlement is not consummated and final and any funds including interest are returned to TIN, TIN shall be responsible for the payment of all taxes (including any interest or penalties), if any, on said income.

**J.     Miscellaneous**

48.     This Agreement does not settle or compromise any claim by Plaintiffs or any other Settlement Class Member against (a) any Defendant or (b) any alleged co-conspirator or

other person or entity other than the Releasees. All rights of any Settlement Class Member against a Defendant or an alleged co-conspirator or other person or entity other than the Releasees are specifically reserved by Plaintiffs and the other Settlement Class Members.

49.     Nothing in this Agreement prohibits Plaintiffs from asserting that the monetary amount of TIN's sales to customers that purchased Wallboard in the United States shall remain in the Action as a basis for damage calculations against the remaining Defendants in the Action and shall be part of any joint and several liability imposed against those Defendants, provided, however, that any amounts paid by TIN in settlement shall be credited against any judgment as determined by the Court as a matter of governing law. TIN states that it has not signed any judgment sharing or similar agreement, which, to its knowledge, removes its sales of Wallboard to customers as a basis for damages in this case against the remaining Defendants.

50.     This Agreement constitutes the entire agreement among Plaintiffs and TIN pertaining to the settlement of the Action against TIN. This Agreement may be modified or amended only by a writing executed by Plaintiffs and TIN.

51.     Neither this Agreement nor any negotiations or proceedings connected with it shall be deemed or construed to be an admission by any party or any Releasee of any wrongdoing or liability or evidence of any violation by TIN of any federal or state statute or law either in the Action or in any related action or proceedings, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, except in a proceeding to interpret or enforce this Agreement.

52.     This Agreement may be executed in counterparts by Plaintiffs and TIN, and a facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Agreement.

20

53.     Neither Plaintiffs nor TIN shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute, the common law, or rule of interpretation that would or might cause any provision of this Agreement to be construed against the drafter.

54.     The Court shall retain jurisdiction over the implementation and enforcement of this Agreement and the settlement.

55.     Any disputes between TIN and Interim Co-Lead Counsel concerning this Agreement shall, if they cannot be resolved by the parties, be submitted to the United States District Court for the Eastern District of Pennsylvania.

56.     Notwithstanding the potential time lag in issuance of notice to the Settlement Class, the Plaintiffs and TIN agree that, as to TIN, all discovery and other matters arising under the cases consolidated in the Action shall be stayed, except for matters related to the Settlement Agreement or approval of the Settlement Agreement.  The stay, however, does not affect the cooperation to be provided by TIN under Section H of this Agreement.

57.     This Agreement shall be governed and interpreted according to the substantive laws of the Commonwealth of Pennsylvania, without regard to its choice of law or conflict of law principles.

58.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement.

H. Laddie Montague, Jr.
Ruthanne Gordon
Michael C. Dell'Angelo
Candice J. Enders
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Tel:  (215) 875-3000
Email: hlmontague@bm.net
         rgordon@bm.net
         mdellangelo@bm.net
         cenders@bm.net

Eugene A. Spector
Jeffrey J. Corrigan
Rachel E. Kopp
Jeffrey L. Spector
SPECTOR ROSEMAN
KODROFF & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Tel:  (215) 496-0300
Email: espector@srkw-law.com
         jcorrigan@srkw-law.com
         rkopp@srkw-law.com
         jspector@srkw-law.com

Kit A. Pierson
Brent W. Johnson
David A. Young
COHEN MILSTEIN
SELLERS & TOLL PLLC
1100 New York Ave., NW, Suite 500
Washington, DC  20005
Tel:  (202) 408-4600
Email: kpierson@cohenmilstein.com
         bjohnson@cohenmilstein.com
         dyoung@cohenmilstein.com

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

Ronnie A. Howell
General Counsel
TIN Inc.

*On behalf of Defendant TIN Inc.*

22

H. Laddie Montague, Jr.
Ruthanne Gordon
Michael C. Dell'Angelo
Candice J. Enders
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: hlmontague@bm.net
       rgordon@bm.net
       mdellangelo@bm.net
       cenders@bm.net

Eugene A. Spector
Jeffrey J. Corrigan
Rachel E. Kopp
Jeffrey L. Spector
SPECTOR ROSEMAN
KODROFF & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 496-0300
Email: espector@srkw-law.com
       jcorrigan@srkw-law.com
       rkopp@srkw-law.com
       jspector@srkw-law.com

Kit A. Pierson
Brent W. Johnson
David A. Young
COHEN MILSTEIN
SELLERS & TOLL PLLC
1100 New York Ave., NW, Suite 500
Washington, DC 20005
Tel: (202) 408-4600
Email: kpierson@cohenmilstein.com
       bjohnson@cohenmilstein.com
       dyoung@cohenmilstein.com

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

Ronnie A. Howell
General Counsel
TIN Inc.

*On behalf of Defendant TIN Inc.*

22

H. Laddie Montague, Jr.
Ruthanne Gordon
Michael C. Dell'Angelo
Candice J. Enders
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Tel:  (215) 875-3000
Email: hlmontague@bm.net
        rgordon@bm.net
        mdellangelo@bm.net
        cenders@bm.net

Eugene A. Spector
Jeffrey J. Corrigan
Rachel E. Kopp
Jeffrey L. Spector
SPECTOR ROSEMAN
KODROFF & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Tel:  (215) 496-0300
Email: espector@srkw-law.com
        jcorrigan@srkw-law.com
        rkopp@srkw-law.com
        jspector@srkw-law.com

Kit A. Pierson
Brent W. Johnson
David A. Young
COHEN MILSTEIN
SELLERS & TOLL PLLC
1100 New York Ave., NW, Suite 500
Washington, DC  20005
Tel:  (202) 408-4600
Email: kpierson@cohenmilstein.com
        bjohnson@cohenmilstein.com
        dyoung@cohenmilstein.com

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

Ronnie A. Howell
General Counsel
TIN Inc.

*On behalf of Defendant TIN Inc.*

22