IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION | MDL No. 2437<br>13-MD-2437 |
| THIS DOCUMENT RELATES TO:<br><br>All Direct Purchaser Actions<br>All Indirect Purchaser Actions | |

<u>MEMORANDUM RE: CLASS PLAINTIFFS' MOTIONS
FOR USE OF SETTLEMENT FUNDS</u>

**I.      Introduction**

In this consolidated multi-district antitrust class action, two classes of Plaintiffs (Direct and Indirect Purchasers) allege that Defendant-manufacturers violated the Sherman Act by entering a conspiracy to fix the price of wallboard (i.e., drywall, plasterboard).

In August 2015, this Court approved settlements between both Plaintiff classes and two former Defendants, TIN and USG. The Direct Purchaser Plaintiffs settled with TIN for $5.25 million and USG for $39.25 million, for a total of $44.5 million. The Indirect Purchaser Plaintiffs settled with former Defendant TIN for $1.75 million and former Defendant USG for $10.5 million.

Direct and Indirect Purchaser Plaintiffs have filed Renewed Motions for Authorization to Utilize a Portion of the USG and TIN Settlement Funds for Ongoing Litigation Expenses (ECF 357 (Indirect), 358 (Direct)).

**II.     Prior Motions Seeking Authorization to Use Settlement Funds**

Prior to the instant Motions, the Court considered the Indirect and Direct Purchaser Plaintiffs' original Motions for Authorization to Utilize Settlement Funds for Ongoing Litigation Expenses (ECF 218 (Direct), 220 (Indirect)). Direct Purchaser Plaintiffs requested $2.5 million

(5.6% of their settlement) to pay for on-going "common litigation expenses," including costs already incurred, but not paid, as well as future costs. Indirect Purchaser Plaintiffs also requested $2.5 million (23.8% of their settlement) for common litigation expenses, though they did not distinguish between those costs that had already been paid and those that had been incurred but not yet paid. The common litigation expenses sought included the types of costs that are paid out of an attorney's assessment fund, such as transcript costs, expert costs, document storage, and litigation support services.

These original requests for funds did not include any specificity about the intended use of the funds, and the Court raised concerns about these requests at the settlement hearing on July 15, 2015. (ECF 265 (transcript)) At the hearing, the Court requested counsel to submit letters *in camera* describing in greater detail the nature of the expenses counsel had incurred and the purposes for which they intended to use the settlement funds.

In the *in camera* papers, Direct Purchaser Plaintiffs' counsel reported that they had so far paid over $1.4 million for common litigation expenses prosecuting the case. Additionally, they had incurred, but not yet paid, litigation expenses of over $1.8 million, primarily for other expert costs. Counsel also indicated that the expert reports, although costly, were essential in securing the settlements by the two settling defendants, TIN and USG.

Indirect Purchaser Plaintiffs' counsel reported that they expected to use slightly over $750,000 to pay expenses for experts, document hosting, and deposition transcripts. Again, Indirect Purchaser Plaintiffs did not distinguish between those expenses that had been incurred but not yet paid and those they had been paid already. As the Direct Purchaser Plaintiffs, the Indirect Purchasers represented that the expert reports were essential in securing the TIN and USG settlements.

Based on this information, on August 20, 2015 the Court granted in part and denied in part the original Motions. The Court authorized Direct Purchasers to use $1,811,896 to pay expert costs that had been incurred but not yet paid. (ECF 275) And, similarly, it authorized Indirect Purchasers to use $416,661.70 to pay expert costs that had been incurred but not yet paid. (ECF 274) In both Orders, the Court denied authorization to use the settlement funds to defray or reimburse any other litigation expenses.

The Court explained its conviction that counsel for both Plaintiff classes should be required to bear a similar proportion of expenses themselves without reimbursement while the case was pending. Thus, the amount the Court permitted to be disbursed from the settlement funds represented about 63% of the expert expenses that each classes' counsel had incurred but not yet paid. The amount also reflected approximately 4% of the respective settlements, which aligned with precedent.

Both at the hearing and in the Order, the Court expressed concern about over-disbursing funds in light of the pending summary judgment motions. The Court invited Plaintiffs to file additional requests for use of settlement funds following the resolution of summary judgment.

**III.    Instant Motions for Use of Settlement Funds**

Expectedly, following this Court's Summary Judgment Memorandum and Order on February 18, 2016 (ECF 351), Direct and Indirect Purchaser Plaintiffs filed renewed motions for use of the settlement funds. (ECF 357 (Direct) 358 (Indirect)) As their initial requests, Plaintiffs renewed motions contain few details about the costs for which they intend to use the funds.

Direct Purchaser Plaintiffs request $688,104.00, the balance of the originally requested $2,500,000, without providing any specific information about how these funds would be used.

3

Indirect Purchaser Plaintiffs provide more detail, stating that the requested funds would be used exclusively to offset future expenses (principally expert witness fees) and a general description of what those future expenses would be. Indirect Purchasers seek to justify their request by noting their higher burden of proving causation and damages, assuming they can prove an agreement. This issue may be relevant on the class action question, which is currently the subject of a briefing schedule. Indirect Purchasers ask the Court to authorize spending the balance of the originally requested $2,500,000, despite the Court's emphasis in its August 20, 2015 memorandum that it was uncomfortable with using such a high percentage (23.8%) of the Indirect Purchasers' settlement fund. The Court will still require plaintiffs' counsel to shoulder some reasonable portion of their expenses themselves, pending finality of the entire case.

In light of the lack of specificity in Plaintiffs' Motions, the Court will deny them at this time, without prejudice. The Court intends to approve future motions seeking reasonable reimbursement of expert costs so long as Plaintiffs include some specificity (which may be submitted *in camera*), accounting for the money they have expended and/or expenses incurred. Additionally, Plaintiffs must demonstrate that Direct and Indirect Purchaser Plaintiffs have cooperated with each other as much as possible to economize on the use of experts and avoid duplicative, overlapping, or unduly expensive expert reports. The Court recognizes there may be conflicts between Direct and Indirect Purchasers on some issues, separate experts are appropriate, and to some extent, cooperation may not be possible.

## IV. Conclusion

For the foregoing reasons, the Court DENIES Direct and Indirect Purchaser Plaintiffs' Motions Renewed Motions for Authorization to Utilize a Portion of the USG and TIN Settlement Funds for Ongoing Litigation Expenses (ECF 357 (Indirect), 358 (Direct)). An appropriate order follows.

BY THE COURT:

_____
MICHAEL M. BAYLSON, U.S.D.J.

O:\13-MD-2437 - drywall\13md2437.order.RenewedMot.SettlementFundUse.3.28.16.docx