IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION** | **MDL No. 2437** <br> **13-MD-2437** |
| **THIS DOCUMENT RELATES TO:** <br><br> All Direct Purchaser Actions <br> All Indirect Purchaser Actions | |

**MEMORANDUM RE: MOTION TO CERTIFY SUMMARY JUDGMENT ORDER FOR INTERLOCUTORY APPEAL**

**Baylson, J.** May  20  , 2016

## I. Introduction

This multi-district litigation ("MDL") includes antitrust claims by direct and indirect purchasers of drywall (i.e., plasterboard, wallboard) that drywall manufacturers entered into a conspiracy to fix prices and eliminate job quotes. On February 18, 2016, the Court denied Defendants' Motions for Summary Judgment as to all but one Defendant (CertainTeed). (ECF 351)

Now, Defendants American Gypsum Company LLC ("American"), Eagle Materials Inc. ("Eagle," American's parent company), New NGC, Inc. ("National"), Lafarge North American Inc. ("Lafarge"), and PABCO Building Products, LLC ("PABCO"), jointly ask the Court to certify its February 18, 2016 Summary Judgment Order for interlocutory appeal under 28 U.S.C. § 1292(b). (ECF 361) Lafarge filed an additional brief and motion related to only those findings against Lafarge. (ECF 362) Plaintiffs responded to these Motions. (ECF 368) Defendants filed replies. (ECF 372, 373)

For the reasons below, Defendants Motions are DENIED in part. The Court reserves judgment on the remaining issues until a later date.

## II. Legal Standard

In general, a matter may not be appealed to a court of appeals until a final judgment has been rendered by the district judge. 28 U.S.C. § 1291. A district court may certify an order for interlocutory appeal only upon finding: (1) the order involves a controlling question of law (2) upon which there is substantial ground for difference of opinion and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). But, even if these threshold requirements are satisfied, the decision to certify an appeal rests within the discretion of the district court. *United States v. Exide Corp.*, No. 00-cv-3057, 2002 WL 992817, at *2 (E.D. Pa. May 15, 2002).

The burden is on the party seeking certification to demonstrate that "exceptional circumstances justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of a final judgment." *Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1112 (E.D. Pa. 1992). As the Third Circuit has observed:

> It is quite apparent from the legislative history of the Act of September 2, 1958 that Congress intended that section 1292(b) should be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation. Both the district judge and the court of appeals are to exercise independent judgment in each case and are not to act routinely.

*Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir. 1958). The statutory preconditions of § 1292(b) "are to be strictly construed and applied." *Id.* at 435.

## III. Legal Issues Identified by Defendants as Basis for the Certification

In their joint motion, Defendants contend that the Court's Order was based on two controlling issues of law, and Lafarge separately argues that the Court's Order as to Lafarge was

based on an additional issue. Thus, Defendants argue that there are three controlling questions of law at play:

1. whether a jury can properly infer a conspiracy based on evidence that Defendants possessed competitive intelligence, even though there is no evidence that a competitor was the source of the information;

2. whether a jury can properly infer a conspiracy based on communications between Defendants and stock analysts, even though the stock analysts were not alleged to be part of the conspiracy; and

3. whether Lafarge's Stephen DeMay's communication with Longbow analysts gives rise to a permissible inference of participation in collusion by Lafarge.

For the purposes of this Memorandum, the Court will refer to the first issue as the "competitive intelligence" issue and the next two as the "conduit theory" issues.

## IV. Competitive Intelligence Issue

Defendants phrase their first controlling question of law as whether a jury can properly infer a conspiracy based on evidence that Defendants possessed competitive intelligence, even though there is no evidence that a competitor was the source of the information. Specifically, Defendants challenge the inferences the Court drew based in part on two sets of emails involving Defendant American. Defendants have phrased this first question without due regard for Plaintiffs' evidence and the inferences that must be drawn in favor of Plaintiffs.

The Court is well aware of the cases cited by Defendants indicating that it is not reasonable to infer agreement from one Defendant's mere advance knowledge of competitor plans. But the Court did not find that an inference of collusion was permissible merely because American anticipated that "all manufacturers" and "the big boys" were planning to eliminate job quotes. Rather, the Court found that Plaintiffs had submitted sufficient circumstantial evidence for a jury to infer that this advance knowledge of competitor information actually came from

3

competitors.[1] Op. at 111-13 (reviewing the relevant evidence). In reaching this conclusion, the Court viewed the evidence in the light most favorable to Plaintiffs, as the Court is bound to do when reviewing motions for summary judgment. Defendants' briefs fail to give Plaintiffs the benefit of favorable inferences.

Because the Court's Opinion does not implicate the question Defendants pose, the Court declines to review the § 1292(b) standard with respect to the competitive intelligence issue.

## V. Conduit Theory

Defendants contend the conduit theory is not viable in the Third Circuit when the alleged conduit is not a participant in the conspiracy.

