**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION** | |
| | **CIVIL ACTION** |
| **THIS DOCUMENT RELATES TO:** | **MDL No. 13-2437** |
| **Ashton Woods Holdings LLC, et al.,**     **Plaintiffs,** | **15-cv-1712** |
|                     **v.** | |
| **USG Corp., et al.,**     **Defendants.** | |

**MEMORANDUM RE: DEFENDANTS' MOTION TO DISMISS HOMEBUILDER
PLAINTIFFS' STATE-LAW AND § 1 SHERMAN ACT CLAIMS**

Baylson, J.                                                    July  13   , 2016

I.      **Introduction**

        This suit is part of a multi-district litigation (MDL) involving allegations that domestic

drywall manufacturers entered agreements to fix prices and eliminate job quotes, a form of price

competition. There are currently two separate groups of cases proceeding simultaneously within

this MDL. The first group is composed of plaintiffs who filed class actions as direct or indirect

purchasers of drywall (the "Class Actions").[1] The second group is a single case brought by

twelve plaintiffs, who are homebuilders (the "Homebuilder Action"). The first group is

---

[1]      Early in the litigation, the Court consolidated all indirect and direct purchaser class
actions that had been filed across the country. Thus, the first group is in fact many separate cases
that the Court is treating in a consolidated fashion for pre-trial purposes.

substantially farther along in the litigation process than the second.[2] Notably, Homebuilder Plaintiffs have access to all discovery taken in the Class Actions.

On April 22, 2016, Defendants in the Homebuilder Action filed multiple Rule 12(b)(6) Motions asking the Court to dismiss many of the claims that Homebuilder Plaintiffs assert in their Second Amended Complaint ("SAC"). ECF 64, 65, 66, ECF 375.[3] On June 22, 2016, this Court ruled on two issues within the Motions to Dismiss: (1) the Court granted Defendants' request to dismiss all of the claims based on Defendants' conduct occurring after the price increase that became effective January 1, 2013, and (2) the Court denied CertainTeed's request to be dismissed from the suit. ECF 93, 94. These rulings entirely disposed of Continental Building Products' Individual Motion to Dismiss (ECF 375), CertainTeed's Individual Motion to Dismiss (ECF 66), and the portions of the Certain Defendants' Partial Motion to Dismiss in which the USG entities joined (ECF 64, 65). Thus, the only Motion to Dismiss that has any pending issues is Certain Defendants' Partial Motion to Dismiss. ECF 65.

Today, the Court turns to those remaining issues, namely, whether Homebuilder Plaintiffs'§ 1 Sherman Act claim that seeks monetary damages is barred by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977),and whether Homebuilder Plaintiffs have sufficiently pleaded their state-law antitrust and consumer protection claims. For the reasons that follow, the Court will grant the motion in part and deny the motion in part.

## II.    Legal Standard for Rule 12(b)(6) Motions

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, Homebuilder Plaintiffs' SAC must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

---

[2]      The Court's Order on the Class Action Defendants' Summary Judgment Motions may be found at *In re Domestic Drywall Antitrust Litig.*, __ F. Supp. 3d __, 2016 WL 684035 (E.D. Pa. Feb. 18, 2016). The parties in the Class Action are now involved in class-action issues.
[3]      Continental's Motion was inadvertently left off of the Ashton Woods docket, so the ECF citation for Continental's Motion is from the MDL docket, 13-md-2437.

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires a plaintiff to do more than plead facts

that are "'merely consistent with' a defendant's liability." *Burtch v. Milberg Factors, Inc.*, 662

F.3d 212, 221 (3d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reviewing

a complaint for the purpose of a Rule 12(b)(6) motion, a court "must consider only those facts

alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29

F.3d 855, 859 (3d Cir. 1994). The Court must also accept all reasonable inferences that may be

drawn from the allegations, viewing facts and inferences in the light most favorable to the non-

movant. *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

Stating a claim under § 1 of the Sherman Act "requires a complaint with enough factual

matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. "A

well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those

facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal quotations

omitted).

### III.     Third Circuit Law Governs Issues of Federal Law

Homebuilder Plaintiffs originally filed their action in the Northern District of California,

but the action was transferred to this Court on April 2, 2015 by the Judicial Panel on Multidistrict

Litigation. ECF 1. Throughout their briefing, Homebuilder Plaintiffs repeatedly rely on Ninth

Circuit law, presumably because they originally filed suit in the Northern District of California.

Before the Court addresses any of the challenges levied by Defendants, the Court must

determine which law is binding and which is merely persuasive. In other words, should this

Court apply the law of the transferor district court (the Ninth Circuit) or the transferee district

court (the Third Circuit)? Surprisingly, neither the Supreme Court nor the Third Circuit have

addressed this issue. *Cf. Devries v. Gen. Elec. Co.*, __ F. Supp. 3d ___, 2016 WL 2910099 (E.D.

