IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION | CIVIL ACTION |
| THIS DOCUMENT RELATES TO: | MDL No. 13-2437 |
| Ashton Woods Holdings LLC, et al., Plaintiffs, v. USG Corp., et al., Defendants. | 15-cv-1712 |

### MEMORANDUM RE: DISCOVERY DISPUTES

**Baylson, J.**                                                                 **August 18, 2016**

**I.   Introduction**

This antitrust suit is part of multi-district litigation ("MDL") concerning an alleged price-fixing conspiracy within the domestic drywall manufacturing industry. In this specific case, Plaintiffs are homebuilders throughout the United States ("Homebuilders" or "Homebuilder Plaintiffs"), most of which are publicly owned. Homebuilders filed this case in the Central District of California, but it was transferred here for pretrial purposes pursuant to the MDL. The MDL also consists of two putative classes: one for Direct Purchasers (i.e., those who purchased directly from one or more of the Defendants or wholly-owned subsidiaries of Defendants), the other for Indirect Purchasers (i.e., they purchased from other distributors, wholesalers, etc.).

Shortly after the Homebuilder Action was transferred to this Court, there was an agreement that the Homebuilder Plaintiffs would have access to the extensive discovery that had already taken place in the class action proceedings. As this Court has confined the damages

period in this case to the same period as in the class actions, this extensive discovery should satisfy a substantial portion of the discovery needs in the Homebuilder case.

Nonetheless, certain disputes have arisen in regard to the parties' discovery obligations. Presently before the Court are Defendants' Motion to Compel Plaintiffs to Respond to Defendants' Joint Interrogatories and Requests for Production (ECF 78) and Homebuilder Plaintiffs' Motion to Compel Defendants to Respond to Plaintiffs' Requests for Production and Interrogatories (ECF 79). The Court discussed these Motions during an on-the-record telephone conference with counsel on August 16, 2016. For the reasons set forth in this Memorandum and discussed on the call, this Court will grant in part and deny in part Defendants' Motion to Compel, and it will deny Homebuilders' Motion to Compel as moot.

Additionally pending is CertainTeed's Motion to Schedule for the Filing of an Early Motion for Summary Judgment. ECF 106. The Court will not rule on this Motion at this time, but the Court will address some of the issues raised on the August 16, 2016 call that were pertinent to this Motion.

## II.     Background[1]

Homebuilder Plaintiffs are reputedly some of the largest homebuilders in the United States, and without question, they are significant purchasers and consumers of drywall. At least two Homebuilder Plaintiffs purchased drywall directly from a wholly-owned subsidiary of Defendant-manufacturers. The others purchased drywall indirectly. Whether Homebuilders qualify as opt-outs from the putative class actions is somewhat up for debate. Regardless, their filing of this suit signifies their intent to conduct their own litigation, which is certainly their prerogative.

---

[1] In various opinions, this Court has already detailed the allegations and evidence supporting Indirect and Direct Purchasers' allegations of the antirust conspiracy, which are nearly identical to the allegations advanced by Homebuilders. *See In re Domestic Drywall Antitrust Litig.*, __ F. Supp. 3d __, 2016 WL 684035 (E.D. Pa. 2016).

**III.     Analysis**

This Court will review and rule on Homebuilder Plaintiffs' Motion to Compel (ECF 79) and Defendants' Motion to Compel (ECF 78). The Court will also briefly discuss some of the issues raised in CertainTeed's Motion to Set a Schedule for Filing an Early Motion for Summary Judgment, although the Court will not rule on that Motion at this time.

As this Memorandum is written primarily for the benefit of the parties, the Court will provide only high-level summaries of the parties' contentions. The Court realizes that it is not capturing the full extent of the parties' arguments in these summaries.

**A.     Homebuilder Plaintiffs' Motion to Compel**

Homebuilder Plaintiffs' Motion to Compel seeks documents and interrogatory responses. The only things Homebuilders are seeking are "documents and information for the time period of January 31, 2013 through March 17, 2015." ECF 79-1 at 2-6.

