**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION** | **CIVIL ACTION** |
| **THIS DOCUMENT RELATES TO:** | **MDL No. 13-2437** |
| Ashton Woods Holdings LLC, et al., <br>    Plaintiffs, <br><br>         v. <br><br> USG Corp., et al., <br>    Defendants. | 15-cv-1712 |

### MEMORANDUM RE: MOTION FOR INTERLOCUTORY APPEAL

**Baylson, J.**                                                                                          **August  18th  , 2016**

### I.   Introduction

This multi-district litigation ("MDL") includes claims by direct and indirect purchasers of drywall (i.e., plasterboard, wallboard) that drywall manufacturers entered into a conspiracy to fix prices and eliminate job quotes in violation of antitrust law. This memorandum relates to a case within the MDL that was brought by homebuilders, who are mainly indirect purchasers of drywall (the "Homebuilder Action").

On June 22, 2016, this Court partially granted Defendants' Motion to Dismiss the Homebuilder Action, dismissing Homebuilders' claims that were based on activity occurring after January 1, 2013. Now, Homebuilders ask this Court to certify its June 22, 2016 Order for interlocutory appeal under 28 U.S.C. § 1292(b).

For the reasons below, Homebuilders' Motion is DENIED.

## II.   Background

There are three chief components of this MDL. There are consolidated Direct Purchaser Class Actions and Indirect Purchaser Class Actions ("Direct and Indirect Purchaser Actions"), and there is the Homebuilder Action. The Direct and Indirect Purchaser Actions have defined a conspiracy period beginning in 2011 and continuing through a price increase that went into effect on January 1, 2013. The parties in those Actions have conducted substantial discovery related to whether Defendants entered into an agreement.

The Homebuilder Action was filed later, and the litigation is at a much earlier stage. Unlike the Direct and Indirect Purchasers, Homebuilders allege a conspiracy period that began in 2011 and continued through a price increase that went into effect in January 2015.

Defendants filed a Motion to Dismiss the claims in the Homebuilder Action that were based on activity occurring after January 2013, among other things. The Court granted this Motion in part on June 22, 2016, concluding that Homebuilders sufficiently alleged a conspiracy that began in 2011 and continued through 2013, but that Homebuilders fail to allege sufficient facts to show that the conspiracy continued after the January 1, 2013 price increase. Homebuilders now ask the Court to certify its June 22, 2016 Order for interlocutory review.

## III.   Legal Standard

In general, a matter may not be appealed to a court of appeals until a final judgment has been rendered by the district judge. 28 U.S.C. § 1291. A district court may certify an order for interlocutory appeal only upon finding: (1) the order involves a controlling question of law (2) upon which there is substantial ground for difference of opinion and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). But, even if these threshold requirements are satisfied, the decision to certify an appeal rests within the

discretion of the district court. *United States v. Exide Corp.*, No. 00-cv-3057, 2002 WL 992817, at *2 (E.D. Pa. May 15, 2002).

The burden is on the party seeking certification to demonstrate that "exceptional circumstances justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of a final judgment." *Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1112 (E.D. Pa. 1992). As the Third Circuit has observed:

> It is quite apparent from the legislative history of the Act of September 2, 1958 that Congress intended that section 1292(b) should be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation. Both the district judge and the court of appeals are to exercise independent judgment in each case and are not to act routinely.

*Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir. 1958). The statutory preconditions of § 1292(b) "are to be strictly construed and applied." *Id.* at 435.

### IV.     Analysis of Statutory Prerequisites

To satisfy the statutory prerequisites for interlocutory appeal, Homebuilders must show that there is a controlling issue of law. Homebuilders argue that this Court relied on two controlling questions of law in granting Defendants' Motion to Dismiss and narrowing the conspiracy period:

1. In the context of a single, continuing price-fixing conspiracy, whether on a motion to dismiss it is proper for the Court to analyze Plaintiffs' allegations relating to each alleged collusive price increase separately and require that those allegations independently meet the pleading requirements of *Twombly*; and

2. Whether the filing of a class action is alone sufficient to terminate or otherwise render implausible at the pleading stage an alleged continuing price-fixing conspiracy.

