IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION | MDL No. 2437<br>13-MD-2437 |
| THIS DOCUMENT RELATES TO:<br>All Indirect Purchaser Actions | |

**INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AN ORDER
AUTHORIZING DISBURSEMENT FROM THE USG AND TIN
SETTLEMENT FUNDS FOR SPECIFIED INCURRED LITIGATION EXPENSES**

I.   **FACTUAL AND PROCEDRUAL BACKGROUND**

In August 2015, the Court approved settlements between the Indirect Purchaser Plaintiffs ("IPPs") and two former Defendants, TIN and USG, in a total amount of $ 10.5 million. In connection with that settlement, the IPPs made a Motion for Authorization to Utilize Settlement Funds for Ongoing Litigation (ECF 220), requesting the Court approve setting aside $2.5 million of that settlement to fund litigation costs, an arrangement and amount that were disclosed in the Notice of Settlement. At the hearing on that matter, the Court requested that IPP counsel submit a letter *in camera* detailing the expenses incurred and how they intended to use these funds. IPPs submitted a letter itemizing $761,690.62 in common benefit costs incurred at that point and indicating that they would not seek reimbursement for any individual firms' "held costs," *i.e.* expenses incurred traveling for depositions and to court hearings, printing costs for deposition exhibits, processing plaintiffs' documents for production, and filing fees. Ultimately, the Court denied the motion in part and granted the motion in part, authorizing an expense order in the

1

amount of $416,661.70 for the partial payment of expert costs incurred at that point, but requiring IPPs to shoulder the burden of the $345,028.92 in other then-incurred common costs (including $245,652.50 in expert costs, $75,869.39 in document costs, and $23,507.03 in deposition transcript costs), as well as all "held" costs.  ECF 274.  The Court also noted the imminent nature of the summary judgment motion and invited plaintiffs to renew their motions after the ruling if their case survived summary judgment.  *Id.*

Following a favorable ruling on summary judgment, the IPPs filed a Renewed Motion for Authorization, seeking to use $1 million of the Settlement Fund to defray litigation expenses during Phase 2 proceedings.  ECF 357. The Court denied the motion "without prejudice."  ECF 370.  The Court indicated its view in light of both these motions on the proper balance of applicable factors when it further ruled: "The Court intends to approve future motions seeking reasonable reimbursement of *expert costs* so long as Plaintiffs include some specificity (which may be submitted *in camera*), accounting for the money they have expended and/or expenses incurred." (First italics added; second italics in original.)  *Id.* at 4.

In accordance with this Court's instruction, IPPs are hereby moving for an order authorizing the disbursement from the settlement fund of $249.330 for incurred expert costs.  Pursuant to the Court's previous ruling, the specifics of those costs will be submitted *in camera* in the form of invoices from the experts detailing their work.  In general, however, these expenses stemmed from the processing and analysis of vast quantities of transactional data produced during Phase II discovery by third parties.

This Motion seeks reimbursement solely for expert expenses incurred during Phase II of this litigation.  IPPs do not now seek reimbursement for other necessary common expenses they have incurred or the held costs incurred by individual firms in either Phase I or Phase II.

## II.     SUCH AN EXPENSE ORDER IS APPROPRIATE

As the Court recognized in its previous rulings, use of settlement funds to defray litigation expenses is common and appropriate in circumstances such as those present here. *See* ECF 273 at 10-11 (referencing numerous cases).

In the previous Court order on this subject, the Court ruled:

> Plaintiffs must demonstrate that Direct and Indirect Purchaser Plaintiffs have cooperated with each other as much as possible to economize on the use of experts and avoid duplicative, overlapping, or unduly expensive expert reports. The Court recognizes there may be conflicts between Direct and Indirect Purchasers on some issues, separate experts are appropriate, and to some extent, cooperation may not be possible.

*Id.* at 4. The IPPs represent, without fear of contradiction, that their dealings with counsel for the DPPs have been professional and productive. For the particular expert costs that are the subject of this motion, however, there has been no way to reduce expenses further because the principal questions addressed by the IPPs' experts are not part of the DPPs' case. Although both IPPs and DPPs must show impact on direct purchasers, doing so in an antitrust overcharge case is straightforward. But IPPs "must also show 'pass-through' of the overcharges to the IPP class." *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 U.S. Dist. LEXIS 15899, at *48-50 n.4 (N.D. Cal. Feb. 8, 2016). "IPPs, unlike DPPs, have a two-fold burden in securing class certification in matters such as this. Not only must they show that all or nearly all of the original direct purchasers . . . bought at inflated prices, they must also show those overcharges were passed through all stages of the distribution chain." *Id.* at *59-60. Consequently, the expert work reflected in the invoices being submitted *in camera* are efforts focused overwhelmingly on the issue of pass-through, an issue unique to IPPs. *See, e.g., In re Dynamic Random Access Memory Antitrust Litig.*, No. M-02-1486-PJH, 2013 U.S. Dist. LEXIS 188116,

3

at *112 (N.D. Cal. Jan. 7, 2013) (IPPs conducted discovery and submitted expert testimony on pass-through that DPPs need not address).  In this endeavor IPPs must proceed alone, for the issue whether the initial overcharge passed-through other levels in the chain of distribution is simply irrelevant to the DPPs.

### III.     CONCLUSION

For the reasons set forth above, IPPs respectfully request that the Court order that they may use the amount of $ 249,330 to defray expert costs reflected in the invoices submitted to the Court *in camera*.

Dated: September 2, 2016                                           Respectfully submitted,

/s James Robert Noblin                                             /s Michael G. McLellan
Robert S. Green                                                    Michael G. McLellan
James Robert Noblin                                                Douglas G. Thompson, Jr.
GREEN & NOBLIN, P.C.                                               L. Kendall Satterfield
2200 Larkspur Landing Circle, Suite 101                            FINKELSTEIN THOMPSON LLP
Larkspur, CA  94939                                                1077 30th Street NW, Suite 150
Tel: (415) 477-6700                                                Washington, D.C. 20007
Fax: (415) 477-6710                                                Tel:  (202) 337-8000
                                                                   Fax:  (202) 337-8090

/s Whitney Street
Whitney Street

BLOCK & LEVITON, LLP
610 16th Street, Suite 214
Oakland, CA  94612
Tel:  (415) 968-8999
Fax:  (617) 507-6020

*Co-Lead Counsel for the Proposed Class of Indirect Purchasers*