IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION | MDL No. 2437<br>13-MD-2437 |
| THIS DOCUMENT RELATES TO:<br>All Indirect Purchaser Actions | |

**INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AN ORDER AUTHORIZING DISBURSEMENT FROM THE USG AND TIN SETTLEMENT FUNDS FOR SPECIFIED INCURRED LITIGATION EXPENSES**

I.   **FACTUAL AND PROCEDRUAL BACKGROUND**

In August 2015, the Court approved settlements between the Indirect Purchaser Plaintiffs ("IPPs") and two former Defendants, TIN and USG, in a total amount of $ 10.5 million.[1]  In the Notice of Settlement of the TIN and USG settlements, the IPPs stated they would request the Court approve setting aside $2.5 million of that settlement to fund litigation costs.  (ECF 220). The Court did not approve setting aside the specified amount of $ 2.5 million for expenses but instead indicated in response to a later motion on the subject: "The Court intends to approve future motions seeking reasonable reimbursement of *expert costs* so long as Plaintiffs include some specificity (which may be submitted *in camera*), accounting for the money they have expended and/or expenses incurred." (First italics added; second italics in original.)  ECF 357 at 4.  Pursuant to that direction, the IPP plaintiffs later moved for an order reimbursing expert

---

[1] On February 28, 2017, the Court approved an additional settlement between the IPPs and Defendant LaFarge in a total amount of $ 5.2 million.  (ECF 551).

1


expenses incurred in Phase II of the litigation concerning class certification through August, 2017, which the Court granted on October 21, 2016. (ECF 481).

Now that the voluminous class certification papers have been filed and extensive expert depositions have been taken, it is an appropriate time for the IPPs to move for the reimbursement of the remaining expert expenses incurred during Phase II of this matter. Consequently, the IPPS are hereby moving for an order authorizing the disbursement from the settlement fund of $566,847 for expert costs incurred from September, 2016 to date. Pursuant to the Court's previous ruling, the specifics of those costs will be submitted *in camera* in the form of invoices from the experts detailing their work. In general, however, these expenses stemmed from the processing and analysis of vast quantities of transactional data produced during Phase II discovery by Defendants and third parties.

This Motion seeks reimbursement solely for expert expenses incurred during Phase II of this litigation. IPPs do not now seek reimbursement for other necessary common expenses they have incurred or the held costs incurred by individual firms in either Phase I or Phase II.

## II.     SUCH AN EXPENSE ORDER IS APPROPRIATE

As the Court recognized in its previous rulings, use of settlement funds to defray litigation expenses is common and appropriate in circumstances such as those present here. *See* ECF 273 at 10-11 (referencing numerous cases). Further, the IPPs represent, without fear of contradiction, that their dealings with counsel for the DPPs have been professional and productive. For the particular economic expert costs that are the subject of this motion, however, there has been no way to reduce expenses further because the principal questions addressed by the IPPs' experts are not part of the DPPs' case. As is abundantly clear from the class certification motion papers, unlike the direct purchaser plaintiffs ("DPPs"), the IPPs must show

show pass-through of the alleged anticompetitive overcharges to the IPP class as well as establish that the damage methodologies particular to them will be generated from common proof. In this endeavor the IPPs had to necessarily proceed alone, for the first set of issues were simply irrelevant to the DPPs and the second focused on a different segment of the market for the IPPs than for the DPPs.

### III.      CONCLUSION

For the reasons set forth above, IPPs respectfully request that the Court order that they may use the amount of $ 566,847 to defray expert costs reflected in the invoices submitted to the Court *in camera*.

Dated: March 17, 2017                                    Respectfully submitted,

| | |
|---|---|
| James Robert Noblin | Michael G. McLellan |
| Robert S. Green | Michael G. McLellan |
| James Robert Noblin | Douglas G. Thompson, Jr. |
| GREEN & NOBLIN, P.C. | L. Kendall Satterfield |
| 2200 Larkspur Landing Circle, Suite 101 | FINKELSTEIN THOMPSON LLP |
| Larkspur, CA  94939 | 1077 30th Street NW, Suite 150 |
| Tel: (415) 477-6700 | Washington, D.C. 20007 |
| Fax: (415) 477-6710 | Tel:  (202) 337-8000 |
| | Fax:  (202) 337-8090 |

Whitney Street
Whitney Street

BLOCK & LEVITON, LLP
610 16th Street, Suite 214
Oakland, CA  94612
Tel:  (415) 968-8999
Fax:  (617) 507-6020

*Co-Lead Counsel for the Proposed Class of Indirect Purchasers*