# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>Ashton Woods Holdings LLC, et al.,<br>    Plaintiffs,<br><br>v.<br><br>USG Corp., et al.,<br>    Defendants. | CIVIL ACTION<br><br>MDL No. 13-2437<br><br>15-cv-1712 |

## MEMORANDUM RE:
## REQUESTS FOR ADMISSION TO PLAINTIFFS

Defendants have filed a Motion to Compel Responses to Defendants' Second Set of Joint Requests for Admission to Plaintiffs (ECF 200). The Court has reviewed the Response (ECF 209) and the Reply Brief (ECF 212). This antitrust case presents claims by twelve large homebuilders located throughout the United States, seeking damages for alleged price-fixing of domestic drywall. There has already been extensive document discovery in this case. One of the lingering discovery issues is to what extent the individual Plaintiffs must provide detailed information to defendants about Plaintiffs' purchases of drywall during the relevant time period.

1.     Background

The Homebuilder Plaintiffs assert that they have produced all of their purchase records for domestic drywall, within their possession, custody or control, which they can locate. Defendants have been seeking additional detailed information, particularly the identity of the manufacturer of each lot of drywall purchased by Plaintiffs, and the unit cost (e.g., price per square foot or linear foot). Plaintiffs have consistently represented that they often do not know,

and cannot find, the identity of the manufacturer of each lot of drywall they may have purchased, as they often purchase from wholesalers or other "jobbers" and do not need to know the manufacturer. It is apparent that some drywall is sold without identifying the name of the manufacturer on the drywall pieces. Also, when purchased, the identity of the manufacturer may not be disclosed on purchase documents.

Underlying this is the economics of the industry; domestic drywall is essentially a generic product that does not necessarily vary in quality from one manufacturer to another. Price, delivery costs, promptness of availability, etc. are often the determinative factors in the purchase of drywall. The Court is aware that depositions are about to begin in this case. The Court has commented at various discovery conferences that Plaintiffs may and should seek out information from the individual Defendants, and vice versa, on purchasing practices, from representatives of each Plaintiff and each Defendant with knowledge on these topics.

By order dated December 22, 2016 (ECF 168), the Court recognized the importance of plaintiffs producing all of their information on purchases of drywall in the United States for the calendar years 2010-2015, and required sworn certifications by appropriate officers of each Plaintiff supporting each Plaintiffs' production of its purchase records. The Court understands that each Plaintiff has complied. However, Defendants assert that the compliance has not been necessarily complete, as to Plaintiffs producing all information they may have in their possession, custody or control. For example, Plaintiffs refer to searching of "data fields" only. Defendants assert they do not know what has been included or may have been omitted by such a search.

Plaintiffs have taken the fairly consistent (and quite probably accurate) position that they do not have records showing the identity of the manufacturer of the drywall that they purchased, or the unit cost, and made representations in open court to this effect. The Court has suggested, in the depositions (which are about to start), would be questions and testimony from representatives of both Plaintiffs and Defendants as to what records were or were not received or maintained on these issues, and explaining the reference to "data fields."

2. Issues Presented

Recently, Defendants served Requests for Admission, pursuant to Rule 36, Fed. R. Civ. P., requesting each Plaintiff to "admit" that it did not have the information sought by Defendants, which would admissible at the trial and arguably serve as a "guarantee" that Plaintiffs were not going to be able to come forward with this information at trial. Obviously, Defendants believe that this discovery strategy may help limit damages in the event that the Plaintiffs can establish liability. In addition, in the event that there are settlement discussions between the parties, having admissions of record may provide negotiating points between the parties.

Plaintiffs' object primarily that the Defendants' Requests for Admission are untimely and that the deadline for written discovery has long passed. Plaintiffs claim that Defendants should have sought leave of Court to serve these Requests for Admission. Defendants, in their reply, assert that the Requests are late because the transactional data was very late coming from Plaintiffs, that Defendants have acted in a prompt manner and that the issue is important.

3. Decision

If Plaintiffs cannot provide more details, particularly on the amount of damages which may have been suffered and/or which can be recovered are large, Defendants are entitled to

3

finality of what information Plaintiffs have. The Court is not ruling that this detailed information is necessary before Plaintiffs can assert damage claims or prove damages at trial. The ruling is limited to making all relevant information available during the discovery phase of this case.

In part because of the large amount of damages which are potentially recoverable in this case, the Court has stated from the very beginning that both parties will be required to do significant discovery searches, and provide detailed information to the opposing party. If the identity of the manufacturer was known, or can subsequently be discovered, this information may be very useful in allocating damages among different Defendants, whether for settlement purposes or trial. Thus, the information sought is potentially relevant. The unit cost may also be an important "marker" of profitability, or sales dollar volume, and is likewise relevant.

Therefore, the Court will overrule the Plaintiffs' objections to the Requests for Admission and grant the Motion to Compel, but will expand the response deadline to September 10, 2017, for several reasons. First, some of the information sought by the Requests for Admission may be tendered by individual Plaintiffs during the deposition program in which event, counsel for those Plaintiffs will be able to cross-reference actual deposition testimony in their response to the Requests for Admission. Second, the deposition program itself may warrant additional documents coming to light that an individual Plaintiff might find appropriate to cite in its response to the Request for Admission. Third, after the depositions are completed, a Plaintiff can appropriately represent whatever information it does or does not have, and make a more informative response to the Request for Admission.

However, the Court believes that Requests for Admission are an underused, but in this case, appropriate discovery tool for Defendants to get assurance that Plaintiffs have tendered

whatever information, whether documentary or otherwise, each Plaintiff has in support of its significant claim for damages.

Thus, the Court will grant Defendants' Motion to Compel subject to the time extension and interpretations set forth above. An appropriate order follows.

O:\13-MD-2437 - drywall\15-1712 - Memorandum re Pending Requests for Admissions to Plaintiffs.docx