# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION** <br><br> **THIS DOCUMENT RELATES TO:** <br><br> **Ashton Woods Holdings LLC, et al.,** <br>      Plaintiffs, <br><br> v. <br><br> **USG Corp., et al.,** <br>      Defendants. | **CIVIL ACTION** <br><br> **MDL No. 13-2437** <br><br> **15-cv-1712** |

**MEMORANDUM RE: USE OF CONTENTION STATEMENTS
TO AVOID DISCOVERY DISPUTES AND MOVE THE LITIGATION FORWARD**

**Baylson, J.**                                                                                              **November 6, 2017**

In the Domestic Drywall MDL litigation, numerous discovery problems erupted during the course of the case on both liability and damages issues. The MDL has gathered together basically three different types of cases.

1.     Direct Purchaser action in which the Court recently certified a class action of Direct Purchasers (ECF 631).  __ F. Supp. 3d ___.

2.     Putative class of Indirect Purchasers, as to which the Court recently denied a class certification (ECF 633).  __ F. Supp. 3d ___.

3.     A direct action by twelve of the largest homebuilders in the United States, who combined forces in a single Complaint originally filed in the Central District of California and transferred to this Court by the MDL panel.

The first use of contention statements in this litigation arose during discovery in the Direct Purchaser pretrial proceedings. In various motions and pretrial hearings, it became

obvious that the Plaintiffs had been very successful in gathering information through creative use of electronic discovery, search engines, strategies, and programming. The Court commented on this, and in order to expedite the case, as a result of Plaintiffs' success in finding so many detailed facts, much more than could probably have been accomplished in the pre-digital discovery days, the Plaintiffs should have the obligation of setting forth their contentions as to liability of each defendant.

Discovery had been limited to the issue and agreement among two or more of the defendants. A significant reason for the contention statements was the success of the Plaintiffs in the use of digital discovery opportunities, to uncover detailed facts relevant to the issue of whether an agreement among two or more of the defendants. The Court also required that each defendant would have to respond to those contentions. This was described in a memorandum filed on May 12, 2014, 300 F.R.D. 228. This process led to an early summary judgment motion by the Defendants that the Plaintiffs were unable to prove an agreement.

As a result of this process, of the original seven defendants, three settled, one was granted summary judgment, and three remain in the litigation. This Court's decision on summary judgment is reported at 163 F. Supp. 3d 175.

In this litigation, brought by the 12 homebuilders, there are some issues of whether the Plaintiffs are Direct or Indirect Purchasers under the Illinois Brick doctrine. This is a crucial issue on proving the fact of damage as detailed in the Court's recent decisions referenced above, granting class certification for Direct Purchasers, but denying class certification for Indirect Purchasers. Although the 12 homebuilders are not representing a class, one of the important

issues is whether they were Indirect Purchasers, and if so, whether they can prove through the Illinois Brick doctrine that they were injured by the alleged conspiracy.

As a result of the class action discovery, and the Court's ruling, no further discovery has been necessary as to the issue of an agreement relating to the Plaintiffs – the principal discovery issues have related to their purchases of drywall, the fact of injury, and the amount of damages.

For these reasons, a second round of contention statements is now being utilized in the Ashton Woods case, where constant discovery battles were being fought over document requests and depositions. These disputes need not be detailed. However, the Court realized, on the eve of a hearing on one of many motions to compel, that in the interest of fairness and conservation of resources by both the Court and counsel, service of contention statements should precede any further depositions. The Court further determined there should be a "time out" of the many depositions that had been scheduled by the then-existing December 31, 2017 discovery deadline, pending service of contention statements as to the fact of damage and the amount of damage.

A hearing was held with counsel where the Court explored this concept as superior to any other form of discovery. Without requiring counsel to make any agreements until they could talk to their clients, and each other, the Court allowed the opportunity to either come to an agreement on the contents and dates for the service of these statements, and responses. Although there were some agreements, the Court has distilled the remaining disputes into the order being entered below.

O:\13-MD-2437 - drywall\15-1712 - Memorandum re Use of Contention Statements.docx