# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION** | **MDL No. 2437** <br> **13-MD-2437** |
| **THIS DOCUMENT RELATES TO:** <br> **Indirect Purchaser Actions** | |

<br><br>

**INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS <u>FOR SETTLEMENT PURPOSES, AND APPROVAL OF CLASS NOTICE</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY ................................................................ 1

II.   BACKGROUND ............................................................................................. 3

     a.   Background of the Litigation ................................................................ 3

III.  HISTORY OF SETTLEMENT NEGOTIATIONS.......................................... 5

IV.  MATERIAL TERMS OF THE PROPOSED SETTLEMENT ....................... 6

     a.   Class Benefits...................................................................................... 6

          i.    Monetary Relief ........................................................................ 6

          ii.   The Release ............................................................................... 7

V.    THIS COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
      PROPOSED SETTLEMENT ........................................................................ 7

     a.   Procedures and Standards for a Class Action Settlement ................. 7

     b.   The Proposed Settlement Easily Satisfies the Standards for Preliminary
         Approval ............................................................................................. 8

VI.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
      SETTLEMENT PURPOSES ......................................................................... 10

     a.   The Settlement Class Satisfies the 23(a) Standards .......................... 11

          i.    Numerosity................................................................................. 12

          ii.   Commonality .............................................................................. 12

          iii.  Typicality ................................................................................... 13

          iv.   Adequacy of representation ....................................................... 13

     b.   The Settlement Classes Satisfy the 23(b) Standards ......................... 14

          i.    The Nationwide Class Satisfies 23(b)(2)................................... 14

          ii.   The Settlement Class Satisfies 23(b)(3) .................................... 15

               1.  Predominance ................................................................. 15

               2.  Superiority ...................................................................... 16

     c.    This Court's Previous Denial of Class Certification Does Not Impact Certification of a Settlement Class ................................................ 17

**VII.  THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE** ............................................................................... 18

     a.    The Proposed Form Of Class Notice Adequately Informs Class Members Of Their Rights In This Litigation ................................................ 19

     b.    The Proposed Method of Distributing Class Notice Is Reasonably Calculated to Reach Targeted Class Members ......................................... 20

     c.    Notice to Government Regulators ............................................. 21

**VIII.  THE PLAN OF ALLOCATION AND CLAIMS PROCESS** ................... 21

**IX.  PROPOSED SCHEDULE** ................................................................... 23

**X.  CONCLUSION** .................................................................................. 23

## TABLE OF AUTHORITIES

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................... 10,15

*Elite Sportswear Prods., Inc. v. N.Y. Life Ins. Co.*,
   No. 05-CV-5181, 2006 U.S. Dist. LEXIS 77637 (E.D. Pa. Oct. 24, 2006) ................... 17

*Gates v. Rohm & Haas Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008) ..................................................................
8,9,12,13,14,15,17

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*,
   656 F. App'x 8 (3d Cir. 2016) ....................................................... 6,7,16

*In re Dom. Drywall Antitrust Litig.*,
   163 F. Supp. 3d 175 (E.D. Pa. 2016) ........................................... 4

*In re Dom. Drywall Antitrust Litig.*,
   No. 13-MD-2437, 2017 U.S. Dist. LEXIS 135758 (E.D. Pa. Aug. 24, 2017) ...............
5,11,12,13,14,16

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ....................................................... 8

*In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.* ,
   No. 11-md-02284, 2013 U.S. Dist. LEXIS 18332 (E.D. Pa. Feb. 11, 2013) ................. 12,13

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) ....................................................... 15

*In re Modafinil Antitrust Litig.*,
   837 F.3d 238 (3d Cir. 2016) ....................................................... 12

*In re NFL Players Concussion Injury Litig.*,
   775 F.3d 570 (3d Cir. 2014) ....................................................... 10

*In re NFL Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016) ....................................................... 16

*In re Processed Egg Prods. Antitrust Litig.*,
   No. 08-md-2002, 2016 U.S. Dist. LEXIS 85853 (E.D. Pa. June 30, 2016) .................. 3,16

*In re Prudential Sec. Inc. Ltd. Pshps. Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ................................................ 17

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ..................................................................
3,15,17

*Krell v. Prudential Ins. Co. of Am.*,
148 F.3d 283 (3d Cir. 1998) ........................................................................ 13,17

*Mullins v. Direct Dig., L.L.C.*,
795 F.3d 654 (7th Cir. 2015) ........................................................................ 6

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
No. 12-3824, 2014 U.S. Dist. LEXIS 21504 (E.D. Pa. Feb. 18, 2014) ........................
3,8,9,12,13,14

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) ........................................................................ 12

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ........................................................................
14,15,16,17

## I.    <u>INTRODUCTION AND SUMMARY</u>

With this motion, Indirect Purchaser Plaintiffs ("IPPs") seek to initiate the process of effectuating a final settlement ("Settlement") in this long-running, hard-fought case, thereby bringing it to a close for themselves and the putative classes they represent.  The Settlement resolves IPPs' claims against all remaining defendants in the IPP case: American Gypsum Company LLC, New NGC, Inc., and PABCO Building Products, LLC ("Settling Defendants"). It follows five years of litigation, which required review and analysis of millions of pages of documents produced by defendants and third parties, the taking of over forty depositions, extensive work with three separate experts, briefing of multiple motions, the denial of a partial summary judgement motion, and IPPs' loss at the class certification stage.  The settlement agreement is attached hereto as Exhibit 1.

