# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION** | **MDL No. 2437** <br> **13-MD-2437** |
| **THIS DOCUMENT RELATES TO:** <br><br> **ALL INDIRECT PURCHASER ACTIONS** | |

**SETTLEMENT AGREEMENT**

This agreement ("Settlement Agreement") is made and entered into this 5th day of January, 2018 (the "Execution Date"), by and between American Gypsum Company LLC, New NGC, Inc., and PABCO Building Products, LLC (collectively, "Settling Defendants"), and the Indirect Purchaser Plaintiffs ("Plaintiffs"), individually and on behalf of a class of indirect purchasers of Wallboard, as defined below.

WHEREAS, Plaintiffs allege that Settling Defendants participated in a conspiracy to raise, fix, maintain, or stabilize prices and to terminate the use of job quotes for Wallboard in violation of Section 1 of the Sherman Act and the laws of various states and jurisdictions; and

WHEREAS, Settling Defendants deny Plaintiffs' allegations, have asserted defenses to Plaintiffs' claims, and have not conceded or admitted any liability; and

WHEREAS, arm's-length settlement negotiations have taken place between Co-Lead Counsel and counsel for Settling Defendants, and this Settlement Agreement has been reached as a result of those negotiations; and

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the claims asserted in the Indirect Purchaser action pending in the United States

District Court for the Eastern District of Pennsylvania, MDL Docket No. 2437, Civil Action No. 13-MD-2437 (the "Action"), including analysis of over 2.6 million pages of documents and numerous depositions, have briefed, argued, and received rulings on significant pretrial motions, and have concluded that a settlement with Settling Defendants according to the terms set forth below is fair, reasonable, adequate and in the best interest of Plaintiffs and the Settlement Class Members; and

WHEREAS, Settling Defendants believe that they are not liable for the claims asserted and have good defenses to Plaintiffs' claims, but nevertheless have decided to enter into this Settlement Agreement in order to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation and to obtain the releases, orders and judgment contemplated by this Settlement Agreement, and to put to rest with finality all claims that Plaintiffs have or could have asserted against the Releasees, as defined below.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Settling Defendants and the Plaintiffs that the Action be settled, compromised, and dismissed with prejudice as to Settling Defendants only, without costs or expenses to Plaintiffs, the Settlement Class Members, or Settling Defendants except as provided for herein, subject to the approval of the Court, on the following terms and conditions:

A. **Definitions**

The following terms, as used in this Settlement Agreement, have the following meanings:

1.  "Court" means the U.S. District Court for the Eastern District of Pennsylvania.

2.  "Defendants" means USG Corporation, United States Gypsum Company, CertainTeed Gypsum, Inc., New NGC, Inc., Lafarge North America Inc., American Gypsum Company LLC, PABCO Building Products, LLC, and TIN Inc.

3.    "Final Approval" means that the approval of the Settlement Agreement by the Court has become final, either by exhaustion of any time for a Settlement Class Member who has properly and timely objected to the Settlement to appeal such approval, with no appeal being filed, or by completion of any appeals filed by Settlement Class Members which appeals have been resolved to uphold the Settlement.

4.    "Wallboard" means panel products consisting of a gypsum core with a paper surfacing on the face and back.

5.    "Co-Lead Counsel" means, for purposes of this agreement, the following law firms:

> BLOCK & LEVITON LLP
> 610 16th Street, Suite 214
> Oakland, CA  94612
> Tel: (415) 968-8999
>
> GREEN & NOBLIN, P.C.
> 700 Larkspur Landing Circle, Suite 275
> Larkspur, CA  94939
> Tel: (415) 477-6700
>
> FINKELSTEIN THOMPSON LLP
> 3201 New Mexico Ave, Suite 395
> Washington, DC 20016
> Tel:  (202) 337-8000

6.    "Plaintiffs" means the plaintiffs in the Action as of the Execution Date.

7.    "Releasees" means Settling Defendants and all of their current and former parents, subsidiaries, affiliates, predecessors, successors, or assigns and all current and former officers, directors, attorneys, representatives, agents, and employees of each of the foregoing entities.  Releasees does not include any Defendant in the Action other than Settling Defendants, including any other Defendant's current and former parents, their predecessors, affiliates, assigns, successors, subsidiaries, attorneys, and their officers, directors, representatives, and

employees in their capacity associated solely with any other Defendant and not in association with Settling Defendants.

