**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION** | **MDL No. 2437** **13-MD-2437** |
| **THIS DOCUMENT RELATES TO:** **All Indirect Purchaser Actions** | |

**MEMORANDUM RE: MOTION FOR PRELIMINARY APPROVAL**
**OF CLASS SETTLEMENT**

Baylson, J.                                                    **February 21, 2018**

## I. Introduction

The motion for Preliminary Approval of the Settlement, Certification of a Class of Indirect Purchaser Plaintiffs ("IPP") for Settlement Purposes and Approval of Class Notice filed January 5, 2018 (ECF 688), presents a number of issues preventing approval without further details and revisions. The Motion summarizes, fairly accurately, the history of this litigation, at least pertaining to the claims of "Indirect Purchasers." Counsel for Indirect Purchasers have, at different times, offered different definitions of what is, in this case, an "Indirect Purchaser."[1]

There have been three prior settlements of Indirect Purchasers as to Defendants USG, TIN, and Lafarge, totaling $15.75 million. Subsequently, counsel for Plaintiffs filed a motion for certification of a class of indirect purchasers as to the remaining defendants (American Gypsum Company LLC, New NGC, Inc., and PABCO Building Products, LLC) in this case (ECF 472), which the Court denied by Opinion dated August 24, 2017 (ECF 632). The Indirect Purchasers

---

[1] There is a separate lawsuit in this MDL (commonly called the Ashton Woods litigation), EDPA Civil Action 15-1712, brought by twelve large homebuilders throughout the United States. The Ashton Woods plaintiffs allege that they are direct purchasers of drywall.

then reached a settlement with the remaining defendants in this case.  It is this latter settlement for which approval is now sought.

As a result of the extensive factual background about the drywall business in the contested class action motions, the Court must explore ambiguities in the phrase "indirect purchaser" as applied to drywall.  Plaintiffs have proposed a class basically defined as "someone who has purchased drywall for end use and not for resale."  It appears clear from industry data, presented by testimony and experts in the class action disputes, that most drywall is purchased either for homebuilding or for repair or remodeling.  The latter functions are largely carried out by independent contractors who specialize in repair and remodeling for others, and purchase drywall for inclusion in an overall project.  The Court believes that it is difficult to accept that a homeowner or a business owner who has entered into a contract with a contractor for an expansion, or a repair, or a remodel, which necessarily will include drywall, is an appropriate "indirect purchaser" of drywall—in some projects there could be a minimal amount of drywall, and in other projects there could be a great deal of drywall.  The "end user," most likely the homeowner or the building owner, or lessor, has no idea how much drywall is included, its cost, or its source.  Yet, it appears that Plaintiffs want to include these "end users" in the class, which the Court believes will cause undue and excessive administration costs and confusion.  It would appear that the independent contractors who do the actual work are truly indirect purchasers, unless they have purchased drywall directly from one of the manufacturers.  If the latter, those contractors can participate in the Direct Purchaser class action settlement which is separately on its way towards final approval and has much more money to distribute to Direct Purchasers.  The Court tentatively believes that a settlement directed to Indirect Purchasers should include those contractors who purchased drywall from big box retailers or other large wholesalers of drywall

and are themselves "indirect purchasers" because they do not purchase directly from a manufacturer.

The Court will not grant preliminary approval as requested, until various conflicts and inconsistencies in the class definition, and the time period, and other terms, are clarified, as explained below.

The Court believes that it has an obligation to those who qualify as indirect purchasers, if this settlement is finally approved, to eliminate inconsistencies and contradictions between the proposed settlement class with the remaining defendants and the previously approved Indirect Purchaser classes as related to USG, TIN, and Lafarge.

Without consistent definitions and time periods, administrative problems will overwhelm any rational allocation or damages distribution plan, and may cause expensive and confusing litigation that will render the proposed settlement inadequate, unfair and/or improper.

On the occasion of the first settlement between Plaintiffs and USG/TIN, the Court issued a memorandum (ECF 273) filed August 20, 2015, which summarized reasons for approval of those settlements and issues relating to requests for payment of litigation expenses out of those settlements. There does not appear to be any separate similar memorandum after the Lafarge settlement.

With regard to the previously approved settlements, the Defendants have paid the requisite sums to an escrow account, and notice has gone out as required by Rule 23, but there has not been any distribution of settlement funds and the settlement funds remain intact, invested in treasury bonds or similar government securities.

## II. Proposed Class Definitions

The Court has expressed above its difficulties with the proposed class definition which would include homeowners and business owners who are totally ignorant about the source or

costs of the drywall that has been included in their homes or offices, yet excludes the contractors who are likely to suffer an overcharge, and the prospect of that overcharge being "passed on" to the contractors' customers is hypothetical at best.

The class definition is buried in the exhibits to the pending motion for approval. Plaintiffs are seeking approval of two separate classes. One is termed a "nationwide" class or an "injunctive" class—which basically would apply to any indirect purchaser of drywall as defined in the agreement anywhere in the United States. However, also deep in the exhibits of the documents, Plaintiffs' counsel acknowledge that these class members will not receive any monetary compensation arising out of this settlement.

All of the monetary distribution will go to members of the "state" classes for "indirect purchasers" in 27 states in the United States, the District of Columbia, and Puerto Rico—generally those states which have, either by statute or otherwise, authorized indirect purchasers of products to maintain damage suits against manufacturers who fix prices or otherwise violate the antitrust laws of these specific states.

