## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION** | **MDL No. 2437** <br> **13-MD-2437** |
| **THIS DOCUMENT RELATES TO:** <br><br> **ALL DIRECT PURCHASER ACTIONS** | **Hon. Michael M. Baylson** |

**MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER
PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE
<u>AWARDS FOR THE CLASS REPRESENTATIVES</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND .....................................................................................................3

        A.      Prosecution of the Case.................................................................................3

        B.      The Settlements and the Combined Settlement Fund ...............................6

        C.      Notice Regarding Co-Lead Counsel's Request for Attorneys' Fees,
                Reimbursement of Litigation Expenses, and Service Awards................8

III.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE....................9

        A.      A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for
                Awarding Class Counsel's Attorneys' Fees in this Common Fund Settlement ......9

        B.      A Fee Award of One-Third of the Combined Settlement Fund Is Fair and
                Reasonable .................................................................................................10

                1.      An award of one-third is reasonable based on the size of the Combined
                        Settlement Fund and the number of entities benefitted. ...........................11

                2.      Analysis of any potential objections to the fee request is premature.........12

                3.      Class Counsel are skilled and efficient litigators. ....................................12

                4.      The complexity and duration of the litigation............................................13

                5.      Class Counsel faced a risk of nonpayment. ...............................................14

                6.      Class Counsel devoted nearly 80,000 hours to prosecuting this action.....15

                7.      One-third of the Combined Settlement Fund is a typical and reasonable fee
                        award for cases like this one. ....................................................................15

                8.      Class Counsel prosecuted the litigation without help from government
                        agencies......................................................................................................17

                9.      The requested fee is consistent with the percentage fee that would have
                        been negotiated in a private contingent fee arrangement...........................18

                10.     The factor of any innovative terms is neutral. ...........................................19

        C.      A Cross-Check of Class Counsel's Lodestar Confirms the Reasonableness of the
                Requested Fee ............................................................................................19

          1.     Class Counsel's lodestar is reasonable. ....................................................20

          2.     The multiplier mitigates in favor of the requested fee. .............................21

    D.     The Court Should Award Class Counsel the Funds in the Opt-Out Fee and Expense Account .....................................................................................................22

IV.    CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLE LITIGATION EXPENSES .....................................................................................................23

V.    CLASS REPRESENTATIVES SHOULD BE AWARDED THE REQUESTED SERVICE AWARDS .....................................................................................................24

VI.    CONCLUSION .....................................................................................................26

## TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*In re Aetna Inc. Securities Litig.*,
   No. CIV. A. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ........................................23

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002)................................................................16

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006)...........................................................................9, 17

*In re Auto. Refinishing Paint Antitrust Litig.*,
   No. 1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ................................................16

*In re Automotive Refinishing Paint Antitrust Litig.*,
   MDL Docket No. 1426, 2004 U.S. Dist. LEXIS 29162 (E.D. Pa. Oct. 13,
   2004) ........................................................................................21

*In re Blech Sec. Litig.*,
   No. 94 Civ. 7696 (RWS), 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) ...............................17

*Blum v. Stenson*,
   465 U.S. 886 (1984)........................................................................10

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)........................................................................10

*Bradburn Parent Teacher Store, Inc. v. 3M*,
   513 F. Supp. 2d 322 (E.D. Pa. 2007) ......................................................16, 18, 25

*Castro v. Sanofi Pasteur Inc.*,
   Civ. No. 11-7178, 2017 WL 4776626 (D. N.J. Oct. 23, 2017).........................................10, 15

*Caudle v. Bristow Optical Co., Inc.*,
   224 F.3d 1014 (9th Cir. 2000) ..................................................................20

*In re Cendant Corp. Prides Litig.*,
   243 F.3d 722 (3d Cir. 2001)..................................................................13, 21

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005)..................................................................10

*In re Continental Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ..................................................................18

*In re Corel Corp. Sec. Litig.*,
   293 F. Supp. 2d 484 (E.D. Pa. 2003) ..........................................................16, 23

*Cullen v. Whitman Medical Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000)............................................................................................12

*In re Diet Drugs Prod. Liab. Litig.*,
    553 F. Supp. 2d 442, 481 (E.D. Pa. 2008) ..........................................................................17

*In re Diet Drugs Prod. Liab. Litig.*,
    582 F.3d 524 (3d Cir. 2009)....................................................................................... *passim*

*In re Fasteners Antitrust Litig.*,
    No. 08-md-1912, 2014 WL 296954 (E.D. Pa. Jan. 27, 2014) ......................................3, 15, 18

*In re Flonase Antitrust Litig.*,
    291 F.R.D. 93 (E.D. Pa. 2013)........................................................................................14, 16

*In re Flonase Antitrust Litig.*,
    951 F. Supp. 2d 739 (E.D. Pa. 2013) ........................................................................11, 15, 16

*In re Gen. Instrument Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) ..................................................................................16

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)..................................................................................................10

*In re Graphite Electrodes Antitrust Litig.*,
    No. 2:10-md-01244-NS, ECF 527 (E.D. Pa. Sep. 8, 2003) ....................................................26

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000)................................................................................10, 11, 17, 19

*Hall v. Best Buy Co.*,
    274 F.R.D. 154 (E.D. Pa. 2011)............................................................................................14

*In re High-Tech Employee Antitrust Litig.*,
    No. 11–CV–02509, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)..........................................26

*In re Hypodermic Prods. Antitrust Litig.*,
    No. 05-1602, ECF 461 (D.N.J. Apr. 10, 2013).....................................................................16

*In re Ikon Office Solutions, Inc.*,
    194 F.R.D. 166 (E.D. Pa. 2000)................................................................................12, 18, 23

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009)..................................................................................................9

*In re K-Dur Antitrust Litig.*,
    No. 01-cv-1652, ECF 1058 (D.N.J. Oct. 5, 2017) .................................................................15

*Kirsch v. Delta Dental*,
    534 Fed. Appx. 113 (3d Cir. 2013) .................................................................................... 3, 9

*Lazy Oil Co. v. Wotco Corp.*,
    95 F. Supp. 2d 290 (W.D. Pa. 1997) ........................................................................................ 15

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 644 (E.D. Pa. 2003) ...................................................................................... 22

*In re Linerboard Antitrust Litig.*,
    MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ............................................... *passim*

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................................... 17

*Marchbanks Truck Serv. v. Comdata Network, Inc.*,
    No. 07-1078-JKG, 2014 WL 12738907 (E.D. Pa. July 14, 2014) .......................... 3, 11, 16, 25

*McCoy v. Health Net, Inc.*,
    569 F. Supp. 2d 448 (D.N.J. 2008) .......................................................................................... 26

*McGee v. Ann's Choice, Inc.*,
    No. 12-2664, 2014 WL 2514582 (E.D. Pa. June 4, 2014) ........................................................ 25

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .................................................................................................... 16

*Mehling v. New York Life Ins. Co.*,
    248 F.R.D. 455 (E.D. Pa. 2008) ............................................................................................... 18

*Meijer, Inc. v. 3M*,
    No. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ............................................... 21, 23

*Menkes v. Stolt-Nielsen S.A.*,
    No. 3:03CV00409(DJS), 2011 WL 13234815 (D. Conn. Jan. 25, 2011) ................................. 17

*In re Merck & Co. Vytorin ERISA Litig.*,
    Civ. No. 08-CV-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ............................................... 19

*In re Metoprolol Succinate Antitrust Litig.*,
    No. 06-52, ECF 193 (D. Del. Feb. 21, 2012) .......................................................................... 16

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    No. 06 Civ. 4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ................................ 17

*Montague v. Dixie Nat. Life Ins. Co.*,
    No. 3:09-00687-JFA, 2011 WL 3626541 (D.S.C. Aug. 17, 2011) .......................................... 18

*In re Motorsports Merch. Antitrust Litig.*,
    112 F. Supp. 2d 1329 (N.D. Ga. 2000) ................................................................13

*Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company*,
    No. 12-3824, 2014 WL 12778314 (E.D. Pa. Sep. 15, 2014) ............................16, 18

*In re Neurontin Antitrust Litig.*,
    No. 02-1830, ECF 114 (D.N.J. Aug. 6, 2014) ..................................................11, 16

*Nichols v. SmithKline Beecham Corp.*,
    No. Civ.A.00-6222, 2005 WL 950616 (E.D. Pa. April 22, 2005) .....................21, 23

*Nitsch v. DreamWorks Animation SKG Inc.*,
    No. 14-CV-04062, 2017 WL 2423161 (N.D. Cal. June 5, 2017) ...........................26

*In re OSB Antitrust Litig.*,
    No. 2:06-cv-00826-PD, Order, ECF 947 (E.D. Pa. Dec. 9, 2008)................... *passim*

