# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> Ashton Woods Holdings LLC, et al.,      Plaintiffs, <br><br> v. <br><br> USG Corp., et al.,      Defendants. | CIVIL ACTION <br><br> MDL No. 13-2437 <br><br> 15-cv-1712 |

## MEMORANDUM RE: DISCOVERY DISPUTE

**Baylson, J.**                                                                                               **May 10, 2018**

      Competing motions filed by Plaintiffs (large Homebuilders) and Defendants (drywall manufacturers) concerning discovery over injury and damages have been filed (Civil Action 15-1712 - ECF 287 and ECF 290). The Court has read the briefs submitted by the parties. The attachments stretch almost 12 inches in height and have been reviewed selectively.

      As a background for these motions, the Court held a hearing on October 19, 2017 for the purpose of adjudicating a number of discovery disputes in this case, principally over the fact of injury and damages. Extensive discovery had already taken place concerning general background and liability, but did not preclude discovery of evidence relevant on injury and/or damages. Because of the disputed discovery about injury and damages, the Court determined to require contention statements to be filed by Plaintiffs, followed by at least one, and up to three, depositions of "representatives" of each plaintiff, and then followed by Defendants' contention statements. See detailed Corrected and Amended Pretrial Order (ECF264) dated November 13, 2017.

As paragraph 11 of the Order stated, the Court realized there were "lingering disputes about production of documents and the Court will require that these issues be resolved promptly." The Court set a specific schedule and then in the last sentence stated: "In other words, the Court will not consider any future complaints about document discovery or ESI, unless presented for decision as required."1

The Court intends to follow this deadline. A number of the depositions attached as exhibits to the motion to compel were taken during calendar year 2017. Any disputes arising out of 2017 correspondence or deposition testimony, necessarily reflect document requests made prior to the November 13, 2017 Order, but no motion to compel was filed until April 5, 2018.

It is possible that some disputes arose as a result of depositions of Plaintiffs' representatives were taken within 14 days of April 5, 2018, on which date Plaintiffs filed their motion to compel. These may be renewed. Otherwise, the motion is not timely.

**BACKGROUND OF PROOF OF DAMAGES AND FACT OF INJURY**

An important backdrop to this dispute is that discovery on liability has long ago been completed in this case. An important part of an antitrust case is the Plaintiffs' burden of proving the "fact of injury" – that the illegal conduct resulted in damages, and providing discovery relevant on the amount of damages claimed.

The Court's decisions on the Direct Purchaser class action will help put this discovery dispute in context of the overall case. There is no dispute that the selling price of drywall increased in the damages period. In the proceedings leading up to this Court's decision to certify a Direct Purchaser class action, there were substantial disputes between the parties over whether

---

1 A 14 day deadline in paragraph 11 applied to disputes arising after the depositions to be taken following the contention statements. Document disputes arising prior had to be resolved promptly after the November 13, 2017 Order.

the fact of injury could be proven on a class wide basis. Defendants had put forward substantial facts, supported by expert testimony, that other factors in the drywall business had caused the price increases, principally an increase in demand, such that injury could not be proven on a class wide basis. The Court had extensive hearings, including the testimony of the competing experts, and a so-called "hot tub" where both experts sat in the jury box and were examined by counsel and the Court. The Court appointed an independent "economic consultant" who reviewed the various expert reports and wrote his own opinion on the issue. Eventually, the Court determined that there was substantial evidence that the price increases may have been caused by an increase in demand as well as an agreement to fix prices, but that this would not bar the ability of a class to prove the fact of injury on class wide basis.

Plaintiff does not have the burden of proving that an agreement to fix prices is the sole cause of a price increase. Under settled law, Plaintiffs only need to prove that the illegal agreement is a "substantial" or a "material" cause of a price increase, even though a jury could conclude that there may be other reasons for the increase. Thus, when the case reaches the trial stage, the parties will undoubtedly put on competing evidence as to what caused price increases to the Homebuilder Plaintiffs. The Plaintiffs will have evidence, from the liability phase of this case, from which a jury may conclude there was an agreement. Defendants assert there is other evidence as well, including facts that may show that the Homebuilders "passed on" the price of drywall to their home buying customers, that demand increased, and possibly that their own costs increased. There may be other economic factors present in the Homebuilder cases that were not present in the Direct Purchaser class action case.

3

There may still be some fact issues as to whether the Homebuilders were Direct Purchasers or Indirect Purchasers, or a combination of both, depending from whom they purchased drywall.

## **RESOLUTION OF PENDING MOTIONS**

This discovery dispute must be put in the context of the overall case, that there is a great deal of data already produced by both parties, about the economics, distribution factors, costs, transportation, etc. that go into the final price of a home to a customer. What is the overall normal or range of percentage of the cost of drywall to the total cost of building a home, or the overall retail price of the home? This may be relevant and is surely a legitimate issue in these Homebuilder cases.

