# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>All Indirect Purchaser Actions | MDL No. 2437<br>13-MD-2437 |

### MEMORANDUM RE: INDIRECT PURCHASER PLAINTIFFS' MOTION TO AWARD OF ATTORNEYS' FEES AND COSTS

**Baylson, J.**                                                                                                     **March _19, 2019**

      The final scene of this class action litigation is about to unfold on the issue of award of attorneys' fees and costs for counsel for Indirect Purchasers. The record of the case contains extensive pleadings, motions, and class action decisions, where the Court denied a certification of class of indirect purchasers, but approved settlements with Defendants on behalf of Indirect Purchasers. This Memorandum will only briefly set forth the history but will detail issues that directly impact the Court's decision on the award of attorneys' fees.

      Initially, to deal with the raw numbers, the total amount of the settlement for Indirect Purchasers was $16.95 million, of which $250,000 had been set aside for administration of the settlement. Counsel have documented the total number of hours as 24,552. Applying various hourly rates, counsel have calculated a proposed lodestar of $12,685,538.00, but request only one-third of that amount.

      Counsel have documented unreimbursed costs of $1,481,478.00, which will be allowed in full, but the Court must note that it had previously approved reimbursement of expenses

totaling $665,992.00 from settlement proceeds. Thus, the total costs in this case are approximately 15% of the settlement.

Although these are large sums of money by any account, it is much lower than the $200 million plus settlement that were achieved on behalf of Direct Purchasers. There are several aspects of this MDL proceeding that are continuing as to which Defendants may have further exposure. The first is the <u>Ashton Woods</u> case in which there have been some settlements, but that case continues for 12 Homebuilder Plaintiffs against three defendants. There is also one so-called "opt out" case recently transferred to this district where Home Depot is suing LaFarge for damages.

The several aspects of this litigation which warrant discussion in the context of an award of attorneys' fees are the following:

> 1. The total number of hours which counsel assert were spent in connection with this case.
>
> 2. The hourly rate that is claimed, and which is then multiplied by the number of hours to achieve the "lodestar."
>
>     a. Ascertaining that the time spent was of value in the overall prosecution of the case, etc.
>
> 3. Whether, following Third Circuit principles for the award of counsel fees, the appropriate lodestar determination shall be adjusted by any multiplier or reduction for performance of counsel, and comparison to a percentage ratio of attorneys' fees to total settlement.

No opposition has been filed to the Petition for Attorneys' Fees. The Defendants who settled with Indirect Purchasers agreed not to oppose this fee petition, because the entirety of the counsel fee award will come out of the gross settlement amount.

### A. Judge Gafni's Report

In order for the Court to evaluate the efficiency, quality, and contribution of the time spent by counsel for Indirect Purchasers, the Court appointed, as a Master, Honorable Abraham J. Gafni, who has served with distinction as a Common Pleas Court judge, State Court Administrator for a number of years, and has been recently actively involved as a law professor and mediator/arbitrator. This experience has given him a broad range of expertise about the practice of the law, the abilities of various attorneys and, in particular, their performance in representing a class of plaintiffs in complex litigation. The Court expressed its concern, in prior documents in this case as to the fact that the loadstar of time value claimed by Indirect Purchaser Class counsel was over $12 million, which is unusually close to the overall settlement amount of $16.95 million.

Considering the prior proceedings in this Court, and principally the Court's decision to deny a class of indirect purchasers (as to which the Third Circuit refused to allow an interlocutory appeal under Civil Rule 23(f)), the Court concluded it was appropriate to have an independent review of the contributions made by Indirect Purchaser counsel. Judge Gafni, whose Report and Recommendation was approved (see ECF 807), interviewed both the Petitioners and also counsel for the Direct Purchaser Class, and some defense counsel, and has concluded that counsel for the Indirect Purchasers represented their class vigorously, that they also contributed to the overall success of the Direct Purchaser class action proceedings, and that the hours spent were reasonable and not excessive, considering the issues at stake. Nonetheless, because the Court denied the Indirect Purchaser class, class counsel recognized that they must take the proverbial "haircut" on their fee petition. Established Third Circuit precedent would not

allow an award of attorneys' fees of anything close to 75% of the total recovery, which is the ratio of the lodestar to settlement amount in this case.

Recognizing this, class counsel have trimmed their request to a 1/3 percentage of the overall claimed lodestar of $12.7 million, or $4,228,513.00. The Court recognizes the necessity of a fee award that bears a rational relationship to the settlement, but believes it also has the obligation to consider the overall performance of class counsel in this case, as required by Third Circuit precedent.

