**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: DOMESTIC DRYWALL ANTITRUST LITIGATION | CIVIL ACTION |
| THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | MDL No. 13-2437 |

<u>**MEMORANDUM RE: US LBM HOLDINGS, LLC–DREW ROSEN CLAIM DISPUTE**</u>

**Baylson, J.**                                                                                             **April 24, 2020**

**I.      Introduction**

This multidistrict litigation (the "MDL") involves allegations that drywall manufacturers conspired to fix drywall prices and eliminate job quotes in violation of federal and state antitrust laws. The Court separated the plaintiffs into three groups: the Direct Purchaser Plaintiffs ("DPPs"); the Indirect Purchaser Plaintiffs ("IPPs"); and the Homebuilder Plaintiffs. Following certification of the DPP class, Defendants and the DPPs reached a settlement, which was approved by the Court.

The Court then authorized a plan for distribution of the DPP settlement funds. (ECF 765.) That Order approved Kurtzman Carson Consultants LLC ("KCC") as the Claims Administrator and directed KCC to commence the administration process. (<u>Id.</u> ¶ 5.) The Order stated that if KCC could not resolve a claims dispute, the issue should be brought to the Court for resolution. (<u>Id.</u> ¶ 9.) Pursuant to the Order, KCC reviewed the claims forms submitted by potential class members and determined each claimant's share of the Net Settlement Fund.[1] The Court approved

---

[1] A chart of the pro rata distribution that KCC recommended, which the Court approved, is available at pp.19–117 of ECF 868-2.

distribution of the claims in the amounts determined by KCC, except this approval did not resolve claims that were disputed.  (ECF 887 ¶ 2.)

One such issue that was not resolved by KCC and was brought to the Court for resolution is a claims dispute between US LBM Holdings, LLC ("US LBM") and Drew Rosen ("Mr. Rosen").[2]  This dispute arose because US LBM and Mr. Rosen each filed claims for the same purchases made by Rosen Materials, LLC ("Rosen Materials").  Mr. Rosen held shares in Rosen Materials at the time of Rosen Materials' drywall purchases, but subsequently sold his shares to US LBM in 2015.  US LBM and Mr. Rosen disagree about whether Mr. Rosen, a shareholder and former CEO of Rosen Materials who sold his shares to US LBM in the 2015 transaction, retained Rosen Materials' claim to the Net Settlement Fund or whether the Disputed Claim passed to US LBM with the sale.

The Court must determine who (US LBM or Mr. Rosen) is entitled to the Disputed Claim that US LBM made on behalf of its subsidiary Rosen Materials.  US LBM and Mr. Rosen each filed briefs on this issue.  (ECF 893 (US LBM); ECF 894 (Mr. Rosen).)  The Court held a hearing on March 12, 2020, following which supplemental briefing was submitted.  (ECF 921 (Mr. Rosen); ECF 922 (US LBM).)  For the reasons that follow, the Court concludes that US LBM has the right to receive the Disputed Claim on behalf of its subsidiary, Rosen Materials.

## II.     Factual Background

### A.     Mr. Rosen's Testimony

At the March 12, 2020 hearing, Mr. Rosen testified about his role at Rosen Materials, the decision to sell his shares to US LBM in April 2015, and the claim he filed in connection with the DPP settlement.  The background provided by his testimony gives context for this dispute.

---

[2] Any reference to "the parties" refers to the parties involved in this dispute, not the parties to this litigation.  For purposes of this Memorandum, the term "the parties" refers to US LBM and Mr. Rosen.

Mr. Rosen testified that he started Rosen Materials in 1997 before selling the company to US LBM in April 2015. (Hr'g Tr. 7:25, 8:1–22.)[3] He served in various leadership roles at the company prior to the sale. (Hr'g Tr. 8:10–11, 16.) During his testimony, Mr. Rosen confirmed that Rosen Materials purchased drywall from the MDL Defendants, but he denied knowing Defendants were allegedly fixing prices during the damages period. (Hr'g Tr. 9:7–18.)

Sometime during 2011, Joseph Todd ("Mr. Todd")—at the time president and COO of Rosen Materials—was interviewed by Department of Justice officials who were investigating a complaint of price-fixing activity in the drywall industry. (Hr'g Tr. 11:8–23, 22:17–19.) A few years later, on November 18, 2014, Mr. Todd was deposed by the MDL Defendants about Rosen Materials' drywall purchases in connection with this action.[4] (Hr'g Tr. 26:14–17.) Mr. Rosen himself was not interviewed or deposed, but he knew Mr. Todd was. (Hr'g Tr. 12:16–18.) Mr. Rosen testified that following the discussions with Mr. Todd, his understanding was that the strategies used by the MDL Defendants were "not illegal, not improper." (Hr'g Tr. 13:16.)