### A. § 1292(b) Statutory Prerequisites

There are three statutory prerequisites. The Order at issue must involve a controlling question of law, there must be substantial ground for difference of opinion as to that controlling question, and the resolution of that controlling question must materially advance the termination of litigation. 28 U.S.C. § 1292(b).

#### 1. Controlling Question of Law

The phrase "controlling question of law" encompasses "at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz v. Carte Blanche Corp.*, 496

---

[1] Defendants also make reference to the Court's statement that "a jury could consider [Metcalf's April 2011] email more than mere industry rumor in light of the senior leadership position of the author." ECF 361 at 5 n.1 (quoting Op. at 112 n.42). But this statement was made because in *Baby Food*, evidence that a defendant's employees had received information from a competitor was not probative because the employees were low-level. In the instant case, the Court was distinguishing the two cases on that basis alone, having already concluded that the information in the instant case came from a competitor.

F.2d 747, 755 (3d Cir. 1974) (en banc).[2] "[Q]uestions of law which would not lead to reversal on appeal may also be controlling if they are 'serious to the conduct of the litigation, either practically or legally.'" *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, MDL No. 189, No. 74-cv-2451, No. 74-cv-3257, 1979 WL 1689 at *1 (E.D. Pa. 1979) (quoting *Katz*, 496 F.2d at 755).

Defendants' conduit issues qualify as controlling legal questions because they are practically important to the litigation and may greatly impact trial, including expert testimony, the court's jury charge, and the permissible inferences from the evidence.

### 2. Substantial Ground for Difference of Opinion

In the Third Circuit, there is substantial ground for difference of opinion "if there is genuine doubt or conflicting precedent as to the correct legal standard" or if multiple district courts within the Third Circuit have applied a given law in conflicting ways. *Bradburn Parent Teacher Store, Inc. v. 3M*, No. 02-cv-7676, 2005 WL 1819969 at *4 (E.D. Pa. Aug. 2, 2005); *Ungar v. Dunkin' Donuts of Am., Inc.*, 531 F.2d 1211, 1214 (1976). The conduit issue satisfies the second of these standards.

Defendants have not shown a "genuine doubt" about the correct legal standard and its application. This Court dedicated approximately four pages to evaluating the viability of the conduit theory. Op. at 120-124. An indication that this theory may be viable comes from *In re*

---

[2] Plaintiffs rely heavily on decisions from outside the Third Circuit to argue that Defendants' issue is too fact intensive to qualify for interlocutory review. But the Third Circuit interprets the standard for "controlling issue of law" more broadly than others. *Compare In re City of Memphis*, 293 F.3d 345 (6th Cir. 2002) ("A legal question of the type envisioned in § 1292(b), however, generally does not include matters within the discretion of the trial court."); *with In re Sch. Asbestos Litig.*, 977 F.2d 764, 778 (3d Cir. 1992) ("Perhaps in some cases the necessity of disqualification can be deemed a 'controlling question of law,' notwithstanding that it is a fact-intensive, somewhat discretionary issue collateral to the merits.").

*Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 338 (3d Cir. 2010), in which the Third Circuit reversed dismissal of a complaint, in part because plaintiffs alleged that the industry analyst was heavily involved in orchestrating the conspiracy. In this case, the jury could find that Defendants agreed to knowingly and purposely take advantage of the conduits as valuable sources of competitive information, and use that information in setting prices. *See* Op. at 124-28 (reviewing the evidence supporting this conclusion).

However, two district judges within the Third Circuit have applied the conduit theory in different ways in antitrust cases. In support of their argument on this point, Defendants cite *Valspar Corp. v. E.I. DuPont de Nemours & Co.*, No 14-cv-527, 2016 WL 304404 (D. Del. Jan. 25, 2016). *Valspar* involved a class-action opt out from *In re Titanium Dioxide Antitrust Litigation*, 959 F. Supp. 2d 799 (D. Md. 2013). *Titanium* provides a thorough review of the evidence relevant for *Valspar* and *Titanium*, and the conduit-theory related facts are substantially similar to the facts in the instant case. *See id.* at 812 (reviewing the conduit related evidence). Based on those facts, the *Titanium* district judge, within the Fourth Circuit, concluded that the plaintiffs had submitted sufficient facts for a jury to conclude that the defendants had used a conduit to facilitate an agreement in restraint of trade. *Id.* at 829. But based on the exact same factual record, the *Valspar* district judge, within the Third Circuit, reached the opposite conclusion, deciding that the plaintiffs facts were insufficient for a jury to conclude that the defendants had relied on a conduit to facilitate an agreement. *Valspar*, 2016 WL 304404 at *12.

Because this Court and the *Valspar* court reached different conclusions about the conduit theory, and because this Court and the *Valspar* court are both within the Third Circuit, Defendants have shown that two district judges within the Third Circuit have applied antitrust conspiracy law in conflicting ways. *Compare Valspar Corp. v. E.I. DuPont de Nemours & Co.*,

No 14-527-RGA, 2016 WL 304404 (D. Del. Jan. 25, 2016) (granting summary judgment as to all defendants); *with* this Court's decision in this case, *In re Drywall Antitrust Litig.*, __ F. Supp. 3d __, 2016 WL 684035 (E.D. Pa. 2016) (denying summary judgment as to all but one defendant).