Pa. May 19, 2016) (listing authority for this issue without listing Supreme Court or Third Circuit

3

precedent). However, at least one district court within the Third Circuit has applied the law of the transferee circuit. *Id.* at *2.

This Court now concludes that Third Circuit law is binding in this case on federal issues. This conclusion is supported primarily by the reasoning in *In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171 (D.C. Cir. 1987), which was authored by Justice Ginsburg when she was a circuit judge. In *Korean Air*, the plaintiffs argued that the transferor court's law should apply based on *Van Dusen v. Barrack*, 376 U.S. 612 (1964). *Van Dusen* is part of the *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938), line of cases, which address when to apply state as opposed to federal law in federal litigation. The D.C. Circuit rejected the plaintiffs' *Van Dusen* argument, distinguishing the policies governing the applicability of state law versus federal law from those governing the applicability of federal law versus federal law: "[F]ederal courts comprise a single system [in which each tribunal endeavors to apply] a single body of law." *Korean Air*, 829 F.2d at 1175 (quoting *H.L. Green Co. v. MacMahon*, 312 F.2d 650, 652 (2d Cir. 1962)). Additionally, Judge Ginsburg pointed out that applying the law of the transferor court "would surely reduce the efficiencies achievable through consolidated preparatory proceedings." *Id.*

Notably, it also appears the Ninth Circuit would adopt the reasoning of *Korean Air* in an MDL case. In the context of a venue transfer under 28 U.S.C. § 1404(a), the Ninth Circuit adopted the reasoning of *Korean Air* to determine that the transferee court's circuit law should apply. *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994). Although a venue transfer is materially different from an MDL transfer, it seems likely that the Ninth Circuit would also adopt the reasoning from *Korean Air* in the context of an MDL transfer.

Though this Court will treat Third Circuit law as binding, the Court will give special consideration to Ninth Circuit law in the Homebuilder Action. The Court is mindful that this action may be transferred back to the Northern District of California should a trial be necessary. Thus, any decision this Court makes in pre-trial adjudication may be binding on the Northern District of California. With this in mind, the Court will do its best to prevent a scenario in which the California district court will be bound by law that is contradictory to Ninth Circuit law.

## IV.    Four Counts Asserted in the SAC

In the SAC (ECF 56), Homebuilder Plaintiffs advance four counts.

Two of their counts assert violations of federal antitrust law. Count 1 alleges that Defendants have violated the Sherman Act and seeks only injunctive relief. ECF 56 ¶¶ 250-262. Count 2 alleges violations of § 1 of the Sherman Act and requests monetary damages on behalf of only two of the Homebuilder Plaintiffs, Ashton Woods and D.R. Horton, who bought drywall from Defendant L&W Supply ("L&W Purchasers"). L&W is a wholly-owned subsidiary of USG.  This undisputed fact becomes important in the discussion below.  *Id*. ¶¶ 263-271.

Homebuilder Plaintiffs' third count asserts violations of state antitrust and restraint of trade laws, under the laws of California, Illinois, North Carolina, Arizona, the District of Columbia, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, Oregon, Tennessee, West Virginia, and Wisconsin. *Id.* ¶¶ 378.

Homebuilder Plaintiffs' fourth count asserts violations of state consumer protection and unfair competition laws, under the laws of California, Colorado, the District of Columbia, Florida, Georgia, Nevada, New Mexico, North Carolina, South Carolina, and Virginia. *Id.* ¶¶ 397-467.

**V.      Discussion re: Counts 1 and 2**

In Certain Defendants' Partial Motion to Dismiss, Defendants American, CertainTeed, Continental, Lafarge, National, and PABCO assert numerous arguments. They argue that D.R. Horton & Ashton Woods are indirect purchasers and therefore Count 2 should be dismissed because those two plaintiffs are ineligible to seek monetary damages for Defendants' alleged violations of § 1 of the Sherman Act. Additionally, they attack on multiple grounds the sufficiency of Plaintiffs' allegations as to Plaintiffs' state antitrust and consumer protection laws.

Notably, the USG entities, including L&W, did not file a Motion to Dismiss the entire SAC. Instead, they chose to join only those portions of Certain Defendants' Motion to Dismiss that challenged the conspiracy allegations following the 2013 price increase.  Thus, the USG Defendants do not move to dismiss Counts 1, 2, 3 or 4 of the SAC.  ECF 64, 65.