When this Court partially granted the Defendants' Motion to Dismiss, the Court narrowed the scope of the alleged conspiracy, imposing an end-date in January 2013. Accordingly, Homebuilders' requests for documents after this period are now irrelevant. Thus, the Court will deny Homebuilders' Motion as moot.

**B.     Defendants' Motion to Compel**

The bulk of the discovery dispute in the Homebuilder Action concerns the discovery sought by Defendants. In their Motion to Compel, Defendants seek four categories of information: (1) information about Homebuilders' participation in trade association meetings and their communications with securities analysts, (2) Homebuilders' documents concerning drywall pricing, (3) contracts and other agreements under which Homebuilders purchased drywall, and (4) information concerning Homebuilders' investigation and initiation of this litigation.

The argument on the telephone conference served to pinpoint some examples of specific documents that Defendants were seeking, and Plaintiffs' counsel had a chance to refine Homebuilder Plaintiffs' many objections. It is now clear that the breadth of Defendants' requests is the chief issue this Court needs to address in resolving the discovery issues. In light of the phone call, this Court believes it prudent to articulate and apply what it describes as the "discovery fence." The "discovery fence," is a metaphor that this Court has relied on repeatedly, and it refers to the boundaries of appropriate discovery. *E.g.*, *Boeynaems v. LA Fitness Intern.*, LLC, 285 F.R.D. 331, 333 (E.D. Pa. 2012). This fence will limit the appropriate scope of discovery, at least as to this initial round of document requests and interrogatories.

A judge constructing a discovery fence should, after considering the parties' arguments, generally enumerate those topics that are within the discovery fence that should encompass document production, answers to interrogatories, and depositions. However, the discovery fence must be flexible to account for changes in the focus by the parties brought on by additional discovery or their own investigation. The Court will follow this metaphor, emphasizing that the rulings made at this time are not necessarily final. The discovery fence may be expanded or limited because of developments in the case or because of demonstration by the parties, through subsequent motions or conferences with this Court, that the discovery fence requires modification.

Initially, the Court finds that many of Defendants' requests for documents are overbroad. As currently articulated, the requests would require Plaintiffs to produce virtually all documents in their possession, custody, or control. But the breadth of Defendants' requests is not entirely surprising. Homebuilders are very significant purchasers of drywall and will undoubtedly seek damages in the millions of dollars. Defendants have a valid claim for extensive discovery to

allow them to defend against their exposure to double recovery, which is possible in this case given the various layers of distribution and the ubiquitous use of drywall in the manufacture of housing. The Court gave some examples of this during the conference call. The double-recovery issue could become a complex issue requiring the opinion testimony of accountants and other experts. The topics of discovery related to this issue alone extend to both the fact of antitrust injury and the amount of damages that a particular plaintiff suffered, especially if the homebuilder was unable to, or just did not, "pass on" Defendants' cost increases to their own customers.

In light of the competing and valid interests of Homebuilders and Defendants, the Court will set the boundaries of the fence at the key issues of the case, which are limited to: drywall prices, drywall and housing market conditions, drywall price increases,[2] job quotes or lack thereof, drywall sales, drywall and home-sale profits, and perhaps most importantly, whether cost increases of drywall were "passed on" by distributors to Homebuilders and from Homebuilders to Homebuilders' customers. Temporally, the fence is limited to the same period as discovery in the class cases.

In the following discussion, the Court will review the specific arguments made by the parties with respect to each category of information sought. And to aid in the fulfillment of the discovery requests, the Court will provide guidance specific to each category. That said, the parties should generally be guided by the boundaries of the fence. To the extent Defendants' overbroad requests seek information falling within the discovery fence, Homebuilders will be required to produce only that information that falls within the fence. In other words, with limited

---

[2] It is undisputed that two price increases took place during the approximate two-year period for which there has already been discovery in the class actions.

exceptions explained in this Memorandum, Homebuilders must produce all of the requested documents and information that fall within the fence.