The Court disagrees with Homebuilders characterization of its ruling in the June 22, 2016 Order. These issues were not implicated in that Order.

As to the first stated issue, the Court agrees with Homebuilders that a court must analyze a plaintiff's allegations of an antitrust conspiracy as a whole. This Court did so in the June 22, 2016 Order. Viewing Homebuilders' allegations as a whole, this Court considered whether it was plausible that Defendants colluded to raise prices during 2012-2015. Homebuilders made substantial allegations of collusive activity related to the 2012 and 2013 price, and this Court concluded that the pleading sufficiently alleged a continuing price-fixing conspiracy for the years 2012 and 2013. But Homebuilders' post-2013 factual allegations were exceptionally sparse. The pleading essentially alleged that the conspiracy had continued in 2014 and 2015 merely because prices went up in 2014 and 2015 in a manner similar to 2012 and 2013 despite continued low demand and Defendants attended trade meetings.[1] The allegations of a 2014 and 2015 conspiracy were so sparse that, even considering them in conjunction with the substantial allegations of a conspiracy related to the 2012 and 2013 price hikes, the allegations failed to plausibly allege a conspiracy that continued after 2013.

Not only were Homebuilders' affirmative factual allegations sparse, but they were rendered especially weak given events after the 2013 price increase. *Multiple* class actions were filed and two of the alleged conspirators were sold to new companies. Especially in light of these intervening events, Homebuilders needed to point to some fact other than a price increase to

---

[1] In their briefing, Homebuilders criticize this Court for rejecting, "[w]ithout reference to any legal authority," Plaintiffs' contention "that 'because they have plausibly alleged a conspiracy for the 2012 and 2013 increases, it is sufficient for Plaintiffs to allege that the 2014 and 2015 price increases occurred in a manner similar to those in 2012 and 2013." ECF 104 at 6. But neither have Homebuilders pointed to a single case in which the plaintiff's allegations were as sparse as those here, and the Court has been unable to locate any.

Homebuilders go on to say that, unlike this Court, other courts have recognized the concept of a continuing conspiracy. This statement completely ignores that this Court has recognized a continuing conspiracy: the conspiracy that continued from 2011 through 2013. But the fact that a conspiracy continued over some years does not necessarily mean that the conspiracy continued indefinitely. Plaintiffs must provide sufficient facts to actually support allegations of a continuing conspiracy, and they have failed to do so here.

successfully allege that the alleged conspiracy continued after 2013. Thus, the first question Homebuilders pose is not actually implicated by this Court's June 22, 2016 decision because this Court did consider the allegations as a whole. Unfortunately for Homebuilders, the Court concluded that the allegations, considered as a whole, were insufficient to plead a conspiracy that continued after 2013.

Homebuilders' second stated issue is also not implicated by this Court's Order. This Court did not decide that the filing of a single class action rendered Homebuilders' post-2013 allegations implausible. Rather, the Court concluded that Homebuilders' sparse contentions were insufficient to allege a continuing conspiracy. Homebuilders have continuously failed to point to controlling authority that says otherwise. Homebuilders' bare allegations were especially weak in light of the filing of multiple class actions (so many in fact that multi-district litigation consolidation was required) and the sales of two of the alleged conspirators. Thus, even if the Third Circuit were to answer Homebuilders' second question in the negative, it would have no impact on this case.

Because the Court concludes that Homebuilders have not sufficiently identified controlling questions of law, the Court need not consider the remaining statutory prerequisites for interlocutory appeal. *Schnelling v. KPMG LLP*, 05-cv-3756, 2006 WL 1540815, *3 (D.N.J. May 31, 2006).

**V.     Discretion**

Even if Homebuilders had successfully satisfied the statutory prerequisites for interlocutory appeal, this Court would decline to exercise its discretion to certify its June 22, 2016 Order. The Court agrees with Defendants' statement that the Court's February 2016 Summary Judgment Order in the Direct and Indirect Purchaser Actions was a much stronger candidate for interlocutory appeal, and the Third Circuit still declined review.

## VI. Conclusion

An appropriate order follows.

O:\13-MD-2437 - drywall\15cv1712 Interloc App 8.16.16.docx