If this Court approves the Settlement, the Settling Defendants will pay $1.25 million, $250,000 of which will be allocated to defraying the cost of noticing Class Members of the Settlement.  In exchange, IPP class members who do not exclude themselves from the Settlement will release the Settling Defendants from the claims alleged in IPPs' complaint.  The Settlement, when combined with the $15.7 million in settlements the Court has already finally approved, means Class Members' total recovery, prior to the deduction of attorneys' fees and expenses, will be $16,950,000 (including the $250,000 allocated to notice costs), plus accrued interest.

IPPs now request the Court approve the first step of the class action settlement process with the three remaining defendants by: (1) preliminarily approving the Settlement, (2) preliminarily certifying a proposed IPP class for settlement purposes only, (3) approving the IPP proposed plan of notice, and (4) scheduling a final fairness hearing.  Because this is the final settlement in these proceedings, at the final approval stage IPPs will also request the Court

1

finally approve a plan of allocation and claims distribution process so that Class Members may receive the proceeds of the Settlement; IPPs have included the details of both in the Notice and also seek that they be preliminarily approved. The Preliminary Approval Order submitted herewith accomplishes these goals, and also sets deadlines for filing and objecting to IPPs' motions for attorneys' fees, litigation expenses, and class representative incentive awards.

Preliminary approval "is granted unless a proposed settlement is obviously deficient." *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, 2014 U.S. Dist. LEXIS 21504, at *11 (E.D. Pa. Feb. 18, 2014). Here, the Settlement – negotiated at arm's-length by experienced counsel on both sides, after substantial discovery efforts and dispositive rulings by this Court – is not just adequate, but an excellent resolution of this complex case, particularly in light of the settlements already approved by this Court.

Moreover, the proposed class is a settlement class of a type commonly certified in this Circuit in antitrust cases. *See, e.g. In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). And this Court's previous denial of certification of a litigation class does not impact this: courts commonly certify settlement classes after limiting or denying certification of litigation classes. *See* §VI(b), *infra*; *see also In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2016 U.S. Dist. LEXIS 85853, at *19 (E.D. Pa. June 30, 2016) ("[C]ommon questions of fact and law may predominate with regards to a settlement class, while separate individual questions could nevertheless prevent certification of a litigation class"). Finally, the proposed plan of notice was designed by an experienced, court approved settlement administrator, and constitutes the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c).

"[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *Warfarin*, 391 F.3d at 535. The proposed settlement serves this

interest. This Court should accordingly enter the proposed preliminary approval order submitted herewith and schedule a final approval hearing.

## II.   BACKGROUND

### a.   Background of the Litigation

As this Court knows, this case alleges that, beginning in 2011, the major manufacturers of drywall colluded to raise the price of drywall and to eliminate the long-standing practice of providing job quotes.  IPPs and other plaintiffs first filed actions in December 2012.  In the years since, IPPs, through Court-appointed co-lead counsel and other counsel working at their direction, have diligently and zealously prosecuted their action.

The initial phase of this staged litigation focused on evidence of agreement between Defendants.  During it, IPPs (working efficiently and cooperatively with counsel for the Direct Purchaser Plaintiffs) completed Phase 1 discovery (both of Defendants and third parties) by negotiating the production of millions of pages of documents and gigabytes of data from each of the seven defendants and multiple third parties; reviewing and analyzing those documents; deposing over forty defendants and third parties; litigating discovery motions;  working with experts to analyze the evidence;  coordinating the presentation of such evidence in the reports prepared by those experts;  and conducting ongoing investigation through both formal and informal means.  After Phase 1 discovery, IPPs and DPPs substantially prevailed against Defendants' summary judgement motion on the question of agreement, defeating that motion as to all but one Defendant, and successfully overcame Defendants' attempts to obtain interlocutory review of that order.  *See In re Domestic Drywall Antitrust Litig.*, 163 F. Supp. 3d 175 (E.D. Pa. 2016); *In Re: Domestic Drywall Antitrust Litigation*, 16-8047, Order (3d Cir. July 14, 2016) (denying Petition for Permission to Appeal under 28 U.S.C Section 1292(b)).

3

Phase 2 proceedings focused on class certification.  During Phase 2, IPPs subpoenaed over thirty third parties, and negotiated extensive productions of documents and transactional data from them.  IPPs, in conjunction with their experts, then used this data and documents to formulate the necessary models and economic analysis to support their class certification papers. IPPs also defended the depositions of 14 putative class representatives, as well as five separate expert depositions (two each of IPPs' economist and econometrician, and one of IPPs' ascertainability expert).  Prior to this Court's certification decision, IPPs also fully briefed (1) a motion to intervene additional class representatives, which this Court granted on August 16, 2016, *In re Domestic Drywall Antitrust Litig.*, No. MDL No. 2437, 2016 U.S. Dist. LEXIS 110193, at *9 (E.D. Pa. Aug. 18, 2016), and (2) an extensive motion to dismiss certain of IPPs' state law claims.  *See* ECF #504.