8.      "Releasors" means Plaintiffs and the Settlement Class Members, their heirs, executors, and administrators, all of their current and former parents, subsidiaries, affiliates, predecessors, or successors and all current and former officers, directors, attorneys, representatives, agents, and employees of each of the foregoing entities, and all assignees of any claim that is subject to the Release described in Paragraphs 22-24.

9.      "Settlement" means the settlement of the Action contemplated by this Agreement.

10.     "Settlement Amount" means $1,250,000.00 in United States currency.

11.     "Settlement Class Period" means the period from and including January 1, 2012, to and including the Execution Date.

12.     "Settlement Class" means the class consisting of all persons or entities currently residing in the United States that indirectly purchased Wallboard in the United States manufactured by any of the Defendants, or their parents, subsidiaries, affiliates, or joint venturers, for end use and not for resale during the Settlement Class Period.  Excluded from the Settlement Class are Defendants, along with each of their parent companies, subsidiaries (including, without limitation, L&W Supply Corporation and Pacific Coast Supply, LLC), and affiliates, the officers, directors, employees, legal representatives, and heirs or assigns of any Defendant, any state or federal entities or instrumentalities of the federal government or of a state, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action.

13.     "Settlement Class Member" means a member of the Settlement Class that does not timely and validly elect to be excluded from the Settlement Class.

14.     "Settling Parties" means Plaintiffs and Settling Defendants.

**B.  Stipulation to Class Certification**

15.     The Settling Parties hereby stipulate for purposes of this Settlement only that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class defined in Paragraph 12 shall be certified for settlement purposes as to Settling Defendants.  The Settling Parties stipulate and agree to the conditional certification of the Settlement Class for purposes of this Settlement only.  Should, for whatever reason, the Settlement not receive Final Approval, the parties' stipulation to class certification as part of the Settlement shall become null and void.  Settling Defendants expressly reserve their rights to oppose class certification should this Settlement not be granted Final Approval.

16.     Neither this Settlement Agreement, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Settlement Agreement, should be construed as or deemed to be evidence of an admission or concession by Settling Defendants that a class should be or should have been certified for any purposes other than settlement, and none of them shall be admissible in evidence for any such purpose in any proceeding.

**C.  Approval of this Settlement Agreement and Dismissal of the Action**

17.     The Settling Parties agree to make reasonable best efforts to take actions to effectuate this Settlement Agreement and shall cooperate to promptly seek and obtain the Court's preliminary and final approval of this Settlement Agreement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e), and scheduling a final fairness hearing) to obtain Final

Approval of the Settlement and the final dismissal with prejudice of the Action as to Settling Defendants and the Releasees.

18.     Within twenty-one (21) days after the Execution Date, Plaintiffs shall submit to the Court a motion requesting that the Court preliminarily approve the Settlement and authorize dissemination of notice to the Settlement Class (the "Motion").  The Motion shall include: (a) a proposed form of order preliminarily approving the Settlement; (b) proposed forms of, and methods for, dissemination of notice to the Settlement Class; and (c) a proposed form of final judgment order, all of which shall be furnished to Settling Defendants for review and prior approval, which is not to be unreasonably withheld.  The notice of the Settlement as approved by the Court shall be disseminated in a manner to be approved by the Court.

19.     Within ten (10) calendar days after this Settlement Agreement and the accompanying motion papers seeking its preliminary approval are filed with the Court, Settling Defendants shall cause notice of the Settlement Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

20.     If the Settlement is preliminarily approved by the Court, Plaintiffs shall promptly seek final approval of the Settlement and entry of a final judgment order as to Settling Defendants:

(a)     certifying the Settlement Class defined in Paragraph 12 under Federal Rule of Civil Procedure 23(b)(3), solely for purposes of this Settlement;

(b)     granting final approval of the Settlement as fair, reasonable, and adequate within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure and directing the consummation of the Settlement according to its terms;

(c)     directing that, as to Settling Defendants only, the Action be dismissed with prejudice and, except as provided for herein, without costs;

(d)     reserving exclusive jurisdiction over the Settlement and this Settlement Agreement, including the administration and consummation of this

Settlement, to the United States District Court for the Eastern District of
Pennsylvania; and

(e)  determining under Federal Rule of Civil Procedure 54(b) that there is no
just reason for delay and directing entry of final judgment as to Settling
Defendants.