The remaining 23 states, although not specifically identified, apparently do not have state-based antitrust laws or allow this type of damages litigation based on violation of federal antitrust laws. Thus, the residents of these remaining states will not be able to file a proof of claim or receive any money.

Also of concern to the Court is the broad definition of the state damage class, and in particular, the length of time for which purchases of drywall are eligible for claims.

### III. Summary of Opinion Denying Class Certification

In its opinion dated August 24, 2017, the Court denied class certification to a proposed litigation class—whose full definition is set forth in the following section—that indirect purchaser plaintiffs, who sought to be certified as a Rule 23(b)(3) class for state damages, or, in

the alternative, as a nationwide injunctive class under Rule 23(b)(2). (Mem. Denying IPP Class Cert., ECF 632.) The Court found that the proposed class met the numerosity, commonality, typicality, and adequacy prerequisites for pursuing a class action set forth Rule 23(a), but did not meet the requirements of Rule 23(b)(3) or Rule 23(b)(2).

By its terms, a Rule 23(b)(3) class requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Third Circuit also requires that the identities of the class members be ascertainable. This Court's opinion explained that the ascertainability inquiry required by the Third Circuit was a two-step process: "[f]irst, plaintiffs must show that the class is defined with reference to objective criteria, then second, that there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." (ECF 632 at 9.)

The Court began with ascertainability. The Court found that Plaintiffs had not proven that their method of ascertaining class membership was administratively feasible because it sought to certify essentially the entire "'repair and remodel' segment of the market"—which would include both those who buy and install drywall themselves, and those who engage other professionals to install drywall for them—a class definition potentially encompassing millions of people. In addition, the Court found that the proposed method of showing class membership through affidavit, transactional data from retailers, proof of purchase, or photographs of drywall was not reliable or administratively feasible. (Id. at 18.)

Furthermore, the proposed state damages class failed the predominance requirement of Rule 23(b)(3) because the Indirect Purchaser Plaintiffs failed to show that antitrust impact—a

necessary element of an antitrust class action—could be shown on a classwide basis, and the Indirect Purchaser Plaintiffs had further failed to show that common issues predominated as to damages or state law claims. (Id. at 26, 30-31.) Finally, the indirect purchaser plaintiffs had not shown that a class action was the superior method for adjudication. (Id. at 33.)

With respect to the nationwide injunctive class sought to be certified under Rule 23(b)(2), the Court found that the class failed the "cohesiveness" inquiry required by the Third Circuit— which resembled the predominance inquiry for 23(b)(3)—for essentially the same reasons. (Id. at 34.) The Court also denied issue classes. (Id. at 35.)

## IV. Discussion

A class-based settlement cannot ignore Rule 23 requirements. Even though Defendants do not now oppose the preliminary approval of the pending settlement, the Supreme Court and the Third Circuit have held that Rule 23 requirements are relevant. See infra.

Notwithstanding the opinion of August 24, 2017 denying class certification for the Indirect Purchasers, as to which the Court of Appeals for the Third Circuit denied a Rule 23(f) petition for interlocutory appeal, the Plaintiffs are now urging the Court to approve an Indirect Purchaser settlement. At least some of the terms of this settlement appear to contradict findings that the Court made in the August 2017 denial of class certification, which has raised a number of legal issues which will be addressed in this memorandum.

Detailed review of the Plaintiffs' papers in support of their motion show a number of other issues of concern to the Court. First, careful analysis of the definition of the various classes described by counsel have shown a number of inconsistencies, some of which are fairly minor, but some of which could raise problems, particularly when the definition of the proposed settlement class is compared to the terms of the previous Indirect Purchaser settlements with USG, TIN, and Lafarge.

Second, Plaintiffs' counsel have not adequately explained how the proposed settlement cures or resolves some of the important issues which led this Court to deny certification, particularly on the concept of ascertainability.

Third, the proposed definition is ambiguous and unnecessarily over-inclusive, at least as the Court sees the drywall industry and its downstream purchasers.

Nonetheless, this Court believes that it must, at least to some extent, consider and respect the laws of the various states that have determined to allow this type of claim, even though the resulting payout could be quite moderate if not de minimis for many consumers.

The Court also notes the settlement agreement allows Plaintiffs' counsel to request up to one-third of the total settlement fund, or $5.65 million, as attorneys' fees, and in addition to seek reimbursement for out-of-pocket expenses.

The Court questions why there needs to be a nationwide "injunctive" class at all, and what purpose that serves.

The Court has also reviewed the plan of allocation and some hypotheticals are set forth as to the distribution of funds to the state damage class, if it were to be approved. The claim form which Plaintiffs propose to use does not necessarily require that a purchaser of drywall supply documentary proof of purchases, but does note that if such a purchaser has proof and supplies it, that that consumer will recover a larger proportion of the settlement fund than a consumer who does have proof.

The practicalities related to the purchase of drywall were somewhat explored in the August 2017 opinion of this Court, and was one of the factors leading to denial of the class certification motion. Nothing seems to have changed in the drywall business since that time and the Court is struggling with the complexities and the administrative costs that appear to be quite

challenging, if not impossible to overcome with the requisite amount of fairness required by Rule 23.

The Court notes that the prior approvals of the USG/TIN/Lafarge settlements were noted as being "final" but the terms of those prior settlements give the Court some discretion in entering further orders that may be appropriate under Rule 23.

In paragraph 34 of the pending motion for preliminary approval, that counsel acknowledges the Court has authority to make revisions in the plan of allocation.

As the list of questions below demonstrates, the Court will require counsel to consider the inconsistencies pointed out in the various documents, the administrative burdens and their costs, and the relatively small amount of money that may be recoverable to a particular class member.