*In re Plastic Tableware Antitrust Litig.*,
    No. 94-3564, 1995 WL 723175 (E.D. Pa. Dec. 4, 1995)........................................25

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)..........................................................10, 11, 20, 22

*In re Ravisent Techs., Inc. Sec. Litig.*,
    No. Civ.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) .............16, 21

*In re Remeron Direct Purchaser Antitrust Litig.*,
    No. Civ. 03-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ................................18

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003)......................................................14, 21, 23

*In re Revco Securities Litig.*,
    Nos. 851 & 89CV593, 1992 WL 118800 (N.D. Ohio May 6, 1992) ......................26

*In re Rite Aid Corp. Securities Litigation*,
    396 F.3d 294 (3d Cir. 2005)..........................................................19, 20, 21

*Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.*,
    No. 1:07-cv-00142, ECF 243 (D. Del. May 31, 2012) ...........................................16

*Shaw v. Interthinx, Inc.*,
    No. 13–cv–01229–REB–NYW, 2015 WL 1867861 (D. Colorado Apr. 21,
    2015) .......................................................................................................17

*In re Southeastern Milk Antitrust Litig.*,
    No. 2:07-CV 208, 2013 WL 2155387 (E.D. Tenn. May 17, 2013)........................17

*Sprague v. Ticonic Nat'l Bank*,
   307 U.S. 161 (1939)........................................................................................................10

*Standard Iron Works v. ArcelorMittal*,
   No. 08 C 5214, 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) ...................................16

*Steele v. Welch*,
   No. 03-6596, 2005 WL 3801469 (E.D. Pa. May 20, 2005) (Baylson, J.) ........................16, 21

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011).........................................................................................24

*In re Tricor Direct Purchaser Antitrust Litig.*,
   No. 05-cv-340, 2009 U.S. Dist. LEXIS 133251 (D. Del. April 23, 2009) .............................16

*In re U.S. Foodservice, Inc. Pricing Litig.*,
   No. 07-md-01894, ECF 521 (D. Conn. Dec. 9, 2014).........................................................16

*In re Universal Service Fund Telephone Billing Practices Litigation*,
   No. 02–MD–1468–JWL, 2011 WL 1808038 (D. Kan. May 12, 2011)................................17

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005).......................................................................................21

*Velez v. Novartis Pharm. Corp.*,
   No. 04 Civ. 09194, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ..................................26

*In re Viropharma Inc. Sec. Litig.*,
   No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)......................................................10

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) .......................................................................................10

*In re Wellbutrin SR Antitrust Litig.*,
   No. 04-5525, 2011 U.S. Dist. LEXIS 158833 (E.D. Pa. Nov. 21, 2011) ..............................16

*In re Wellbutrin XL Antitrust Litig.*,
   No. 08-cv-2431, ECF 485 (E.D. Pa. Nov. 7, 2012) ...............................................................16

**Other Authorities**

Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C. Dunbar,
*Recent Trends IV: What Explains Filings and Settlements in Shareholder
Class Actions?* 2 STAN. J.L. BUS. & FIN. (1996) ...................................................................17

Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical
Study* ..........................................................................................................................................18

*Manual for Complex Litigation*, § 14.121 (4th ed. 2004) ...........................................................10

*Report of Third Circuit Task Force: Court Awarded Attorney Fees*,
108 F.R.D. 237 (1985) ...............................................................................................................10

*Report of Third Circuit Task Force: Selection of Class Counsel*,
208 F.R.D. 340 (2002) ........................................................................................................10, 19

Direct Purchaser Plaintiffs Sierra Drywall Systems, Inc., Janicki Drywall, Inc., New Deal Lumber & Millwork Co., and Grubb Lumber Co., Inc., as representatives of the direct purchaser class ("Class Representatives"[1] or "Plaintiffs"), respectfully move the Court for an Order (1) awarding Direct Purchaser Plaintiffs' Counsel ("Class Counsel") one-third of the Combined Settlement Fund as attorneys' fees,[2] (2) reimbursing Class Counsel's $2,925,628.98 in litigation costs and expenses, and (3) awarding each Class Representative a service award of $75,000 for its contributions to the litigation, to be paid from the Combined Settlement Fund.

## I.    INTRODUCTION

Through more than five years of litigation, Class Counsel devoted tremendous effort and expended millions of dollars of unreimbursed out-of-pocket expenses to pursue antitrust claims on behalf of direct purchasers of paper-backed gypsum wallboard ("Wallboard" or "Drywall").[3] This work included:

- ***Claim development.*** The initial complaint was filed in December 2012, and stemmed not from a prior government investigation but from Co-Lead Class Counsel's pre-filing factual investigation. The allegations of the consolidated class complaint were so robust that Defendants did not even seek to dismiss it.

- ***Merits discovery.*** Plaintiffs engaged in substantial merits discovery, including the review of voluminous business records from the nine Defendants and various third parties, and taking 33 depositions, as well as reviewing and producing the Class Representatives' documents and defending their depositions. Plaintiffs also worked with their economics expert who produced two rounds of reports

---

[1] The Court appointed Sierra Drywall Systems, Inc., Janicki Drywall, Inc., New Deal Lumber & Millwork Co., and Grubb Lumber Co., Inc. as representatives of the direct purchaser class. ECF No. 631, (class certification) Order, ¶ 3, and has also appointed them as class representatives for each of the direct purchaser settlement classes.

[2] As discussed below, Co-Lead Class Counsel also request that the Court award Class Counsel all funds that have been deposited in the Opt-Out Fee and Expense Account (currently $610,236, plus accrued interest) created by the settlement agreements.

[3] Class Counsel includes the three firms appointed as Co-Lead Class Counsel, as well as the other firms representing direct purchaser plaintiffs who contributed to the class litigation. *See* Class Counsel's Fee and Expense Declarations ("Class Counsel's Decls."), attached hereto as Exhibit 1. The extensive efforts of Class Counsel are detailed more fully in the Declaration of H. Laddie Montague ("Montague Decl.") attached hereto as Exhibit 2.

(regarding merits), and took and defended 6 expert depositions in the direct purchaser action.

- **Summary judgment.** Following extensive summary judgment briefing, covering hundreds of pages and thousands of exhibits, the Court largely denied Defendants' motions and permitted the majority of Plaintiffs' case to move forward.

- **Class certification.** Direct Purchaser Plaintiffs prevailed in a hotly-contested class certification process that involved six separate party expert submissions, a technical advisor's report, oral argument, and a two-day evidentiary hearing with live expert testimony.

- **Trial Preparation.** Prior to the Joint Settlement negotiations, Co-Lead Class Counsel had commenced preparing for trial, including conducting a mock trial exercise with a jury research firm.

The success of those efforts is evident in the four substantial settlements negotiated by Co-Lead Class Counsel. As a result of the efforts of Class Counsel and the initiative and participation of the Class Representatives, settlements with eight Defendants, totaling approximately $190.7 million plus interest,[4] have now been achieved.[5] The settlements were obtained after prolonged and difficult negotiations with Defendants, each of which had significant resources at its disposal and was represented by highly capable and experienced counsel. For each settlement, Co-Lead Class Counsel prepared the settlement agreement and the attendant notices, orders, and preliminary and final approval documents, and supervised the work of the settlement administrator. The work is, of course, not over, as Co-Lead Class Counsel are preparing for the June 28, 2018 final approval hearing on the Joint Settlement, and will oversee the claims processing and the distribution of settlement funds to the class member claimants.

---

[4] This total includes the $610,236, plus interest, that has been deposited in the Opt-Out Fee and Expense Account created by the settlements.

[5] By no later than March 28, 2018, all these funds have been deposited into a Qualified Settlement Account and are earning interest for the Class.

Despite over five years of litigation and tens of millions of dollars in accrued lodestar, and despite earlier settlements of $65.7 million, Co-Lead Class Counsel have waited until now—the conclusion of the litigation—to request an award of attorneys' fees, reimbursement of Class Counsel's out-of-pocket litigation expenses, and service awards for the Class Representatives. The record in this case and the law of this Circuit fully support Class Counsel's request for a fee award of one-third of the Combined Settlement Fund, a request that is reasonable and well within the range of approval in the Third Circuit. *See*, *e.g.*, *Kirsch v. Delta Dental*, 534 Fed. Appx. 113, 116 (3d Cir. 2013) (upholding fee of "roughly 36% of the District Court's conservative valuation" of the settlement value); *Marchbanks Truck Serv. v. Comdata Network, Inc.*, No. 07-1078-JKG, 2014 WL 12738907, at *2-3 (E.D. Pa. July 14, 2014); *In re Fasteners Antitrust Litig.*, No. 08-md-1912, 2014 WL 296954, at *7 (E.D. Pa. Jan. 27, 2014); *see also* § III.B.7, *infra*. Moreover, this fee request represents a multiple of only approximately 1.68 of Class Counsel's lodestar, based on historical hourly rates and time expended through December 31, 2017. Accordingly, Plaintiffs respectfully request that the Motion be granted.