Among the attachments to the various motions are detailed expert reports on these topics. Upcoming expert depositions may shed additional light on the economics.

The law is very clear that although the fact of injury must be proved by specific evidence, there is a great deal of latitude given to a Plaintiff who has suffered from a price fixing conspiracy and its projection of damages.

Ruling on the pending motions and a desire to be fair to both parties on this complex case, the Court has examined some of the exhibits that have been filed in support of these motions.

According to the briefs currently under review, there have been many discussions among counsel to try and resolve disputes. Defendants are now seeking to compel production of a large volume of very detailed transactional documents on the issues which Defendants assert are

relevant and necessary to defend against Plaintiffs' very large multi-million dollar damage allegations.

Plaintiffs have several reasons for opposing this extensive discovery as follows:

1. The contention statements were designed by the Court to "moot" prior discovery disputes and to require each party to put forward its best evidence on damages, presumably relying on documents that had already been produced.

2. The extensive, belated, and very detailed document demands that Defendants are now making are not essential to a fair resolution of this case.

3. The parties each have experts on the fact of damage and the amount of damages who have prepared very detailed reports and expert depositions are scheduled to begin shortly.

4. The November 13, 2017 order was intended to foreclose extensive new requests for documents that had or could have been made previously in the case, or as allowed by its provisions.

As to the Defendants' claim that they need these documents to fairly litigate their claim that any overcharges on prices of drywall were "passed on," by Plaintiffs to purchasers of the homes they built, Plaintiffs reply that the pass on defense in this case is not availing because of the class-based direct and indirect settlements pending before this Court show that there is no likelihood of duplicative recovery. Therefore, Plaintiffs assert there is no real issue in this case about the viability of any pass through defense. The Court cannot fairly rule on this issue in the context of a discovery dispute.

The Court has determined to resolve both motions as follows:

1. The Court has reviewed the damages contention statement of one Plaintiff, D.H. Horton, and finds that it generally meets what the Court contemplated and intended as an appropriate damage statement for each Plaintiff. The Court has not reviewed the other Plaintiffs' contention statements, but assumes that they are similar in format and content.

2. The Court assumes that the Defendants have taken a deposition of 1-3 representatives from each of the Plaintiffs as the prior Court order, or will do so by the current deposition deadline.

3. Even if the Plaintiffs' motion to compel is timely in part, the type of discovery demand that was made to Plaintiff Beazer, as listed in Defendants' brief, as an example, is much too broad for this stage of the litigation and would undoubtedly delay resolution of the pending and scheduled motions so that this case can be returned to the Central District of California for trial.

4. The Court will assume that each Plaintiff has produced its financial statements for the relevant damage years, basically balance sheets and profit and loss statements. Any prior objections to producing these, or a failure to move to compel, is not a reason not to produce financial statements prepared in the ordinary course of business, when large damages are being sought.

5. There are some disputes between the Plaintiffs and Defendants as to whether documents that had been requested and not objected to, were actually produced. The Court cannot adjudicate this dispute from the written briefs. The Court encourages counsel to discuss this more thoroughly.

6.     One of the letters submitted in support of Defendants' motion, Exhibit 3, is a letter from one of the defense lawyers dated September 19, 2017 to Plaintiffs' counsel listing seven different types of documents which Defendants assert were identified in a deposition that had already taken place but had not been produced.  This is the type of discovery dispute which, if not resolved, counsel for Defendants were obliged to pursue by filing an appropriate motion in accordance with paragraph 11 of the Order of November 13, 2017, and the Court will not consider at this time.

7.     Expert depositions will proceed which should shed light on the parties' various contentions about damages and their economic theories in support or opposition.  Thus, Defendants will have further opportunity to explore Plaintiffs' contentions and evidence.

8.     The Court reaches these conclusions recognizing that in an antitrust case, proof of damages is designed to be liberal, and recognizing that many factors can go into damage calculations.  Different economic theories are allowed to support, or defend against, a claim for damages in an antitrust case, particularly based on illegal overcharges.  Plaintiffs are entitled to a great deal of latitude in how they present their claims.  Not every fact or item of proof offered in evidence on the issue of injury or damages is subject to an objection because it was not produced during discovery.

For these reasons, the Court will **DENY** Defendants' Motion to Compel (ECF 287) in substantial part, subject to the qualifications set forth above, subject to renewal as to timely filed disputes only.  Plaintiffs' Motion for Protective Order (ECF 290) is **GRANTED** in part and **DENIED** in part.

O:\13-MD-2437 - drywall\15 cv1712 Memorandum re Discov over Damages.docx