There are several components of this analysis. The first has to do with the facts found by Judge Gafni, which the Court finds very valid, in that class counsel performed their work during the discovery period professionally and made contributions which led to the total settlement amount for both Indirect Purchaser Plaintiffs and Direct Purchaser Plaintiffs. For reasons found by Judge Gafni, the Court will accept as accurate and deserving of compensation, the total amount of hours claimed by Plaintiffs' counsel in their fee petition.[1]

**B.     Hourly Rate**

Each of the Plaintiffs' firms that are seeking compensation have filed a statement, which is Exhibit 3 to the Motion, stating their hourly rates. However, these counsel have not supported their request for hourly rates with any information about the attorney's seniority, or experience, or any showing that whatever hourly rate may be "claimed" in this case, whether it is has any accurate relationship to what other clients actually paid to the firm for the services of these attorneys. Documentation of this nature is customary in this court, but is lacking in the fee

---

[1] The $1.25 million settlement paid by the last three Defendants clearly reflects a decision by the remaining Defendants, after the Court denied the Indirect Purchaser Class action, that they could contribute a very modest $1.25 million for a total release. This amount was probably less than the defense costs of continuing to litigate the case, and substantially less than what might result if there was an appeal from a final judgment after a trial, that may have required further litigation expense, or possible exposure if the Court's denial of the class was reversed on appeal.

petition. The Court is aware that many firms have attorneys who compel hourly rates of $1,000 or more. Many of the rates claimed in this case are between $500 and $850, but there is no showing that clients of these lawyers have actually paid these amounts for services of the specific attorney regardless of the outcome. Most of the firms representing the Indirect Purchasers in this case specialize in contingent fee litigation where they would not normally get paid by clients for work on an hourly basis, but instead, are paid based on a fee agreement allowing a fee reflecting a percentage of the overall recovery to the client. The absence of this information requires the Court to give lower weight for the total lodestar claimed to the extent it is impacted by unsupported hourly rates. The solution will be to use a blended rate for all hours to compare it to a reasonable percentage. The Court finds that $350.00 is a reasonable blended hourly rate for all timekeepers, attorneys and paralegals, given the nature of the case. Applying this rate to the number of hours results in a lodestar of $8,593,200.00. One-third of this amount is $2,864,400.00.

### C. Illinois Brick

Of further relevance in this "mix of factors" is the nature of indirect purchasers in a case of this nature. Because of the Illinois Brick decision, most of the purchases of drywall by indirect purchasers were probably not justiciable under federal law, and would only result in damages being recovered if brought under state law, particularly those states which have enacted so-called "repealer statutes" of the Illinois Brick decision so as to allow the courts in those states to award damages to indirect purchasers. Needless to say, pursuing such claims would be time consuming and very expensive for both Plaintiffs' counsel and for Defendants' counsel. That counsel expended over 24,000 hours reflects a very overly optimistic view of any expectation of

5

full compensation for their work, since there was always a major risk that a class action of indirect purchasers would not be certified.

### D.     Quality of Attorney Work Product

The third factor is the quality of representation. Compared to the positive evaluation made in Judge Gafni's report based on conversations with other counsel, the performance of class counsel in their appearances before this Court have been deficient in many respects. These have been pointed out on several occasions, most significantly in this Court's Memorandum re: Motion for Preliminary Approval of Class Settlement (ECF 698). In summary, this opinion pointed out that counsel for Indirect Purchasers had proposed confusing and inconsistent definitions of the various settlement classes, had not provided accurate citations and summaries of court precedents that were very relevant, and had also proposed contradictory and confusing time periods for claims and definitions of who was or was not included in the class. Indeed, a major portion of this prior Memorandum was devoted to showing shortcomings of counsel that required this Court to spend a great deal of time trying to sort through these inconsistencies. If counsel's ill-prepared proposals were adopted without detailed analysis and clarification, administration of the class settlements may have resulted in chaos. See the chart attached to this prior Memorandum where the various inconsistent class definitions were set forth in vertical columns.

The Court finds, as a positive factor, that some of Indirect Purchaser counsel's efforts were helpful to the Direct Purchaser Plaintiffs and that this should be considered.

Indirect Class counsel recognize they cannot recover their total claimed lodestar. Based on Third Circuit precedents, the Court must recognize that every dollar awarded to counsel is a dollar less going to class members. As the prior documents in this litigation show, some Indirect

Purchasers will receive very little. (There is a court-approved minimum threshold for class members who have filed a damages claim.) The Court has no idea what any maximum recovery will be, as the definition of Indirect Class Purchasers is very amorphous.

One of the reasons the Court approved the class settlement, despite the Court having denied the class action, is that Defendants were entitled to cessation of the litigation and the total amounts that Defendants paid were within a reasonable range that warranted approval of the settlement.[2]

---

[2] The Court is aware that the Supreme Court has heard argument in a case where there was some discussion about the Illinois Brick doctrine, In re Apple Iphone Antitrust Litig., 846 F.3d 313 (9th Cir. 2017), cert. granted sub nom. Apple Inc. v. Pepper, 138 S. Ct. 2647 (2018). The Court does not see any reason to delay this final award of attorneys' fees and costs for whatever action the Supreme Court may take in that case or any discussion about Illinois Brick.

**CONCLUSION**

In conclusion, the Court accepts the validity of the total number of hours that were recorded as being appropriate for consideration, but not the hourly rate. The Court believes that the class should recover approximately two-thirds of the total settlement. Therefore, the Court will award attorneys' fees so that the total of fees plus costs do not exceed one-third of the total settlement. The Court will check the adjusted lodestar against a percental of the overall recovery. Under this calculation the fees will be $2,864,400.00. This amount, plus all of the costs, equal approximately one-third of the total settlement. Adding together all of the attorneys' fees and costs awarded reveals a total of $5,279,000.00 which is close to one-third of the settlement amount of $16,700,000.00.

An appropriate order follows.

O:\13-MD-2437 - drywall\13md2437 - IPP Action - Memorandum re Attorneys Fees.docx