On April 17, 2015, Mr. Rosen and the other owners sold their equity interests in Rosen Materials to US LBM. (Hr'g Tr. 14:2–8.) The transaction was memorialized in the Membership Interest Purchase Agreement (the "MIPA").[5] (Hr'g Tr. 14:16–17.) According to Mr. Rosen, during the MIPA negotiations there was "zero" discussion about a drywall price-fixing claim because such a claim was "never contemplated" by either Mr. Rosen or US LBM. (Hr'g Tr. 14:11, 15:1.) He did not learn of the alleged price-fixing scheme until he received a letter from KCC in 2018. (Hr'g Tr. 15:20–25; 16:1–2.) Mr. Rosen testified that because the purchase price for his

---

[3] The transcript of Mr. Rosen's testimony is available at ECF 921-1. The transcript will be referred to as "Hr'g Tr."
[4] Following the initial round of briefing on the US LBM–Mr. Rosen claims dispute, the DPPs advised the Court of Mr. Todd's November 2014 deposition. (ECF 900). In response to the Court's request, the DPPs provided a copy of the transcript of Mr. Todd's deposition prior to the hearing
[5] The MIPA was submitted to the Court confidentially for in camera review. This Memorandum will reference parts of the MIPA that are discussed in the parties' public filings and/or were discussed on the record at the hearing.

3

shares was set as a multiple of EBITDA, the sales price "would have increased by more than $8.3 million" if the value of Rosen Materials' share of the Net Settlement Fund was factored in. (Hr'g Tr. 15:12–13.)

### B. MIPA Provisions

Under the MIPA, US LBM acquired units of Rosen Materials from Mr. Rosen and other shareholders in exchange for cash. Two provisions of the MIPA are relevant to the US LBM–Mr. Rosen claims dispute.

Section 6.04(a) of the MIPA provides that:

[E]ach Owner Party … releases [Rosen Materials] … from any and all Actions, controversies, cross-claims, counter-claims, debts, compensatory damages, liquidated damages, punitive or exemplary damages, other damages, claims for costs and attorneys' fees, or Liabilities of any nature ….

(MIPA § 6.04(a).)

The MIPA provides that the release in Section 6.04(a):

[S]hall be given full force and effect according to each and all of its express terms and provisions, including those relating to *unknown and unsuspected Released Claims* … if any, as well as those relating to any other Released Claims hereinabove mentioned or implied.

(MIPA § 6.04(b) (emphasis added).)

### C. US LBM's Submission of a Claim Form

As a direct purchaser of drywall, US LBM filed a Settlement Claim Form in the DPP action on behalf of itself and certain of its subsidiaries, including Rosen Materials. (ECF 893, US LBM Br. at 1.) Mr. Rosen filed a claim form based on the Rosen Materials purchases because he believed that the damages based on those purchases should accrue to him personally. (Hr'g Tr. 23:15–18.)

On August 5, 2019, KCC approved the portion of US LBM's claimed damages period purchases that was not based on its acquisition of Rosen Materials. (ECF 893-1.) KCC placed the remainder of US LBM's claim, based on Rosen Materials' purchases of $38 million worth of drywall (the "Disputed Claim"), in escrow due to the ownership disagreement with Mr. Rosen. (Id.) The Disputed Claim that is currently being held in escrow pending court order is the subject of the disagreement between US LBM and Mr. Rosen.

### III. Parties' Arguments

Mr. Rosen initially argued that neither he nor US LBM had knowledge of Rosen Materials' claim, so the parties could not have bargained Rosen Materials' claim away. (ECF 894, Mr. Rosen Br. at 4.) In his supplemental memorandum, Mr. Rosen explained that the mistake about the existence of Rosen Materials' price-fixing claim must have been mutual, because if US LBM had knowledge of the claim, then by representing that the MIPA's purchase price was a "good faith estimate," US LBM misled Mr. Rosen as to a material fact. (ECF 921, Mr. Rosen Supp. Br. at 3.) Based on this mutual mistake of fact, Mr. Rosen seeks reformation of the MIPA and requests award of the Disputed Claim as his remedy. (Id. at 8.) Mr. Rosen also seeks limited discovery because he believes US LBM possesses evidence that supports his testimony. (Id. at 9.)

US LBM responds that there was no mistake of fact because Mr. Rosen had knowledge of Rosen Materials' potential claim prior to selling his Rosen Materials shares. (ECF 922, US LBM Supp. Br. at 8.) According to Mr. Rosen's own deposition testimony, not only was he aware that Mr. Todd was interviewed by the Department of Justice in 2011, but he also knew that Mr. Todd was deposed in this very case five months before the execution of the MIPA. (Id. at 3–4; Hr'g Tr. 11:8–23, 26:14–17.) US LBM also argues that in the absence of specific language in the MIPA carving out class action settlements or claims associated with this litigation and reserving those

rights to Mr. Rosen, corporate law regards Rosen Materials' claims as transferring to US LBM with the stock sale. (US LBM Br. at 3–4.) Additionally, US LBM contends that Rosen Materials owns the Disputed Claim arising out of the drywall purchases, and that Mr. Rosen individually has no standing to recover for purchases made by Rosen Materials. (Id. at 4 n.4.) Finally, US LBM asserts that the MIPA's forum selection clause, which designates the state or federal courts in Michigan as the "exclusive" venue for "any [a]ction" arising out of the agreement, requires that Mr. Rosen's claims be resolved in Michigan, not in this Court. (US LBM Supp. Br. at 9.)