Thus, there is substantial ground for difference of opinion as to the conduit theory issue.

### 3. Materially Advance the Termination of Litigation

In considering whether an appeal would materially advance the ultimate termination of litigation, "courts have focused on whether an appeal would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *United States v. Exide Corp.*, No. 00-cv-3057, 2002 WL 992817, at *2 (E.D. Pa. May 15, 2002). It is not required that a reversal of the Court's Order would end the litigation. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (en banc).

An interlocutory appeal here could simplify complex issues for trial and avoid the need for a second trial should the Court's articulation of the conduit theory prove inaccurate.

But an interlocutory appeal, and any decision, would not make discovery significantly easier or less costly because the only remaining discovery in these cases is that related to class certification, antitrust injury, and damages. The great bulk of discovery, on the issue of an agreement, has been completed.

Resolution of the conduit issue favorably to defendants would not eliminate the need for trial. The Court relied primarily on the conduit theory in denying summary judgment as to two Defendants: Lafarge and National. As to all Defendants except Lafarge, it is unlikely that a decision on the conduit theory would change this Court's decision that summary judgment was properly denied. The Court is less certain about the impact of resolution of the conduit issue as to Lafarge. Even without the conduit theory, Lafarge would still need to contend with the

statements in Exhibit 1269.[3] Although the evidence as to Lafarge may be weaker following resolution of the conduit issue in a manner favorable to Lafarge, the Court cannot state with certainty that it would grant summary judgment in favor of Lafarge.

Because resolution of the issue could clarify at least one complex issue, Defendants have satisfied their burden as to this element.

### B.     Discretion

Having determined that Defendants established the statutory preconditions, the Court must decide whether it should exercise its discretion. "The key consideration is . . . whether [the Court's Order] truly implicates the policies favoring interlocutory appeal." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974). "Those policies . . . . have included the avoidance of harm to a party pendent lite from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expenses." *Id*. Judge Becker concluded that there is an additional factor to consider in the discretionary analysis: "the uniqueness, exceptionality, or extraordinary importance of the question of law involved." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, MDL No. 189, No. 74-cv-2451, No. 74-cv-3257, 1979 WL 1689 at *1 (E.D. Pa. 1979) (quoting *Katz*, 496 F.2d at 755).

An interlocutory appeal would likely clarify the conduit issue. Thus, counsel and this Court could rely on the Third Circuit's decision about the conduit theory in preparation of expert testimony, rulings on admissibility of evidence, arguments to the jury, the charge to the jury, and possibly, jury interrogatories.

---

[3]     *See, e.g.*, Ex. 1269 at 2 ("The table is set—so long as nobody f***s it up."); *id.* ("If we see [USG] raise their price to their break-even number of $125 mill-net, there will be a collective responds [sic] from all of us – National, Lafarge, Certainteed – we all respond.").

The conduit theory issue is fairly unique in antitrust cases, as it does not tend to arise frequently. The *Valspar* plaintiffs have appealed from the grant of summary judgment, so the Third Circuit will have the opportunity to rule on this issue even without an interlocutory appeal from this case.[4] *Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, No. 16-1345 (3d Cir. ____) (notice of appeal filed Feb. 16, 2016).

The Court does not view this question as *extraordinarily* important to the case. And importantly, the parties may have another opportunity to seek interlocutory appeal on the horizon. Currently, the parties are in the midst of class discovery and briefing, with a class certification hearing tentatively slated for January 2017. (ECF 367 at 2). Rule 23(f) allows either party to move for a discretionary interlocutory "appeal from an order granting or denying class-action certification." Fed. R. Civ. P. 23(f).

Whatever this Court's decision on the class action may be, Defendants have satisfied the three preconditions for interlocutory appeal for the conduit issue. At this juncture, this Court is considering postponing a final decision on certification. Delaying the final decision until promptly after the class certification decision would allow the parties to consolidate their requests (or oppositions) to the Third Circuit for interlocutory appeal (assuming the Court grants the instant Motion). This consolidation may increase the likelihood that the Third Circuit would grant both motions.

Also, the Third Circuit may render a decision in *Valspar* prior to this Court's class-action certification decision. This would obviate the need for clarification on the conduit theory issue.

---

[4]  In fact, based on the briefing schedule in *Valspar*, the parties here still have time apply to the Third Circuit for leave to file amicus briefs in *Valspar* pursuant to Federal Rule of Appellate Procedure 29, regardless of certification.

And, if the Third Circuit affirms *Valspar*in in a precedential opinion, this Court may reconsider its summary judgement decision.

Given these considerations, the Court will give counsel the opportunity to submit a brief, limited to ten pages, expressing a preference for either an immediate decision or a delayed one.

## VI.     Conclusion

An appropriate order follows.

O:\13-MD-2437 - drywall\13md2437.MemoInterApp.5.20.16v3.docx