**A.      Indirect Purchasers and *Illinois Brick***

Count 2 in the SAC is a Sherman Act § 1 claim in which the L&W Purchasers seek monetary damages from all Defendants. The L&W Purchasers allege that they are customers who purchased drywall directly from L&W, a subsidiary of USG Corp. Unlike the other Defendants, L&W is "a building materials distributor" rather than a drywall manufacturer. SAC ¶ 45. Defendants argue that the L&W Purchasers are "indirect purchasers," and are therefore barred from pursuing damages by *Illinois Brick.*

Indirect purchasers are purchasers who did not purchase a product directly from a price-fixing defendant. *California v. ARC Am. Corp.*, 490 U.S. 93, 97 (1989). Under *Illinois Brick*, indirect purchasers are barred from seeking damages for Sherman Act violations, with limited exceptions. *Ill. Brick Co.*, 431 U.S. at 735-36. The Supreme Court read this limitation into the

Sherman Act for a number of reasons. For one thing, permitting indirect purchasers to recover would make antitrust suits exceedingly complex, requiring courts to "apportion the recovery among all potential plaintiffs that could have absorbed part of the overcharge." *Id.* at 737. Additionally, the Court was concerned that allowing indirect purchaser suits could subject defendants to multiple liabilities. *Id.* at 730.

In the Third Circuit, there are three potential exceptions to the *Illinois Brick* rule: (1) a "cost-plus" exception, (2) a "co-conspirator" exception, and (3) an "owned or controlled" exception. *See Merican, Inc. v. Caterpillar Tractor Co.*, 713 F.2d 958, 968 n.22 (3d Cir. 1983); *Howard Hess Dental Labs, Inc. v. Densply Int'l, Inc.*, 602 F.3d 237, 258-59 (3d Cir. 2010).

### 1.    L&W's Role in the Alleged Conspiracy

In Count 2, the L&W Purchasers incorporate all of the Homebuilder Plaintiffs' allegations in Count 1 of the SAC. In Count 1, Homebuilder Plaintiffs advance two theories of L&W's role in the alleged conspiracy. In some paragraphs, Homebuilder Plaintiffs nakedly assert that L&W, along with the entire USG corporate family, conspired with drywall manufacturers.[4] SAC ¶¶ 45 n.3, 56-57, 264, 266-269.[5] In others, Plaintiffs allege that "Defendants utilized L&W Supply's role as a wallboard distributor to facilitate and monitor the conspiracy" and that L&W was "used as an intermediary." SAC ¶ 194; *accord* SAC ¶¶ 195, 226, 231. The sections relating to L&W's intermediary role provide at least some factual allegations supporting this characterization. For example, Homebuilder Plaintiffs have alleged that a

---

[4]    Homebuilder Plaintiffs allege in a footnote that "[t]he USG companies (including Defendant L&W Supply) are members of the conspiracy. . . . Alternatively, Defendant USG Corporation is a member of the conspiracy by virtue of its status during the Conspiracy Period as the alter ego of Defendants United States Gypsum Company and L&W Supply." SAC ¶ 45 n.3.

[5]    In SAC ¶ 279, Plaintiffs also allege that L&W had the opportunity to conspire at a dinner with one of L&W's clients. Although this is at least some allegation of fact, a mere opportunity to conspire, particularly between a customer and vendor, is insufficient to allege membership in an antitrust conspiracy.

PABCO official sent an L&W official an email indicating that the manufacturers needed "to police" and mentioning future strategy discussions between L&W and PABCO. SAC ¶ 195.

The Court emphasizes that because L&W is a wholly-owned subsidiary of USG, the allegations about L&W must be considered as allegations against USG.  The Homebuilder Plaintiffs have made allegations against the USG entities, which might be interpreted to imply that these subsidiaries can conspire with each other, or USG itself. But such a theory is rejected under *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777 (1984).

Most of the allegations concerning L&W relate to what others were telling L&W,[6] L&W's corporate characteristics,[7] and meetings L&W attended.[8] Notably sparse are references to things L&W did or said.[9] However, there are sufficient allegations to support a claim that L&W was an intermediary, and thus the claims against USG are as both a member of the conspiracy and an intermediary. The legal significance of this conclusion requires the Court to allow Count 2 to proceed on behalf of the L&W Purchasers against all defendants if the L&W Purchasers can establish that they were direct purchasers, or if exceptions to *Illinois Brick* apply.