The Court again emphasizes that this fence is flexible, and it will be subject to change depending on the information discovered in this initial round of discovery.

### 1. Participation in Trade Association Meetings & Communications with Securities Analysts

A key topic of dispute is the extent to which Homebuilders must produce their documents concerning trade association meetings and communications with securities analysts. Plaintiffs have objected to five of Defendants' document requests and four interrogatories:

**Document Requests**

- **21**: Requests all communications between the plaintiff and another other purchaser or wallboard or other homebuilders concerning wallboard.

- **23**: Requests "[a]ll documents concerning communications between [the plaintiff] and any Securities Analyst."

- **40**: Requests all documents concerning any trade association events that plaintiff attended.

- **41**: Requests "[a]ll documents concerning any meeting, conference, trade show, exposition, social gathering, or other event attended by [the plaintiff] and another homebuilder, including Plaintiffs."

- **42**: Requests all documents regarding drywall that were distributed or received by the plaintiff at any trade association event.

**Interrogatories**

- **19:** Requests identification of every current and former employee who attended or participated in any trade association or trade association meetings. Also requests details about any meetings attended, including the identity of any other homebuilder who attended the meeting.

- **20:** Requests identification of every current and former employee who communicated with any current or former employee of another plaintiff or competitor concerning pricing, production, market share, competitors, supply, demand, costs, etc., and requests details about the communications.

- **26:** Requests identification of every trade association to which the homebuilder belongs along with the identities of the other members, and the address and phone number of the association.

- **28:** Requests identification of every securities analysis with which the plaintiff communicated and requests the identification of plaintiff's employee who communicated, the securities analyst with whom they communicated, and the date and method of communication.

### a. Defendants' Opening Argument

Defendants argue that this information is relevant to rebut Plaintiffs' argument that Defendants' communications with analysts and with each other at trade association meetings are probative of guilt.

Defendants are specifically *not* asserting an unclean hands defense. Rather, they are attempting to argue that the behavior of both Defendants and Homebuilders is innocent and common practice.

### b. Homebuilders' Response

Homebuilders respond that this discovery is not relevant. They stress that they will not argue at trial that Defendants' mere attendance at trade meetings or communications with analysts is probative of guilt. Rather, they will argue that Defendants' conduct with analysts and at trade meetings is suspect because of how it fits in a larger chain of events.

Homebuilders also argue that Defendants' requests are overbroad and not proportional. They suggest Defendants could ask two questions at a deposition and support the argument they want to make at trial: (1) Admit you attend trade association meetings. (2) Admit you communicate with securities analysts.

### c. Defendants' Reply

Defendants reiterate that this discovery "is highly relevant because, by showing that the Homebuilders themselves participated in trade association meetings and spoke with securities analysts, Defendants can refute the Homebuilders' allegation that it was inherently improper or unlawful for Defendants to engage in those same activities." ECF 90 at 2. Defendants also argue that Plaintiffs have failed to show that they would suffer an undue burden by producing these documents. Finally, Defendants attack Homebuilders' "two questions" argument by arguing that "Homebuilders cannot evade discovery merely by asserting that they think Defendants should have elected to pursue this information in some other way." ECF 90 at 6-7.

### d. Ruling

The Court finds that most of the Defendants' document requests are within the appropriate scope of discovery in this case. However, when the request is made for "all communications," this is, by definition, too broad. The topics relevant to this case, as indicated above, are drywall prices, drywall and housing market conditions, drywall price increases, job quotes or lack thereof, drywall sales, drywall and home-sale profits, and perhaps most importantly, whether cost increases of drywall were "passed on" by distributors to Homebuilders and by Homebuilders to Homebuilders' customers.

The Court is advised that most Homebuilders are publicly owned and that their stock is traded and may have been the subject of various securities analysts' reports. To the extent there has been publication of Homebuilders' financial statements, which may include some discussions about the cost of raw materials, including drywall, Plaintiffs will not be required to produce this information because it is available online or through the SEC. However, to the extent Plaintiffs themselves may have made communications to securities analysts on any of the

above topics, this information is discoverable in the form of documents or by questions at depositions.