Phase 2 proceedings concluded with IPPs' motion for class certification, which involved hundreds of pages of briefing, multiple expert reports, and extensive oral argument.  Despite IPPs' best efforts, this Court declined to grant IPPs' certification motion.   *In re Domestic Drywall Antitrust Litig.*, No. 13-MD-2437, 2017 U.S. Dist. LEXIS 135758, at *4 (E.D. Pa. Aug. 24, 2017).  Subsequently, the Third Circuit denied IPPs' petition for interlocutory review of the Court's certification decision without prejudice to renewal, *see* ECF #666, and IPPs contemplated seeking certification of a more limited class in this Court.  *See* ECF #660.  At that point, the parties began to discuss, and ultimately reached, settlement.

b.   **Previous Settlements**

This Court has previously approved three settlements on behalf of IPPs.  During Phase 1

proceedings, IPPs reached a settlement of $8.75 million with the USG Entities[1] and for $1.75 million with TIN, Inc.; both were finally approved on August 20, 2015.  *See* ECF #278, 279. Following this Court's summary judgement ruling, IPPs reached an additional settlement with Lafarge North America, Inc. for $5.2 million; this Court finally approved the LaFarge settlement on February 28, 2017.  *See* ECF #551.  Other than the costs of notice and approved expenses, the funds from these previous settlements have been held in interest-bearing accounts pending a distribution to class members at the conclusion of this litigation.

## III.   <u>HISTORY OF SETTLEMENT NEGOTIATIONS</u>

The Settlement came about through extensive, arms-length negotiations.  While cordial and professional, the negotiations were, at all times, vigorous discussions in which each counsel represented their clients' interests zealously.  The Declaration of Michael G. McLellan, submitted herewith as Exhibit 2, describes these negotiations.

The precipitating event for the Settlement was this Court's denial of IPP's Motion for Class Certification, and settlement discussions began shortly thereafter.  Needless to say, this decision was a significant blow to IPPs' case.  While IPPs were cognizant of this Court's willingness to entertain a renewed certification motion, IPPs were also faced with the real risk that such a motion would fail in light of the Third Circuit's recent precedent establishing a "stringent version of ascertainability" that most other circuit courts have found overly strict. *Mullins v. Direct Dig*., 795 F.3d 654, 662 (7th Cir. 2015) (discussing, among others, *Carrera v.*

---

[1] The USG Entities are USG Corporation, United States Gypsum Company, and L&W Supply Corporation.

*Bayer Corp.*, 727 F.3d 300, 305-12 (3d Cir. 2013)).[2]

This Court's ascertainability ruling does not impact certification of a settlement class, as the Third Circuit squarely holds ascertainability need not be shown at the settlement stage. *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 656 F. App'x 8, 8 (3d Cir. 2016). However, there is no question that it presents significant risks to certification of a litigation class, and IPPs carefully considered that threat to their case. Ultimately, in light of the significant risks going forward, IPPs reached an agreement in principle with Defendants in November 2017. In the time since, the parties negotiated the terms of the Settlement.

## IV.   MATERIAL TERMS OF THE PROPOSED SETTLEMENT

### a.   Class Benefits

#### i.   Monetary Relief

The proposed settlement provides for $1.25 million in settlement funds, $250,000 of which will defray the cost of notice. Exhibit 1 (Settlement Agreement) at ¶10. Within 10 days of entry of this Court's preliminary approval order, Settling Defendants will transfer the full Settlement Amount into an escrow account established by Co-Lead Counsel. All income earned on the settlement fund shall become and remain part of that fund. These moneys will remain in this account until Plaintiffs seek a distribution of those funds, except for expenses related to providing class notice. That distribution will take place following the claims process described

---

[2] *See also Petrobras Sec. Univs. Superannuation Scheme Ltd. v. Petróleo Brasileiro S.A. Petrobras*, 862 F.3d 250, 265 (2d Cir. N.Y. July 7, 2017) ("With all due respect to our colleagues on the Third Circuit, we decline to adopt a heightened ascertainability theory that requires a showing of administrative feasibility at the class certification stage. . . . In declining to adopt an administrative feasibility requirement, we join a growing consensus that now includes the Sixth, Seventh, Eighth, and Ninth Circuits.")

in §VIII, *infra*, at the conclusion of which IPPs will seek approval of a distribution order.  IPPs will make no distributions to class members without court approval, and none of the settlement funds will revert to Defendants unless this Court disapproves the settlement.

ii.      **The Release**

If the Settlement becomes final, all class members who do not opt out of the Settlement Classes will release the Settling Defendants from all claims alleged (or that could have been alleged) in IPPs' Complaint in exchange for the consideration provided in the settlement. Agreement (Exhibit 1), ¶¶ 22-24.  The release explicitly carves out claims related to direct purchases of Drywall, as well as all product defect, breach of contract, product performance or warranty claims.  *Id.* at ¶ 22.

At final approval, IPPs will request the Court effectuate the settlement by entering the Final Judgement and Order attached hereto as Exhibit 3.