21.  This Settlement Agreement shall become effective only when:  (a) the Court has
entered (i) a final judgment order approving the Settlement set forth in this Settlement
Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and (ii) a final judgment
dismissing the Action against Settling Defendants with prejudice and without costs; and (b) the
time for appeal or to seek permission to appeal from the Court's approval of the Settlement and
the entry of a final judgment has expired or, if appealed, approval of the Settlement and the final
judgment have been affirmed in their entirety by the Court of last resort to which such appeal has
been taken and such affirmance is no longer subject to further appeal or review ("Effective
Date").  It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All
Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

**D.  Releases, Discharge, and Covenant Not to Sue**

22.  Upon Final Approval and in consideration of payment of the Settlement Amount
into the Escrow Account as specified in Section E of this Settlement Agreement, Releasees shall
be fully, finally, and forever released and discharged by Releasors from any and all claims,
demands, actions, suits, injuries, causes of action, and damages of any nature, whenever and
however incurred (whether actual, punitive, treble, compensatory, or otherwise), including,
without limitation, costs, fees, expenses, penalties, and attorneys' fees, whether class, individual,
or otherwise in nature, that Releasors, or any of them, ever had, now has, or hereafter can, shall,
or may have, directly, representatively, derivatively, or in any other capacity, against Releasees
(or any of them), whether known or unknown, suspected or unsuspected, foreseen or unforeseen,

7

actual or contingent, liquidated or unliquidated, asserted or unasserted, whether in law or equity or otherwise, in whole or in part or arising out of or relating in any way to any conduct, act, or omission of Releasees (or any of them) prior to and including the Execution Date, concerning any of the facts, occurrences, transactions, agreements, conspiracies, communications, announcements, notices, or other matters alleged in the Action against Settling Defendants that arise under any federal, state, or common law, including, without limitation, the Sherman Act, 15 U.S.C. § 1 *et seq.*, and any federal or state antitrust, unfair competition, unfair practices, price discrimination, unjust enrichment, unitary pricing, or trade practice law, including but not limited to any causes of action asserted or that could have been or could still be alleged or asserted, in any class action complaints filed in this Action or related actions, which collectively includes, without limitation, any action transferred to this multidistrict litigation proceeding (the "Released Claims"); provided, however, that nothing in this Settlement Agreement shall release: (a) any claims based upon direct purchases of Wallboard brought by prospective members of any class of direct purchasers (the "Direct Purchaser Class"); or (b) claims arising in the ordinary course of business for any product defect, breach of contract, product performance or warranty claims relating to Wallboard.  Releasors shall not, after the Effective Date of this Agreement, seek to recover from any Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims.  Released Claims do not include any claims arising out of the enforcement of this Settlement Agreement.

23.     In addition to the provisions of Paragraph 22 of this Settlement Agreement, Releasors hereby expressly waive and release, upon the Effective Date of this Settlement Agreement, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

<u>CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE.</u>    A
GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT
THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE
DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is

similar, comparable or equivalent to Section 1542 of the California Civil Code.  Each Releasor

may hereafter discover facts other than or different from those which the Releasor knows or

believes to be true with respect to the claims which are the subject of the provisions of Paragraph

22 of this Settlement Agreement, but each Releasor hereby expressly waives and fully, finally,

and forever settles and releases, upon this Settlement Agreement becoming final, any known or

unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the

subject matter of the provisions of Paragraph 22 of this Settlement Agreement, whether or not

concealed or hidden, without regard to the subsequent discovery or existence of such different or

additional facts.

      24.     Upon Final Approval, Settling Defendants shall be deemed to have fully released

Releasors from any claims relating to the institution or prosecution of the Action.

**E.  <u>Payment of the Settlement Amount</u>**

      25.     The Settlement Amount includes the full and complete cost of the settlement

notice, claims administration, Settlement Class Members' compensation, class representatives'

incentive awards (as approved by the Court), attorneys' fees (as approved by the Court) and

reimbursement of all actual expenses of the Action (as approved by the Court), any other

litigation costs of Plaintiffs, and all applicable taxes, if any, assessable on the Settlement Fund or

any portion thereof.  In no event will Settling Defendants' liability with respect to the Settlement

exceed $1,250,000.  Releasors shall look solely to the Settlement Amount for settlement and

satisfaction against the Releasees of all Released Claims and shall have no other recovery against the Releasees.

26.     Within ten (10) business days of the entry of an order preliminarily approving the Settlement, Settling Defendants will pay or cause to be paid by wire transfer the Settlement Amount into an escrow account or accounts established by Co-Lead Counsel (the "Escrow Account"). This amount, along with any interest earned thereon, shall be held in escrow and constitutes the "Settlement Fund." The Escrow Account and Settlement Fund shall be administered in accordance with the provisions of Section F of this Settlement Agreement.