The Court is aware that there has been criticism by appellate courts and commentators, as well as in general press reports, of plaintiffs' class counsel getting multi-million dollar fee awards when members of the class are getting awarded minor amounts, sometimes less than $100, even though the class member may have spent considerable time and effort looking for proof and filling out the claims form.

The parties cite an opinion by Judge Pratter in the <u>Processed Egg</u> multidistrict litigation, an antitrust case involving a conspiracy to reduce the supply of eggs, for the proposition that "Courts in this District and elsewhere commonly certify settlement classes after previously denying or limiting certification of litigation classes." (Mem. in Support of Mot. of Prelim. Approval of Settlement as to Remaining Defs. at 17, ECF 688-1.) In that opinion, Judge Pratter indeed certified a settlement class of direct purchasers that included subclasses of both direct purchasers of shell eggs (i.e., intact eggs in their shells) and direct purchasers of egg products. <u>In re: Processed Egg Prod. Antitrust Litig.</u>, No. 08-MD-2002, 2016 WL 3584632, (E.D. Pa. June

30, 2016).  Previously, Judge Pratter had granted class certification for litigation purposes to the shell eggs subclass but denying certification to the egg products subclass.  In re Processed Egg Prod. Antitrust Litig., 312 F.R.D. 171, 177 (E.D. Pa. 2015) (finding, after discussion of experts' methodologies, that plaintiffs had shown that common issues predominated as to the shell egg subclass but not as to egg products subclass).  The parties do not cite this earlier decision.

More troublingly, Plaintiffs' counsel omit the fact that Judge Pratter twice denied proposed classes of indirect purchasers.  At approximately the same time she granted class certification to the direct purchaser shell egg subclass, she denied litigation class certification to an indirect purchaser state damages class and a nationwide injunctive class on the grounds that the proposed damages class was not ascertainable, and failed the predominance and superiority requirements of Rule 23(b)(3), and the plaintiffs had not met their burden of showing "cohesiveness" as to the nationwide injunctive class.  In re Processed Egg Prod. Antitrust Litig., 312 F.R.D. 124 (E.D. Pa. 2015).  When the indirect purchasers subsequently filed a renewed motion for certification of an injunctive indirect purchaser class, Judge Pratter again denied certification on the grounds that the proposed class was not "cohesive," as was required by Rule 23(b)(2).  In re Processed Egg Prod. Antitrust Litig., 321 F.R.D. 555, 559 (E.D. Pa. 2017) (finding that proposed class was not cohesive for many of the same reasons as the proposed class failed predominance inquiry, including the lack of proof of antitrust injury common to the class).

Plaintiffs' counsel thus present a skewed portrait of the Processed Egg litigation, highlighting an order that pertained only to direct purchasers, while ignoring decisions in the same case that rejected a proposed indirect purchaser classes were twice rejected.

The Court does not necessarily intend to void the already approved settlements, but does have considerable concerns about how to move forward in a fair and equitable way consistent with Rule 23 in disposing of the $16.95 million settlement fund.

Counsel may have justifiable reason for expecting some compensation out of the current Indirect Purchaser settlement fund for their work on the liability phase of the case. This is a topic that need not be further discussed or ruled upon at this time. However, the Court will insist, when it comes to consider counsel fees, for a very rigorous review of the work of counsel for the Indirect Purchasers. It appears to be that the phrase "Indirect Purchaser" in the drywall industry is ambiguous, and more specificity and simplicity is required.

## V. Class Definitions

As discussed, this Court has certified and given final approval to indirect purchaser plaintiff classes with respect to three defendants: USG, TIN, and Lafarge. The class definitions—all of which included a nationwide injunctive class and a state damages class—are set forth below:

### A.   USG

**Nationwide Injunctive Class:** All persons or entities in the United States who indirectly purchased for end use and not for resale Wallboard manufactured and/or sold by one or more of the Defendants or their subsidiaries or affiliates at any time from January 1, 2012 through November 30, 2014. Excluded from the Class are Defendants, their officers, directors, and employees, their parent companies, subsidiaries and affiliates, the legal representative and heirs or assigns of any Defendant, any federal governmental entities and instrumentalities of the federal government, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action.

**Indirect Purchaser State Damages Class:** All persons or entities located in or making a purchase in or from an entity located in Arizona, Arkansas, California, the District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin

who indirectly purchased for end use and not for resale Wallboard manufactured and/or sold by one or more of the Defendants or their subsidiaries or affiliates at any time from January 1, 2012 through November 30, 2014. Excluded from the Class are Defendants, their officers, directors, and employees, their parent companies, subsidiaries and affiliates, their legal representatives and heirs or assigns of any Defendant, any federal governmental entities and instrumentalities or of [sic] the federal government, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action.

(USG Final Judgment Order, ECF 278.)

The TIN settlement was given final approval on the same day as the USG settlement:

**B.    TIN**

The "TIN Settlement Class" means the Nationwide Injunctive Class and the Indirect Purchaser State Damages Classes, which are respectively defined as follows:

"Nationwide Injunctive Class" means all persons or entities in the United States who purchased for end use and not for resale Wallboard manufactured and/or sold by one or more of the Defendants or their subsidiaries or affiliates at any time from January 1, 2012 through November 30, 2014. Excluded from the Class are Defendants, their officers, directors, and employees, their parent companies, subsidiaries and affiliates, the legal representative and heirs or assigns of any Defendant, any federal governmental entities and instrumentalities of the federal government, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action.