## II.   BACKGROUND

### A.   Prosecution of the Case

This litigation began in 2012, when Plaintiffs filed lawsuits against Defendants on behalf of a class of direct purchasers of Drywall. The filing followed Co-Lead Class Counsel's investigation, which included interviews with many industry contacts and significant analysis of economic conditions, historical pricing, and the particular conduct that formed the gravamen of the claims. On February 7, 2013, the Court appointed the undersigned law firms to serve as interim co-lead counsel for the Direct Purchaser Plaintiffs. The Court also ordered consolidation of the

direct purchaser actions and instructed Direct Purchaser Plaintiffs to file a consolidated amended complaint.[6]

For over five years, Co-Lead Class Counsel, along with other Class Counsel working under their supervision, have devoted nearly 80,000 hours developing and advancing the direct purchasers' claims, without the benefit of any preceding government investigation or criminal indictment.[7] The work done by Class Counsel included, but was not limited to:

- Investigating the building products industry generally, and the Drywall market specifically, and working with the Class Representatives to draft and file a comprehensive consolidated amended class action complaint, Montague Decl. ¶¶ 5-6, 9, 12-13;

- Negotiating with Defendants and coordinating with the indirect purchaser plaintiffs on discovery matters and status reports to the Court, *id.* ¶¶ 14-15, 17, 113, 116;

- Negotiating a comprehensive protocol for production of electronically stored information, and consulting with an outside expert regarding technology-assisted methods of review, *id.* ¶ 14;

- Drafting and negotiating a Protective Order governing confidential information, *id.*;

- Responding to a multitude of written discovery requests (including several sets of interrogatories, requests for production of documents, and requests for admission), negotiating the scope of that discovery, and processing, reviewing, and analyzing document productions from each Class Representative for potential production to Defendants, *id.* ¶¶ 24-25;

- Drafting discovery requests directed to all Defendants, followed by extensive meet-and-confer negotiations, in coordination with the indirect purchaser plaintiffs, with counsel for each Defendant, *id.* ¶¶ 9, 20-21;

- Processing more than 1.4 million documents (over 3.5 million pages) produced by Defendants and third parties, and reviewing, analyzing and coding documents

---

[6] ECF No. 59, Pretrial Order No. 1 and Report of Pretrial Conference.

[7] While there was no preceding government investigation or criminal indictment at the time Plaintiffs initiated their cases in 2012, well into the direct purchaser case, and likely because of it, the United States Department of Justice ("DOJ") issued document subpoenas to some Defendants in July 2015. *See* July 13, 2015 letter from Steven Bizar to Hon. Michael M. Baylson. To the best of Co-Lead Class Counsel's knowledge, the DOJ has not pursued its investigation any further.

selected with the aid of technology-assisted review tools, in coordination with the indirect purchaser plaintiffs, *id.* ¶¶ 19-23;

- Briefing and arguing discovery motions, *e.g., id.* ¶¶ 17, 25;

- Consulting with expert economists to analyze Defendants' transactional data, cost data, and other information produced in discovery to develop opinions relating to the Drywall market, antitrust impact, and damages, for purposes of class certification, summary judgment, and trial, *e.g., id.* ¶¶ 39, 44, 67, 75, 90;

- Preparing for and taking the depositions of 33 defense and third-party fact witnesses, in coordination with the indirect purchaser plaintiffs, *id.* ¶¶ 26-27;

- Preparing for and serving as the lead examiners in the depositions of 3 defense expert witnesses, 2 of which were done in coordination with the indirect purchaser plaintiffs, *id.* ¶ 43, 72;

- Preparing for and defending 5 depositions of corporate representatives of the 4 Class Representatives,[8] *id.* ¶ 28;

- Preparing for and defending 3 depositions of Dr. Russell Lamb, Plaintiffs' expert economist, *id.* ¶¶ 40, 68, 77;

- Briefing and arguing multiple motions for summary judgment filed by Defendants, as well as successfully opposing Defendants' petition to the Third Circuit for an interlocutory appeal of the Court's decision denying four out of five of those motions, *id.* ¶¶ 45-59, 98-101;

- Successfully briefing and arguing their motion for class certification and opposing to Defendants' *Daubert* motion to exclude Plaintiffs' economist, including preparing for oral argument and a two-day evidentiary hearing with live expert testimony, *id.* ¶¶ 66-97;

- Providing responses to the report of a Court-appointed technical advisor on econometric issues relating to class certification, *id.* ¶¶ 89-90;

- Successfully opposing Defendants' Rule 23(f) petition for appeal of the Court's decision certifying the direct purchaser class, *id.* ¶¶ 95-97;

- Beginning preparations for trial against the remaining Defendants, including a full-day jury research exercise and other extensive work with jury consultants, *id.* ¶ 102;

---

[8] In addition, 2 of the 5 third party depositions noticed and taken by Defendants were of representatives from PRSCO, the purchasing group to which Class Representative New Deal belonged, and which assigned New Deal its own share of PRSCO's direct purchaser claims in this litigation.

- Selecting a mediator, and preparing for and attending a full-day mediation, which resulted in the Joint Settlement, *id.* ¶ 103;

- Negotiating 4 settlements with 8 Defendants and preparing the settlement agreements and attendant notices, orders, and preliminary and final approval briefs; obtaining approval from the Court; and working with the claims administrator to design and send notices to the members of the settlement classes and to create and maintain a settlement website, *id.* ¶¶ 30-38, 60-65, 103-107; and

- Co-Lead Class Counsel's directing and supervising the participation of numerous law firms to assist in Co-Lead Class Counsel's prosecution of the case, including efficiently managing all firms' assignments, *e.g., id.* ¶¶ 21, 113.[9] Co-Lead Class Counsel performed these duties in accordance with Pretrial Order No.3, which included collecting time and expense reports from all Class Counsel on a monthly basis and submitting those reports to the Court on a quarterly basis. ECF No. 11 (Pretrial Order No. 3 – Case Management) at 6-8.

### B.     The Settlements and the Combined Settlement Fund

The Court approved three direct purchaser settlements (now final) in this case and dismissed those settling Defendants from the litigation. The first and second settlements, reached separately in February 2015 with Defendants TIN and USG[10] for $5.25 million and $39.25 million, respectively, were granted final approval on August 20, 2015.[11] In June 2016, Plaintiffs reached a settlement with Lafarge for $23 million, which was granted final approval on December 7, 2016.[12] While Co-Lead Class Counsel have not yet sought a fee or full reimbursement of their substantial

---

[9] The Court applauded Co-Lead Class Counsel for including such management procedures in Pretrial Order No. 3 and on their proposed management of plaintiffs' firms' assignments. *See* ECF No. 12, Memorandum Re: Plaintiffs' Attorneys' Fees and Expenses; ECF No. 11, Pretrial Order No. 3 – Case Management. On February 7, 2013, the Court appointed now-designated Co-Lead Class Counsel as "interim co-lead counsel," which allowed them to begin managing plaintiffs' firms' assignments. *See* Case No. 2:12-cv-07106, ECF No. 59, Pretrial Order No. 1 and Report of Pretrial Conference, at 2; *see also* ECF No. 11, Pretrial Order No. 3 – Case Management, at 5.

[10] The USG entities are Defendants USG Corporation and United States Gypsum Company, and USG Corporation's former subsidiary L&W Supply Corporation.

[11] ECF Nos. 273, Memorandum Approving Class Action Settlement; ECF No. 276, USG Settlement Final Judgment Order; ECF No. 277, TIN Settlement Final Judgment Order.

[12] ECF No. 503, Lafarge Settlement Final Judgment Order. The Lafarge settlement payment was reduced to $21,169,292 due to requests for exclusion. In accordance with paragraphs 34 and 35 of the Lafarge Settlement Agreement, $610,236 of the Lafarge settlement payment was placed in the Opt-Out Fee and Expense Account. *Id.* ¶ 12.

out-of-pocket costs from these first three settlements, the Court did authorize the use of (1) $300,000 from the four settlement funds for notice and administration expenses,[13] and (2) approximately $3,300,000 from the USG, TIN, and Lafarge settlement funds to pay ongoing pretrial litigation expenses incurred in connection with Plaintiffs' economic expert.[14]

On January 29, 2018, the Court preliminarily approved a $125 million Joint Settlement with AG, Eagle, NGC, and PABCO and authorized dissemination of notice to the class.[15] If the Joint Settlement is finally approved, the combined direct purchaser settlements in this case will total approximately $190.7 million. This total, plus accrued interest, but minus the funds in the Opt-Out Fee and Expense Account, constitutes the "Combined Settlement Fund" from which Co-Lead Class Counsel now seek an award of attorneys' fees, reimbursement of reasonable litigation expenses, and service awards to the Class Representatives.