**IV.    Discussion**

The Court concludes that US LBM has the right to receive the Disputed Claim for the drywall purchases Rosen Materials made from the defendants in the DPP action. This conclusion is compelled by two observations.

First, the purchaser of the drywall was Rosen Materials, not Mr. Rosen. Mr. Rosen acknowledges that Rosen Materials, the corporate entity, made the purchases that gave rise to the Disputed Claim. (Hr'g Tr. 24:21–25; 25:1–3.) Although Mr. Rosen owned or controlled a substantial amount of Rosen Materials' shares during the damages period, the purchases were made by Rosen Materials, not by Mr. Rosen. It is therefore Rosen Materials, and not Mr. Rosen, that has the right to recover. Mr. Rosen contends that he owns the Disputed Claim "outright" but he offers no case to support this proposition. (Mr. Rosen Supp. Br. at 1.)

To the contrary, Mr. Rosen's assertion contradicts the well-settled principle of corporate law that "[a] stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation …." Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 732 (3d Cir. 1970). The Third Circuit has expressly recognized this rule in the antitrust context, holding that a shareholder does not have standing to

6

sue on his own behalf under the Clayton Act.  See id. at 733 ("The courts have consistently ruled that [the Clayton Act's] language does not include the indirect harm that an individual may suffer as a stockholder through injury inflicted upon a corporation.").  If individual shareholders do not have standing to sue for antitrust violations in the first instance, it would make little sense to recognize Mr. Rosen's standing to recover individually out of the Net Settlement Fund here.

Second, Mr. Rosen's claims are properly resolved by the state or federal courts in Michigan—not by this Court.  The heart of Mr. Rosen's argument is that US LBM will receive a windfall if it receives the proceeds of the Disputed Claim because the purchase price under the MIPA did not account for the value of Rosen Materials' recovery from the DPP settlement.  He argues that the price at which he sold his shares was artificially deflated because in 2015 when the MIPA was signed, the DPP action had not settled and neither US LBM nor the sellers contemplated the Disputed Claim.  He therefore seeks, under Michigan law, reformation and any other relief that is dictated by the interest of justice.  Mr. Rosen relies on Michigan law because under the MIPA, the law of the state of Michigan governs.  (MIPA § 10.10.)

However, Mr. Rosen ignores the forum selection clause that immediately follows the governing law provision in the MIPA.  The forum selection clause provides that:

> Each party irrevocably submits to the exclusive jurisdiction of the *state courts or federal courts located in Michigan* for the purposes of *any Action arising out of this Agreement* or any transaction contemplated by this Agreement.  Each party agrees to commence any such Action either in such courts.

(MIPA § 10.11 (emphases added).)  This forum selection clause is broad—it requires that "*any* Action arising out of [the MIPA]" be resolved by a state or federal court in Michigan.  (MIPA § 10.11 (emphasis added).)  Mr. Rosen has not explained why his dispute with US LBM regarding the Rosen Materials settlement claim falls outside the forum selection clause's broad scope such that resolution in this Court is proper.  In fact, Mr. Rosen has stated that he "will pursue [the issue

7

of the deflated purchase price under the MIPA] in separate litigation against US LBM ….." (Mr. Rosen Br. at 3 n.1.) That separate Michigan litigation—clearly anticipated by both Mr. Rosen and US LBM—is the proper forum for resolving Mr. Rosen's claim that he received less for his shares of Rosen Materials than he was entitled to given Rosen Materials' recovery in this action. Forum selection clauses serve as "a manifestation of the parties' preferences as to a convenient forum," and the Court respects the clearly expressed intent for disputes under the MIPA to be resolved in the courts in Michigan. Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995).

In summary, US LBM is entitled to recover on behalf of Rosen Materials, its subsidiary, for drywall purchases that Rosen Materials made during the damages period. Rosen Materials purchased the drywall that gave rise to the Disputed Claim, and Rosen Materials—not Mr. Rosen—has the right to receive the proceeds from the Net Settlement Fund. Because US LBM purchased Rosen Materials in 2015, US LBM is entitled to collect on behalf of Rosen Materials. Mr. Rosen may be correct that the purchase price in the MIPA did not reflect the true value of his Rosen Materials shares and that the MIPA entitles him to relief under Michigan law. But under the MIPA's forum selection clause, that question must be resolved by a state or federal court in Michigan.

**V.     Conclusion**

For the foregoing reasons, US LBM is entitled to the share of the Net Settlement Fund that results from Rosen Materials' drywall purchases during the damages period. KCC will be directed to release Rosen Materials' pro rata share of the Net Settlement Fund from escrow and remit those proceeds to US LBM.

An appropriate Order follows.

O:\13-MD-2437 – drywall\13cv2437 Memorandum re US LBM Holdings-Mr. Rosen Claims Dispute