### 2.        Direct v. Indirect Purchaser

Because *Illinois Brick* bars claims by indirect purchasers, the critical inquiry is whether the L&W Purchasers should be classified as direct purchasers. The L&W Purchasers have

---

[6]        *E.g.*, SAC ¶¶ 191, 194, 195, 231.
[7]        *E.g.*, SAC ¶¶ 43, 45, 57, 265.
[8]        *E.g.*, SAC ¶¶ 187, 224.
[9]        The Court found only two references: "Defendant L&W Supply also mocked the legality of announcing prices more than 30 days in advance of any price increase." SAC ¶ 149. "[O]n September 19, 2011 (the date provided by Mr. Metcalf), senior pricing officials at Defendant USG and Defendant L&W Supply held a call to discuss the elimination of job quotes and the implementation of a price increase." SAC ¶ 190. This allegation is sufficient as a matter of law for reasons stated in the text under the *Copperweld* case.

sufficiently alleged they should be classified as direct purchasers, because a purchase from L&W qualifies them as direct purchasers.

Defendants rely on two Third Circuit cases to support their position that the L&W Purchasers are indirect purchasers. In *Howard Hess Dental Labs. Inc. v. Densply Int'l, Inc.*, 602 F.3d 237 (3d Cir. 2010), plaintiffs brought a Sherman Act § 1 claim alleging that a manufacturer conspired with dealers. However, in *Hess* there was no clear allegation that the dealers from which the plaintiffs had purchased were wholly-owned subsidiaries of an alleged co-conspirator. *Id.* at 258-59. Thus, the Third Circuit concluded that *Illinois Brick* barred the claim because the *Hess* plaintiffs had not sufficiently alleged that the dealers were members of the conspiracy. *Id.* at 259. Defendants also cite, in their reply brief, *Midwest Paper Co. v. Continental Group*, 596 F.2d 573 (3d Cir. 1979).  However, a close reading of this decision shows that it does not contain any specific holding determinative of this issue, but that the court noted that if the facts developed that a plaintiff had purchased the relevant product from a wholly-owned subsidiary of an alleged co-conspirator, then plaintiffs would be considered direct purchasers.

In this case, the fact that L&W is a wholly-owned subsidiary of USG requires the Court to conclude that the L&W Purchasers, because they allege they purchased from L&W, were also, as a matter of antitrust law, purchasing from USG.  Thus, at least for purposes of certain Defendants' Motion to Dismiss, the L&W Purchasers qualify as direct purchasers. Therefore, there is no need to consider any of the *Illinois Brick* exceptions.

## VI.    Claims Based on State Antitrust Law

Homebuilder Plaintiffs seek to apply California antitrust law to recover for all of their drywall purchases. Alternatively, they seek to apply the antitrust laws of Illinois, North Carolina,

Arizona, the District of Columbia, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, Oregon, Tennessee, West Virginia, and Wisconsin.

Defendants attack the constitutionality of applying California law on a nationwide basis and argue that California law is the wrong choice of law for claims based on transactions that occurred outside of California. Additionally, they argue that some of the antitrust state-law claims should be dismissed because the state laws require wholly intrastate commerce and/or Homebuilder Plaintiffs' have failed to allege sufficient antitrust injury.

### A.    Nationwide Application of California Antitrust Law

The Court believes that these arguments should be addressed at a later stage in litigation, specifically, after the conclusion of discovery related to antitrust injury. *See Graboff v. The Collern Firm*, No. 10-cv-1710, 2010 WL 4456923, at *8 (E.D. Pa. Nov. 8, 2010) ("Due to the complexity of [choice of law] analysis, when confronted with a choice of law issue at the motion to dismiss stage, courts within the Third Circuit have concluded that it is more appropriate to address the issue at a later stage in the proceedings.").

Defendants' arguments are serious and merit consideration, but it is premature for the Court to rule on these issues at this time. After all, discussion of whether the application of California law violates the Due Process or Commerce Clauses will be irrelevant if the Court determines that California law is the wrong choice of law for the claims that would come close to offending the Constitution. Thus, the Court declines to address whether the application of California law on a nationwide basis would offend the Constitution or be the wrong choice of law.[10]

---

[10]    When the parties present their ultimate choice-of-law arguments, they should carefully consider *Hammersmith v. TIG Insurance*, 480 F.3d 220 (3d Cir. 2007).

### B.   State Antitrust Laws Requiring Intrastate Commerce

In the event the Court declines to apply California law on a nationwide basis, Plaintiffs ask the Court to apply numerous other state anti-trust laws. Defendants argue that Homebuilder Plaintiffs have failed to allege a plausible claim for relief for three of those statutes, which are the antitrust laws of the District of Columbia, Mississippi, and New York. Defendants interpret those statues as requiring wholly intrastate conduct. Plaintiffs have alleged a nationwide conspiracy and that Defendants' actions "were within the flow of commerce." ECF 65 at 30 (quoting SAC ¶ 29).