The Court finds that some reasonable discovery concerning trade association events attended to by Plaintiffs may be probative in this case to the extent they concern the topics within the fence. Accordingly, Plaintiffs are required to produce all requested trade-association related documents that involve the topics within the fence.

As to interrogatories, the Court is doubtful that detailed answers to interrogatories would be helpful to any party in this case. The Court will require each Homebuilder Plaintiff to designate at least one, or up to five, managerial and/or executive-level employees who attended or participated in trade association meetings. To the extent that the information is available, Plaintiffs must also indicate the name of the relevant trade-association and identify which meetings were attended. At the depositions of Homebuilder Plaintiffs' representatives, Defendants may inquire concerning the nature of trade association communications on the issues within the fence. Although trade-association questions relating to topics within the fence are fair game, questions related to production and construction techniques, or factors, market share, also are not relevant.

As in the class-action cases, the Court believes that in order for discovery to be fair to both sides, there may be "layers" of discovery. After initial requests are made and documents are produced, further discovery issues may be brought to the Court's attention by further motion, and the Court may modify the scope of discovery accordingly.

### 2. Wallboard Pricing Documents

Defendants ask the Court to compel Homebuilders to respond to at least fifteen document requests related to Homebuilders' pricing and sales, including the methods Homebuilders used to determine the prices of their homes:

- **16**: Requests all documents discussing wallboard pricing.

- **17**: Requests all Plaintiffs' communications with Defendants or other Plaintiffs concerning wallboard price increases.

- **18**: Requests all documents reflecting Homebuilders' responses to changes in wallboard prices.

- **19**: Requests all documents concerning Homebuilders' budgets, forecasts, projections, and strategies with respect to their wallboard purchases.

- **20**: Requests all documents concerning Homebuilders' communications with their wallboard suppliers concerning wallboard.

- **22**: Requests "[a]ll documents concerning communications regarding wallboard between [the plaintiff] and any entity that installed wallboard in any residential housing other Finished Products that [the plaintiff] manufactured or sold."

- **24**: Requests all documents related to internal and external analysis in the sale of residential housing or Plaintiffs' finished products.

- **25**: Requests all documents related to pricing of Plaintiffs' residential housing or other finished products.

- **26**: Requests documents sufficient to show how Homebuilders determined prices for residential housing and other finished products.

- **28**: Requests, for all wallboard incorporated into Homebuilders' products, "any and all contracts, sales receipts, and records of each Finished Product."

- **29**: Requests, for all Finished Products, "documents sufficient to show (a) the component costs of constructing, selling, or delivering each Finished Product and (b) the final sale price of each Finished Product."

- **31**: Requests all documents created by management or senior executives that relate to "the purchase of or demand for wallboard, the price of wallboard, or the price of Finished Products incorporating wallboard."

- **32**: Requests all documents related to analyzing the relationship between construction costs and sale prices of Homebuilders' products.

- **33**: Requests "[a]ll documents concerning [the plaintiff's] budgets, forecasts, or strategies with respect to [that plaintiff's] sales of Finished Products incorporating drywall."

- **34**: Requests "[d]ocuments sufficient to show [the plaintiff's] costs, sales price, and the margin of net profit [the plaintiff] realized on the sale of Finished Products containing wallboard, on a monthly, quarterly, and annual basis."

### a.   Defendants' Opening Argument

Defendants argue information related to wallboard pricing and Homebuilders' housing pricing strategy is relevant to a number of issues: (1) whether Homebuilders anticipated the price increases, (2) whether Homebuilders recognized that the increases were justified based on competitive forces, (3) whether Homebuilders were able to pass through the price increase, and (4) the amount of damages they suffered/whether Homebuilders absorbed the increase.

### b.   Homebuilders' Response

Homebuilders concede that these requests seek relevant information. But, according to Homebuilders, as currently worded, the Document Requests would require Homebuilders "to collect, review, and produce substantially all of [their] business documents," which they argue is unduly burdensome in light of the marginal relevance of the information sought. ECF 89 at 11.