**V.**   **THIS COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT**

a.      **Procedures and Standards for a Class Action Settlement**

Parties seeking to settle a class action proceed in two steps.  First, they seek preliminary approval of the proposed settlement as well as certification of the proposed settlement class and approval of a proposed notice plan.  Second, in the event such approval is granted, the parties provide notice in accordance with a Court-approved plan and schedule and appear at a final approval hearing at which arguments and evidence may be presented in support of and in opposition to the Settlement.   The Court may then approve the settlement. *See Manual for Complex Litigation (Fourth)* § 21.63 (2004).

While the parties will have to demonstrate the settlement is fair, reasonable, and adequate

when seeking final approval, "the standard for preliminary approval is far less demanding." *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008).  Preliminary approval "is granted unless a proposed settlement is obviously deficient."  *Mylan*, 2014 U.S. Dist. LEXIS 21504, at *11.[3]  The "preliminary determination establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

### b.   The Proposed Settlement Easily Satisfies the Standards for Preliminary Approval

The Settlement satisfies all four factors articulated in *GMC*.

As to the first, "there is nothing to indicate that the proposed settlement is not the result of good faith, arms-length negotiations between adversaries."  *Gates*, 248 F.R.D. at 444.  Throughout this litigation, "all counsel have demonstrated vigorous and independent lawyering in all respects, and the Court [should have] no reason to doubt that the same is true with respect to the proposed Settlement."  *Id.*  This conclusion is buttressed by the fact that the parties' discussions occurred only at a late stage of the litigation.  There can be no question that the proposed settlement is the product of hard-fought, adversarial negotiations.

And, as to the second: Discovery is largely complete, including the extensive fact and expert discovery that took place during Phase 1 discovery and the class certification discovery

---

[3] *See also In re NFL Players' Concussion Injury Litigation*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014)("At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered, and the court is required to determine whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies.'").

that took place in Phase 2.   As a result, when settlement discussions commenced, Defendants (including the Settling Defendants) and third parties had long since completed their voluminous production of documents and data, which Plaintiffs had reviewed, and Plaintiffs had taken dozens of depositions of Defendants' personnel and other witnesses.   "Thus, the parties have conducted sufficient discovery to estimate the merit and value of the Plaintiffs' case  . . . and reach a reasonable settlement."  *Gates*, 248 F.R.D. at 444.

Third, each Co-Lead Counsel is highly experienced in similar litigation.   Indeed, the Court recognized this fact when it appointed them to serve in that role.  *See* ECF #11, at ¶20. While the parties naturally dispute the merits of the case, the settlement reflects a realistic compromise based on counsel's assessment of the potential risks and rewards of further litigation.   The fact that "highly experienced counsel after years of litigation" concluded that the proposed settlement was fair, reasonable, and adequate further supports preliminary approval of the Settlement.  *Mylan Pharms.,* 2014 U.S. Dist. LEXIS 21504, at *17.

Fourth, there are no objectors at this stage.   In the event any arise, Plaintiffs will address their arguments at final approval.

This case – prosecuted without government involvement – is complicated and risky, and would consume excessive time and expense if the parties litigated it through trial.   And, for the Class to recover, IPPs would have to successfully achieve class certification already denied them once.   The risk and delay of litigation, weighed against the substantial benefits the Settlement will provide to the Class, render the proposed Settlement a fair, reasonable and adequate compromise of the issues in dispute.   It should be preliminarily approved.

## VI.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Effectuating the Settlement requires certification of settlement classes largely identical to the ones already certified three times by this Court in connection with its approval of the previous settlements.

At preliminary approval, to certify a settlement class, the Court should "make a *preliminary determination* that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *In re NFL Players Concussion Injury Litig*., 775 F.3d 570, 582 (3d Cir. 2014) (citations omitted; emphasis in original). This "*preliminary analysis* of a proposed class is . . . a tool for settlement used by the parties to fairly and efficiently resolve litigation." *Id.* In certifying a settlement class, however, the court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); see also Fed. R. Civ. P. 23(b)(3)(D).

The classes IPPs seek to certify here are essentially the same as those certified three times already in this case. Here, IPPs seek certification of the following class ("Nationwide Class"):

> All persons or entities currently residing in the United States that indirectly purchased Wallboard in the United States manufactured by any of the Defendants, or their parents, subsidiaries, affiliates, or joint venturers, for end use and not for resale during the Settlement Class Period. Excluded from the Settlement Class are Defendants, along with each of their parent companies, subsidiaries (including, without limitation, L&W Supply Corporation and Pacific Coast Supply, LLC), and affiliates, the officers, directors, employees, legal representatives, and heirs or assigns of any Defendant, any state or federal entities or instrumentalities of the federal government or of a state, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action

IPPs also seek certification of the following subclass ("State Damages Class"):

10

All persons or entities currently residing in the United States that indirectly purchased Wallboard in or from an entity located in Arizona, Arkansas, California, the District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin manufactured by any of the Defendants, or their parents, subsidiaries, affiliates, or joint venturers, for end use and not for resale during the Settlement Class Period.  Excluded from the Settlement Class are Defendants, along with each of their parent companies, subsidiaries (including, without limitation, L&W Supply Corporation and Pacific Coast Supply, LLC), and affiliates, the officers, directors, employees, legal representatives, and heirs or assigns of any Defendant, any state or federal entities or instrumentalities of the federal government or of a state, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action.[4]

Plaintiffs also request that the Court appoint IPPs as class representatives, and Co-Lead Counsel as class counsel.