27.     Settling Defendants reserve all of their legal rights and defenses with respect to any potential member of the class who opts out of the Settlement.

**F.   <u>The Settlement Fund</u>**

28.     The Escrow Account shall be established as a "qualified settlement fund" as defined in Section 1.468B-1(a) of the U.S. Treasury Regulations or other appropriate escrow account as agreed to by the Settling Parties.

29.     After preliminary approval of the Settlement, Co-Lead Counsel may spend up to $250,000 of the funds ("Notice Fund") in the Settlement Fund to provide notice of the settlement to the Settlement Class and for notice administration, without an order from the Court. The amount spent or incurred for notice and notice administration is not refundable to Settling Defendants in the event the Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective. If any of the $250,000 remains after all notice and notice administration costs are paid, that amount will be refunded to Settling Defendants.

30.     From the Notice Fund and the Settlement Fund shall be paid the cost of settlement notice, claims administration, class representatives' incentive awards, attorneys' fees, reimbursement of all actual expenses of the Action, any other litigation costs of Plaintiffs, and all

applicable taxes, if any.  The Settling Parties shall have the right to audit amounts paid from the Settlement Fund.

31.     The Settlement Fund shall be invested in United States Government Treasury obligations or United States Treasury money market funds.  The Notice Fund may be deposited in a bank account, in which case it will be deposited in a federally insured interest-bearing account.

32.     Settling Defendants shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution, use or administration except as expressly otherwise provided in this Settlement Agreement.

33.     Settling Defendants' only payment obligation is to pay the Settlement Amount. Settling Defendants shall not be liable for any costs, expenses, or fees of any of Plaintiffs' respective attorneys, experts, advisors, agents, or representatives.  Payment of all such costs, expenses, and fees, as approved by the Court, shall be paid only out of the Settlement Fund.  No disbursements shall be made from the Settlement Fund prior to the Effective Date of this Settlement Agreement except as described in Paragraphs 29, 30, and 39.

34.     The distribution of the Settlement Fund shall be administered pursuant to a plan of allocation (the "Plan of Allocation") proposed by Co-Lead Counsel and subject to the approval of the Court.  If such approval is not obtained, Co-Lead Counsel shall revise the Plan of Allocation as necessary until approval of the District Court is obtained.  Settling Defendants shall have no participatory or approval rights with respect to the Plan of Allocation and the

Court's rejection of the Plan of Allocation shall not affect the validity or enforceability of this Settlement Agreement.

35.     Settling Defendants will take no position on any application for fees and reimbursement of expenses made by Co-Lead Counsel or by the Settlement Class Members or any application for class representatives' incentive awards out of the Settlement Fund.

**G.  Rescission**

36.     If the Court refuses to approve this Settlement Agreement or any material part hereof, or if such approval is modified or set aside on appeal, or if a final judgment order with the provisions generally described in Paragraph 20 is not entered, or if the Court enters the final judgment order and appellate review is sought and, on such review, such final judgment order is not affirmed, then Settling Defendants and Plaintiffs shall each, in their sole discretion, have the option to rescind this Settlement Agreement in its entirety (except as hereafter provided in this Paragraph) by written notice to the Court and to counsel for the other Settling Party filed and served within ten (10) business days of the entry of an order not granting court approval or Final Approval or having the effect of disapproving or materially modifying the terms of the Settlement Agreement.

37.     If the Settlement or Settlement Agreement is rescinded for any valid reason, then the balance of the Settlement Amount in the Notice Fund and Settlement Fund will be returned to Settling Defendants within ten (10) business days.  In the event that the Settlement Agreement is rescinded, the funds already properly expended or properly incurred but not yet paid for the costs of notice and administration will not be returned to Settling Defendants.

38.     If the Settlement or Settlement Agreement is rescinded for any valid reason before payment of claims to Settlement Class Members, then the Settling Parties will be restored to their respective positions in the Action as of the Execution Date.  In that event, the Action will

proceed as if this Settlement Agreement had never been executed and this Settlement Agreement and representations made in conjunction with this Settlement Agreement, may not be used in the Action or otherwise for any purpose. Settling Defendants and Plaintiffs expressly reserve all rights if the Settlement Agreement does not become effective or if it is rescinded by Settling Defendants or the Plaintiffs pursuant to this Section G.