"Indirect Purchaser State Damages Classes" means all persons or entities located in or making a purchase in or from an entity located in Arizona, Arkansas, California, the District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin who purchased for end use and not for resale Wallboard manufactured and/or sold by one or more of the Defendants or their subsidiaries or affiliates at any time from January 1, 2012 through November 30, 2014. Indirect Purchaser State Damages Classes are intended to include all purchasers who would fall within any class alleged by Plaintiffs in the Action. Excluded from the Class are Defendants, their officers, directors, and employees, their parent companies, subsidiaries and affiliate, their legal representatives and heirs or assigns of any Defendant, any federal governmental entities and instrumentalities of the federal government, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action.

(TIN Final Judgment Order, ECF 279.)

### C. Lafarge

The Lafarge class period is from January 1, 2012 to July 28, 2016.

**Nationwide Class:** All persons or entities currently residing in the United States that indirectly purchased Wallboard in the United States manufactured by any of the Defendants, their subsidiaries, affiliates, or joint venturers for end use and not for resale during the Settlement Class Period. Excluded from the Settlement Class are Defendants, the officers, directors and employees of any Defendant, the parent companies, subsidiaries and affiliates of any Defendant, the legal representatives and heirs or assigns of any Defendant, any co-conspirators, any state or federal entities or instrumentalities of the federal government or of a state, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action.

**State Damages Class:** All persons or entities currently residing in the United States that indirectly purchased Wallboard in or from an entity located in Arizona, Arkansas, California, the District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin manufactured by any of the Defendants, their subsidiaries, affiliates, or joint venturers for end use and not for resale during the Settlment Class Period. Excluded from the Settlement Class are Defendants, the officers, directors and employees of any Defendant, the parent companies, subsidiaries and affiliates of any Defendant, the legal representatives and heirs or assigns of any Defendant, any co-conspirators, any state or federal entities or instrumentalities of the federal government of a state, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action.

(Lafarge Final Judgment Order, ECF 551.)

In the Settlement Agreement between Indirect Purchasers and Lafarge, "Settlement Class Period" is defined as "the period from and including January 1, 2012, to and including the Execution Date."

(Lafarge Settlement Agr. ¶ 13, ECF 499-2.) "Execution Date" is defined as July 28, 2016. (Id.)

Although these class definitions contain significant similarities, the earlier final approvals of class settlements as to USG, TIN, and Lafarge all contain language at paragraph 7 of the respective orders that

"[t]he Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any other class in MDL No. 2437 and *no party may cite or refer to the Court's approval of the [Defendant] Settlement Class as compelling the same result with respect to any motion to certify any other class in MDL No. 2437.*"

(ECF 278 ¶ 7, 279 ¶ 7, 551 ¶ 7) (emphasis added).

Two more class definitions are relevant to the analysis: the proposed IPP litigation class, which was denied by order of this Court on August 24, 2017 (ECF 632), and the recently proposed settlement class:

### D. CLASS DEFINITION IN MOTION FOR CLASS CERTIFICATION

All persons and entities who, from January 1, 2012 through present, as residents of the United States, indirectly purchased gypsum board manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action[.]

All persons and entities who, from January 1, 2012 through present indirectly purchased gypsum board in [STATE] manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

(Mot. for Class Certification as to Remaining Defs. at 1-2, ECF 472.)

### E. SETTLEMENT CLASS DEFINITION AS TO REMAINING DEFENDANTS

("Nationwide Class"):

All persons or entities currently residing in the United States that indirectly purchased Wallboard in the United States manufactured by any of the Defendants,

or their parents, subsidiaries, affiliates, or joint venturers, for end use and not for resale during the Settlement Class Period.[2] Excluded from the Settlement Class are Defendants, along with each of their parent companies, subsidiaries (including, without limitation, L&W Supply Corporation and Pacific Coast Supply, LLC), and affiliates, the officers, directors, employees, legal representatives, and heirs or assigns of any Defendant, any state or federal entities or instrumentalities of the federal government or of a state, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action[.]

("State Damages Class"):

All persons or entities currently residing in the United States that indirectly purchased Wallboard in or from an entity located in Arizona, Arkansas, California, the District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin manufactured by any of the Defendants, or their parents, subsidiaries, affiliates, or joint venturers, for end use and not for resale during the Settlement Class Period. Excluded from the Settlement Class are Defendants, along with each of their parent companies, subsidiaries (including, without limitation, L&W Supply Corporation and Pacific Coast Supply, LLC), and affiliates, the officers, directors, employees, legal representatives, and heirs or assigns of any Defendant, any state or federal entities or instrumentalities of the federal government or of a state, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action.

(Mem. in Support of Mot. of Prelim. Approval of Settlement as to Remaining Defs. at 10-11, ECF 688-1.)

## F.    TIME PERIOD

The Proposed Settlement Agreement currently before the Court defines the "Settlement Class Period" as "the period from and including January 1, 2012, to and including the Execution Date" of January 5, 2018 (six years and four days).  (Proposed Settlement Agr. as to Remaining Defs. ¶ 11, ECF 688-2.)

---

[2] As discussed below, this period covers January 1, 2012 to January 5, 2018.

## VI. Standards for granting approval of a class action settlement

In order to be approved by this Court, the proposed class must comply with Rule 23 and lead cases of the Supreme Court and the Third Circuit, including Amchem Products v. Windsor, 521 U.S. 591 (1997), and Sullivan v. DB Investments, Inc., 667 F.3d 273 (3d Cir. 2011) (en banc).