---

[13] ECF No. 183, Order Granting Preliminary Approval of Direct Purchaser Plaintiffs' Proposed Settlement with Defendant TIN, Inc.; Certifying the TIN Settlement Class for the Purpose of Providing Notice; and Authorizing Dissemination of Notice to the TIN Settlement Class Members, ¶ 30; ECF No. 185, Order Granting Preliminary Approval of Direct Purchaser Plaintiffs' Proposed Settlement with Defendant USG Corporation, Defendant United States Gypsum Company, and L&W Supply Corporation; Certifying the USG Settlement Class for the Purpose of Providing Notice; and Authorizing Dissemination of Notice to the USG Settlement Class Members, ¶ 30; ECF No. 427, Order Granting Preliminary Approval of Direct Purchaser Plaintiffs' Proposed Settlement with Defendant Lafarge North America Inc.; Certifying the Lafarge Settlement Class for the Purpose of Providing Notice; and Authorizing Dissemination of Notice to the Lafarge Settlement Class Members, ¶ 30; ECF No. 695, Order Granting Preliminary Approval of Direct Purchaser Plaintiffs' Proposed Joint Settlement with American Gypsum Company LLC, Eagle Materials Inc., New NGC, Inc., and PABCO Building Products, LLC, Preliminary Approval of the Distribution Plan, and Authorization to Disseminate Notice, ¶ 27. To date, $190,485.13 has been spent from those authorized funds.

[14] ECF No. 275, Order Re DPP Settlement Class Counsel's Request to Utilize Settlement Funds for Ongoing Litigation Expenses; ECF No. 480, Order Authorizing Portion of USG and TIN Settlement Funds for Ongoing Litigation Expenses; ECF No. 659, Order.

[15] ECF No., 695, Joint Settlement Preliminary Approval Order. The Joint Settlement amount may be reduced due to requests for exclusion, which are not due until May 7, 2018. To date, no requests for exclusion have been received.

### C.   Notice Regarding Co-Lead Counsel's Request for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards

In its Joint Settlement Preliminary Approval Order, the Court approved the dissemination of notice to the members of the four settlement classes (the "Notice").[16] As required by Fed. R. Civ. P. 23(h), the Notice (copy attached as Exhibit 4) informed potential members of all the settlement classes that Co-Lead Class Counsel would request attorneys' fees, reimbursement of litigation expenses, and service awards for the Class Representatives, and explained how class members could object to these requests:

### 3.4   How will the lawyers be paid?

Since they filed this case, the attorneys representing the Litigation Class and the Settlement Classes have not received any payment for their services in prosecuting the lawsuit, nor have they been reimbursed for any out-of-pocket expenses. Consistent with disclosures in the prior notices, the Court previously approved payments totaling approximately $3.3 million from the TIN, USG, and Lafarge settlement funds to cover ongoing pretrial litigation expenses, primarily for expenses incurred in connection with economic experts.

If the Court approves the proposed Joint Settlement, Co-Lead Counsel will ask the Court to award attorneys' fees of up to one-third of the Combined Settlement Fund, plus reimbursement of expenses that they incurred in the litigation and administering the settlement funds (not to exceed $4 million). Co-Lead Counsel will file their petition for attorneys' fees and reimbursement of expenses with the Court by April 9, 2018. A copy of the petition will be posted on www.DrywallDirectPurchaserLitigation.com or can be obtained by calling 1-888-706-3401.

Any attorneys' fees and reimbursement of litigation expenses will be awarded only as approved by the Court in amounts determined to be fair and reasonable. If you wish to object to the petition for

---

[16] In accordance with the Court's Joint Settlement Preliminary Approval Order, the Notice was sent to more than 27,000 class members on February 14, 2018 and published in the March edition of the *LBM Journal*. *See* Affidavit of Markham Sherwood Regarding Dissemination of Notice to Potential Members of the American Gypsum Company LLC, Eagle Materials Inc., New NGC, Inc., and PABCO Building Products, LLC Settlement Class and to Potential Members of The Combined Settlement Class ("Sherwood Affidavit") attached hereto as Exhibit 3.

> attorneys' fees and reimbursement of litigation expenses, you may
> do so, but only by following the instructions in Section 3.6 below.

The deadline for objections is May 7, 2018, and Co-Lead Class Counsel will provide the Court with a final report on any objections and responses thereto on May 29, 2018.

## III.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

Plaintiffs, on behalf of Class Counsel, respectfully request an award of attorneys' fees of one-third of the Combined Settlement Fund ($190,059,056, plus accrued interest), as well as payment of the total Opt-Out Fee and Expense Accounts ($610,236, plus accrued interest).[17] Class Counsel's fee request is well within the range of awards regularly approved by courts in this Circuit, particularly in light of the length and complexity of this case, the nature and extent of Co-Lead Class Counsel's efforts in negotiating substantial settlements, and the litigation risks assumed. Moreover, cross-checking this fee request against Class Counsel's lodestar of $38,058,631.50 (based upon historical rates) validates its reasonableness.

### A.    A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Class Counsel's Attorneys' Fees in this Common Fund Settlement

In this Circuit, district courts have discretion to award fees in common fund cases based on either the lodestar/multiplier method or the percentage-of-the-fund method. *See In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 539 (3d Cir. 2009); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). However, the percentage-of-the-fund method of awarding fees is the preferred method for awarding fees in common fund cases in this Circuit and throughout the United States. *See*, *e.g.*, *Kirsch*, 534 Fed. Appx. at 115 ("'The percentage of recovery method is generally favored in common fund cases.'") (quoting *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d

---

[17] Depending on the final amount of opt-outs, if any, from the Joint Settlement Class, the total amount in the Combined Settlement Fund may decrease and the Opt-Out Fee and Expense Account may increase.

Cir. 2009)); *Diet Drugs*, 582 F.3d at 540 ("the percentage-of-recovery method is generally favored."); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998) ("percentage-of-recovery method preferred in common fund cases").[18] Courts have long recognized that "'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'" *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995)). The purpose of compensating counsel in this manner means that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). Furthermore, the Supreme Court has consistently endorsed awarding attorneys' fees using the percentage-of-the-fund method. *See*, *e.g.*, *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).[19] Thus, the percentage-of-the-fund method is properly applied here.

**B.      A Fee Award of One-Third of the Combined Settlement Fund Is Fair and Reasonable**

In determining what constitutes a reasonable percentage fee award, a district court must consider the ten factors identified by the Third Circuit in *Gunter v. Ridgewood Energy Corp.*, 223

---

[18] *See also Report of Third Circuit Task Force: Court Awarded Attorney Fees*, 108 F.R.D. 237, 255-56 (1985); *Report of Third Circuit Task Force: Selection of Class Counsel*, 208 F.R.D. 340, 355 (2002) ("A percentage fee, tailored to the realities of the particular case, remains superior to any other means of determining a reasonable fee for class counsel."); *Castro v. Sanofi Pasteur Inc.*, Civ. No. 11-7178, 2017 WL 4776626, at *7 (D. N.J. Oct. 23, 2017) ("In common fund cases such as this one, attorneys' fees are typically awarded through the percentage-of-recovery method."); *In re Viropharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *15 (E.D. Pa. Jan. 25, 2016) ("The percentage-of-recovery method is 'generally favored' in cases involving a settlement that creates a common fund."); *In re Linerboard Antitrust Litig.*, MDL 1261, 2004 WL 1221350, at *3 (E.D. Pa. June 2, 2004) ("the percentage of recovery method is the proper one to calculate attorneys' fees."); *Manual for Complex Litigation*, § 14.121 (4th ed. 2004) (reporting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage method in common-fund cases").

[19] *See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-67 (1939).

F.3d 190 (3d Cir. 2000), and *Prudential*, 148 F.3d at 283. As the Third Circuit explained in *Diet Drugs*, the *Gunter/Prudential* factors for which this Court must conduct a "robust assessment" are:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

582 F.3d at 541 (internal citations omitted). Applying these factors clearly demonstrates that Class Counsel's request for one-third of the Combined Settlement Fund as a fee award is reasonable.

### 1.   An award of one-third is reasonable based on the size of the Combined Settlement Fund and the number of entities benefitted.