For the same reasons the Court declines to address the Defendants' arguments related to the nationwide application of California law, the Court declines to address this argument as well. It is possible that the Court will conclude during choice-of-law analysis that none of these state laws apply, and thus, discussion of whether Homebuilder Plaintiffs have adequately alleged violations of these statutes would be irrelevant and a potential waste of judicial resources. Defendants are invited to reassert these arguments at a later time.

### C.   State Antitrust Laws Prohibiting the Pass-Through Defense

The "pass-through defense" is a defense to some of the state antitrust claims asserted by the Homebuilder Plaintiffs. This defense precludes indirect purchasers from recovering damages if the purchasers were able to "pass on" the overcharge to their customers. This defense disproves the element of antitrust injury.

In the SAC, Homebuilder Plaintiffs state that they were not able to "pass through" the overcharges. They allege that they do not break out the cost of wallboard when selling a home, and thus, the overcharges were absorbed by the Homebuilder Plaintiffs. Additionally, they allege that the sale prices for homes are driven by a number of factors unrelated to building material

costs. Defendants argue that these allegations are insufficient to plead antitrust injury because it is likely that Homebuilder Plaintiffs raise the price of the home when their costs increase, and thus, pass on the price increase to customers.

At the pleading stage, the Court finds that Homebuilder Plaintiffs have plausibly alleged antitrust injury by alleging both that they do not break out the component costs of building materials when selling a home and that home prices are driven by factors unrelated to building costs. Although the economic realities of the real estate industry seem to question the plausibility of these allegations, they are not mere legal conclusions and may in fact reflect the business experience of some or all of the Homebuilder Plaintiffs.  Thus, they are entitled to some weight on a Rule 12 motion.  Accordingly, the Court denies Defendants' request to dismiss the state-law antitrust claims that are subject to a pass through defense.

## VII.    Claims Based on State Consumer Protection Law

Plaintiffs have alleged numerous claims based on violations of a variety of states' consumer protection laws. Defendants attack these allegations as failing to (1) comply with Rule 9(b), (2) allege consumer deception or reliance as required by consumers in four states and D.C., and (3) allege primarily intrastate conduct as required by two of the statutes. Additionally, Defendants make specific arguments as to the plausibility of the claims under the New Mexico and Nevada laws.[11]

### A.    Pleading Fraud with Particularity

Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The purpose of

---

[11]    Ultimately, the Court will have to make many choice-of-law decisions related to this claim. Although the Homebuilder Action is not a class action, the Court asks the parties to carefully consider *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), when it comes time to address the consumer protection choice-of-law issues.

this requirement is to "give[] defendants notice of the claims against them, provide[] an increased measure of protection for their reputations, and reduce[] the number of frivolous suits brought solely to extract settlements." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).

In many of their consumer protection allegations, Homebuilder Plaintiffs allege that "Defendants deceived Plaintiffs and others into purchasing their wallboard at supra-competitive prices by falsely representing that wallboard price increases and the elimination of job quotes . . . were the result of independent decision making by each Defendant." *E.g.*, SAC ¶ 386. Based on these allegations, Defendants characterize seven of the Homebuilder Plaintiffs' consumer protection claims as claims based on fraud or deceit. Defendants argue that Homebuilder Plaintiffs have failed to (1) identify any fraud or deception at all, (2) plead deception with particularity, and (3) adequately allege materiality or reliance. In response, Homebuilder Plaintiffs dispute the characterization of their claims as those based on fraud or deceit, and alternatively, argue that they have satisfied Rule 9(b)'s standard if it applies.

That said, the Court has reviewed both Plaintiffs' consumer protection claims that were challenged by Defendants and the statutory elements required to prove such claims. Although Defendants are correct that some of those claims do not require allegations of fraud or deceit, Homebuilder Plaintiffs have advanced a theory of recovery that would be dependent on fraud or deceit. *E.g.*, SAC ¶¶ 393-97. The Court concludes that an appropriate ruling on this issue, in order to give some weight to the principles of Rule 9(b), is to require each Plaintiff to set forth factual details to at least one transaction, contract, or specific business situation, in which it was using drywall, and stating with specificity the following details:

1. The source of the drywall it had purchased, the date or date range, and the amount paid;

2. The contract, transaction, or business situation in which it alleges there was a violation of a specific state's consumer protection laws;

3. The manner by which it alleges the state's consumer protection law was violated, and the Defendant or Defendants who each Plaintiff alleges committed the violation;

4. The damages, or reasonable estimate of damages, it suffered; and

5. How it was damaged by the specific act or omission of the Defendant or Defendants it alleges are responsible for the damages.

The Court believes that this is an appropriate requirement because each of the Homebuilder Plaintiffs can research their own records, and allege in an amended Count 4 (only) those sufficient facts to show that they can properly allege the violation of the consumer protection laws of at least one state. Discovery will provide an opportunity for Defendants to inquire into this specified transaction, and also request each of the Homebuilder Plaintiffs to supply similar details as to other situations for which they claim damages in this case. Similarly, Homebuilder Plaintiffs may be entitled to discovery from Defendants of their knowledge of the state consumer protection laws they are accused of violating.