Additionally, Plaintiffs claim that they responded to each of Defendants' requests with compromises. The primary compromise Homebuilders offer is to conduct a "reasonable search" for documents that they otherwise object to producing. They used the basically the same "reasonable search" language throughout their responses:

> Subject to and without waiving these specific objections and the foregoing General Objections, Plaintiff will conduct a reasonable search for responsive documents and/or data from the files of custodians who are reasonably likely to have a reasonably complete and non-duplicative collection of responsive documents and/or data relevant to the claims and issues in this litigation and will

11

> produce non-privileged documents and/or data sufficient to show [the information sought by Defendants].

*E.g.*, ECF 89-1 at 32-33. Plaintiffs have offered other compromises as well: (1) agreeing to provide summaries rather than all of the data, (2) agreeing to produce "documents and/or data sufficient to show the component costs of drywall used by Plaintiffs and summary-level reports and/or data sufficient to show each Plaintiff's home sales figures," (3) agreeing to produce "all documents relating to price increases for drywall manufactured by Defendants," and (4) agreeing to produce "documents sufficient to show each Plaintiff's drywall purchases and *all* documents relating to communications between Plaintiffs and any supplier of drywall concerning the price of drywall." ECF 89 at 11-14. Although Homebuilder Plaintiffs have agreed to produce such documents, during the conference call it was clarified that they have not yet provided this information.

### c.    Defendants' Reply

Defendants argue that Homebuilders' offer to produce summaries is insufficient because Homebuilders are obligated to conduct a reasonable search and produce documents that are responsive to Defendants' requests. They further point out that Homebuilders have failed to explain what they would include in such summaries.

Defendants also argue that Plaintiffs have failed to specifically articulate why responding to this request would prove unduly burdensome.

### d.    Ruling

Considering the breadth of the requests in the context of the large amount of damages that Plaintiffs are likely to be seeking, and Defendants' exposure, most documents requested by Defendants on the topic of wallboard pricing are within a proper scope of discovery.

Obviously, any communications between Defendants, Homebuilders, or Homebuilders' dealers on the topic of price increases go to the heart of the case. This discovery will likely lead to some evidence revealing whether the Plaintiffs passed on the increases to their consumers when they sold houses. Similarly, Homebuilders' reactions to the changes in wallboard prices are relevant discovery.

That said, the Court finds that Request No. 19, for "all" documents concerning budgets for cost projections and strategies, is too broad. This request should be narrowed to those documents that Homebuilders can locate within their own files and that go to Homebuilders' damages. For example, Homebuilders should produce any cost studies that were done that show any impact of wallboard prices or price increases on profitability, and whether the Homebuilder Plaintiffs were able to pass on the increases. On the other hand, the Court fails to see why all forecasts or projections or strategies, without reference to prices or costs, are relevant. Accordingly, the Court sustains the objection to those types of documents.

Similarly, Request No. 20 is too broad. The Court fails to see how discussions with wallboard installers would be relevant unless those discussions directly pertained to prices or price increases or the passing on of the latter.

The Court also finds that Request No. 24 is overly broad and not relevant, but that 25 and 26 may be relevant to show whether Homebuilders passed-on the 2012 and 2013 cost increases.

As to Requests Nos. 28-34, these are very broad in language, and are overlapping. The general ruling of the Court is that documents that reflect wallboard purchases, price increases, job quotes or cessation of job quotes, passing on of price increases are relevant and must be produced. Documents that fall within the request but outside the fence need not be produced.

### 3. Contracts & Agreements Under Which Homebuilders Purchased Drywall

Originally, Defendants' Document Requests sought all "contracts, purchase orders, or agreements pursuant to which [Homebuilders] purchased wallboard." ECF 78 at 13. But during the meet-and-confer call, Defendants dropped their request for purchase orders and other documents evidencing individual purchase transactions, believing that individual purchases will be identifiable when Homebuilders produce their transactional databases. Defendants further limited their request to just the overarching contracts and other agreements between Homebuilders and their wallboard suppliers, pursuant to which the individual purchases were made.