### a.      The Settlement Class Satisfies the 23(a) Standards

Notably, in its opinion denying certification of the IPP litigation class, this Court found all the requirements of Rule 23(a) were satisfied.  *Drywal*, 2017 U.S. Dist. LEXIS 135758 at *13.  The same remains true here.

Rule 23(a) requires the parties moving for class certification to show the following:

(1) **Numerosity:** The class is so numerous that joinder of all members is impracticable;

(2) **Commonality:** There are questions of law or fact common to the class;

(3) **Typicality:** The claims or defenses of the representative parties are typical of the claims or defenses of the class ("Typicality"); and

(4) **Adequacy:** The representative parties will fairly and adequately protect the

---

[4] Both classes are collectively referred to herein as "Settlement Class."

interests of the class.

*In re Imprelis Herbicide Mktg., Sales Practices & Products Liab. Litig*., No. 11-md-02284, 2013 U.S. Dist. LEXIS 18332, at *9 (E.D. Pa. Feb. 11, 2013) (citing Fed. R. Civ. P. 23(a)).

### i.      Numerosity

Numerosity "requires a finding that the putative class is 'so numerous that joinder of all members is impracticable.'"  *Gates*, 248 F.R.D. at 439-40.  "'Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the class members'" unless there exists a reason to question numerosity.  *In re Modafinil Antitrust Litig*., 837 F.3d 238, 252 n.10 (3d Cir. 2016). "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

The class is easily in the tens of thousands, if not hundreds of thousands.  Numerosity is satisfied.  *See Drywall*, 2017 U.S. Dist. LEXIS 135758, at *7 ("The numerosity requirement is met.").

### ii.      Commonality

"To satisfy the commonality requirement, the purported class's claims must depend upon a common contention . . . . capable of classwide resolution."  *Mylan*, 2014 U.S. Dist. LEXIS 21504, at *12.  Courts in this District commonly certify settlement classes in antitrust cases, *see, e.g. id.,* noting that questions of violation, antitrust impact, and aggregate damages are all common to the Class.  *Id.*  The same is true here: as this Court has noted, "[t]he question of whether there was an agreement to fix prices here is common to all class members, and is critical to all class members' claims."  *Drywall*, 2017 U.S. Dist. LEXIS 135758, at *8.  IPPs' allegations focus primarily on the illegality of the conduct of Defendants – an issue that, by definition, does

12

not vary for any class member.  The commonality requirement is accordingly satisfied.

### iii.         Typicality

To evaluate typicality, "the Court must inquire 'whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.'" *Gates*, 248 F.R.D. at 440 (quoting *Beck v. Maximus, Inc*., 457 F.3d 291, 295-96 (3d Cir. 2006)).  "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal 'theory.'" *Id.* (citations omitted).  The "typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998).

As this Court noted, in this case, "where one unlawful scheme is alleged, the differences between class members will not be enough to defeat typicality."  *Drywall*, 2017 U.S. Dist. LEXIS 135758, at *12.   "Any probable factual differences relate to damages rather than to liability."  *Mylan*, 2014 U.S. Dist. LEXIS 21504, at *13.  Indeed, "[t]he claims of the class representatives are virtually identical to those of the class members."  *Gates*, 248 F.R.D. at 441.  "[T]hus the interests of the class representatives are aligned with those of the class members," satisfying the typicality requirement.  *Id.*

### iv.         Adequacy of representation

The "adequacy of representation" prong requires that the "class representatives do not have interests antagonistic to the class and that class counsel are sufficiently skilled and experienced to litigate the case."  *Imprelis*, 2013 U.S. Dist. LEXIS 18332, at *11-12.  Here,

"[a]ll Class Members seek to prove Defendants' alleged anticompetitive conduct, and to recover overcharge damages." *Mylan*, 2014 U.S. Dist. LEXIS 21504, at *14. Proposed class representatives have precisely the same goal. Thus, the class representatives' "interests do not conflict with the interests of absent members of the Class," and they are adequate. *Id.* Moreover, as previously discussed, Co-Lead Counsel are well-experienced, qualified, and sufficiently skilled to litigate the case. Therefore, the final Rule 23(a) factor weighs in favor of conditionally certifying a settlement class. *See Domestic Drywall Antitrust Litig.*, 2017 U.S. Dist. LEXIS 135758, at *13 (finding adequacy satisfied).

> **b.**     **The Settlement Classes Satisfy the 23(b) Standards**

Plaintiffs seek certification of the Nationwide Class under both Fed. R. Civ. P. 23(b)(2) and 23(b)(3). Plaintiffs seek certification of the State Damages Class under Fed. R. Civ. P. 23(b)(3) only.

> **i.**     **The Nationwide Class Satisfies 23(b)(2)**

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In "determining whether to certify a class under Rule 23(b)(2), courts consider whether individual issues will affect the 'cohesion' of the class action." *Gates*, 248 F.R.D. at 442. "Important to the analysis 'is that the relief sought . . . should benefit the entire class,' and 'the putative class [must] 'demonstrate that the interests of the class members are so like those of the individual representatives that injustice will not result from their being bound by such judgment in the subsequent application of principles of res judicata.'" *See Sullivan*, 667 F.3d at 317-318.