**H.  Taxes**

39.     Co-Lead Counsel shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and shall be solely responsible for taking out of the Settlement Fund, as and when legally required, any tax payments, including interest and penalties due on income earned by the Settlement Fund. All taxes (including any interest and penalties) due with respect to the income earned by the Settlement Fund shall be paid from the Settlement Fund. Settling Defendants shall have no responsibility to make any filings relating to the Settlement Fund and will have no responsibility to pay tax on any income earned by the Settlement Fund or to pay any taxes on the Settlement Fund unless the Settlement is not consummated and the Settlement Fund is returned to Settling Defendants. In the event the Settlement does not become final and any funds including interest or other income are returned to Settling Defendants, Settling Defendants shall be responsible for the payment of all taxes (including any interest or penalties), if any, on said interest or other income. Settling Defendants make no representations regarding, and shall not be responsible for, the tax consequences of any payments made pursuant to this Settlement Agreement to Co-Lead Counsel or to any Settlement Class Member.

### I. __Miscellaneous__

40.     This Settlement Agreement does not settle or compromise any claim by Plaintiffs or any other Settlement Class Member against (a) any Defendant other than Settling Defendants or (b) any alleged co-conspirator or other person or entity other than the Releasees.  All rights of any member of the Settlement Class against any Defendant other than Settling Defendants or an alleged co-conspirator or other person or entity other than the Releasees are specifically reserved by Plaintiffs and the other members of the Settlement Class.

41.     This Settlement Agreement constitutes the entire agreement among Plaintiffs and Settling Defendants pertaining to the Settlement of the Action against Settling Defendants.  This Settlement Agreement may be modified or amended only by a writing executed by Plaintiffs and Settling Defendants.

42.     Neither this Settlement Agreement nor any negotiations or proceedings connected with it shall be deemed or construed to be an admission by any party or any Releasee of any wrongdoing or liability or evidence of any violation by Settling Defendants of any federal or state statute or law either in the Action or in any related action or proceedings, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, except in a proceeding to interpret or enforce this Settlement Agreement.  This Settlement Agreement represents the settlement of disputed claims and does not constitute, nor shall it be construed as, an admission of the correctness of any position asserted by any party, or an admission of liability or of any wrongdoing by any party, or as an admission of any strengths or weaknesses of the Plaintiffs' claims or Settling Defendants' defenses.  Settling Defendants specifically deny any wrongdoing or liability by any of the Releasees.

14

43.     This Settlement Agreement may be executed in counterparts by Plaintiffs and Settling Defendants, and a facsimile or scanned signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

44.     Neither Plaintiffs nor Settling Defendants shall be considered the drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, the common law, or rule of interpretation that would or might cause any provision of this Settlement Agreement to be construed against the drafter.

45.     The provisions of this Settlement Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

46.     The Court shall retain jurisdiction over the implementation and enforcement of this Settlement Agreement and the Settlement.

47.     Any disputes between Settling Defendants and Co-Lead Counsel concerning this Settlement Agreement shall, if they cannot be resolved by the parties, be submitted to the United States District Court for the Eastern District of Pennsylvania.

48.     This Settlement Agreement shall be governed and interpreted according to the substantive laws of the Commonwealth of Pennsylvania, without regard to its choice of law or conflict of law principles.

49.     Each party acknowledges that it has been and is being fully advised by competent legal counsel of such party's own choice and fully understands the terms and conditions of this Settlement Agreement, and the meaning and import thereof, and that such party's execution of this Settlement Agreement is with the advice of such party's counsel and of such party's own free will.  Each party represents and warrants that it has sufficient information regarding the transaction and the other parties to reach an informed decision and has, independently and

without relying upon the other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Settlement Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Settlement Agreement.

50.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement.

Dated:  January 5, 2018

Whitney E. Street
BLOCK & LEVITON LLP
610 16th Street, Suite 214
Oakland, CA  94612
Tel: (415) 968-8999
wstreet@blockesq.com

Michael G. McLellan
Douglas G. Thompson, Jr.
FINKELSTEIN THOMPSON LLP
3201 New Mexico Ave, Suite 395
Washington, D.C. 20016
Tel:  (202) 337-8000
Fax:  (202) 337-8090
mmclellan@finkelsteinthompson.com
dthompson@finkelsteinthompson.com

James Robert Noblin
GREEN & NOBLIN, P.C.
700 Larkspur Landing Circle,
Suite 275
Larkspur, CA 94939
Tel: (415) 477-6700
Fax: (415) 477-6710
jrn@classcounsel.com

*Co-Lead Counsel for Indirect Purchaser Plaintiffs*

Joel G. Chefitz
David L. Hanselman Jr.
Chelsea L. Black
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Chicago, IL 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
jchefitz@mwe.com
dhanselman@mwe.com
cblack@mwe.com