### A.  Amchem Products v. Windsor, 521 U.S. 591 (1997)

In Amchem, the Supreme Court vacated a district court's approval of "conditional class certification" to a settlement class in an asbestos case that was intended to resolve virtually all asbestos litigation through a class action settlement agreement. Id. at 606. Some of the named plaintiffs had suffered health issues from asbestos exposure, whereas others had merely been exposed and suffered no symptoms, and the class contained no subclasses. Id. at 603. The Third Circuit subsequently vacated the conditional class certification, and the Supreme Court affirmed. Id. at 611-12.

The majority emphasized that settlement classes must satisfy Rule 23(a) and (b) to be certified, not merely Rule 23(e). Id. at 621. The Court found that the "sprawling" proposed class failed the predominance inquiry because the symptomatic plaintiffs had varying symptoms, and had little in common with the exposure-only plaintiffs; all plaintiffs had different smoking histories, and differences in state law only "compound[ed] these disparities." Id. at 624. For similar reasons, the class failed the Rule 23(a)(4) adequacy requirement because of the potential conflicts of interest between the symptomatic and exposure-only plaintiffs with respect to litigation strategy. Id. at 625-26.

See also Evans v. Jeff D., 475 U.S. 717 (1986).

### B.  Sullivan v. DB Investments, Inc. 667 F.3d 273 (3d Cir. 2011) (en banc)

In <u>Sullivan</u>, which concerned allegations that De Beers had manipulated the world market in diamonds, a Third Circuit panel had initially ordered that the district court's certification of a class of direct purchasers of diamonds and a class of indirect purchasers of diamonds, be remanded for consideration of additional factors.

The en banc Third Circuit reversed the panel's decision, and held that the district court had not abused its discretion in granting class certification to the direct and indirect purchaser classes. <u>Id.</u> at 285. A seven-judge majority held that the district court had properly found that the proposed indirect purchaser class met all of the requirements of Rule 23(a) and met the predominance requirement of Rule 23(b)(3) because "the defendant's conduct was common as to all of the class members, and…all of the class members were harmed by the defendant's conduct." <u>Id.</u> at 298. It further rejected the argument that differences in state antitrust laws defeated predominance, since earlier Third Circuit cases had approved nationwide classes "where 'the laws of the 50 states could be reduced to [several] general patterns, providing the framework for sub-classes if the nationwide action had proven unmanageable,'" and antitrust laws for indirect purchasers likely fell into a few such categories. <u>Id.</u> at 302. Moreover, "the concern for manageability that is a central tenet in the certification of a litigation class is removed from the equation" when a class action is settling, and "variations [in state laws] are irrelevant to certification of a settlement class." <u>Id.</u> at 303. Finally, the majority held that settlement class members did not need to state a valid claim. <u>Id.</u> at 304-07.

After reviewing the nine factors required in the Third Circuit for deciding whether a class action settlement is fair, reasonable, and adequate in satisfaction of Rule 23(e), the majority held that the district court had not abused its discretion in approving the settlement class.

This Court is not yet ready to approve the proposed class, applying <u>Sullivan</u> considerations.

## VII.    Problems Requiring Solutions

Review and revisions of the definition of the proposed settlement class may be necessary. The current definition covers many millions of people who would qualify under the "repair and remodel" concept behind the definition.   In fact, it appears that the proposed class is not exclusively limited to actual purchasers of drywall.   The clearest example of this applies when a contractor agrees with a homeowner to remodel or expand a home, a project which will almost assuredly include drywall.   The contractor in this instance is the one that purchases the drywall. If the contractor purchased the drywall directly from a manufacturer, or wholly-owned subsidiary of a manufacturer, that contractor is a direct purchaser.   However, if the contractor purchases the drywall from another source, such as a "big box" home remodeling centers like Home Depot, then the contractor itself is an "indirect" purchaser (i.e., did not purchase directly from a manufacturer) and will install the purchased drywall into the project; the homeowner or business owner who owns or leases the property will then become the "end user" of the drywall.

As the Court understands the drywall business, the contractor will include the cost of the drywall in the overall project cost; in this sense, the end user is not a "purchaser" of drywall at all, and would have no idea as to the source or the cost of the drywall was.

The definition must also take into account consumers who purchased drywall for a "do-it-yourself" project, who are both indirect purchasers and end-users.

For these reasons, the Court is inclined to rule that the definition require that a member of the class is someone who actually purchased drywall, but not directly from a manufacturer.   The homeowner or business person has not purchased drywall, but has purchased a "remodeling

project" or a "repair project." Thus, a revised class should likely include contractors. The Court does not understand why Plaintiffs' counsel have proposed otherwise.

An important element in this possibly revised definition is to know from which entities the big box retailers, such as Home Depot, purchased their drywall. If directly from manufacturers, then they would be included in the Direct Purchaser class unless they opt out. Counsel for Indirect Purchasers must determine, and as part of their response to the questions in this memo, or in communications with Direct Purchaser counsel, and perhaps third parties such as big box retailers or other large wholesalers of drywall, exactly how they do business and what their intentions are as for filing claims, or their own suit.

This preferred revised class definition would include the "do-it-yourselfer" but only if he (or she or it) has actually purchased drywall. However, the largest category of Indirect Purchasers would likely be contractors, but they are not "end users."

Clearly, subclasses may be an appropriate way to categorize claims, and more efficiently deal with allocation of the settlement funds.

In the background lies a question as to what kind of recordkeeping these Indirect Purchasers have and what will be required of them in order to present a proof of claim, or whether a claim, taken subject to penalties against perjury, would be sufficient.