The total recovery achieved in this case—over $190 million—is substantial, particularly in light of the complexity, duration, and expense of ongoing litigation and the potential 27,000-plus class members who may participate. A one-third fee is routinely awarded for settlement funds of comparable size.[20] Establishing liability and damages at trial and securing recovery for those class members would have been risky and uncertain, and at the time of the Joint Settlement (which constitutes the majority of the Combined Settlement Fund), Plaintiffs also faced motions from the

---

[20] *See, e.g., In re Neurontin Antitrust Litig.*, No. 02-1830, ECF 114 (D.N.J. Aug. 6, 2014) (awarding one-third fee of $191 million settlement); *Marchbanks Truck Serv. v. Comdata Network, Inc.*, No. 07-1078-JKG, 2014 WL 12738907 (E.D. Pa. July 14, 2014) (awarding requested one-third of $130 million settlement fund); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 746, 748 (E.D. Pa. 2013) ("*Flonase Direct Purchasers*") (approving requested one-third of $150 million settlement fund); *In re OSB Antitrust Litig.*, 2:06-cv-00826-PD, Order, ECF 947, at *5 (E.D. Pa. Dec. 9, 2008) (approving requested one-third of $120 million settlement fund). *See also* § III.B.7 & ns.25-26, *infra* (citing numerous cases awarding one-third fee).

remaining Defendants to significantly limit Plaintiffs' damages at trial, as well as indications that Defendants were going to seek additional expert discovery. Accordingly, this factor weighs in favor of the requested fee award.

### 2.    Analysis of any potential objections to the fee request is premature.

The Notice advised class members that Co-Lead Class Counsel would apply for an award of attorneys' fees, reimbursement of litigation expenses, and service awards for the Class Representatives. It also advised class members that they could object to Co-Lead Class Counsel's application or the Joint Settlement, and provided instructions on how to do so. Because the deadline for objections is May 7, 2018, Co-Lead Class Counsel will address this factor, and any objections to their application or the Joint Settlement, in their responsive filing due on May 29, 2018. As of April 9, 2018, no objections have been filed.

### 3.    Class Counsel are skilled and efficient litigators.

Class Counsel are highly experienced in litigating complex class actions and antitrust cases. Class Counsel combed through millions of pages of documents and took scores of depositions to build the necessary evidentiary record in this case, successfully moved for class certification, defeated Defendants' 23(f) petition of the Court's class certification decision, largely defeated Defendants' multiple summary judgment motions, and defeated Defendants' 1292(b) appeal to the Third Circuit. Indeed, "[t]he result achieved is the clearest reflection of petitioners' skill and expertise." *Linerboard*, 2004 WL 1221350, at *5.[21] Here, the total recovery achieved over a span

---

[21] *See also In re OSB Antitrust Litig.*, No. 2:06-cv-00826-PD, Order, ECF 947 at *5 ("'[T]he most significant factor [in evaluating claims for counsel fees] . . . is the quality of representation, as measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'") (quoting *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136 at 149 (E.D. Pa. 2000) ("[t]he single clearest factor reflecting the quality of class counsel's services to the class are the results obtained.").

of five years – over $190 million – is substantial, thus further evidencing the skill and efficiency of Class Counsel. Class Counsel achieved this result despite a vigorous defense by Defendants, which were represented by skilled counsel at some of the leading defense law firms in the United States. Accordingly, this factor weighs in favor of the requested fee award.

### 4.      The complexity and duration of the litigation

"[C]omplex and/or novel legal issues, extensive discovery, acrimonious litigation, and tens of thousands of hours spent on the case by class counsel" are the "factors which increase the complexity of class litigation." *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 741 (3d Cir. 2001). This case involved extensive efforts by Class Counsel (as well as this Court) over a period of five years, as reflected in the over 700 entries in MDL Docket No. 2437.

During the course of the action, Plaintiffs were faced with several rounds of intense briefing, including summary judgment (spanning hundreds of pages and thousands of exhibits); a hard-fought class certification proceeding that included six separate expert submissions (including responses to the opinion of a Court-appointed technical advisor), *Daubert* briefing, argument, and two days of live testimony; and two separate petitions by Defendants for interlocutory appellate review. Moreover, the parties completed merits and class certification discovery, which included production of 1.4 million documents (amounting to over 3.5 million pages) from Defendants, Plaintiffs, and third parties; 43 depositions of fact witnesses, including 5 depositions of corporate designees of the Class Representatives; 6 expert depositions in the direct purchaser case; and the production by Plaintiffs of their Rule 26(a)(2) expert reports.

As to the complexity of the case, "'[a]n antitrust class action is arguably the most complex action to prosecute. . . . The legal and factual issues involved are always numerous and uncertain in outcome.'" *Linerboard*, 2004 WL 1221350, at *10 (quoting *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000)). This case is no exception. Regarding duration,

the case, now pending for more than five years, could continue for substantial additional time if it were to go to trial.[22] Accordingly, this factor weighs in favor of finding the fee request reasonable.

### 5. Class Counsel faced a risk of nonpayment.

Class Counsel undertook this case on a wholly contingent basis and ran a substantial risk of no recovery whatsoever, and "did not benefit from the fruits of a prior government investigation." *See Linerboard*, 2004 WL 1221350, at *11 (lack of prior government investigation or prosecution increased risk of nonpayment). Class Counsel have devoted enormous time and resources to the vigorous litigation of this case for more than five years, while deferring all compensation for their time during that lengthy period (and risking receipt of little or no compensation if the case was not litigated to a successful conclusion). *See In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013) ("*Flonase Indirect Purchasers*") ("as a contingent fee case, counsel faced a risk of nonpayment in the event of an unsuccessful trial. Throughout this lengthy litigation, Class Counsel have not received any payment. This factor supports approval of the requested fee.").[23] Class Counsel advanced just under $3 million in unreimbursed expenses to prosecute the litigation,[24] which would not have been reimbursed absent a successful result. *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 516 (W.D. Pa. 2003) ("Aside from investing their time, counsel had to front copious sums of money . . . Thus, the risks that counsel incurred in prosecuting this case were substantial and further support the requested fee award."). Accordingly, this factor weighs in favor of the requested fee award.

---

[22] *See Linerboard*, 2004 WL 1221350, at *10 (noting "there is authority for approving a 30 percent fee in litigation that concluded much earlier in the proceeding.").

[23] *See also Hall v. Best Buy Co.*, 274 F.R.D. 154, 173 (E.D. Pa. 2011) ("while this case has been pending,  Class Counsel have not received any payment, and, by proceeding on a contingent-fee basis, ran substantial risk of nonpayment….").

[24] *See* Montague Decl. ¶¶ 111, 117.

6. **Class Counsel devoted nearly 80,000 hours to prosecuting this action.**

Class Counsel devoted considerable time and effort to prosecuting the Direct Purchaser Plaintiffs' antitrust claims during the pendency of the litigation, and even beforehand in their investigation that led to the initial complaints. As set forth in the declarations submitted with this application, through December 31, 2017, Class Counsel devoted 79,998.05 hours to prosecuting this case, resulting in a total lodestar of $38,058,631.50. Class Counsel could have spent those attorney hours litigating other matters, which counsels in favor of awarding the requested fees. *See*, *e.g.*, *Flonase Direct Purchasers*, 951 F. Supp. 2d at 748 (finding factor weighed in favor of 33% fee award where class counsel devoted more than 40,000 combined hours to prosecuting the antitrust class action); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 323 (W.D. Pa. 1997) ("In addition to noting the vast amount of work which was required in prosecuting this case, we also note Class Counsels' representation that their involvement in this litigation required them to abstain from working on other matters.").

7. **One-third of the Combined Settlement Fund is a typical and reasonable fee award for cases like this one.**

The law is well-established that a one-third fee is typical, reasonable, and justified by extensive authority from courts in this District and Circuit. *See*, *e.g.*, *Castro v. Sanofi Pasteur Inc.*, 2:11-cv-07178, 2017 WL 4776626, at *9 (D. N.J. Oct. 23, 2017) ("The one-third fee is within the range of fees typically awarded within the Third Circuit through the percentage-of-recovery method; the Circuit has observed that fee awards generally range from 19% to 45% of the settlement fund...Thus, the requested fee in this matter [of one-third of the settlement fund] is within the normal range." (internal citation omitted)); *In re K-Dur Antitrust Litig.*, No. 01-cv-1652, ECF 1058 (D.N.J. Oct. 5, 2017) (awarding 33⅓% of settlement). *See also Fasteners*, 2014 WL 296954, at *7 ("Counsel's request for one third of the settlement fund is consistent with other

direct purchaser antitrust actions.") (internal citation omitted); *Flonase Direct Purchasers*, 951 F.