**B.    Consumer Requirements**

Defendants argue that some of the Homebuilder Plaintiffs' consumer protection claims are implausibly pleaded because Plaintiffs are not consumers.

### 1.      Consumer Deception/Protection Requirements

Defendants argue that the D.C. Consumer Protection Procedures Act and the Nevada Deceptive Trade Practices Act (the "Nevada Act") require allegations of consumer protection. Additionally, they argue the laws of the District of Columbia and New Mexico require allegations of unconscionable conduct towards consumers, which requires something more than allegations that the price was artificially inflated. Plaintiffs respond that Defendants have misinterpreted the legal requirements of these claims.

As to the D.C. law, Defendants are correct that the law is consumer oriented. Only those who receive or demand goods that are for personal, household, or family use may sue under the D.C. Act. *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010). "[I]f an individual purchases what might otherwise be considered a consumer good but does so for business reasons, that transaction is not subject to the [D.C. Consumer Protection Procedures Act]." *Cannon v. Wells Fargo Bank*, 926 F. Supp. 2d 152, 173 (D.D.C. 2013).  Plaintiffs purchased drywall for business reasons, namely, to build homes for resale. Thus, Plaintiffs may not sue under the D.C. consumer protection law.

By contrast, Defendants' argument regarding the Nevada Act is misplaced. In *Del Webb Communities, Inc. v. Partington*, the Ninth Circuit rejected the same argument. 652 F.3d 1145, 1152 (9th Cir. 2011). By its terms, the Nevada Act "allows 'any person' who is a 'victim of consumer fraud' to sue." *Id.* (quoting Nev. Rev. Stat. 41.600(1)). In considering an argument that this language permits only consumer-plaintiffs, the Ninth Circuit explained that "[t]he word 'consumer'" in the statute "modifies 'fraud,' but does not limit 'any person' or 'any victim." *Id*. Additionally, the Nevada Act "defines the kinds of actions that constitute 'consumer fraud' not be referring to a certain type of victim, but by cross-referencing other [statutory] sections

defining deceptive trade practices and other offenses." *Id.* (quoting Nev. Rev. Stat. 41.600(2)). Thus, the court concluded that the Nevada Act did not limit standing to consumers. *Id.* at 1153. This Court agrees with this analysis and rejects Defendants' argument to the contrary. *See In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 226 (S.D.N.Y. 2012) (reaching the same conclusion regarding defendants' argument that only elderly or disabled people may bring Nevada Act claims in private actions).

Although Defendants are correct that the New Mexico Unfair Practices Act requires a plaintiff to plead unconscionable conduct, "[f]ederal courts generally permit [New Mexico consumer protection] actions in price-fixing cases provided that the plaintiff alleges a 'gross disparity' between the price paid for a product and the value received.'" *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 585-86 (M.D. Pa. 2009); *see* N.M. Stat. Ann. § 57-12-2(D) (2016) (defining an "unconscionable trade practice" as one that "results in a gross disparity between the value received by a person and the price paid"). Thus, the Homebuilder Plaintiffs did not need to plead unconscionable conduct separate from pleading that they paid inflated prices for goods that were worth substantially less than what they paid.

### 2.    Only Consumer Plaintiffs

Defendants argue that the Georgia and North Carolina consumer protection statutes protect only consumers, and thus, the Homebuilder Plaintiffs cannot qualify for relief under these statutes. *See* Ga. Code Ann. §§ 10-1-390, *et. seq.* (2016); N.C. Gen. Stat. §§ 75-1.1, *et seq.* (2016).

The Homebuilder Plaintiffs may not bring suit pursuant to the Georgia Fair Business Practices Act ("Georgia Act"). The Eleventh Circuit certified this precise issue to the Georgia Supreme Court, which answered that "[a] suit predicated upon an alleged violation of the