#### a. Defendants' Opening Argument

According to Defendants, Homebuilders refused to produce the originally requested documents and still refuse to produce documents pursuant to the narrowed requests. Instead, they offer to produce a few "sample" or "template" contracts without any representation that these samples would contain all the terms found in their actual contracts.

Defendants argue that they are entitled to this discovery because it is directly related to whether and how much Homebuilders were damaged. Defendants believe these contracts might reveal that Homebuilders were damaged less than they claim. For example, if a Homebuilder had a long-term contract with a certain supplier that fixed the amount the price could increase, then Plaintiffs may not have experienced the manufacturers' full increase.

#### b. Homebuilders' Argument

Homebuilders argue that the requested discovery is burdensome. They also argue that they rarely purchased drywall pursuant to formal contracts or agreements. They believe their

offer to produce sample or template contracts of those formal agreements that did exist, is sufficient under these circumstances.

### c. Defendants' Reply Argument

Defendants believe Homebuilders' offer of compromise is insufficient. These documents are highly relevant to the case, and Defendants argue that Homebuilders should not be allowed to cherry pick the information they wish to share.

### d. Ruling

The Court agrees with Defendants that the contracts and agreements may be directly relevant to multiple issues in this case. Accordingly, Homebuilders must produce all contracts, exclusive of purchase orders, under which any Homebuilder Plaintiff purchased drywall. The Court recognizes Homebuilders' contention that few, if any, such contracts exist, and it does not expect this production to be burdensome.

## 4. Pre-Suit Investigation

Finally, Defendants seek information concerning Homebuilders' pre-litigation investigation and their initiation of this litigation.

### a. Defendants' Opening Argument

These requests seek information such as when Homebuilders "first became aware of any potential claims against any Defendant" and for a description of "the nature of any investigation." ECF 78 at 16. Defendants argue this is relevant to understanding what factual support Homebuilders have for their claims and to test whether Homebuilders conducted the required pre-suit investigation. They argue that they are entitled to explore whether Homebuilders have a "reasonable basis" for their claims. ECF 78 at 15. Defendants particularly seek the factual support underlying Homebuilders' claims of the 2014-2015 conspiracy.

### b. Homebuilders' Response

Homebuilders argue that they have already shown that they have factual support for their claims through their allegations in their Second Amended Complaint. Plaintiffs argue further that the "requested discovery is not relevant to any claim or defense as it does not relate to the liability of Defendants nor does it relate to any injury or damages caused to Plaintiffs." ECF 89 at 9. Further, Plaintiffs claim that the requested discovery would consist "almost entirely (if not entirely) of privileged and protected materials and information." ECF 89 at 9.

### c. Defendants' Reply

Defendants respond to Plaintiffs' "privilege" argument by stating that Plaintiffs should be required to create a privilege log so that Defendants can test whether the information is actually privileged.

### d. Ruling

This Court granted Defendants' request to narrow the conspiracy period, mooting Defendants' requests for the evidence underlying Homebuilders' allegations of a conspiracy related to the 2014 and 2015 price increases. And Defendants have not levied any defense based on the statute of limitations. Especially in light of these facts, the Court fails to see how pre-suit investigation would be relevant in this case. Such discovery would likely heavily involve, if not exclusively involve, privileged material and attorney work-product. At least at this time, the Court believes that the parties' efforts will be better spent by focusing discovery on the topics enumerated in this Memorandum rather than delving into pre-suit investigation.

### 5. Considerations Underlying These Rulings

For the purpose of providing insight into why this Court has defined the "discovery fence" as broadly as it has, the Court has prepared a simple hypothetical illustration of drywall transactions involving Homebuilders.