This court should have no difficulty in finding the Settlement Class satisfies this standard.

14

Indeed, in *Sullivan,* the Third Circuit upheld certification of a final settlement class under remarkably similar circumstances, noting that the defendant's "anticompetitive behavior 'caused the entire membership of all classes to pay artificially inflated prices,' and that, in the absence of injunctive relief, all classes would continue to pay artificial premiums." 667 F.3d at 318. There – as here – the plaintiffs' "claims demonstrate[d] shared interests between the members of the putative class, and, these allegations, if proven, would support injunctive relief respecting the class as a whole." *Id.* Since such allegations sufficiently supported *final* certification of a settlement class, IPPs' allegations at this preliminary stage must do the same, and this Court should find 23(b)(2) satisfied.

     **ii.**     **The Settlement Class Satisfies 23(b)(3)**

IPPs seek certification of both the Nationwide Class and the State Damages Class under 23(b)(3). "In order to certify an opt-out class under Rule 23(b)(3), the Court must make two additional findings: predominance and superiority." *Gates,* 248 F.R.D. at 442. Plaintiffs show both here.

     **1.**     **Predominance**

Predominance exists when "[i]ssues common to the class . . . predominate over individual issues." *Gates,* 248 F.R.D. at 442-443. "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan,* 667 F.3d at 298. "Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem,* 521 U.S. at 620.

The Third Circuit has, on at least three occasions, rejected predominance-based challenges to antitrust settlement classes. *Sullivan,* 667 F.3d at 299; *In re Ins. Brokerage*

*Antitrust Litig.*, 579 F.3d 241, 285 (3d Cir. 2009); *Warfarin*, 391 F.3d at 529.  Two of these involved certifications of multi-state indirect purchaser classes like the one proposed here. *Warfarin*, 391 F.3d at 529; *Sullivan*, 667 F.3d at 297.  In each of these cases, it has done so on grounds identically present in this case: because the defendants' "asserted price-fixing and monopolization conduct lies at the core of plaintiffs' claims, as do the common injuries which all class members suffered as a result." *Sullivan*, 667 F.3d at 300 (citing *Insurance Brokerage* and *Warfarin*.)  Here, as in *Sullivan*, "each class member shares a similar *legal* question arising from whether [Defendants] engaged in a broad conspiracy" and the "plaintiffs likewise share common factual questions as to whether [Defendants] 'acted in concert to artificially fix, maintain, and stabilize prices'" of Drywall and to eliminate job quotes. *Id* (citations omitted).  These questions are common to all class members, lie at the center of IPPs' claims, and predominate over any individual issues.

### 2.        Superiority

The superiority requirement "'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *Warfarin*, 391 F.3d at 533-534 (citations omitted).  In this matter, the only other available method of adjudication is individual suits challenging Defendants' conduct through multiple cases – or no cases at all, given that the small purchases of many class members would make such cases economically inefficient.  A single class action is therefore not just the superior alternative, but likely the only alternative.  As such, the final requirement of 23(b)(3) is satisfied, and this Court should preliminarily certify the settlement classes.

### c.       This Court's Previous Denial of Class Certification Does Not Impact Certification of a Settlement Class

This Court's previous denial of certification of the indirect purchaser's litigation class poses no obstacle to certification of the Settlement Class.  Courts in this District and elsewhere commonly certify settlement classes after previously denying or limiting certification of litigation classes.  *See, e.g. Processed Egg*, 2016 U.S. Dist. LEXIS 85853, at *19.[5]

Such certification is particularly warranted in this case.  This Court's certification decision noted its primary reasons for denial rested on its determinations "that the class is not ascertainable, and that case management would be too difficult."  *Drywall*, 2017 U.S. Dist. LEXIS 135758, at *37.  Neither consideration is relevant at the settlement stage.  First, as mentioned above, the Third Circuit has squarely held that ascertainability is not a relevant consideration at the settlement stage.  *See Comcast*, 656 F. App'x at 8.   Second, while a "key question in a litigation class action is manageability", it is black letter law that "the settlement class presents no management problems because the case will not be tried."  *Sullivan*, 667 F.3d at 335.

As to this Court's findings regarding predominance and antitrust impact: The Third Circuit has explicitly condemned "conflat[ing] the predicate predominance analysis for certification of a settlement class with that required for certification of a litigation class."

---

[5] *See also In re Dynamic Random Access Memory Antitrust Litig.*, No. 02-1486, 2013 U.S. Dist. LEXIS 188116, at *254 (N.D. Cal. Jan. 7, 2013) ("The Special Master has reviewed the ruling of this Court that rejected the motion filed by California and New Mexico for certification of a *litigation* class . . . .  However, nothing in this ruling prevents the two proposed Government Purchaser Settlement Classes from being certified for *settlement* purposes"); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 553 (N.D. Ga. 2007) (denying class certification as to a proposed litigation class but granting as to a proposed settlement class); *cf. Anderson Living Tr. v. WPX Energy Prod., LLC*, 308 F.R.D. 410, 439 (D.N.M. 2015) ("'[C]ourts will certify settlement classes although they had previously denied certification of the same class for litigation purposes.'").