Raymond A. Jacobsen, Jr.
Paul M. Thompson
Nicole L. Castle
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001
Telephone: (202) 756-8000
Facsimile: (202) 756-8087
rayjacobsen@mwe.com
pthompson@mwe.com
ncastle@mwe.com

*Counsel for defendant American Gypsum
Company LLC*

LOCKE LORD LLP

Bradley C. Weber
Susan Adams
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8497
Facsimile: (214) 756-8497
bweber@lockelord.com
suadams@lockelord.com

*Counsel for defendant PABCO Building
Products, LLC*

Steven E. Bizar
Benjamin McAnaney
Julia Chapman
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-2205
Facsimile: (215) 655-2205
steven.bizar@dechert.com
benjamin.mcananey@dechert.com
julia.chapman@dechert.com

Robert E. Harrington
Lawrence C. Moore, III
Nathan C. Chase, Jr.
Erik R. Zimmerman
ROBINSON BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000
rharrington@rbh.com
lmoore@rbh.com
nchase@rbh.com
ezimmerman@rbh.com

Thomas P. Manning
BUCHANAN INGERSOLL & ROONEY PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
Telephone: (215) 665-8700
Facsimile: (215) 665-8760
thomas.manning@bipc.com

*Counsel for defendant New NGC, Inc. d/b/a
National Gypsum Company*

Joel G. Chefitz
David L. Hanselman Jr.
Chelsea L. Black
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Chicago, IL 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
jchefitz@mwe.com
dhanselman@mwe.com
cblack@mwe.com

Raymond A. Jacobsen, Jr.
Paul M. Thompson
Nicole L. Castle
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001
Telephone: (202) 756-8000
Facsimile: (202) 756-8087
rayjacobsen@mwe.com
pthompson@mwe.com
ncastle@mwe.com

*Counsel for defendant American Gypsum
Company LLC*


LOCKE LORD LLP


_____
Bradley C. Weber
Susan Adams
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8497
Facsimile: (214) 756-8497
bweber@lockelord.com
suadams@lockelord.com

*Counsel for defendant PABCO Building
Products, LLC*

_____
Steven E. Bizar
Benjamin McAnaney
Julia Chapman
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-2205
Facsimile: (215) 655-2205
steven.bizar@dechert.com
benjamin.mcananey@dechert.com
julia.chapman@dechert.com

Robert E. Harrington
Lawrence C. Moore, III
Nathan C. Chase, Jr.
Erik R. Zimmerman
ROBINSON BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000
rharrington@rbh.com
lmoore@rbh.com
nchase@rbh.com
ezimmerman@rbh.com

Thomas P. Manning
BUCHANAN INGERSOLL & ROONEY PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
Telephone: (215) 665-8700
Facsimile: (215) 665-8760
thomas.manning@bipc.com

*Counsel for defendant New NGC, Inc. d/b/a
National Gypsum Company*

17

Joel G. Chefitz
David L. Hanselman Jr.
Chelsea L. Black
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Chicago, IL 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
jchefitz@mwe.com
dhanselman@mwe.com
cblack@mwe.com

Raymond A. Jacobsen, Jr.
Paul M. Thompson
Nicole L. Castle
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001
Telephone: (202) 756-8000
Facsimile: (202) 756-8087
rayjacobsen@mwe.com
pthompson@mwe.com
ncastle@mwe.com

*Counsel for defendant American Gypsum
Company LLC*

LOCKE LORD LLP

Bradley C. Weber
Susan Adams
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8497
Facsimile: (214) 756-8497
bweber@lockelord.com
suadams@lockelord.com

*Counsel for defendant PABCO Building
Products, LLC*

Steven E. Bizar
Benjamin McAnaney
Julia Chapman
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-2205
Facsimile: (215) 655-2205
steven.bizar@dechert.com
benjamin.mcananey@dechert.com
julia.chapman@dechert.com

Robert E. Harrington
Lawrence C. Moore, III
Nathan C. Chase, Jr.
Erik R. Zimmerman
ROBINSON BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000
rharrington@rbh.com
lmoore@rbh.com
nchase@rbh.com
ezimmerman@rbh.com

Thomas P. Manning
BUCHANAN INGERSOLL & ROONEY PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
Telephone: (215) 665-8700
Facsimile: (215) 665-8760
thomas.manning@bipc.com

*Counsel for defendant New NGC, Inc. d/b/a
National Gypsum Company*

17