At the same time, it would also be necessary to clarify the persons who would be excluded from this process as follows:

1.      Purchaser of a new home containing drywall.

2.      Purchaser of a previously built home which contained drywall, even if it included additions made during the damage period which required purchases of drywall.

3.      Anyone who files a claim as a Direct Purchaser, for the same purchase of drywall.

4.      The owner of property for which a contractor purchased drywall as part of a repair or remodeling project.

The Court is also considering establishing a "floor" for a minimum amount of purchases, which would eliminate very small purchasers from the class.  Are there any other class settlements, as to either direct or indirect purchasers, where a court has established such a floor to eliminate very small claims which can require a long time to administer and yield very little in the way of damages?  One example in this case would be to reject any claim for less than, e.g., $500 for a single year or $1,000 for the entire damage period.  The Third Circuit approved such a floor in the <u>Sullivan</u> case, <u>supra</u>.

The Court believes there was a settlement in the "Chinese drywall litigation"—was there an indirect purchaser class included in that settlement?  If so, counsel shall explain the details and other factors, if any, relevant to this case.

The Court is still questioning why there is any need for an injunctive class in this case which would increase expenses.

As to the previous indirect purchaser settlements, counsel shall provide information as to the nature of objections, opt-outs, and claims.

Since it appears that all the money is going to go to citizens of the 27 states, should questions be posed to the appropriate consumer agency or attorney general of that state for input on how money should be distributed within that state?

Lastly, if all of the above appears impossible for necessary fairness under Rule 23, would requiring the settlement funds to be distributed to state consumer agencies, etc. be a better result?

**VIII.   Questions for Counsel**

In addition to the above, counsel's supplemental memorandum shall respond to the following questions:

1.　　　There are certain differences in the class definitions (including time period), in the USG/TIN/Lafarge settlement agreements (ECF 278, 279, 551). What reasons support these differences? What is the significance of the differences, if any?

2.　　　The class definition that was proposed in the Motion for Class Certification (ECF 472) is different from any of the USG/TIN/Lafarge settlement agreements. Why? Of what significance, if any?

3.　　　The current proposed settlement class definition (ECF 688) is substantially different from the classes defined in the USG/TIN/Lafarge settlements. Why? What impact does this have in the administration of the settlement, assuming the Court were to approve it?

4.　　　Given the decision of the Court in its opinion on August 24, 2017 (ECF 632), denying certification of an Indirect Purchaser class, what justification do counsel offer for the proposed settlement class, particularly the following differences between the proposed settlement class and the USG/TIN/Lafarge settlement classes:

- Different dates for the class period
- Different residency requirements
- Different potential manufacturers: some class definitions include drywall manufactured by parents or joint venturers of Defendants
- Different exclusions for alleged co-conspirators of Defendants
- Different exclusions for governmental purchasers: some class definitions include only the federal government, whereas others include state and/or local governments. Should any government units be included?
- Lack of express specification in the TIN final settlement order that the drywall must have been "indirectly" purchased (ECF 279). What does this mean?
- Language only in the TIN state damages class definition to the effect that "Indirect Purchaser State Damages Classes are intended to include all purchasers who would fall within any class alleged by Plaintiffs in the Action." (ECF 279)

This list is not exhaustive, and a more detailed list is included in the table attached.

5.　　　Some of the attributes of the definition of the proposed settlement class—and some of the differences between the current proposed settlement class and the USG/TIN/Lafarge

settlement classes—ignore the reasons the Court gave for denial of the motion for certification of an Indirect Purchaser class (ECF 632), which may create problems and confusion in the administration of the settlement. How do counsel propose to deal with this?

6.      What is the current status of the USG/TIN/Lafarge settlement classes? What is the status of any objections, opt-outs, etc.?

7.      The Court's Orders approving the USG/TIN/Lafarge granted final judgment under Rule 54(b) as to those Defendants, but nonetheless the Court retained exclusive jurisdiction over:

      a.   The Final Judgment Order;

      b.   The Settlement Agreement; and

      c.   Any application for disbursement [of settlement funds].

8.      In view of the above retention of jurisdiction, did the Court effectively grant final judgment, as that term is used in Third Circuit precedential cases (i.e., that an appeal would lie as to any aggrieved party). What are the parties' positions as to the Court's present ability to require modification of the prior class definition entered as to USG/TIN/Lafarge? Can and should the Court create a single definition of indirect purchaser plaintiffs applicable to USG/TIN/Lafarge and the current proposed settlement class? What definition do counsel propose?

9.      To bolster efficiency, control administrative costs, avoid double-dipping, and prevent ambiguity between classes of indirect purchasers, the Court believes that any settlement class of Indirect Purchasers must be easily ascertainable, with minimal requirements for proof of purchase. How does the proposed settlement class achieve those objectives, especially in light of

the Court's denial of the motion for certification of an Indirect Purchaser class (ECF 632)? What types of proof of purchase do counsel deem acceptable? Have counsel considered subclasses?

10.     What happens when a putative class member does not know, and cannot discover, the identity of the manufacturer of the drywall she purchased?  Should it make any difference as to the identity of the manufacturer of particular drywall purchased "indirectly?"  Should indirect purchasers be allowed to recover for all drywall "indirectly" purchased without regard to the manufacturer?  What about manufacturers not named as defendants in this case?  What about purchases of CertainTeed drywall?