Supp. 2d at 746, 748 (approving requested one-third of $150 million settlement fund (plus

interest), and noting that "in the last two-and-a-half years, courts in eight direct purchaser antitrust

actions approved one-third fees"); *Flonase Indirect Purchasers*, 291 F.R.D. at 104 ("A one-third

fee award is standard in complex antitrust cases of this kind."); *Marchbanks Truck Serv., Inc. v.*

*Comdata Network, Inc.*, No. 07-1078-JKG, 2014 WL 12738907, at *2 (E.D. Pa. July 14, 2014)

("fee awards of one-third of the settlement amount are commonly awarded in this Circuit"); *In re*

*Wellbutrin XL Antitrust Litig.,* No. 08-cv-2431, ECF 485 (E.D. Pa. Nov. 7, 2012) (awarding fee of

33⅓% of settlement); *In re Wellbutrin SR Antitrust Litig.,* No. 04-5525, 2011 U.S. Dist. LEXIS

158833, *14-15 (E.D. Pa. Nov. 21, 2011) (same); *In re Auto. Refinishing Paint Antitrust Litig.*,

No. 1426, 2008 WL 63269, at *1, *8 (E.D. Pa. Jan. 3, 2008) (same); *OSB*, No. 2:06-cv-00826-PD,

Order, ECF 947, at *3 (finding fee award of one-third of $120 million in settlement funds

"reasonable and well-earned"); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322,

342 (E.D. Pa. 2007) (approving a percentage of recovery of 35%, plus reimbursement of

expenses).[25] Moreover, a one-third fee award is consistent with awards nationwide.[26] A fee that

---

[25] *See also Steele v. Welch*, No. 03-6596, 2005 WL 3801469, at *2 (E.D. Pa. May 20, 2005) (finding requested fee of 33%, plus expenses, to be reasonable) (Baylson, J.); *Mylan Pharms., Inc. v. Warner Chilcott Public Ltd., Co.,* No. 12-3824, 2014 WL 12778314 (E.D. Pa. Sept. 15, 2014) ("*Doryx*") (awarding 33⅓% of settlement); *In re Neurontin Antitrust Litig.*, No. 02-1830 (D.N.J. Aug. 6, 2014) (same); *In re Hypodermic Prods. Antitrust Litig.*, No. 05-1602, ECF 461 (D.N.J. Apr. 10, 2013) (same); *Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.,* No. 1:07-cv-00142, ECF 243 (D. Del. May 31, 2012) ("*Miralax*") (same); *In re Metoprolol Succinate Antitrust Litig.*, No. 06-52, ECF 193 (D. Del. Feb. 21, 2012) (same); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-cv-340, 2009 U.S. Dist. LEXIS 133251, *17 (D. Del. April 23, 2009) (same); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 497-98 (E.D. Pa. 2003) (awarding 331/3% of settlement fund and noting, "[t]his District has observed that fee awards frequently range between nineteen and forty-five percent of the common fund."); *In re Ravisent Techs., Inc. Sec. Litig.*, No. Civ.A.00-CV-1014, 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) ("courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses"); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002) ("Scores of cases exist where fees were awarded in the one-third to one-half of the settlement fund.") (citations omitted); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-34 (E.D. Pa. 2001) (approving one-third fee request).

[26] *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of fees equal to one-third of total recovery); *In re U.S. Foodservice, Inc. Pricing Litig.*, No. 07-md-01894, ECF 521 (D. Conn. Dec. 9, 2014) (attorneys awarded one-third of a $297 million settlement fund); *Standard Iron Works v. ArcelorMittal*, No.

fully compensates counsel for their time and the inherent risk posed by antitrust litigation of this magnitude and complexity is also strongly supported by the policies favoring private enforcement of the antitrust laws.[27] Accordingly, this factor supports the requested fee.

> **8.    Class Counsel prosecuted the litigation without help from government agencies.**

Courts in this Circuit are instructed to consider whether counsel benefitted from "the efforts of other groups, such as government agencies conducting investigations." *AT&T*, 455 F.3d at 165 (citation omitted). As in *In re Diet Drugs Prods. Liab. Litig.*, "this case is quite different from the typical antitrust or securities litigation" in which the *Gunter/Prudential* factors are often considered, "where government prosecutions frequently lay the groundwork for private litigation." 553 F. Supp. 2d 442, 481 (E.D. Pa. 2008). Here, Class Counsel did not rely on "the Government or other public agencies to do their work for them as has occurred in some cases." *Id.* at 481-82. Indeed, Class Counsel conducted their own comprehensive investigation of the Drywall industry,

---

08 C 5214, 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) (attorneys awarded 33% of a $163.9 million settlement fund); *Shaw v. Interthinx, Inc.,* No. 13–cv–01229–REB–NYW, 2015 WL 1867861 at *6 (D. Colorado Apr. 21, 2015) ("The customary fee awarded to class counsel in a common fund settlement is approximately one-third of the total economic benefit bestowed on the class.")*; Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409(DJS), 2011 WL 13234815 (D. Conn. Jan. 25, 2011) (granting fee request of 33⅓ percent of common fund in class action settlement); *In re Universal Service Fund Telephone Billing Practices Litigation*, No. 02–MD–1468–JWL, 2011 WL 1808038 at *2 (D. Kan. May 12, 2011) ("an award of one-third of the fund falls within the range of awards deemed reasonable by courts"); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (holding that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit" and collecting cases); *Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (33.33% fee award); *In re Blech Sec. Litig*., No. 94 Civ. 7696 (RWS), 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (finding fee request of 33-1/3% reasonable); *see also* Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* 2 STAN. J.L. BUS. & FIN. (1996) ("Regardless of case size, fees average approximately 32 percent of the settlement.").

[27] *See, e.g.*, *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV 208, 2013 WL 2155387, at *5 (E.D. Tenn. May 17, 2013) ("[F]ailing to fully compensate class counsel for the excellent work done and the various substantial risks taken would undermine society's interest in the private litigation of antitrust cases. Society's interests are clearly furthered by the private prosecution of civil cases which further important public policy goals, such as vigorous competition by marketplace competitors. Simply put, anti-competitive conduct such as that alleged in this case would likely go unchallenged absent the willingness of attorneys to undertake the risks associated with such expensive and complex litigation.").

developed their own theory of liability and damages, and reviewed millions of pages of documents, without the assistance of a federal investigation or government indictments. Accordingly, "the benefit to the Class is directly and entirely attributable to Class Counsel's efforts," *OSB*, No. 2:06-cv-00826-PD, Order, ECF 947, at *7, and this factor weighs in favor of the requested fee award.

### 9. The requested fee is consistent with the percentage fee that would have been negotiated in a private contingent fee arrangement.

"What the market would pay" for fees in a similar litigation is "significant because…the goal of the fee setting process it [sic] to 'determine what the lawyer would receive if he were selling his services in the market rather than being paid by Court Order.'" *Linerboard,* 2004 WL 1221350, at *15 (citing *In re Continental Ill. Sec. Litig.,* 962 F.2d 566, 568 (7th Cir. 1992)). There is widespread consensus that "a 33 1/3% contingent fee is [what is] commonly negotiated in the private market." *OSB*, No. 2:06-cv-00826-PD, Order, ECF 947, at *7 (citing *Linerboard,* 2004 WL 1221350, at *15); *see also* Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study,* 1 J. Empirical Legal Stud. 27 (2004), at 35 ("Substantial empirical evidence indicates that a one-third fee is a common benchmark in private contingency fee cases.").[28] Indeed, "a one-third contingency fee arrangement is not out of the ordinary in a complex [antitrust] case like this one." *Fasteners*, 2014 WL 296954, at *7.[29] Therefore, this factor weighs in favor of approval of the fee request.

---

[28] *Accord In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005) ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."); *Montague v. Dixie Nat. Life Ins. Co.*, No. 3:09-00687-JFA, 2011 WL 3626541, at *2 & *3 (D.S.C. Aug. 17, 2011) ("In non-class contingency fee litigation, a 30% to 40% contingency fee is typical.").

[29] *See also Mylan Pharms. Inc. v. Warner Chilcott Public Ltd. Co.*, 2014 WL 12778314 at *7 ("[A] one-third contingency is standard in individual litigation; in antitrust litigation, a higher contingency would be reasonable, given the complexities and risks involved. In these circumstances, the requested 33⅓% fee award is fair and reasonable."); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 464 n.18 (E.D. Pa. 2008) (citing *Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 340 (finding a fee of 35% to be consistent with private contingent fee arrangements)); *In re Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases … plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery.").

### 10.     The factor of any innovative terms is neutral.

This factor neither weighs in favor of nor detracts from a decision to award the requested fee. *See, e.g.*, *In re Merck & Co. Vytorin ERISA Litig.*, Civ. No. 08-CV-285, 2010 WL 547613, at *12 (D.N.J. Feb. 9, 2010) (finding factor neutral when no innovative terms are highlighted).