16

[Georgia Act] must be brought in the plaintiff's 'capacity as an individual member of the consuming public.'" *Friedlander v. PDK Labs*, 89 F.3d 747, 748 (11th Cir. 1996); *accord Metal Morphosis, Inc. v. Acorn Media Publ'g, Inc.*, 639 F. Supp. 2d 1367, 1376 (N.D. Ga. 2009) (finding that a party may only bring suit under the Georgia Act as a member of the consuming public). Accordingly, the transactions between the plaintiff and defendant must "constitute either 'consumer transactions' or consumer services.'" *Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt.*, 95 F. Supp. 3d 886, 909 (D. Md. 2015); *accord In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, Civil Action No. 03-cv-4558, MDL No. 1687, 2010 U.S. Dist. LEXIS 68241, *109-10 (D.N.J. July 9, 2010) (finding that a plaintiff must allege injury to itself based on consumer acts or transactions); *Saulsberry v. Morinda, Inc.*, 1:07-cv-01542, 2008 U.S. Dist. LEXIS 10512, at *10 (N.D. Ga. Feb.13, 2008) ("Georgia courts have often held that contractual business relationships, such as those between manufacturers and suppliers or distributors and retailers, are not subject to the [Georgia Act].""). Here, Homebuilder Plaintiffs allege conduct arising from a business relationship and not from consumer transactions or services. Accordingly, Homebuilder Plaintiffs' claims must be dismissed.

Under the North Carolina Unfair and Deceptive Trade Practices Act, businesses are permitted to assert a claim against another business "only when the businesses are competitors (or potential competitors) or are engaged in commercial dealings with each other." *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 519-20 (4th Cir. 1999). Additionally, federal courts interpreting this act "have allowed claims asserted by businesses against one another as long as the challenged practices affect commerce or the marketplace." *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 419 (E.D. Pa. 2010). Homebuilder Plaintiffs have sufficiently alleged that they are a business that has been

17

injured by Defendants' unfair pricing practices and that those pricing practices impacted the marketplace. At the pleading stage, this Court considers these allegations sufficient.

### 3.   Intrastate Conduct

Defendants argue that the consumer protection laws of Florida and North Carolina apply only to wholly intrastate conduct. Plaintiffs disagree.

The Court concludes that allegations of wholly intrastate commerce are not required under either Florida or North Carolina law. *See In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1173-74 (N.D. Cal. 2015) (finding that a claim under the North Carolina consumer protection statute is actionable if the plaintiffs "alleged in-state injury and that defendants' products were being sold in North Carolina"); *Jacobs v. Central Transp., Inc.*, 891 F. Supp. 1088, 1112 (E.D.N.C. 1995)("[The North Carolina consumer protection statute] is available to a foreign plaintiff suing a resident defendant over alleged foreign injuries having a substantial in-state effect on North Carolina trade or commerce."), *aff'd in relevant part, rev'd in part*, 83 F.3d 415 (4th Cir. 1996); *cf. In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 162 (E.D. Pa. 2009) ("The [Florida Deceptive and Unfair Trade Practices Act] contains no language that would deny relief to either non-Florida residents, or limit its reach to only in-state plaintiffs or Florida businesses.").

### C.   New Mexico Claim

Defendants argue that the Homebuilder Plaintiffs' claim under the New Mexico Unfair Practices Act ("New Mexico Act") must fail because that statute has been held inapplicable to antitrust-related claims. The Homebuilder Plaintiffs disagree with this characterization.

The Court concludes that a plaintiff may make a New Mexico claim based on price-fixing allegations. *See In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 585. The New

Mexico Act prohibits both "unfair or deceptive" practices and "unconscionable trade practices in the conduct of any trade or commerce." N.M. Stat. Ann. § 57-12-3 (2016). An "unconscionable" trade practice includes one that "results in a gross disparity between the value received by a person and the price paid." N.M. Rev. Stat. § 57-12-2(E) (2016). Accordingly, allegations of price-fixing are sufficient to state a claim under the New Mexico Act when the price-fixing practices create a "gross disparity" between the price of the product and its value. *In re Chocolate*, 602 F. Supp. 2d at 585; *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 859 (E.D. Mich. 2014). At least one federal court has found that a disparity between price and value that "stabilized prices at noncompetitive levels" and constituted "artificially inflated prices" was sufficient to state a claim under the New Mexico Act. *In re Chocolate*, 602 F. Supp. 2d at 585.

To support their argument to the contrary, Defendants rely on *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029 (N.D. Cal. 2007). However, the Court disagrees with the reasoning applied in *In re Graphics*. There, the district court considered defendants' argument that the plaintiffs had failed to allege "unconscionable conduct" under the state consumer-protection laws of Arkansas, the District of Columbia, Kansas, and New Mexico. Without differentiating between the statutes, the district court concluded that the plaintiffs had failed to plead "the kind of grossly unequal bargaining power prohibited by these statutes." *Id.* Upon reaching this conclusion, the district court mentioned, without authority, that price fixing was "not the kind of conduct prohibited under [the New Mexico Act and other similar statutes]." *Id.* at 1030.