Assume that Manufacturer sells drywall to Distributor who, in turn, resells it to Homebuilder, who then constructs a home using the drywall and sells the home to Consumer. In 2011, Manufacturer sells $1 million of drywall to Distributor. In 2012, Manufacturer increases the price of drywall by 30%. And in 2013, Manufacturer increases the price of drywall by 20%. Thus, after the second increase, the price Distributor pays for drywall in 2013 has increased by more than 50% since 2011. Accordingly, also assume the $1 million cost of drywall in 2011 has now become $1.56 million in 2013. Distributor sells the drywall to Homebuilder, and Homebuilder incorporates the drywall into homes which it then markets to consumers. Assume further that the cost of drywall makes up 5% of the total cost of a Homebuilder home.

Homebuilder sues Manufacturer for damages under antitrust laws, alleging that the price increases were the result of unlawfully conspiratorial conduct. Homebuilder asserts that it was injured because Distributor completely passed on the 2012 and 2013 price increases and, thus, the inflated drywall prices did not actually cause any damage to Distributor. Additionally, Homebuilder contends that it was unable to pass the price increases to Consumer, who purchased the home.

Manufacturer would likely dispute these contentions. Manufacturer may also or alternatively want to argue that Homebuilder did not absorb the increase, passing it on to Consumer through the sale price of the home. This would have occurred if Homebuilder increased the selling price of the house commensurate with the increase in the price of drywall.

Measuring whether the sale price of a home accounted for the increase in the price of drywall would be a complex, fact-intensive issue. Homebuilder and Manufacturer are likely to introduce dueling experts to argue the impact of real estate conditions on the sale price of the home. Perhaps Homebuilder will introduce evidence that, although it spent $100,000 to construct the home, it listed this hypothetical house for sale for $200,000, and ultimately it decided for various business reasons to reduce the advertised price to $175,000. Assume further that the consumer negotiated a better price of $150,000. Homebuilder still has a substantial profit. To what extent any participant in this line of transactions has been injured by the alleged conspiratorial price increase may be a complex accounting question.

And it's possible that this accounting question could become even more complicated. Distributor may assert that it did pass on a portion of the price increase but had to absorb some of the increase itself. Homebuilder may assert that it similarly had to absorb some but not all of the price increase. And then Consumer may bring a claim under an *Illinois Brick*-repealer statute asserting that, as the ultimate consumer, Consumer paid more for the home than she would have in the absence of Manufacturer's allegedly illegal price increase.

This illustration readily reveals why determining antitrust injury and the amount of damages will not be simple. These issues are likely to be hotly disputed and the subject of various accounting and expert opinions. If any manufacturer is found liable, under federal law, damages will be trebeled.

Defendants have a valid reason to want to defend themselves against double recovery along the distribution line. If liable after a trial, any Defendants' damages should be limited to the injury caused to distributors, homebuilders, and/or consumers. All three, or only one, may

have been injured. But the total damages paid should not be more than the amount of gain illegally received by the Manufacturer and then trebeled.

Defendants also have an interest in minimizing any damages that are assessed if all of the potential claimants—the distributors, the homebuilders, and the home purchasers—have a valid claim for some damages. Defendants may be able to show, notwithstanding their liability, that some of the price increases were based on their own increased costs. The discovery that this Court is allowing to proceed is likely to be extensive. But the Court feels that it is appropriate given what is likely to be a very large damage claim by the Homebuilder Plaintiffs, which will be very complex to evaluate and expensive to defend. Although discovery as to damages has not yet started in the putative class action cases, the issues are likely to be similar.

### C. CertainTeeds' Motion to Set a Schedule for Filing an Early Motion for Summary Judgment

The Court notes in passing that CertainTeed has requested expedited treatment of its liability. The Court does not rule on that request at this time, as it wishes Homebuilders to prioritize fulfilling their discovery obligations by September 15, 2016. But, the Court encourages and expects counsel for CertainTeed and Homebuilders to discuss a schedule for expedited summary judgment after the completion of document production by Plaintiffs, which is scheduled for September 15, 2016.

### IV. Conclusion

An appropriate Order follows,

O:\13-MD-2437 - drywall\Memorandum 08162016.docx