*Sullivan*, 667 F.3d at 303.  Indeed, in *Sullivan*, it affirmed final certification of a settlement class

even though part of the class lacked the ability to prove antitrust injury on a classwide basis.  *Id.*

at 307; *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 434 (3d Cir. 2016)

(citing *Sullivan* and noting "[w]e are . . . 'more inclined to find the predominance test met in the

settlement context.'").

On that point, the present case is similar to *Processed Egg*, which certified an antitrust

settlement class including members the court had previously determined could not be part of a

litigation class because of their inability to show a methodology proving antitrust impact on a

classwide basis.  2016 U.S. Dist. LEXIS 85853, at *21-22.  In doing so, Judge Pratter held that,

while "the plaintiffs failed to meet their burden of showing that issues of law and fact would

predominate at trial with regards to the availability of evidence of antitrust impact, common to

the entire class," the Third Circuit's *Sullivan* decision counseled that "such consideration of trial

management and common evidence would not apply, however, when determining whether issues

of law and fact common to the settlement class predominate."  *Id.* at *23; *see also id.* at *22

("[C]ommon questions of fact and law may predominate with regards to a settlement class, while

separate individual questions could nevertheless prevent certification of a litigation class.").  The

same is equally true here.

## VII.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

Prior to final approval, Fed. R. Civ. P. 23(c)(2) and 23(e) requires that the Court

authorize the content of notice of the preliminary certification, settlement, and final approval

hearing, as well as the way the parties propose to distribute that notice.  "The Rule 23(e) notice is

designed to summarize the litigation and the settlement and 'to apprise class members of the

right and opportunity to inspect the complete settlement documents, papers, and pleadings filed

in the litigation.'" *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at

327 (citation omitted).

IPPs' proposed form of notice is attached hereto as Exhibit 4 and their proposed method

of providing notice is attached hereto as Exhibit 5.

> **a.**   **The Proposed Form Of Class Notice Adequately Informs Class Members Of Their Rights In This Litigation**

Rules 23(c)(2) and 23(e) govern the contents of notice, and require that the notice

adequately inform class members of the terms of the settlement, *see* Fed. R. Civ. P. 23(e), as well

as "(i) the nature of the action; (ii)  the definition of the class certified; (iii)  the class claims,

issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the

member so desires; (v) that the court will exclude from the class any member who requests

exclusion; (vi) the time and manner for requesting exclusion; and, (vii) the binding effect of a

class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2).

IPPs' proposed Class Notice complies with these requirements.  It informs Class

Members of the material terms of the Settlement, including both the relief it provides and the

releases that will apply to class members.  It further describes the nature of the action, the

definitions of the settlement classes, and the availability of, and procedures for, objecting or

opting out of the Settlement.  It also informs Class Members of the date that IPPs' motion for

attorneys' fees, litigation expenses, and class representative incentive awards will be filed.

Finally, it informs Class Members of how to submit a claim for payment from the settlement

funds.

The Proposed Notice fully informs Class Members of all the matters required by Fed. R.

Civ. P. 23(c)(2) and 23(e), and is therefore adequate.  As such, this Court should approve the content of the Class Notice.

> **b.    The Proposed Method of Distributing Class Notice Is Reasonably Calculated to Reach Targeted Class Members**

A plan for distributing notice is satisfactory when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Elite Sportswear Prods., Inc. v. New York Life Ins. Co*., 2006 U.S. Dist. LEXIS 77637, 21 (E.D. Pa. Oct. 24, 2006).  This does not require direct individual notice: indeed, in *Warfarin*, the Third Circuit affirmed a district court's approval of a plan of notice for an indirect purchaser class action consisting of "publishing summary notice in publications likely to be read by consumer claimants along with a call-center and a website with information and downloadable forms." *Warfarin*, 391 F.3d at 536 ("[E]ven in the absence of any individual notice via direct mail in this matter, we are satisfied that the District Court acted within its discretion in determining that 'reasonable effort' was made here to provide 'the best notice practicable under the circumstances.'").

Here, the proposed plan of notice exceeds that approved in *Warfarin*.  IPPs have selected a respected and qualified settlement administrator – Heffler Claims Group – to provide notice to the Class. Together with Heffler, IPPs have developed an extensive, targeted notice plan including both print and cutting-edge Internet advertising that is more than adequate, as described in Exhibit 4. Highlights of the notice plan include:

- Half-page summary notices published in periodicals Good Housekeeping (circulation 4,300,000) and The Family Handyman (circulation 1,236,251);

- A highly targeted internet program targeting people who have implemented renovations

in the same time period, which will incorporate ads placed through the HavenHome

network (which is a premium network of 110+ sites in the DIY, home improvement, pro

and home design and décor categories), as well as on Google, major social media sites

(including Facebook, Instagram, Pinterest, and Twitter);

- Video ads and press releases targeted at reaching potential class members.

The Court should approve Plaintiffs' proposed method of providing notice.

### c.    Notice to Government Regulators

The Class Action Fairness Act, 28 U.S.C. § 1715, requires notice of the proposed

settlement to be served on appropriate State and Federal officials.  Pursuant to the settlement

agreements, Settling Defendants will provide such notice.  *See* Exhibit 1 (Settlement

Agreement), ¶19.