11.     Counsel should brief whether their proposal, and response to this Order, meets the requirements of <u>Sullivan v. DB Investments</u>, 667 F.3d 273 (3d Cir. 2011) (en banc), and other precedential U.S. Supreme Court and Third Circuit cases on settlement of class actions.

12.     What weight should the Court give to public policy factors that a number of states have enacted legislation, or adopted by judicial rule, allowance for indirect purchasers to collect damages?  How should the Court balance these legislative enactments with requirements of Rule 23?

13.     In the event the Court determines that preliminary approval is not warranted under existing precedent, do counsel have any other suggestions as to the disposition of the funds that were agreed upon for settlement of the proposed Indirect Purchaser class?  Could the Settlement Agreement be rescinded?

14.     Is it clear that any claims of the homebuilders in the <u>Ashton Woods</u> case are not included in the Indirect Purchaser claims?  Is it correct that these Plaintiffs opted out of the prior settlements?

15.     What is intended as the definition of an "end user" in this case?

16.     Would it be advisable to limit the settlement class of Indirect Purchasers to contractors who purchased drywall for use for their businesses, and included its cost in the overall project costs, plus end users (such as do-it-yourselfers) who had personally purchased drywall from one of the big box retailers or similarly situated retailers?  Can Plaintiffs secure presumably reasonably accurate records as to the settling defendants in the case?  Do counsel propose inclusion of any additional wholesalers/retailers as providing the connection to Indirect Purchasers?  What would be the relative "fairness" of such a revised class compared to the present proposed definition?  What do counsel propose as a simple and fair method of requiring proof to accompany claims of Indirect Purchasers?

# Nationwide Injunctive Classes

| USG | TIN | Lafarge | Class Cert Motion | Settlement Motion | Comments |
|---|---|---|---|---|---|
| ECF 278 | ECF 279 | ECF 551 | ECF 472 | ECF 688-1 | |
| 1/1/12-11/30/14 | 1/1/12-11/30/14 | 1/1/12-7/28/16 | 1/1/12-end of trial? | 1/1/12-1/5/18 | Class period |
| All persons or entities in the United States who indirectly purchased for end use and not for resale Wallboard manufactured and/or sold by one or more of the Defendants or their subsidiaries or affiliates at any time from January 1, 2012 through November 30, 2014. | [A]ll persons or entities in the United States who purchased for end use and not for resale Wallboard manufactured and/or sold by one or more of the Defendants or their subsidiaries or affiliates at any time from January 1, 2012 through November 30, 2014. | All persons or entities currently residing in the United States that indirectly purchased Wallboard in the United States manufactured by any of the Defendants, their subsidiaries, affiliates, or joint venturers for end use and not for resale during the Settlement Class Period. | All persons and entities who, from January 1, 2012 through present, as residents of the United States, indirectly purchased gypsum board manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. | All persons or entities currently residing in the United States that indirectly purchased Wallboard in the United States manufactured by any of the Defendants, or their parents, subsidiaries, affiliates, or joint venturers, for end use and not for resale during the Settlement Class Period. | 1. Class cert motion refers to "persons and entities"; all other opinions refer to "persons or entities"<br><br>2. No residency requirement in USG or TIN; class cert motion requires US residency at time of purchase; Lafarge and Settlement Motion require current US residency<br><br>3. Only TIN does not specify that the drywall have been "indirectly" purchased<br><br>4. Class cert motion calls drywall "gypsum board"; all |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | others call it "Wallboard" |
| | | | | | 5. Only Settlement Motion includes parents of Defendants |
| | | | | | 6. Lafarge, class cert, and Settlement Motion include joint venturers, which USG and TIN do not |
| | | | | | 7. Only USG and TIN specify a definite class period with dates; Lafarge and Settlement Motion refer to a "Settlement Class Period" defined elsewhere |

**Nationwide Injunctive Class Exclusions**

| USG | TIN | Lafarge | Class Cert Motion | Settlement Motion | Comments |
|---|---|---|---|---|---|
| Excluded from the Class are Defendants, their officers, directors, and employees, their parent companies, subsidiaries and affiliates, the legal representative and heirs or assigns of any Defendant, any federal governmental entities and instrumentalities of the federal government, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action. | Excluded from the Class are Defendants, their officers, directors, and employees, their parent companies, subsidiaries and affiliates, the legal representative and heirs or assigns of any Defendant, any federal governmental entities and instrumentalities of the federal government, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action. | Excluded from the Settlement Class are Defendants, the officers, directors and employees of any Defendant, the parent companies, subsidiaries and affiliates of any Defendant, the legal representatives and heirs or assigns of any Defendant, any co-conspirators, any state or federal entities or instrumentalities of the federal government or of a state, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action. | Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action | Excluded from the Settlement Class are Defendants, along with each of their parent companies, subsidiaries (including, without limitation, L&W Supply Corporation and Pacific Coast Supply, LLC), and affiliates, the officers, directors, employees, legal representatives, and heirs or assigns of any Defendant, any state or federal entities or instrumentalities of the federal government or of a state, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the | 8. USG and TIN are identical

9. USG, TIN, and class cert motion call the proposed settlement class a "Class"; Lafarge and Settlement Motion call it a "Settlement Class"

10. Listing of excluded parties is slightly different: USG and TIN list "Defendants, their officers," etc.; Lafarge and class cert motion separate excluded parties into categories such as "the officers, directors and employees of any Defendant"