*   *

In sum, at least eight of the ten *Prudential/Gunter* factors support Class Counsel's request for one-third of the Combined Settlement Fund as a fee award, and none of the *Prudential/Gunter* factors counsels against that request.

### C.     A Cross-Check of Class Counsel's Lodestar Confirms the Reasonableness of the Requested Fee

Courts in the Third Circuit often examine the lodestar calculation as a cross-check on the percentage fee award. *See*, *e.g.*, *Linerboard*, 2004 WL 1221350, at *4. The cross-check is not designed to be a "full-blown lodestar inquiry," but rather an estimation of the value of counsel's investment in the case. *Report of Third Circuit Task Force*, *Selection of Class Counsel*, 208 F.R.D. 340, 422-23 (2002) (noting that "[t]he lodestar remains difficult and burdensome to apply"); *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294 at 307 n.17 (3d Cir. 2005) ("[T]he lodestar cross-check does not trump the primary reliance on the percentage of common fund method."). The Third Circuit recommends the use of the lodestar cross-check "as a means of assessing whether the percentage-of-recovery award is too high or too low," not as a substitute for the percentage-of-the-fund method. *Diet Drugs*, 582 F.3d at 545 n.42 (citing *Rite Aid*, 396 F.3d at 306-07).

The cross-check analysis is a two-step process. First, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the

attorneys.[30] Second, the court determines the multiplier required to match the lodestar to the percentage-of-the-fund request made by counsel, and determines whether the multiplier falls within the accepted range for such a case. Here, the lodestar cross-check confirms that the one-third fee request is eminently reasonable.

### 1.    Class Counsel's lodestar is reasonable.

As of December 31, 2017, Class Counsel had spent 79,998.05 hours working on this case on behalf of the class.[31] As explained in the Declaration of Laddie Montague, Jr. and Class Counsel's Fee and Expense Declarations, the stated hours were incurred by, among other things, investigating the claims against Defendants; preparing the initial complaints and Consolidated Amended Class Action Complaint; conducting necessary legal research; conducting extensive discovery; briefing Defendants' multiple motions for summary judgment; briefing and presenting Plaintiffs' motion for class certification at the March 2017 oral argument and at a two-day evidentiary hearing with live testimony in April 2017; working with experts submitting Rule 26(a)(2) reports and responding to a Court-appointed technical advisor report; beginning trial preparation; engaging in a mediation and extensive negotiations of the initial three settlements; and preparing the necessary agreements and pleadings related to the four settlements.[32] Given this effort, the complexity of the legal issues involved, and the intensity of the defense mounted by skillfully-represented Defendants, the hours incurred by Class Counsel are reasonable. Further, Co-Lead Class Counsel has excluded from this petition time incurred in this litigation that did not

---

[30] *See Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000).

[31] *See* Class Counsel's Decls.; Montague Decl.

[32] "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Rite Aid*, 396 F.3d at 306-307. *See also Prudential*, 148 F.3d at 341 (finding no abuse of discretion where district court "reli[ed] on time summaries, rather than detailed time records"). Of course, Class Counsel will make detailed billing records available to the Court *in camera* upon request.

provide a common benefit to the Class. Co-Lead Class Counsel also audited and confirmed the validity of Plaintiffs' Counsels' time and expense submissions. Last, Co-Lead Class Counsel anticipate expending substantial additional hours on this litigation to bring it to a close, for which Co-Lead Class Counsel will not seek additional compensation; these additional hours should be considered in evaluating the reasonableness of the fee request.

The historical hourly rates charged by Class Counsel are reasonable based on each person's position, experience level, and location. Moreover, Co-Lead Class Counsel capped the hourly billing rate for attorneys conducting first-level document review. Taking into account the several factors discussed above, including the result achieved, the complexity and risk of the litigation, and the skill and experience of counsel, Class Counsel's rates are reasonable and appropriate. These reasonable rates resulted in a total lodestar of $38,058,631.50.

### 2. The multiplier mitigates in favor of the requested fee.

Courts may increase or decrease the lodestar amount by applying a multiplier. "Consideration of multipliers used in comparable cases may be appropriate" to gauge the reasonableness of a percentage fee award." *Rite Aid*, 396 F.3d at 307 n.17. Multipliers of up to four are frequently awarded in common fund cases.[33] Here, the multiplier, at 1.68, produced by cross-checking the requested one-third fee award against the reported lodestar of $38,058,631.50 (based upon historical hourly rates), is well ***below*** the accepted range in the Third Circuit.[34] The

---

[33] *See, e.g., Steele*, 2005 WL 3801469, at *2 (finding multiplier of two reasonable, "given the complexity of the case, the risk of undertaking a case of this nature, and the delay in payment following the performance of services") (Baylson, J.). *See also Meijer, Inc. v. 3M*, No. 04-5871, 2006 WL 2382718, at *24 (E.D. Pa. Aug. 14, 2006) (4.77 multiplier); *Nichols v. SmithKline Beecham Corp.*, No. Civ.A.00-6222, 2005 WL 950616, at *24 (E.D. Pa. April 22, 2005) (3.15 multiplier); *Ravisent*, 2005 WL 906361, at *12 (3.1 multiplier); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 256 (D.N.J. 2005) (2.83 multiplier); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2004 U.S. Dist. LEXIS 29162, *35 (E.D. Pa. Oct. 13, 2004) (2.3 multiplier is within an acceptable range); *Linerboard*, 2004 WL 1221350, at *16 (2.66 multiplier); *Rent-Way*, 305 F. Supp. 2d at 517 (2.36 multiplier).

[34] *See, e.g.*, *Diet Drugs*, 582 F.3d at 542 n.42 (finding that a multiplier, in a lodestar crosscheck, in the range of "2.6, 3.4, or somewhere in that neighborhood, [] is not problematically high. It is either below or near the average multiplier…."); *Cendant Prides*, 243 F.3d at 735-36, 742 ("strongly suggest[ing]" a multiplier of 3 as the ceiling for

settlements achieved here resolved this litigation before trial and any other steps in the proceedings that would have generated a substantially larger lodestar than presented at this point. Accordingly, a lodestar cross-check further evidences the reasonableness of the requested fee.

> ### D.   The Court Should Award Class Counsel the Funds in the Opt-Out Fee and Expense Account

Each of the settlement agreements established an Opt-Out Fee and Expense Account, though of the first three settlements, only the Lafarge settlement resulted in any funds being deposited in that account.[35] For any reductions to the settlement amount resulting from opt-outs, 25% of the reduction was deposited into the Opt-Out Fee and Expense Account, with the remainder returned to the settling Defendant.[36] It is appropriate to award Class Counsel the full amount contained in the Opt-Out Fee and Expense Account, in light of the significant benefit Class Counsel provided opt-out class members in litigating the action and developing the evidentiary record in the case. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 657 (E.D. Pa. 2003) (establishing an account to compensate class counsel using funds from settlements between defendants and plaintiffs in tag along actions, and noting that "[i]n carrying out the duties of lead and liaison counsel, designated counsel have done much to craft the case against defendants. That work has benefitted all litigants in the class action and the tag-along actions."); *OSB*, No. 2:06-cv-00826-PD, Order, ECF 947, at *3 (finding class counsel's fee request for one-third of the total

---

an award in a simple case where "no risks pertaining to liability or collection were pertinent"); *Prudential*, 148 F.3d at 341 ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (internal quotation and citation omitted).

[35] *See* n.12, *supra*. The current value of the Opt-Out Fee and Expense Account is $610,236, plus accrued interest. Additional money may be deposited into the account as a result of any timely requests for exclusion from the Joint Settlement.

[36] *See* ECF No. 180-3, USG Settlement Agreement ¶ 34; ECF No. 276, USG Settlement Final Judgment Order ¶¶ 13, 16; ECF No. 180-2, TIN Settlement Agreement ¶ 23; ECF No. 277, TIN Settlement Final Judgment Order ¶¶ 13, 16; ECF No. 414-2, Lafarge Settlement Agreement ¶ 34; ECF No. 503, Lafarge Settlement Final Judgment Order, ¶¶ 12, 15; ECF No. 692-2, Joint Settlement Agreement ¶ 33.

settlement funds, and the funds that reverted back to class members from opt-outs that did not pursue separate claims against the defendants "reasonable and well-earned").