But the New Mexico statute does not require a plaintiff to plead grossly unequal bargaining power. Rather, a plaintiff may state a claim under the New Mexico Act by pleading that defendant either acted in a way that "(1) "[took] advantage of the lack of knowledge, ability,

experience or capacity of a person to a grossly unfair degree; *or* (2) result[ed] in a gross disparity between the value received by a person and the price paid." N.M. Stat. § 57-12-2(E) (2016) (emphasis added). Thus, the court in *In re Graphics*' conclusion that the New Mexico statute did not contemplate price fixing allegations rests on a misunderstanding of the statute itself.

     **D.**    **Nevada Claim**

     Defendants argue that, under the Nevada Act, private enforcement is allowed only by elderly or disabled persons. Plaintiffs disagree with this characterization. Based on the statutory language and precedent, this Court concludes that a claim under the Nevada Act may be brought by those who are not elderly or disabled.

     The Deceptive Trade Practices chapter of the Nevada Statutes "generally provides for a public cause of action for deceptive trade practices." *Nev. Power Co. v. Eighth Judicial Dist. Ct. of Nev. ex rel. Cty. of Clark*, 102 P.3d 578, 583 n.7 (Nev. 2004). One provision provides that "if an elderly person or a person with a disability suffers damage or injury as a result of a deceptive trade practice . . . [he or she] may commence a civil action against any person who engaged in the practice." Nev. Rev. Stat. § 598.0977 (2015). But elsewhere in the Nevada Statutes, it is made clear that "[a]n action may be brought by any person who is a victim of consumer fraud." Nev. Rev. Stat. § 41.600(1) (2015). "[C]onsumer fraud" is defined to include "[a] deceptive trade practice as defined in [Nev. Rev. Stat. §§] 598.0915 to 598.0925, inclusive." Nev. Rev. Stat. § 41.600(2)(e) (2015). Therefore, an action may be brought by any person who is a victim of a deceptive trade practice. *Nev. Power Co.*, 102 P.3d at 583 n.7; *see Sherfey v. Johnson & Johnson*, Civil Action No. 12-4162, 2014 WL 2616806, at *1, *9 (E.D. Pa. 2014) (holding plaintiffs, who were administrator of estate of deceased minor and the minor's parents, sufficiently pleaded cause of action under the Nevada Act); *In re DDAVP Indirect Purchaser*

*Antitrust Litig.*, 903 F. Supp. at 226 (concluding that the action was not limited to the elderly or disabled); *S. Serv. Corp. v. Excel Bldg. Servs., Inc.*, 617 F. Supp. 2d 1097, 1100 (D. Nev. 2007) (concluding a business competitor can sue under consumer fraud statutes if directly harmed by deceptive trade practices).

E.      **"Frankensteinian" Argument**

Defendants' final argument is that the Court should dismiss all of the Homebuilder Plaintiffs' consumer protection claims because Plaintiffs are merely attempting to build a "Frankensteinian equivalent of [a direct purchaser claim] to reach the very same conduct but without that formidable [*Illinois Brick*] obstacle." ECF 65 at 41 (quoting *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 255-56 (D. Conn. 2015)). Defendants base this argument on their position that Plaintiffs have failed to account for the specific elements of each of their consumer protection claims.

The Court rejects Defendants' argument. For one thing, the Supreme Court has specifically explained that states remain free to permit recovery by indirect purchasers. *ARC Am. Corp.*, 490 U.S. at 101-02. Moreover, the Court has considered Defendants' arguments targeted at specific consumer protection laws. For the most part, the Court has found that Defendants' interpretation of the statutory requirements has been incorrect and that Plaintiffs have specifically tailored their arguments to the elements of the relevant statute. Thus, even if failure to plead some of the claims with required specificity could result in dismissal of all claims, such a rule would not be applicable here.

To the extent Defendants' one-paragraph argument is an invitation for the Court to comb through all of Plaintiffs' consumer protection claims and determine whether the elements have been adequately pleaded, the Court respectfully declines the invitation.

For these reasons, the Court declines to dismiss all of Homebuilder Plaintiffs' consumer protection claims based on Defendants' "Frankensteinian" argument.

## VIII.   Conclusion and Leave to Amend

The Court is granting Defendants' Motion to Dismiss portions of Court 4 that rely on the Georgia and District of Columbia consumer protection statutes. The Court is denying the Motion in all other respects.

As to the Georgia and District of Columbia consumer protection claims in Count 4, the Court will not grant leave to amend. Homebuilder Plaintiffs are not consumers and, therefore, there are no facts they could add that could plead a plausible claim for relief under these consumer protection statutes.

The Court will grant leave to each Plaintiff to amend the consumer protection allegations in Count 4 as specified above, but notes that if any Plaintiff fails to make the requisite allegations, Count 4 will be dismissed as to that Plaintiff.

O:\13-MD-2437 - drywall\15cv1712 Memo Motion to Dismiss 7.13.16.docx