## VIII.   THE PLAN OF ALLOCATION AND CLAIMS PROCESS

At preliminary approval, the Court applies the same standard to a proposed plan of

allocation of settlement proceeds that it does to the rest of the settlement, *i.e.* making a

preliminary determination that it is sufficiently fair and reasonable to justify sending notice to the

class.  *Cf. Gates*, 248 F.R.D. at 437 (preliminarily approving settlement and plan of allocation.).

IPPs' proposed plan of allocation meets this standard.  Courts "'generally consider plans of

allocation that reimburse class members based on the type and extent of their injuries to be

reasonable."  *Sullivan*, 667 F.3d at 328 (citations omitted).   The proposed plan of allocation –

fully described in the Notice, *see* Exhibit 5 at Attachment A – relies on the expert analysis of Dr.

Harris and Dr. Dwyer, both of whom served as IPPs' experts at all stages of this litigation, and

allocates the settlement proceeds according to Dr. Harris and Dr. Dwyer's calculation of the

overcharges paid by class members in 2012 and 2013, with diminishing allocations to class

members purchasing later in the class period to take into account their relative distance from the conspiratorial period.[6]  The Plan of Allocation estimates that IPPs purchasing in 2012 paid a 20.2% overcharge; those purchasing in 2013 and 2014 paid a 36.5% overcharge, and those purchasing later in the Class Period paid a 10% overcharge, and allocates the settlement proceeds *pro rata* using those figures.  This is precisely the type of allocation commonly approved in this Circuit, and is eminently fair and reasonable.  And it is fully described in the Plan of Notice, meaning it will be described to Class Members prior to final approval of the Settlement.  *See In re Prudential Sec. Inc. Ltd. Pshps. Litig.*, 163 F.R.D. 200, 205-06 (S.D.N.Y. 1995) (preliminarily approving settlement when "the description of the Plan of Allocation in the Notice will allow Class Members to have some idea of what he or she sacrifices by opting out.").  In the event any class members object, they can raise those concerns before final approval.

The claims process, also designed by an experienced administrator, is similarly common. *See* Ex. 6 (claim form).  It requires claimants to describe their qualifying purchases on a simple claim form.  In recognition of the fact that some class members may not have easy access to receipts, it permits claimants to submit claims without documentation if they verify their purchases under penalty of perjury, but limits such class members to a maximum of $100 in payments.  However, claimants submitting proof of purchase with their forms will have no such cap.

---

[6] *Cf. Ashton Woods Holdings LLC v. USG Corp. (In re Domestic Drywall Antitrust Litig.)*, No. MDL No. 13-2437, 2016 U.S. Dist. LEXIS 81673, at *12 n.5 (E.D. Pa. June 22, 2016) ("Class Plaintiffs . . . may be able to prove damages for a broader time period than the scope of discovery and liability.").

## IX.     PROPOSED SCHEDULE

Heffler Claims Group (IPPs proposed notice administrator) advises that, if this Court grants preliminary approval by January 16, 2018, IPPs' proposed notice plan will conclude by March 20, 2018.  Accordingly, in the event this Court is inclined to preliminarily approve the settlement, IPPs propose the following schedule for approval proceedings:

| DATE | EVENT |
|------|-------|
| March 1, 2018 | **IPPs shall file their Motions for Final Approval of the Settlement, for Attorneys' Fees and Expenses, and for Class Representative Incentive Awards.** |
| March 20, 2018 | **Deadline for completion of Notice Plan.** |
| April 19, 2018 | **IPPs shall file proof notice was directed to the Settlement Class in accordance with the plan of notice.** |
| April 19, 2018 | **Deadline for any Class Member to exclude themselves from the Settlement, or to object to the Settlement or to IPPs' Motions for Attorneys' Fees and Expenses, or for Class Representative Incentive Awards.** |
| May 3, 2018 | **Deadline for IPPs to reply to any objections to the Settlement** |
| At the convenience of the Court | **Final approval hearing.** |

## X.     CONCLUSION

The proposed settlement represents an excellent outcome, created by dedicated counsel in a complex, difficult, and risky case.  It meets the standards for preliminary approval, and this Court should grant such approval.  In addition, the proposed classes are prototypical settlement classes in antitrust cases, and this Court should preliminarily certify them.  Finally, the proposed plan of notice is adequate both in manner and in content, and this Court should approve that plan and schedule a final fairness hearing.

Date: January 5, 2018

/s Whitney E. Street
Whitney E. Street
**BLOCK & LEVITON LLP**
610 16th Street, Suite 214
Oakland, CA  94612
Tel: (415) 968-8999
wstreet@blockesq.com


/s James Robert Noblin
James Robert Noblin
**GREEN & NOBLIN, P.C.**
700 Larkspur Landing Circle,
Suite 275
Larkspur, CA 94939
Tel: (415) 477-6700
Fax: (415) 477-6710
jrn@classcounsel.com

/s Michael G. McLellan
Michael G. McLellan
Douglas G. Thompson, Jr.
**FINKELSTEIN THOMPSON LLP**
3201 New Mexico Ave, Suite 395
Washington, D.C. 20016
Tel:  (202) 337-8000
Fax:  (202) 337-8090
mmclellan@finkelsteinthompson.com
dthompson@finkelsteinthompson.com