11. Settlement Motion lists Defendants "along |

| | | | | Action | with each of their…"—phrasing not used elsewhere |
|---|---|---|---|---|---|
| | | | | | 12. Settlement Motion lists parent companies, subsidiaries, and affiliates before officers, directors, and employees |
| | | | | | 13. Settlement Motion gives examples of subsidiaries |
| | | | | | 14. Lafarge and class cert motion exclude co-conspirators, which USG, TIN, and Settlement Motion do not |
| | | | | | 15. USG and TIN exclude federal governmental entities or instrumentalities; Lafarge and Settlement Motion exclude state as well as federal |

| | | | | | governmental entities or instrumentalities; class cert motion excludes "federal, state or <u>local</u> governmental entities" |
|---|---|---|---|---|---|

**State Damages Classes**

| USG | TIN | Lafarge | Class Cert Motion | Settlement Motion | Comments |
|---|---|---|---|---|---|
| All persons or entities located in or making a purchase in or from an entity located in Arizona, Arkansas, California, the District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin who indirectly purchased for end use and not for resale Wallboard | [A]ll persons or entities located in or making a purchase in or from an entity located in Arizona, Arkansas, California, the District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin who purchased for end use and not for resale Wallboard | All persons or entities currently residing in the United States that indirectly purchased Wallboard in or from an entity located in Arizona, Arkansas, California, the District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin | All persons and entities who, from January 1, 2012 through present indirectly purchased gypsum board in [STATE] manufactured by any of the Defendants, their subsidiaries, affiliates, or joint-venturers for end use and not for resale. | All persons or entities currently residing in the United States that indirectly purchased Wallboard in or from an entity located in Arizona, Arkansas, California, the District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin | 16. Class cert motion refers to "persons and entities"; all other opinions refer to "persons or entities"

17. Lafarge and Settlement Motion require current US residency; USG, TIN, and class cert motion do not

18. Only TIN does not specify that the drywall have been "indirectly" purchased

19. Class cert motion calls drywall "gypsum board"; all others call it "Wallboard"

20. Class cert motion does not specify states of purchase |

| | | | | | |
|---|---|---|---|---|---|
| manufactured and/or sold by one or more of the Defendants or their subsidiaries or affiliates at any time from January 1, 2012 through November 30, 2014. | manufactured and/or sold by one or more of the Defendants or their subsidiaries or affiliates at any time from January 1, 2012 through November 30, 2014. Indirect Purchaser State Damages Classes are intended to include all purchasers who would fall within any class alleged by Plaintiffs in the Action. | manufactured by any of the Defendants, their subsidiaries, affiliates, or joint venturers for end use and not for resale during the Settlement Class Period. | | manufactured by any of the Defendants, or their parents, subsidiaries, affiliates, or joint venturers, for end use and not for resale during the Settlement Class Period. | 21. Only Settlement Motion includes parents of Defendants<br><br>22. Lafarge, class cert motion, and Settlement Motion include joint venturers, which USG and TIN do not<br><br>23. Only USG and TIN specify a definite class period with dates; Lafarge and Settlement Motion refer to a "Settlement Class Period" defined elsewhere<br><br>24. Only TIN specifies that IPP state damages class includes all purchasers who would fall within any class alleged by Plaintiffs; no other class definition has similar language |

## State Damages Class Exclusions

| USG | TIN | Lafarge | Class Cert Motion | Settlement Motion | Comments |
|---|---|---|---|---|---|
| Excluded from the Class are Defendants, their officers, directors, and employees, their parent companies, subsidiaries and affiliates, their legal representatives and heirs or assigns of any Defendant, any federal governmental entities and instrumentalities of the federal government, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action. | Excluded from the Class are Defendants, their officers, directors, and employees, their parent companies, subsidiaries and affiliates, their legal representatives and heirs or assigns of any Defendant, any federal governmental entities and instrumentalities of the federal government, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action. | Excluded from the Settlement Class are Defendants, the officers, directors and employees of any Defendant, the parent companies, subsidiaries and affiliates of any Defendant, the legal representatives and heirs or assigns of any Defendant, any co-conspirators, any state or federal entities or instrumentalities of the federal government or of a state, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the Action. | Excluded from the Class are: Defendants; the officers, directors or employees of any Defendant; the parent companies, subsidiaries and affiliates of any Defendant; the legal representatives and heirs or assigns of any Defendants; and any co-conspirators. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action. | Excluded from the Settlement Class are Defendants, along with each of their parent companies, subsidiaries (including, without limitation, L&W Supply Corporation and Pacific Coast Supply, LLC), and affiliates, the officers, directors, employees, legal representatives, and heirs or assigns of any Defendant, any state or federal entities or instrumentalities of the federal government or of a state, any judicial officer presiding over the Action, any member of his or her immediate family and judicial staff, and any juror assigned to the | 25. USG and TIN identical<br><br>26. USG, TIN, and class cert motion call the proposed settlement class a "Class"; Lafarge and Settlement Motion call it a "Settlement Class"<br><br>27. Listing of excluded parties is slightly different: USG and TIN list "Defendants, their officers," etc.; Lafarge and class cert motion separate excluded parties into categories such as "the officers, directors and employees of any Defendant"<br><br>28. Settlement Motion lists Defendants "along |

| | | | | | |
|---|---|---|---|---|---|
| | | | | Action. | with each of their…"—phrasing not used elsewhere<br><br>29. Lafarge and class cert motion exclude co-conspirators, which USG, TIN, and Settlement Motion do not<br><br>30. USG and TIN exclude federal governmental entities or instrumentalities; Lafarge and Settlement Motion exclude <u>state</u> as well as federal governmental entities or instrumentalities; class cert motion excludes "federal, state or <u>local</u> governmental entities" |