## IV.    CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLE LITIGATION EXPENSES

Plaintiffs also request reimbursement to Class Counsel for the reasonable and necessary expenses they advanced to prosecute this litigation since its inception in December 2012. "Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the fund." *Nichols*, 2005 WL 950616, at *24 (quoting *In re Aetna Inc. Securities Litig.*, No. CIV. A. MDL 1219, 2001 WL 20928 at *13 (E.D. Pa. Jan. 4, 2001)); *see also Rent-Way*, 305 F. Supp. 2d at 519 ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund."); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 498 (E.D. Pa. 2003) (same) (quoting *Ikon*, 194 F.R.D. at 192).[37]

Since the inception of the case, Class Counsel have incurred $2,925,628.98 in unreimbursed expenses.[38] The categories of expenses for which reimbursement is now sought are

---

[37] *See also Meijer*, 2006 WL 2382718 at *18 (granting plaintiffs' motion for approval of expenses "incurred in connection with the prosecution and settlement of the litigation, and include costs related to the following: travel; computerized legal research; copying; postage; telephone and fax; transcripts; retention of a mediator; the document database; expert services; and claims administration.").

[38] These expenses are detailed in the Declaration of Jeffrey J. Corrigan Regarding Expenses Paid by Plaintiffs from the Domestic Drywall Litigation Fund (Corrigan Decl.), attached hereto as Exhibit 5 and Class Counsel's Fee and Expense Declarations. The Court previously (1) approved payments totaling approximately $3.3 million from the TIN, USG, and Lafarge settlement funds to cover ongoing pretrial litigation expenses for expenses incurred in connection with economic experts, and (2) authorized the use of $300,000 total from the four settlement funds for notice and administration expenses, of which $190,485.13 has been spent. Additionally, certain common expenses were paid from the common litigation fund, which was funded with assessments paid by Class Counsel. The requested reimbursement includes a reduction of $27,172.18 from the total expenses, reflecting the remaining balance in the common litigation fund. *See* Corrigan Decl. If the Court approves reimbursement of these expenses, total expenses for the case paid out of the Combined Settlement Fund (e.g., including the approximately $3.5 million previously authorized by the Court) will total approximately $6,412,924.51. *See* Corrigan Decl; Class Counsel's Decls.

There are additional expenses relating to settlement administration and the claims process that will necessarily be incurred if the Court grants final approval of the settlement. While Co-Lead Class Counsel have sought to ascertain and minimize these expenses, the exact amount will not be known until it is time to complete the distribution. Co-

the type of expenses routinely charged to hourly clients, such as expert costs, document repository rent, document management, travel,[39] photocopying, overnight mail, deposition services and transcripts, legal research, and jury research costs, among others. *See* Corrigan Decl. As the Court previously acknowledged, certain of these expenses, such as experts and "[d]ata collecting, storage and production" would be expensive, but "essential."[40]

## V.   CLASS REPRESENTATIVES SHOULD BE AWARDED THE REQUESTED SERVICE AWARDS

Plaintiffs also request approval for a $75,000 service award for each of the four named plaintiffs to be paid from the Combined Settlement Fund. Such awards are common in class actions resulting in a common fund for distribution to the class, because the class representatives "have conferred benefits on all other class members and they deserve to be compensated accordingly." *In re Linerboard Antitrust Litig.*, No. 98-5055, 2004 WL 1221350, at *18 (E.D. Pa. June 2, 2004), amended, 2004 WL 1240775 (E.D. Pa. June 4, 2004). As the Third Circuit has noted, such awards exist "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (citation omitted). They are also "particularly appropriate" where, as in this case, "there was no preceding governmental action alleging a conspiracy and taking a high-profile role threatened to jeopardize class representatives' relationships with their suppliers." *Linerboard*,

---

Lead Class Counsel anticipate seeking approval for these expenses when they seek authority to distribute the settlement funds to class members, at the conclusion of the claim submission and evaluation process.

[39] Throughout the litigation, Class Counsel were careful to comply with the Court's instructions that, "As to travel expenses, government per diems will be a guideline as to what will be awarded . . . ." While government per diem rates vary by city, year and even month, Class Counsel were mindful of the Court's direction on this point. *See* ECF No. 12, Memorandum Re: Plaintiffs' Attorneys' Fees and Expenses, at 4 ("Counsel with appetites for luxury are welcome to spend more, but should not expect reimbursement for luxury travel out of a common fund achieved for the benefit of the class."). In addition, Co-Lead Class Counsel note that Class Counsel were not eligible for government discounted rates for hotels.

[40] *See* ECF No. 12, Memorandum Re: Plaintiffs' Attorneys' Fees and Expenses, at 4.

2004 WL 1221350, at *18. Factors that courts consider in determining service awards include the risks to the plaintiffs in commencing the litigation (financially and otherwise), the extent of the plaintiffs' personal involvement in the lawsuit, the duration of the litigation, and the plaintiffs' personal benefits (or lack thereof) purely in their capacity as members of the class. *McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014) (citing *In re Plastic Tableware Antitrust Litig.*, No. 94-3564, 1995 WL 723175, at *2 (E.D. Pa. Dec. 4, 1995)).

Here, each of the four named plaintiffs spent a significant amount of time assisting the litigation of this case. Each plaintiff responded to written discovery and produced documents relating to its claims; at least one individual representing each plaintiff was examined at deposition by defense counsel for a full day regarding its claims; each plaintiff reviewed and approved the consolidated amended class action complaint and other substantive pleadings; and each plaintiff reviewed and approved the settlements.[41] The plaintiffs pursued the litigation with no preceding government investigation, and did so knowing that Defendants might—and in one instance did— retaliate against them and threaten their businesses.[42] The plaintiffs took on this risk and responsibility, on behalf of the entire class, even though their claims were not among the largest in the class.[43]

The requested service awards are also in accord with amounts approved in other class action litigations in this Circuit and around the country. *See*, *e.g.*, *Marchbanks Truck Serv. v. Comdata Network, Inc.*, No. 07-1078-JKG, 2014 WL 12738907, at *3-4 (E.D. Pa. July 14, 2014) (awarding $150,000 to one class representative and $75,000 each to two others); *Bradburn Parent*

---

[41] *See* Class Representative Declarations, attached hereto as Exhibit 6.

[42] *See id.*

[43] *See* ECF No. 432, Ex. 1, Expert Report Regarding Class Certification Issues, Impact, and Damages, Tables 1 & 2 (Aug. 3, 2016) (named plaintiffs' purchases from the alleged conspirators in 2012 and 2013 totaled $346,259, out of approximately $4.555 billion in class sales during the same period).

*Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 342 (E.D. Pa. 2007) (awarding $75,000 to class representative); *In re Graphite Electrodes Antitrust Litig.*, No. 2:10-md-01244-NS, ECF 527 (E.D. Pa. Sep. 8, 2003) (awarding $80,000 each to three class representative); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 480 (D.N.J. 2008) (awarding $60,000 to each class representative); *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062, 2017 WL 2423161, at *14-16 (N.D. Cal. June 5, 2017) (awarding each of three class representatives $100,000 total for all settlements); *In re High-Tech Employee Antitrust Litig.*, No. 11–CV–02509, 2015 WL 5158730, at *16-18 (N.D. Cal. Sept. 2, 2015) (awarding $100,000 to each of four original class representatives); *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194, 2010 WL 4877852, at *8, 25-28 (S.D.N.Y. Nov. 30, 2010) (awarding $125,000 each to multiple named plaintiffs); *In re Revco Securities Litig.*, Nos. 851 & 89CV593, 1992 WL 118800 (N.D. Ohio May 6, 1992) (awarding $200,000 to single class representative).

## VI.   CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court: (1) award Class Counsel one-third of the Combined Settlement Fund, as well as the total amount in the Opt-Out Fee and Expense Account, as attorneys' fees; (2) order reimbursement of litigation expenses incurred by Class Counsel in the amount of $2,925,628.98; and (3) award each Class Representative a service award of $75,000.

Dated:  April 9, 2018

Respectfully submitted,

*/s/ H. Laddie Montague, Jr.*
H. Laddie Montague, Jr.
Eric L. Cramer
Ruthanne Gordon
Michael C. Dell'Angelo
Candice Enders
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Tel:  (215) 875-3000
Email: hlmontague@bm.net
          ecramer@bm.net
          rgordon@bm.net
          mdellangelo@bm.net
          cenders@bm.net

*/ s / Kit A. Pierson*
Kit A. Pierson
Brent W. Johnson
David A. Young
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., NW, Suite 500
Washington, DC  20005
Tel:  (202) 408-4600
Email:  kpierson@cohenmilstein.com
          bjohnson@cohenmilstein.com
          dyoung@cohenmilstein.com

*/s/ Jeffrey J. Corrigan*
Eugene A. Spector
Jeffrey J. Corrigan
Rachel E. Kopp
Jeffrey L. Spector
SPECTOR ROSEMAN
& KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Tel:  (215) 496-0300
Email:  espector@srkattorneys.com
          jcorrigan@srkattorneys.com
          rkopp@srkattorneys.com
          jspector@srkattorneys.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs and the Class*